1  EDMUND G. BROWN JR.
Attorney General of the State of California
2  DANE R. GILLETTE
Chief Assistant Attorney General
3  JULIE L. GARLAND
Senior Assistant Attorney General
4  ANYA M. BINSACCA
Supervising Deputy Attorney General
5  AMANDA J. MURRAY, State Bar No. 223829
Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5741
Fax:  (415) 703-5843
8    Email:  Amanda.Murray@doj.ca.gov

9  Attorneys for Respondent Ben Curry, Warden

10

11                IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  SCOTT BURNS,                          | CV08-00163 PJH

16                          Petitioner,   | **ANSWER TO PETITION FOR**
                                          | **WRIT OF HABEAS CORPUS;**
                                          | **MEMORANDUM OF POINTS**
17              v.                        | **AND AUTHORITIES**

18  B. CURRY, Warden,                     | Judge:    The Honorable
                                          |           Phyllis J. Hamilton
19                          Respondent.

20

21

22

23

24

25

26

27

28

1
## TABLE OF CONTENTS
2
**Page**

3    MEMORANDUM OF POINTS AND AUTHORITIES                                          9

4        INTRODUCTION                                                             9

5        ARGUMENT                                                                 9

6            THE STATE COURTS' ADJUDICATION OF BURNS'S CLAIMS
             WAS NEITHER CONTRARY TO, NOR INVOLVED AN
7            UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED
             FEDERAL LAW, NOR WAS IT BASED ON AN UNREASONABLE
8            DETERMINATION OF THE FACTS                                          9

9        A.    The Standard of Review for Federal Habeas Petitions Brought by
                State Prisoners Is Highly Deferential to the State Courts' Rulings.    9
10
         B.    Burns's Petition Should Be Denied Because He Received All
11               Process Due: an Opportunity to Be Heard and an Explanation for
                 the Parole Denial.                                               10
12
         C.    The Some-Evidence Standard of Review Is Not Clearly Established
13               Federal Law by the United States Supreme Court for Challenging
                 Parole Denials.                                                  11
14
         D.    Burns's Petition Should Be Denied Because There Is Some
15               Evidence Supporting the Board's Decision and — as Required by
                 AEDPA — the State Court Decision Upholding the Board's Parole
16               Denial Is Based on a Reasonable Application of the Facts Based on
                 the Evidence Presented.
17                                                                                12

18       E.    No Clearly Established United States Supreme Court Law Precludes
                 the State Courts from Upholding the Board's Reliance on Burns's
19               Commitment Offense to Deny Him Parole.                           13

20       F.    Burns Cannot Demonstrate that the State Court Acted Contrary to
                 Clearly Established Supreme Court Law or Unreasonably
21               Determined the Facts Regarding Burns's Ineffective Assistance of
                 Counsel Claim.                                                   14
22
         G.    Burns Cannot Demonstrate that the State Court Acted Contrary to
23               Clearly Established Supreme Court Law or Unreasonably
                 Determined the Facts Regarding Burns's Claim that the Board Is
24               Precluded from Relying on Unchanging Circumstances When
                 Denying Parole.                                                  15
25
         CONCLUSION                                                               16
26

27

28

# TABLE OF AUTHORITIES

Page

**Cases**

*Avila v. Galaza*
297 F.3d 911 (9th Cir. 2002)                                              10

*Benny v. U.S. Parole Comm'n*
295 F.3d 977 (9th Cir. 2002)                                              8

*Biggs v. Terhune*
334 F.3d. 910 (9th Cir. 2003)                                            14

*Carey v. Musladin*
__ U.S. __, 127 S. Ct. 649 (2006)                              7, 8, 11, 14, 15

*cf. Strickland v. Washington*
466 U.S. 668 (1984)                                                       15

*Cook v. Schriro*
__ F.3d __, 2008 WL 441825 *1, *10 (9th Cir. 2008)                        11

*Crater v. Galaza*
491 F.3d 1119 (9th Cir. 2007)                                             11

*Early v. Packer*
573 U.S. 3 (2002)                                                         10

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
442 U.S. 1 (1979)                                                2, 7, 10, 12

*Gutierrez v. Griggs*
695 F.2d 1195 (1983)                                                 8, 14, 15

*Hayward v. Marshall*
512 F.3d 536 (9th Cir. 2007)                                           11, 14

*In re Dannenberg*
34 Cal. 4th 1061 (2005)                                                  7, 14

*In re Rosenkrantz*
29 Cal.4th 616 (2002)                                                     7, 8

*Irons v. Carey*
505 F.3d 846 (9th Cir. 2007)                                         7, 11, 14

*Lockyer v. Andrade*
538 U.S. 63 (2003)                                                        10

*Middleton v. Cupp*
768 F.2d 1083 (9th Cir. 1985)                                          14, 15

## TABLE OF AUTHORITIES  (continued)

                                                                          Page

1

2

3   *Pedro v. Oregon Parole Board*
4   825 F.2d 1396 (9th Cir. 1987)                                          15

5   *Plumlee v. Masto*
    512 F.3d 1204 (9th Cir. 2008)                                         9, 14
6
    *Pulley v. Harris*
7   465 U.S. 37 (1984)                                                     15

8   *Rose v. Hodges*
    423 U.S. 19 (1975)                                                   8, 14, 15
9
    *Sandin v. Connor*
10  515 U.S. 472 (1995)                                                     7

11  *Sass v. Cal. Bd. Prison Terms*
    461 F.3d 1123 (9th Cir. 2005)                                          7
12
    *Schriro v. Landrigan*
13  ___ U.S. ___, 127 S. Ct. 1933 (2007)                                 11, 14

14  *Stanley v. Cal. Supreme Court*
    21 F.3d 359 (9th Cir. 1994)                                            1
15
    *Superintendent v. Hill*
16  472 U.S. 445 (1985)                                                   11-13

17  *Van Patten,* ___ U.S. ___
    128 S.Ct. at 747                                                       14
18
    *Wilkinson v. Austin*
19  545 U.S. 209 (2005)                                                   7, 10

20  *Williams v. Taylor*
    529 U.S. 362 (2000)                                                    10
21
    *Woodford v. Visciotti*
22  537 U.S. 19 (2002)                                                     9

23  *Wright v. Van Patten*
    ___ U.S. ___, 2008 WL 59980, at *2 4 (Jan. 7, 2008)                   11
24
    *Ylst v. Nunnemaker*
25  501 U.S. 797 (1991)                                                   10

26

27

28

**TABLE OF AUTHORITIES  (continued)**

Page

**Statutes**

United States Code, Title 28
§ 2244(d)(1) ............................................................. 8
§ 2254(a) ............................................................. 8, 14, 15
§ 2254(d) ............................................................. 9, 16
§ 2254(d)(1) ............................................................. 6, 10, 11
§ 2254(d)(2) ............................................................. 6, 13
§ 2254(e) ............................................................. 8
§ 2254 (e)(1) ............................................................. 13
§ 2254, Rule 2(a) ............................................................. 1

California Penal Code
§ 3041 ............................................................. 7, 14
§ 3041.7 ............................................................. 14

**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) ...... 7, *passim*

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   JULIE L. GARLAND
    Senior Assistant Attorney General
4   ANYA M. BINSACCA
    Supervising Deputy Attorney General
5   AMANDA J. MURRAY, State Bar No. 223829
    Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5741
     Fax:  (415) 703-5843
8    Email:  Amanda.Murray@doj.ca.gov

9   Attorneys for Respondent Ben Curry, Warden

10

11                    IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                         SAN FRANCISCO DIVISION

14

| | |
|---|---|
| SCOTT BURNS, | CV08-00163 PJH |
| Petitioner, | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| B. CURRY, Warden, | |
| Respondent. | Judge:    The Honorable Phyllis J. Hamilton |

20      As an Answer to the Petition for Writ of Habeas Corpus filed by California state inmate

21   Scott Burns, proceeding pro se in this habeas corpus action, Respondent Warden Ben Curry[1/]

22   admits, denies, and alleges as follows:

23      1.   Burns is in the lawful custody of the California Department of Corrections and

24

25      1.   The proper respondent in this action is Warden Ben Curry. *Stanley v. Cal. Supreme
26   Court*, 21 F.3d 359, 360 (9th Cir. 1994) (holding that the warden where the petitioner is incarcerated
     is the proper respondent); Rule 2(a), 28 U.S.C. § 2254.  Because the actions complained of in this
27   petition concern a parole consideration hearing, the Board of Parole Hearings is used interchangeably
     with Respondent in this Answer and supporting Memorandum of Points and Authorities for
28   convenience only.

1    Rehabilitation (CDCR) serving an indeterminate life sentence following his 1988 conviction in

2    Sierra County for second degree murder with use of a firearm and grand theft with use of a

3    firearm. (Ex. A, Abstract of Judgement.)

4       2.    Burns's Petition does not challenge his conviction; instead, he challenges the Board of

5    Parole Hearings' September 29, 2005 decision finding him unsuitable for parole.  Specifically, he

6    alleges that his federal due process rights were violated because there is no evidence supporting

7    the Board's decision. (Petn. at 17-18, 22-61, 70-75.)[2/]  He also alleges there is no evidence

8    supporting the Board's decision to deny him parole for two years (*id.* at 18, 55-61), that he was

9    deprived of effective assistance of counsel during his hearing (*id.* at 30, 62-69), and that the

10   Board was precluded from using unchanging circumstances during his parole hearing based on

11   the collateral estoppel doctrine. (*Id.* at 70-75.)

12      3.    On June 7, 1987, Burns went to Robert Smith's campsite and began drinking with him.

13   (Ex. B, Subsequent Parole Consideration hearing, at 11-12; Ex. C, Probation Officer's Report, at

14   21-22; Ex. D, Life Prisoner Evaluation Report, at 1; Ex. D, Subsequent Parole Consideration

15   Hearing, at 10-12.)  After Smith passed out, Burns took Smith's pistol and shot him twice in the

16   head, killing him. (Ex. B at 12; Ex. C at 21, Ex. D at 1.)  Burns then left with Smith's pistol.

17   (Ex. B at 12; Ex. C at 21-22; Ex. D at 1.)

18      As Burns was going to the Downieville Sheriff's Office to report the alleged discovery of

19   Smith's body, Burns threw the pistol down a ravine. (Ex. B at 12; Ex. C at 22; Ex. D at 1.)

20   Later, after being questioned about the missing pistol, Burns confessed to shooting Smith. (*Id.*)

21      4.    On September 29, 2005, Burns was provided an opportunity to be heard during

22   his parole consideration hearing (Ex. B at 11-56), and the Board issued a decision explaining

23   why Burns was unsuitable for parole. (Ex. B at 57-63.) *Greenholtz v. Inmates of Neb. Penal &*

24   *Corr. Complex*, 442 U.S. 1, 16 (1979) (federal due process requires inmates being considered for

25   release on parole to receive an opportunity to be heard and a reasoned decision).  Specifically, the

26

27
_____

28       2. Respondent interprets Burns's Grounds 2-9 and Ground 11 as challenging the sufficiency
     of the evidence. (Petn. at 17-18, 22-61, 70-75.)

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                *Burns v. Curry*
                                                                          CV08-00163 PJH

1   Board found that Burns's murder offense was carried out in an especially cruel and callous

2   manner, and that the motive for the crime was inexplicable and very trivial in relation to the

3   offense in that Burns took Smith's pistol and shot him twice in the head. (Ex. B at 57-58.) In

4   addition to the commitment offense, the Board denied Burns parole based on: (1) his failure to

5   profit from society's attempts to correct his criminality through previous grants of adult

6   probation and county jail; (2) his unstable social history; (3) his limited prison programming,

7   including failing to upgrade educationally and insufficient participation in self-help and therapy

8   programs; (4) his disciplinary history; (5) his insufficient employment plans if he should be

9   granted parole; and (6) opposition from the Sierra County District Attorney's Office and Sierra

10   County Sheriff's Department. (*Id.* at 58-59, 62.)

11      5.    The Board denied parole for two years based on the cruel, callous, dispassionate, and

12   calculated nature of Burns's commitment offense, which was carried out in an exceptionally

13   callous disregard for human suffering in that when Smith was unconscious, Burns shot him twice

14   in the head, killing him. (Ex. B at 61.) The Board also noted that Burns needed additional time

15   to participate in prison programming to ensure that he was suitable for parole. (*Id.*)

16      6.    Burns filed a petition with the Sierra County Superior Court raising substantially

17   the same challenges to the Board's 2005 decision that he now asserts in his federal Petition. (Ex.

18   E, Superior Court Pet. & Denial.)[3/] The superior court denied Burns's claims on November 30,

19   2006 in a seven-page reasoned decision, finding there was some evidence supporting the Board's

20   parole denial. (*Id.*)

21      a.    In affirming the Board's decision, the superior court first rejected Burns's claim

22   that the Board was precluded from using the circumstances of his commitment offense to deny

23   parole. (Ex. E at 2.) Rather, the court found there was some evidence in the record supporting

24   the Board's conclusion that the murder was committed in a dispassionate and calculated manner,

25   showing exceptional disregard for human suffering, because Burns shot Smith — who was

26

27

---

28      3. To avoid repetition and unnecessary volume, the exhibits attached to Burns's state court
petitions have been removed. Respondent will provide these documents upon the Court's request.

1   unconscious and defenseless — twice in the head, and then left him for dead without attempting

2   to obtain medical help and concealing the crime. (*Id.*) Although Burns argued that the Third

3   District Court of Appeal had opined that the nature of his murder offense "was neither

4   sensational nor atrocious" in its opinion affirming Burns's conviction, the superior court rejected

5   this argument because the appellate court's characterization of Burns's crime was for a different

6   purpose than the Board's analysis for determining Burns's parole suitability. (*Id.*)

7       The court also found that there was some evidence in the record that Burns's motive for the

8   crime was inexplicable and trivial because there was no reason for Burns to kill Smith or, as

9   alleged by Burns, if the pistol was the basis for the murder, the motive was trivial. (Ex. E at 2-3.)

10      The court also rejected Burns's claim that his second degree murder conviction was not

11  more than the minimum necessary to convict him of his offense because the Board did not rely

12  solely on the commitment offense in denying him parole, but rather relied on a myriad of other

13  factors to find him unsuitable. (Ex. E at 3.)

14          b.  Second, the superior court found there was some evidence supporting the Board's

15  use of Burns's prior criminality to deny him parole. (*Id.* at 4.) Specifically, the court found that

16  the Board's regulations were not an exclusive list of unsuitability factors and that the Board was

17  entitled to consider "non-listed factors that are directly relevant to the suitability question,"

18  including Burns's past criminal behavior. (*Id.*) Thus, the court concluded there was some

19  evidence supporting Burns's past criminal history.

20      The court also rejected Burns's argument that the Board's misstatement that Burns was

21  convicted of robbery — rather than burglary — was prejudicial. (Ex. E at 4.) In finding that the

22  Board would have corrected its error if noticed and reached the same result, the court noted that

23  the Board had discussed Burns's burglary conviction and that Burns had confessed to committing

24  additional burglaries to finance his marijuana habit. (*Id.*) Accordingly, the state court found

25  some evidence supported the Board's reliance on Burns's criminal history. (*Id.*)

26          c.  Third, the superior court found that there was some evidence in the record

27  supporting the Board's conclusion that Burns had an unstable social history because Burns had

28  witnessed his father (who was also his uncle) kill his mother, that he had lived in 40 to 50 foster

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Burns v. Curry*
                                                                             CV08-00163 PJH

                                            4

1    homes, that he had engaged in drug use and criminality, and that he had no family support. (Ex.

2    E at 4-5.)

3         d.    Fourth, the superior court concluded that there was some evidence supporting the

4    Board's reliance on Burns's failure to participate in prison programming, self-help, and therapy

5    opportunities in denying him parole. (Ex. E at 5.) Specifically, the court found that Burns's

6    insufficient education, job skills, insight into his crime, and therapy regarding substance abuse,

7    was some evidence supporting the Board's decision that Burns would continue to pose a danger

8    to society if released from prison. (Ex. E at 5-6.)

9         The court also rejected Burns's claim that there were insufficient self-help programs

10   available in prison because Burns — incarcerated since 1987 — had done little to avail himself

11   of those programs that had been available, and had only recently begun participating in

12   Alcoholics Anonymous. (Ex. E at 5.) Thus, the court found that his failure to seek self-help

13   opportunities throughout his incarceration was supported by some evidence in the record. (*Id.*)

14        e.    Fifth, the superior court found that the Board's reliance on Burns's disciplinary

15   violations was supported by some evidence because his violations were somewhat recent and

16   suggested that Burns would have difficulty following the rules on parole, in his employment, and

17   in society if released from prison. (Ex. E at 6.) Thus, the court concluded there was some

18   evidence supporting the Board's reliance on this factor.

19        f.    Sixth, the superior court found that the Board's decision to deny Burns parole for

20   two years was supported by some evidence because the denial was properly based on Burns's

21   commitment offense, his past criminality, his substance abuse problems, his recent disciplinary

22   problems, and his failure to seek self-help for substance abuse and other emotional problems.

23   (Ex. E. at 6.)

24        g.    Seventh, the superior court rejected Burns's ineffective assistance of counsel

25   claim, finding that Burns's counsel did not prejudicially err in failing to make or correct any

26   alleged factual or legal errors. (Ex. E at 6-7.) Specifically, the court rejected Burns's claim that

27   Burns's attorney failed to correct the Board's misstatement of Burns's "robbery" conviction (*See*

28   6b), that the attorney erred in discouraging Burns from citing case law to the Board, finding that

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                      *Burns v. Curry*
                                                                               CV08-00163 PJH

5

1    the attorney made a tactical decision, and that the attorney failed to object to the Board's reliance

2    on Burns's commitment offense based on the Third District's characterization of his crime (*See* 6

3    a; Ex. E at 7).

4         h.    Finally, the superior court rejected Burns's claim that the Board was precluded

5    from relying on unchanging circumstances at his parole hearing based on collateral estoppel.

6    (Ex. E at 7.)  Rather, the court found that the Board properly considered the regulatory factors in

7    denying Burns parole and that collateral estoppel did not apply.  (*Id.*)

8         7.    Burns pursued his claims by filing substantially the same petition for writ of habeas

9    corpus in California's Third Appellate District, which was denied on April 5, 2007.  (Ex. F,

10   Appellate Court Pet. & Denial.)

11        8.    Burns pursued his claims by filing substantially the same petition for writ of

12   habeas corpus in the California Supreme Court, which was denied on October 10, 2007. (Ex. G,

13   Supreme Court Pet. & Denial.)

14        9.    Respondent admits that Burns has exhausted his state court remedies regarding

15   his challenges to the sufficiency of the evidence and his allegations that there is no evidence

16   supporting the Board's decision to deny him parole for two years, that he was deprived of

17   effective assistance of counsel during his hearing, and that the Board was precluded from using

18   unchanging circumstances during his parole hearing to deny him parole.[4]  Respondent denies that

19   Burns has exhausted his claims to the extent that they are more broadly interpreted to encompass

20   any systematic issues beyond this particular review of parole denial.

21        10.   Respondent denies that the state courts' adjudication of Burns's claims was

22   contrary to, or involved an unreasonable application of, clearly established federal law as

23   determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

24        11.   Respondent denies that the state courts' adjudication of Burns's claims was based

25   on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §

26

27        4.  Although Burns alleged that his life sentence was grossly disproportionate to his
     commitment offense throughout his state court petitions, he did not assert this claim in his federal
28   petition.  Accordingly, Respondent will not address it.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Burns v. Curry*
                                                                             CV08-00163 PJH

6

1 | 2254(d)(2).

2 |      12.  To preserve the issue, Respondent denies that Burns has a federal liberty interest

3 | in parole under California Penal Code section 3041, notwithstanding the Ninth Circuit's contrary

4 | decision in *Sass v. Cal. Bd. Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2005). *See Greenholtz*

5 | *v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (finding no federally protected

6 | liberty interest in parole release date unless state creates interest through the unique structure and

7 | language of state parole statute); *but see also Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no

8 | federal liberty interest unless the state's action poses an atypical or significant hardship compared

9 | with ordinary prison life). However, it is unclear whether *Greenholtz* or *Sandin* is the controlling

10 | methodology for determining whether an inmate has a liberty interest in parole. *See Wilkinson v.*

11 | *Austin,* 545 U.S. 209, 229 (2005) (court noted that *Greenholtz's* liberty interest methodology was

12 | abrogated by *Sandin*). Accordingly, there is no clearly established federal law on how to

13 | determine a federally protected liberty interest.

14 |      Moreover, Burns does not have a federally protected liberty interest in parole under either

15 | methodology: first, California's parole scheme is a two-step process that does not impose a

16 | mandatory duty to grant life inmates parole before a suitability finding (*In re Dannenberg*, 34

17 | Cal. 4th 1061, 1087 (2005)), and second, an inmate (such as Burns) continuing to serve his life

18 | sentence does not pose an atypical or significant hardship compared to ordinary prison life (*In re*

19 | *Rosenkrantz*, 29 Cal.4th 616, 658 (2002) ["parole release decisions concern an inmate's

20 | anticipation or hope of freedom"]),. Thus, Burns does not have a protected liberty interest and

21 | fails to assert a basis for federal jurisdiction.

22 |      13.  To preserve the issue, notwithstanding the Ninth Circuit's contrary decision in *Irons v.*

23 | *Carey*, 505 F.3d 846, 851 (9th Cir. 2007), Respondent denies that the Supreme Court has ever

24 | clearly established that a state parole board's decision must be supported by some evidence. *See*

25 | *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 654 (2006) (federal habeas relief was improper

26 | under AEDPA in absence of United States Supreme Court precedent).

27 |      14.  Respondent affirmatively alleges that if the some-evidence standard applies to federal

28 | review of parole denials, then there is some evidence supporting the Board's 2005 decision to

1  deny Burns parole.

2       15.    Respondent alleges that there is no clearly established federal law precluding the

3  Board's reliance on Burns's commitment offense as a reason to deny him parole. *Musladin*, 127

4  S. Ct. at 654.

5       16.    Respondent alleges that there is no clearly established federal law limiting the factors

6  the Board may consider when determining whether a California state inmate is suitable for

7  parole. *Musladin*, 127 S. Ct. at 654.

8       17.    Respondent alleges that Burns cannot demonstrate that the state courts acted contrary

9  to clearly established federal law or that it unreasonably determined the facts regarding Burns's

10 ineffective assistance of counsel claim.

11       18.    Respondent alleges that Burns cannot demonstrate that the state courts acted contrary

12 to clearly established federal law or that it unreasonably determined the facts regarding Burns's

13 claim that the Board is precluded from relying on unchanging circumstances when denying

14 parole.

15       19.    Respondent alleges that to the extent Burns's claims are based on his construction of

16 the state statutes and regulations regarding parole suitability, they are not subject to federal

17 habeas relief because they are issues of state law.  28 U.S.C. § 2254(a); *Rose v. Hodges,*

18 423 U.S. 19, 21 (1975); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197-1198 (1983).

19       20.    Respondent denies that the Board's decision denying parole violated Burns's federal

20 due process rights.

21       21.    If the Petition is granted, Burns's remedy is limited to a new parole consideration

22 hearing before the Board that comports with due process.  *Benny v. U.S. Parole Comm'n*, 295

23 F.3d 977, 984-985 (9th Cir. 2002) (finding that the Board must exercise the discretion in

24 determining whether or not an inmate is suitable for parole); *In re Rosenkrantz*, 29 Cal.4th at

25 658.

26       22.    Respondent denies that an evidentiary hearing is necessary in this matter.  28 U.S.C. §

27 2254(e).

28       23.    Respondent admits that Burns's claim is timely under 28 U.S.C. § 2244(d)(1), and that

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                                    *Burns v. Curry*
                                                                                            CV08-00163 PJH

1  the Petition is not barred by the non-retroactivity doctrine.

2      24.  Except as expressly admitted in this Answer, Respondent denies the allegations of the

3  Petition.

4      25.  Burns fails to state or establish any grounds for habeas corpus relief.

5      For the reasons stated in this Answer and in the following Memorandum of Points and

6  Authorities, this Court should deny the Petition.

7                    **MEMORANDUM OF POINTS AND AUTHORITIES**

8                                 **INTRODUCTION**

9      Burns's Petition should be denied because he received the only process due under clearly

10  established Supreme Court authority: the opportunity to be heard and a decision. Thus, the

11  Board's decision did not violate his federal due process rights. Even if the some-evidence test is

12  applicable, and Respondent maintains it is not, Burns's Petition should be denied because there is

13  some evidence supporting the Board's decision denying Burns parole.

14                                    **ARGUMENT**

15  **THE STATE COURTS' ADJUDICATION OF BURNS'S CLAIMS WAS
    NEITHER CONTRARY TO, NOR INVOLVED AN UNREASONABLE**

16  **APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR WAS
    IT BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

17

18  **A.  The Standard of Review for Federal Habeas Petitions Brought by State
        Prisoners Is Highly Deferential to the State Courts' Rulings.**

19      The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) is a "highly

20  deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24

21  (2002) (per curiam). Indeed, federal habeas relief for state prisoners is tightly constrained under

22  AEDPA and a federal petition must be denied unless the state court's adjudication was contrary

23  to, or involved an unreasonable application of, clearly established Federal law, as determined by

24  the United States Supreme Court; or was based on an unreasonable determination of the facts in

25  light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). In

26  conducting an AEDPA analysis, "[w]hat matters are the holdings of the Supreme Court, not the

27  holdings of lower federal courts." *Plumlee v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008) (en

28  banc).

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Burns v. Curry*
                                                                            CV08-00163 PJH

1     Under AEDPA, a state court decision is " contrary to" clearly established Supreme Court

2   precedent "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court]

3   cases,' or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of

4   the Supreme Court and nevertheless arrives at a different result. *Early v. Packer,* 573 U.S. 3, 8

5   (2002) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)).

6     Under the "unreasonable application" clause of § 2254(d) (1), a federal habeas court may

7   grant the writ if the state court identifies the correct governing legal principle from the Supreme

8   Court's decisions, but unreasonably applies that principle to the facts of the case. *Williams,* 529

9   U.S. at 413.  A federal habeas court may not grant the writ "simply because that court concludes

10   in its independent judgment that the relevant state-court decision applied clearly established

11   federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.*

12   at 411; *see also Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) (it is "not enough that a federal

13   habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

14   the state court was 'erroneous.'")

15     The federal court looks to the last reasoned state court decision as the basis for the state

16   court judgment. *Avila v. Galaza,* 297 F.3d 911, 918 (9th Cir. 2002); *see Ylst v. Nunnemaker,* 501

17   U.S. 797, 803-804 (1991).

18   **B.   Burns's Petition Should Be Denied Because He Received All Process**
     **Due:  an Opportunity to Be Heard and an Explanation for the Parole**
19   **Denial.**

20     The Supreme Court has found that a parole board's procedures are constitutionally adequate

21   if the inmate is given an opportunity to be heard and a decision informing him of the reasons he

22   was not yet suitable for parole. *Greenholtz,* 442 U.S. at 16.  As a matter of "clearly established"

23   federal law then, a challenge to a parole decision will fail if the inmate has received the

24   protections required under *Greenholtz. See Wilkinson v. Austin,* 545 U.S. at 229 (Supreme Court

25   cited *Greenholtz* approvingly for the proposition that the "level of process due for inmates being

26   considered for release on parole includes opportunity to be heard and notice of any adverse

27   decision" and noted that *Greenholtz* remained "instructive for [its] discussion of the appropriate

28   level of procedural safeguards.")  Burns does not deny that he received an opportunity to be

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                              *Burns v. Curry*
                                                                                        CV08-00163 PJH

1   heard or the reasons he was denied parole. (Ex. B.) Thus, the state courts' decisions were not

2   contrary to clearly established federal law.

3   **C.  The Some-Evidence Standard of Review Is Not Clearly Established Federal
        Law by the United States Supreme Court for Challenging Parole Denials.**

4

5   The some-evidence standard does not apply in federal habeas proceedings challenging

6   parole denials because it is not clearly established federal law in that context. *Superintendent v.*

7   *Hill,* 472 U.S. 445, 455-56 (1985) (some-evidence standard applies to disciplinary proceedings).

8   Yet, the Ninth Circuit has held that the some-evidence standard governs parole cases, even

9   though the Supreme Court has never extended that test from disciplinary cases to parole cases.

10  *See, e.g., Hayward v. Marshall,* 512 F.3d 536, 542 (9th Cir. 2007); *Irons v. Carey,* 505 F.3d at

11  851; *but see Musladin,* ___ U.S. ___, 127 S. Ct. at 654 (federal habeas relief was improper under

12  AEDPA in absence of United States Supreme Court precedent as to specific issue presented).[5]

13  Indeed, both the United States Supreme Court and the Ninth Circuit have reiterated that there can

14  be no clearly established federal law where the Supreme Court has never addressed a particular

15  issue or applied a certain test to a specific type of proceeding. *See e.g., Schriro v. Landrigan,*

16  ___ U.S. ___, 127 S. Ct. 1933, 1942 (2007) (no federal habeas relief when the issue is an open

17  question in the Supreme Court's precedent); *Wright v. Van Patten,* ___ U.S. ___, 2008 WL

18  59980, at *2 4 (Jan. 7, 2008) (per curiam) (Supreme Court vacated the judgment, and remanded

19  for further consideration in light of *Musladin* because "No decision of this Court . . . squarely

20  addresses the issue in this case" and, therefore relief under § 2254(d)(1) is "unauthorized");

21  *Crater v. Galaza,* 491 F.3d 1119, 1126 & n.8 (9th Cir. 2007) (citing *Musladin,* the Ninth Circuit

22  acknowledged that decisions by courts other than the Supreme Court are "non-dispositive" under

23  § 2254(d)(1)); *Cook v. Schriro,* ___ F.3d ___, 2008 WL 441825 *1, *10 (9th Cir. 2008) (citing

24  *Musladin,* the Ninth Circuit found that because there was no United States Supreme Court

25  precedent, it could not say "that the state court 'unreasonably applied clearly established Federal

26

27

28  5.  Although published after *Musladin,* neither *Irons* nor *Hayward* addressed the *Musladin* Court's discussion of clearly established federal law under AEDPA.

1  law'"").

2     Accordingly, because *Hill*, 472 U.S. at 455-456 applied the some-evidence standard to a

3  prison disciplinary hearing and Burns challenges his 2005 parole consideration hearing, the

4  some-evidence standard does not apply.  Because *Greenholtz* is the *only* United States Supreme

5  Court authority describing the process due at a parole consideration hearing when an inmate has

6  a federal liberty interest in parole, the *Greenholtz* test, not the some-evidence standard, should

7  apply in this proceeding.  Regardless, Respondent recognizes that the Ninth Circuit has held

8  otherwise and will argue this case accordingly.

9     **D.    Burns's Petition Should Be Denied Because There Is Some Evidence
           Supporting the Board's Decision and — as Required by AEDPA — the State
10          Court Decision Upholding the Board's Parole Denial Is Based on a
           Reasonable Application of the Facts Based on the Evidence Presented.**

11

12     If this Court finds that the some-evidence standard applies and assuming Burns has a

13  federally protected liberty interest, some evidence supports the Board's decision denying Burns

14  parole.  The some-evidence standard "does not require examination of the entire record,

15  independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it

16  assures that "the record is not so devoid of evidence that the findings of the . . . board were

17  without support or otherwise arbitrary."  *Hill*, 472 U.S. at 455-457 (applying some-evidence

18  standard to prison disciplinary hearing).  Thus, both the "reasonable application" standard of

19  AEDPA and the some-evidence standard of *Hill* are very minimal standards.

20     Although Burns invites the Court to re-examine the facts of his case and re-weigh the

21  evidence presented to the Board, neither AEDPA nor *Hill*'s some-evidence test permit this degree

22  of judicial intrusion.  Moreover, in assessing the state court's review of Burns's claims, not only

23  should the appropriate deference be afforded to the state court's review under AEDPA, but

24  deference is also due to the underlying Board decision.  The Supreme Court has recognized the

25  difficult and sensitive task faced by the Board in evaluating the advisability of parole release.

26  *Greenholtz*, 442 U.S. at 9-10.  Thus, contrary to Burns's belief that he should be paroled based

27  on the evidence in support of his parole (*see generally*, Petn.), the Supreme Court has stated that

28  in parole release, there is no set of facts which, if shown, mandate a decision favorable to the

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                           *Burns v. Curry*
                                                                                    CV08-00163 PJH

1    inmate. *Id.* Instead, under the some-evidence standard, the court's inquiry is limited solely to

2    determining whether the state court properly found that the Board's decision to deny parole is

3    supported by some evidence in the record, *i.e.*, any evidence. *Hill*, 472 U.S. at 455.

4         Here, the superior court concluded that there was some evidence in the record supporting

5    the Board's decision denying Burns parole. The court based its findings on Burns's commitment

6    offense, his prior criminal behavior, his unstable social history, and his behavior and

7    programming in prison. (*See* Answer *supra*, ¶ 6; Exs. B, E.) Thus, this is a reasonable

8    application of the minimal some-evidence test.

9         Moreover, Burns fails to meet his burden of proving that the state courts unreasonably

10   determined the facts based on the evidence presented to the Board. 28 U.S.C. § 2254(d)(2),

11   (e)(1). Indeed, the superior court reasonably determined the facts regarding Burns's claims

12   concerning his commitment offense (Ex. B at 11-13, 57-58; Ex. E at 2-3), his prior criminal

13   history (Ex. B at 13-15, 28, 58; Ex. E at 3), his unstable social history (Ex. B at 15-28, 58; Ex. E

14   at 3-4), his limited programming in prison (Ex. B at 37-53, 59-62; Ex. E at 4-5), and his

15   disciplinary violations (Ex. B at 39, 58; Ex. E at 5), in concluding that some evidence supported

16   the Board's decision denying Burns parole. Because the state courts reasonably determined the

17   facts, Burns has failed to show an AEDPA violation.

18        In summary, if the some-evidence test applies, the state court denials were not an

19   unreasonable application of clearly established United States Supreme Court law, nor did the

20   state courts unreasonably determine the facts. Instead, the state court properly determined that

21   there is some evidence in the record supporting the Board's decision, and Burns's Petition should

22   be denied.

23        **E.    No Clearly Established United States Supreme Court Law Precludes the
             State Courts from Upholding the Board's Reliance on Burns's Commitment
24           Offense to Deny Him Parole.**

25        Burns contends that the Board violated his federal due process rights by improperly

26   relying on his commitment offense to find him unsuitable for parole. (Petn. at 20-25, 69-73.)

27   Yet, there is no clearly established federal law as determined by the United States Supreme Court

28   precluding the Board's reliance on Burns's crime as a reason to find him unsuitable for parole.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                          *Burns v. Curry*
                                                                                   CV08-00163 PJH

                                              13

1  *See Musladin*, 127 S. Ct. at 654; *Landrigan*, 127 S. Ct. at 1942.  Although the Ninth Circuit's

2  recent holdings suggest that continued reliance on the commitment offense may violate due

3  process at some future date (*see, e.g., Irons*, 505 F.3d at 854, (citing *Biggs v. Terhune*, 334 F.3d.

4  910, 916-17 (9th Cir. 2003); *Hayward v. Marshall*, 512 F.3d at 547, fn. 10 (court concluded that

5  Governor's continued reliance on Hayward's commitment offense violated due process, but

6  expressly limited its holding to the facts of Hayward's case and the nature of his specific

7  conviction offense), these holdings are irrelevant when conducting an AEDPA analysis.

8  *Plumlee*, 512 F.3d at 1210 ("What matters are the holdings of the Supreme Court, not the

9  holdings of lower federal courts").

10      Indeed, the Supreme Court recently highlighted the tight constraints imposed by AEDPA:

11          Because our cases give no clear answer to the question presented,
            let alone one in [Petitioner's] favor, "it cannot be said that the state
12          court 'unreasonabl[y] appli[ed] clearly established Federal law.'"
            *Musladin*, 549 U.S. at ___, 127 S. Ct. 649, 654 (quoting 28 U.S.C.
13          § 2254(d)(1)).  Under the explicit terms of § 2254(d)(1), therefore,
            relief is unauthorized.

14

15  *Van Patten*, ___ U.S. ___, 128 S.Ct. at 747.  Thus, because the Board's reliance on Burns's

16  commitment offense to deny parole is supported by California state law (Cal. Pen. Code, §3041;

17  *Dannenberg*, 34 Cal.4th 1061, 1094 (2005)) and such reliance is not contrary to any clearly

18  established United States Supreme Court law, Burns's argument is without merit.

19      **F.    Burns Cannot Demonstrate that the State Court Acted Contrary to Clearly
                Established Supreme Court Law or Unreasonably Determined the Facts
20              Regarding Burns's Ineffective Assistance of Counsel Claim.**

21      Burns argues that he was deprived of effective assistance of counsel, asserting that his

22  attorney failed to object and correct the Board's alleged legal and factual errors during his parole

23  consideration hearing.  (Petn. at 30, 62-69.)  Yet, Burns's right to an attorney at his

24  administrative parole hearing arises out of California state — not federal — law.  Cal. Pen. Code,

25  § 3041.7.  As such, his claim is not cognizable in federal habeas corpus.  28 U.S.C. § 2254(a);

26  *Rose v. Hodges*, 423 U.S. 19, 21 (1975); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197-1198 (1983).

27  Even if Burns is alleging that the state court erroneously rejected this claim, a federal court may

28  not challenge a state court's interpretation or application of state law, *Middleton v. Cupp*, 768

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                          *Burns v. Curry*
                                                                                   CV08-00163 PJH

1  F.2d 1083, 1085 (9th Cir. 1985), or grant relief "on the basis of a perceived error of state law."

2  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

3      Burns's claim also fails because there is no clearly established Supreme Court authority

4  for Burns's assertion in the context of an administrative parole proceeding. *Musladin*, ___ U.S.

5  ___, 127 S. Ct. at 654 (federal habeas relief was improper under AEDPA in absence of United

6  States Supreme Court precedent as to specific issue presented); *cf. Strickland v. Washington*, 466

7  U.S. 668 (1984) (establishing test for determining ineffective assistance of counsel during

8  criminal proceedings). To the contrary, it is well established that the full panoply of rights due a

9  defendant in a criminal proceeding is not constitutionally mandated in a parole proceeding

10 because the setting of a parole term is not part of a criminal prosecution. *Pedro v. Oregon*

11 *Parole Board*, 825 F.2d 1396, 1399 (9th Cir. 1987).

12      Accordingly, because the state courts did not act contrary to clearly established federal

13 law and because the superior court reasonably determined the facts regarding Burn's claim (*See*

14 Answer *supra*, ¶ 6 g; Ex. E at 6-7), Burns's Petition as to this claim must be denied.

15      **G.    Burns Cannot Demonstrate that the State Court Acted Contrary to Clearly**

16      **Established Supreme Court Law or Unreasonably Determined the Facts**
        **Regarding Burns's Claim that the Board Is Precluded from Relying on**
17      **Unchanging Circumstances When Denying Parole.**

18      Burns appears to argue that the Board is precluded from continually relying on

19 unchanging circumstances in denying him parole based on the collateral estoppel doctrine. (Petn.

20 at 70-73.) Yet, Burns's argument fails to implicate a federal claim to the extent it is based on his

21 construction of the state statutes and regulations regarding the manner in which the Board

22 determines suitability for parole. Thus, because Burns's claim is predicated on state law, it is not

23 cognizable in federal habeas corpus. 28 U.S.C. § 2254(a); *Rose,* 423 U.S. at 21; *Gutierrez*,

24 695 F.2d at 1197-1198. As stated above, even if Burns is alleging that the state court erroneously

25 rejected this claim, a federal court may not challenge a state court's interpretation or application

26 of state law, *Middleton*, 768 F.2d at 1085, or grant relief based on a perceived error of state law.

27 *Pulley*, 465 U.S. at 41.

28      Moreover, there is no clearly established Supreme Court law on this issue. Indeed, the

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                           *Burns v. Curry*
                                                                                    CV08-00163 PJH

1    cases cited by Burns concern the effect of collateral estoppel in an adversarial — not an

2    administrative — proceeding. (Petn. at 71-73.) Burns also fails to prove that the superior court

3    unreasonably determined the facts regarding his claim. Rather, the court found that the Board

4    properly considered the regulatory factors in denying Burns parole and that the collateral estoppel

5    did not apply. (Ex. E at 7.)

6        Accordingly, in the absence of any United States Supreme Court law to the contrary and

7    based on the state courts' reasonable interpretation of the facts, Burns cannot show that the state

8    courts' decision violated AEDPA. As such, Burns's Petition should be denied as to this claim.

9    28 U.S.C. § 2254(d).

10                    **CONCLUSION**

11        Burns received all the process he was due under clearly established Supreme Court

12    authority. Moreover, the record reflects that the Board's decision was supported by some

13    evidence and that the state courts reasonably determined the facts. Thus, the state courts'

14    adjudication of Burns's claims was not contrary to, nor did it involve an unreasonable application

15    of, clearly established federal law, or an unreasonable determination of the facts. Accordingly,

16    Burns's Petition should be denied.

17        Dated: April 7, 2008

                         Respectfully submitted,

18

                         EDMUND G. BROWN JR.

19                          Attorney General of the State of California

                         DANE R. GILLETTE

20                          Chief Assistant Attorney General

21                          JULIE L. GARLAND

                         Senior Assistant Attorney General

22                          ANYA M. BINSACCA

23                          Supervising Deputy Attorney General

24

25

26                          AMANDA J. MURRAY

                         Deputy Attorney General

27                          Attorneys for Respondent

28

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Burns v. Curry**

No.:    **CV08-00163 PJH**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **April 7, 2008**, I served the attached

### ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Scott Burns, D-99247**
**San Quentin State Prison**
**1 Main Street**
**3-N-73-U**
**San Quentin, CA 94964**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **April 7, 2008**, at San Francisco, California.

| M.M. Argarin | _M.M. Argarin_ |
|---|---|
| Declarant | Signature |

40237825.wpd

# EXHIBIT A

Insert name of court, branch court, if any, and mailing address

SUPERIOR COURT OF CALIFORNIA, COUNTY OF . *SIERRA*
*P.O. Box 95, Courthouse Square*
*Downieville, California 95936*

FOR COURT USE ONLY

FILED

OCT 28 1988

SANDRA LOVING
COUNTY CLERK
BY *Dan Mallrador*
DEPUTY CLERK

PEOPLE OF THE STATE OF CALIFORNIA

DEFENDANT: *SCOTT STEVEN BURNS*    [X] Present    [ ] Not Present

[X] JUDGMENT OF COMMITMENT TO:    [X] STATE PRISON    [ ] COUNTY JAIL
[ ] ORDER GRANTING PROBATION    [X] AND MINUTE ORDER

CASE NUMBER    *4161*

| Date of hearing: *10-28-88* | Dept. No.: *1* | Judge: *S. Young* | Clerk: *J. Gallagher* | Reporter: *Janet Bisharat* |
|---|---|---|---|---|
| Counsel for People: *James Reichle, D.A.* | | Counsel for defendant: *Donald J. Blake, Jr.* | | Probation Officer: *Pete Villarreal, Jr.* |

1. Defendant was convicted of the commission of the following crime on (Date) . . . *September 28, 1988*

| Count | Code Section | Crime | Degree | By Jury, Court or Plea (Specify) |
|---|---|---|---|---|
| *I* | *187 P.C.* | *Murder* | *Second* | *Jury* |

2. Defendant [ ] was arraigned [X] waived arraignment for judgment.

3. The court, having read and considered the probation report and no legal cause having been shown why judgment should not be pronounced

   a. [X] Sentences defendant to State Prison for the term prescribed by law.

   b. [ ] Specifies, pursuant to Pen. C. 1202b, the minimum term of imprisonment shall be six months as to count: •

   c. [ ] Sentences defendant to County Jail for the period of (Specify number of days): . .

   d. [ ] Suspends imposition of sentence and defendant is placed on probation for the period of . . . . . . . .
      upon conditions set forth in attachment 3d.

4. [ ] Defendant, convicted of more than one count, shall

   a. [ ] serve the sentence as to each count as follows.

     Count                Consecutive With                Concurrent with

   b. [ ] serve the counts made consecutive in the following order.

5. Defendant shall serve this sentence with respect to any prior uncompleted sentence   a. [X] concurrently.   b. [ ] consecutively

   c. [X] as set forth below or in attachment 5c.

                  *with Count II, violation of Section 487(3) - two (2) years*

6. Execution of sentence is

   a. [ ] stayed on the following count: . . . . . . . . . . . . . . . .
     when the sentence is completed as to count: . . . . . . . . . pending appeal, with the stay to become permanent

   b. [ ] suspended and defendant is placed on probation for the period of: . . . . . . . .
     [ ] upon conditions set forth in attachment 6b.

7. [ ] No allegation to enhance punishment was made in count: . . . . . . .

8. [X] It was alleged

   a. [ ] Defendant was armed with a deadly weapon at the time of the commission or attempted commission of the crime charged
     in count: . . . . . . . . . . . [ ] and allegation stricken as to count . . . . . . . . .

b. ☐ Defendant used a firearm . . . . .nt: . . . . . . . . . ☐ and allegation st.. . . . as to count: . . . . . . . . . .

c. ☐ Defendant was armed at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024
☐ and allegation stricken.

d. ☐ Other (Specify and indicate if stricken): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

9. ☒ The Court finds the defendant

a. ☐ *was* armed at the time of commission or attempted commission of the crime with a deadly weapon within the meaning of

(1) ☐ Pen. C. 3024 as to count: . . . . . . . . . . ☐ but strikes the finding as to count: . . . . . . .

(2) ☐ Pen. C. 12022 as to count: . . . . . . . . . ☐ but strikes the finding as to count: . . . . . . .

, (3) ☐ Pen. C. 1203 (Specify weapon): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

as to count: . . . . . . . . . . ☐ but strikes the finding as to count: . . . . . . . . .

b. ☐ *was not* armed at the time of commission or attempted commission of the crime within the meaning of

(1) ☐ Pen. C. 3024 as to count:

(2) ☐ Pen. C. 12022 as to count:

(3) ☐ Pen. C. 1203 as to count:

c. ☒ *did* use a firearm as to count: *one* . . . . . . . . ☐ but strikes the finding as to count: . . . . . . .

(1) ☐ The use was one use for the following counts: . . . . . . . . . . . . . . . . The additional penalty shall
run consecutively to the sentence on the last count to be served.

d. ☐ *did not* use a firearm as to count: . . . . . . . . . . . . . . . . . . . . . . . . . . . .

e. ☐ *was* armed at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024 ☐ but strikes
the finding.

f. ☐ *was not* armed at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024.

g. ☐ Other (Specify and indicate if stricken):

10. ☐ Prior convictions which affect defendant's sentence were alleged and disposed of ☐ as follows ☐ as set forth in
attachment 10.

| Conviction date | Jurisdiction | Crime and code Section | Applies to Count | Disposition |
|---|---|---|---|---|
| | | | | |

11. The court finds defendant  a. ☐ is ☐ is not an habitual criminal under Pen C. 644a.

b. ☐ is ☐ is not an habitual criminal under Pen C. 644b.

12. The court pronounced sentence on (Date): *October 28, 1988* . and defendant was held in custody, through and including
the date of pronouncement of sentence for (Total no. of days): *762* . . . . . . . as follows    *NA*

| Count | Time other than Dept. of Corrections | Dept. of Corrections Time |
|---|---|---|
| | | |

13. Defendant is remanded to the custody of the Sheriff

a. ☐ For the period of (Specify no. of days): . . . . ☐ upon conditions and recommendations set forth in attachment 13a

b. ☒ To be delivered ☒ at the earliest convenient time ☐ after 48 hours, excluding Saturdays, Sundays and holidays
[Pen C. 1203c] into the custody of the Director of Corrections at

(1) ☐ California Institution for Women—Frontera  (3) ☐ California Institution for Men—Chino

(2) ☐ California Men's Facility—Vacaville  (4) ☒ Other: *DEUEL VOCATIONAL INSTITUTION*

14. ☐ The court requests a copy of the diagnostic study and recommendations as required in CRC Rule 250 as provided in Pen C. 1168.

15. The court advised defendant of all appeal rights and defendant/acknowledged understanding them.

16. ☒ Other (See attachment 16) *Defendant filed Notice of Appeal in open Court on 10/28/88.*

Dated: *10/28/88    STANLEY C. YOUNG* . . . . . . . . . [signature]

(Type or print name)   (Signature of Judge of the Superior Court)

TOTAL NO. of boxes checked  *11* . . . . . .

CLERK'S CERTIFICATE

I hereby certify that the foregoing is a correct copy of the original on file in my office

SANDRA LOVING   Clerk of the superior Court

[Seal]

By _____[signature]_____   Deputy

SIERRA COUNTY
FILED
OCT 28 1988
RESERVED

Nevada County

ABSTRACT OF JUDGMENT — COMMITMENT

FORM DSL 290

| COURT I.D. | | | |
|---|---|---|---|
| 4 | 6 | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF _____ Sierra

BRANCH _____

| | CASE NUMBER(S) | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA | versus | [X] PRESENT | 4161 — A |
| DEFENDANT: Scott Steven Burns | | | — B |
| AKA: | | [ ] NOT PRESENT | — C |
| COMMITMENT TO STATE PRISON | | | — D |
| ABSTRACT OF JUDGMENT | [ ] AMENDED ABSTRACT | | — E |

| DATE OF HEARING [MO] [DAY] [YR] | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 10  28  88 | 1 | Stanley C. Young | Jan Gallagher |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| Janet Bisharat | James Reichle | Donald J. Blake, Jr. | Pete Villarreal, Jr. |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

A. [ ] ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO DAY YEAR | CONVICTION BY | TERM (I.M.I.) | | | | | SENTENCE RELATION | | | | | | | | PRINCIPAL OR CONSECUTIVE TIME IMPOSED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | JURY/COURT/PLEA | | | | | | | | | | | | | | YEARS | MONTHS |
| 2 | PC | 487(3) | Grand Theft | 87 | 09 28 88 | X | M X | | | | | | | | | | | | | 2 | |

2. ENHANCEMENTS (CHARGED AND FOUND, STRICKEN, TIME IMPOSED):

| COUNT | 12022(a) | | | 12022(b) | | | 12022.3(a) | | | 12022.3(b) | | | 12022.5 | | | 12022.6(a) | | | 12022.6(b) | | | 12022.7 | | | 12022.8 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | | |
| | | | | | | | | | | | | | X | X | | | | | | | | | | | | | | 2 | |

3. INCOMPLETED SENTENCE(S) CONSECUTIVE:

| COUNTY | CASE NUMBER | CREDIT FOR TIME SERVED |
|---|---|---|
| | | |

5. A. NUMBER OF PRIOR PRISON TERMS:

| | S. | C/F | S |
|---|---|---|---|
| 667.5(a) | | | |
| 667.5(b) | | | |
| 667.6(b) | | | |

4. OTHER ORDERS:

12022.5 term to run CONSECUTIVE to the Indeterminate sentence on 187 PC conviction in this same matter.

B. NUMBER OF PRIOR FELONY CONVICTIONS:

| | S. | C/F | S |
|---|---|---|---|
| 667.6(a) | | | |

6. TOTAL TIME IMPOSED ON ALL ATTACHMENT PAGES (FORM DSL 290-A):

7. TIME STAYED § 1170.1(a) [5-YEAR LIMIT] AND/OR § 1170.1(f) [DOUBLE BASE LIMIT]:

8. TOTAL TERM IMPOSED: ——————————————————————————————▷  2

9. EXECUTION OF SENTENCE IMPOSED:

A. [X] A) INITIAL SENTENCING HEARING   B. [ ] AT RESENTENCING PURSUANT TO DECISION ON APPEAL   C. [ ] AFTER REVOCATION OF PROBATION   D. [ ] AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT [PC§1170(d)]

| 10. DATE SENTENCE PRONOUNCED: MO DAY YEAR | CREDIT FOR TIME SPENT IN CUSTODY: | TOTAL DAYS | ACTUAL LOCAL TIME | LOCAL CONDUCT CREDITS | STATE INSTITUTIONS |
|---|---|---|---|---|---|
| 10  28  88 | | 762 | 508 | 254 | [ ] DMH    [ ] CDC |
| | | INCLUDING: | | | |

11. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

[X] FORTHWITH
[ ] AFTER 48 HOURS, EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS

INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:

[ ] CALIF. INSTITUTION FOR WOMEN — FRONTERA   [ ] CALIF. MEDICAL FACILITY — VACAVILLE   [ ] CALIF. INSTITUTION FOR MEN — CHINO
[X] OTHER (SPECIFY): DEUEL VOCATIONAL INSTITUTION

CLERK OF SUPERIOR COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE |
|---|---|
| Jan Gallagher | October 28, 1987 |

This form is prescribed pursuant to Penal Code § 1213.5 to satisfy the requirements of Penal Code § 1213 (Abstract of Judgment and Commitment) for determinate sentences under Penal Code § 1170. A copy of the probation report shall accompany the Department of Corrections' copy of this form pursuant to Penal Code § 1203c. A copy of the sentencing proceedings, and any supplementary probation report shall be transmitted to the Department of Corrections pursuant to Penal Code § 1203.01. Attachments may be used but must be incorporated by reference.

Form Adopted by the Judicial Council of California
Effective July 1, 1981

ABSTRACT OF JUDGMENT — COMMITMENT

FORM DSL 290

Pen.C. 1213.5.

DISTRIBUTION:   PINK COPY — COURT FILE.   YELLOW COPY — DEPARTMENT OF CORRECTIONS.   WHITE COPY — ADMINISTRATIVE OFFICE OF THE COURTS.

# EXHIBIT B

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration ) CDC Number D-99247
Hearing of: )
)
SCOTT BURNS )
_____)

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

SEPTEMBER 29, 2005

7:25 P.M.

PANEL PRESENT:

TRACEY ST. JULIEN, Presiding Commissioner
ROLANDO MEJIA, Deputy Commissioner

OTHERS PRESENT:

SCOTT BURNS, Inmate
CANDICE CHRISTENSEN, Attorney for Inmate

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____ No        See Review of Hearing
_____ Yes       Transcript Memorandum

**Marsha Mees, Peters Shorthand Reporting**

ii

## INDEX

|                              | Page |
|------------------------------|------|
| Proceedings                  | 1    |
| Case Factors                 | 11   |
| Pre-Commitment Factors       | 14   |
| Post-Commitment Factors      | 36   |
| Parole Plans                 | 25   |
| Closing Statements           | 53   |
| Recess                       | 56   |
| Decision                     | 57   |
| Adjournment                  | 63   |
| Transcriber Certification    | 64   |

--oOo--

**P R O C E E D I N G S**

**DEPUTY COMMISSIONER MEJIA:** We're now on record.

**PRESIDING COMMISSIONER ST. JULIEN:** Okay. This is a subsequent parole hearing for Scott Burns. It's 7:25 p.m. CDC number for Mr. Burns is D-99247. Today is September 29, 2005. We're at the Correctional Training Facility in Soledad. The inmate was received on October 31, 1988 with a life term starting the same date. Count one, murder second with use of a firearm. Penal Code section violation 187 and 12022.5. Count two, grand theft of a firearm, Penal Code violation 487.3. Both of these offenses are from Sierra County. Sorry. S-I-E-R-R-A. Case number 4161. And is that correct, sir, as far as your --

**INMATE BURNS:** Yes, Ma'am.

**PRESIDING COMMISSIONER ST. JULIEN:** -- (indiscernible)? Okay. Okay. The hearing's being tape recorded. So we're going to go around the room and introduce ourselves. First, last name, spell last name and then give your CDC number when it's your turn. And my name is Tracey St. Julien, S-T capital J-U-L-I-E-N, Commissioner, Board of Parole Hearings.

**DEPUTY COMMISSIONER MEJIA:** Rolando

2

1   Mejia, M-E-J-I-A, Deputy Commissioner for the

2   Board of Prison Terms.

3           **ATTORNEY CHRISTENSEN:**  Candice

4   Christensen, C-H-R-I-S-T-E-N-S-E-N, attorney for

5   Mr. Burns.

6           **INMATE BURNS:**  Scott Burns, B-U-R-N-S,

7   D-99247.

8           **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

9   And Mr. Burns, there is a sheet that's taped to

10  the table before you.

11          **INMATE BURNS:**  Okay.

12          **PRESIDING COMMISSIONER ST. JULIEN:**  And

13  I'm going to ask you to read that out loud.  It

14  discusses your ADA rights.

15          **INMATE BURNS:**  Now?

16          **PRESIDING COMMISSIONER ST. JULIEN:**  Yes,

17  please.

18          **INMATE BURNS:**  The Americans With

19  Disabilities Act, ADA, is a law to help people

20  with disabilities.  Disabilities are problems

21  that make it harder for some people to see,

22  hear, breathe, talk, walk, learn, think, work or

23  take care of themselves than it is for others.

24  Nobody can keep out -- excuse me.  Nobody can

25  keep out of public places or activities because

26  of -- disability.  If you have a disability, you

27  have the right to ask for help to get ready for

3

1    your Board of Prison Terms of BPT -- to get to

2    the hearing, talk, read forms, papers and

3    understand the hearing process.  BPT will look

4    at what you asked for -- what you asked to make

5    sure that you have a disability that is covered

6    by the ADA and that you have asked for the right

7    kind of help.  If you do not get help or if you

8    -- think you got the kind of help you need, ask

9    for a BPT Form -- I mean 1074 Grievance Form.

10    You can also get help to fill it out.

11         **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

12    What does that mean in your words?

13         **INMATE BURNS:**  If you have a disability

14    as mentioned on this form, ask for help, they'll

15    give it to you.

16         **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

17    And I note on June 24, 2005 you signed a BPT

18    Form 1073 indicating that you do not have a

19    disability.

20         **INMATE BURNS:**  That is correct.

21         **PRESIDING COMMISSIONER ST. JULIEN:**  And

22    that you do not need any help for the hearing.

23    And that's still correct?

24         **INMATE BURNS:**  That is correct.

25         **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

26         **INMATE BURNS:**  Yes.

27         **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

4

1    So did you have any trouble walking up and down

2    the stairs today, coming in the room?

3            INMATE BURNS:  No.

4            PRESIDING COMMISSIONER ST. JULIEN:  Okay.

5    And can you see everybody around the room

6    clearly?

7            INMATE BURNS:  Yes.

8            PRESIDING COMMISSIONER ST. JULIEN:

9    Without glasses?  And you read that fine.

10           INMATE BURNS:  Yes.

11           PRESIDING COMMISSIONER ST. JULIEN:  And

12   your hearing?

13           INMATE BURNS:  Great.

14           PRESIDING COMMISSIONER ST. JULIEN:  Okay.

15   And do you know what the Triple CMS and EOP

16   programs are?

17           INMATE BURNS:  Yes.

18           PRESIDING COMMISSIONER ST. JULIEN:  And

19   what are they?

20           INMATE BURNS:  Triple CMS people are on

21   psychotic medication.

22           PRESIDING COMMISSIONER ST. JULIEN:  For

23   depression.

24           INMATE BURNS:  For depression.

25           PRESIDING COMMISSIONER ST. JULIEN:  Yeah.

26   Okay.

27           INMATE BURNS:  And what was the other

5

1    one?

2            PRESIDING COMMISSIONER ST. JULIEN:    EOP.

3            INMATE BURNS:    That one I'm not familiar

4    with.    I'm sorry.

5            PRESIDING COMMISSIONER ST. JULIEN:

6    That's also the same.    I don't know what it

7    stands for actually.

8            DEPUTY COMMISSIONER MEJIA:    Enhanced

9    Outpatient Program.    (Indiscernible) Mental

10   Health Delivery System.

11           PRESIDING COMMISSIONER ST. JULIEN:    Okay.

12   Mental health program as well.    Now have you

13   ever been in those programs?

14           INMATE BURNS:    Not to my recollection.    I

15   was at CMC when I first came in because of

16   depression.

17           PRESIDING COMMISSIONER ST. JULIEN:    Okay.

18           INMATE BURNS:    I don't know if that fell

19   under it or not.

20           PRESIDING COMMISSIONER ST. JULIEN:    It

21   might have.    Did you take medications for that?

22           INMATE BURNS:    No.    I was non-medicated.

23           PRESIDING COMMISSIONER ST. JULIEN:    Okay.

24   So then have you ever been on a psychotropic

25   medications?

26           INMATE BURNS:    No.

27           PRESIDING COMMISSIONER ST. JULIEN:    And

6

1   have you -- Are you on any medications now?

2           INMATE BURNS:  No.  Well, for my heart.

3           PRESIDING COMMISSIONER ST. JULIEN:  Like

4   cholesterol or?

5           INMATE BURNS:  Cholesterol medicine and

6   nitroglycerin.

7           PRESIDING COMMISSIONER ST. JULIEN:  Okay.

8   So now do you -- How often do you take those?

9           INMATE BURNS:  Whenever I need them.

10          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

11  Do you have them with you?

12          INMATE BURNS:  No.

13          PRESIDING COMMISSIONER ST. JULIEN:  Or

14  does someone have to give them you?

15          INMATE BURNS:  It was spur of the moment.

16  I didn't know I was having my hearing.

17          PRESIDING COMMISSIONER ST. JULIEN:

18  That's right.  So if we denied you for 20 years,

19  you'd need one?

20          INMATE BURNS:  (Indiscernible) terrible

21  thing to say.

22          PRESIDING COMMISSIONER ST. JULIEN:  I'm

23  sorry.  It's late.  Okay.

24          ATTORNEY CHRISTENSEN:  If you granted

25  parole, he'd need one too.

26          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

27  Okay.  But you don't anticipate needing anything

7

1  now?

2          **INMATE BURNS:**  No, Ma'am.

3          **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

4  Do you have any side effects from those drugs

5  that would cause you to not be able to

6  participate in the hearing?

7          **INMATE BURNS:**  At the time I'd take them,

8  I'd probably get lightheaded.

9          **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

10  So you're fine right now?

11          **INMATE BURNS:**  Yes, Ma'am.

12          **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

13  Thank you.  And I failed to mention earlier that

14  we have two correctional officers in the room

15  who are here for security purposes.  And I'm

16  going to go ahead and give you an outline of the

17  hearing.  The hearing's being conducted pursuant

18  to Penal Code Sections 3041 and 3042 and the

19  rules and regulations of the Board of Prison

20  Terms governing parole consideration hearings

21  for life inmates.  The purpose of the hearing

22  today is to consider your suitability for

23  parole.  We'll reach a decision today and inform

24  you whether or not we find you suitable for

25  parole and the reasons for that decision.  If

26  you are found suitable for parole, the length of

27  your confinement will be explained to you.  The

8

1    hearing will be conducted in two parts.  First,

2    I'll discuss the number and the nature of the

3    crimes you were committed for, your prior

4    criminal and social history, your parole plans

5    and letters of support or opposition that you

6    have.  Then Commissioner Mejia will discuss with

7    you your behavior and programming since your

8    commitment, your counselor's report and your

9    psychological evaluations.  We've had the

10   opportunity to review your Central File and

11   prior hearing transcripts.  You'll also be given

12   an opportunity to correct or clarify the record.

13   When that's finished, your attorney will be able

14   to ask you questions and then before we recess

15   your attorney and you will be able to make a

16   statement as to why you should be found suitable

17   for parole.  We will then recess, clear the room

18   and deliberate.  Once we've completed our

19   deliberations, we'll resume the hearing and

20   announce the decision.  The California Code of

21   Regulations states that regardless of time

22   served a life inmate shall be found unsuitable

23   for and denied parole if in the judgment of the

24   Panel the inmate would pose an unreasonable risk

25   of danger to society if released from prison.

26   You also have certain rights.  And those rights

27   include the right to a timely notice of this

9

1   hearing, the right to review your Central File

2   and the right to present relevant documents.

3   Ms. Christensen, has your client's rights been

4   met in that regard?

5         **ATTORNEY CHRISTENSEN:**  Yes, they have.

6         **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

7   You also have the right Panel to be heard by an

8   impartial Panel.  Do you have any objections to

9   today's Panel?

10        **INMATE BURNS:**  No, Ma'am.

11        **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

12   Ms. Christensen?

13        **ATTORNEY CHRISTENSEN:**  No, I don't.

14        **PRESIDING COMMISSIONER ST. JULIEN:**

15   You'll receive a copy of the written tentative

16   decision today.  And that decision is subject to

17   review by the Decision Review Unit and the

18   entire Board meeting as a body.  It will become

19   effective within 120 days.  It is also subject

20   to review by the Governor.  A copy of the

21   tentative decision and a copy of the transcript

22   will be sent to you.  And the Board no longer

23   has an appeals process.  So if you have any

24   complaints or objections about the hearing you

25   need to take those directly to a court.  You are

26   not required to admit your offense or discuss

27   your offense if you do not wish to do so.

10

1    However, the Panel does accept as true the

2    findings of the court.  You're invited to

3    discuss the facts and circumstances of the

4    offense if you wish.  The Board will review and

5    consider any prior statements you've made

6    regarding the offense in determining your

7    suitability for parole.  Commissioner Mejia, is

8    there confidential information?

9         **DEPUTY COMMISSIONER MEJIA:**  There is

10   confidential information.  However, we're not

11   going to use (indiscernible) for today.

12        **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

13   Thank you.  And I passed the hearing checklist.

14   Did I?  We have the hearing checklist marked

15   Exhibit One.  And that's a listing of the

16   documents to make sure we all have the same set

17   of documents.  And then did I get some

18   additional -- I think I got some additional

19   documents.  These are from the --

20        **ATTORNEY CHRISTENSEN:**  (Indiscernible).

21        **PRESIDING COMMISSIONER ST. JULIEN:**  The

22   Board desk gave these to us.  Okay.  And do you

23   have any additional documents other than --

24        **ATTORNEY CHRISTENSEN:**  No.

25        **PRESIDING COMMISSIONER ST. JULIEN:**  --

26   (indiscernible)?

27        **ATTORNEY CHRISTENSEN:**  I do not.

11

1          **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.
2     And do you have any preliminary objections?
3          **ATTORNEY CHRISTENSEN:**  No.  Mr. Burns has
4     told me that he will not be discussing the
5     crime.
6          **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.
7     I still need to give you an oath.
8          **INMATE BURNS:**  Okay.
9          **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.
10    So do you solemnly swear or affirm that the
11    testimony you give at this hearing will be the
12    truth, the whole truth and nothing but the
13    truth?
14         **INMATE BURNS:**  I do.
15         **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.
16    And I'm going to read the summary of the crime
17    as it appears in the September 2005 Board
18    report.  And that report was prepared by
19    correctional counselor one last name Ellison,
20    E-L-L-I-S-O-N, and approved by the correctional
21    -- I'm sorry, the classification and parole
22    representative L-E-V-O-R-S-E.  And it states
23    that:
24              "On July -- I'm sorry -- June of
25              1987 early in the afternoon Burns
26              left his campsite, went to the
27              victim's campsite and began

12

1          drinking with him.  Later that

2          afternoon Burns took Robert Smith,

3          who was the victim, took his

4          pistol and shot him twice in the

5          head.  Burns then drove Smith's

6          pickup to -- pickup truck to his

7          own campsite and later returned

8          the pickup to Smith's campsite.

9          On the way to Downieville

10         Sheriff's Office, that's

11         D-O-W-N-I-E-V-I-L-L-E, to report

12         the discovery of a dead body,

13         Burns had a friend stop the van

14         while Burns threw the weapon and

15         other items down a ravine.  After

16         reporting the discovery of the

17         body, Burns was later arrested for

18         burglary and then murder."

19    And since you won't be talking about the crime,

20    I'm going to go ahead and read the prisoner's

21    version into the record.

22         "In an interview with this author

23         on June 24, 2005 Burns reiterated

24         that the following is his version

25         of the instant offense.  Burns

26         stated that he went to the

27         victim's campsite to have some

13

1       beers.  He tried to buy an old

2       pistol from the victim but he

3       didn't want to sell it.  Burns and

4       the victim argued and continued to

5       drink until the victim passed out.

6       Burns took the pistol, shot the

7       victim and left the trailer with

8       the victim's pistol.  Burns stated

9       that he went to the sheriff's

10      office to report the crime, but he

11      got scared and just reported the

12      discovery of the dead body.

13      Later, when officers came to his

14      campsite to question him about the

15      pistol, which wasn't at the scene,

16      he confessed to shooting the

17      victim and throwing the pistol

18      into a ravine.  During a

19      recounting of the incident, Burns

20      showed remorse for the victim and

21      stated that what happened or

22      stated that what he did was stupid

23      and senseless."

24  Okay.  Okay.  Well -- Pardon me?

25          **INMATE BURNS:**  I was just moving the

26  mike.

27          **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

14

1    Okay.  Well, we're going to move from the crime

2    and we're going to talk about your prior life

3    coming to prison.  You have no juvenile record.

4    As an adult, you were arrested in '79 for

5    disorderly conduct.  About how old were you in

6    1979?

7           INMATE BURNS:  About 17 maybe.

8           PRESIDING COMMISSIONER ST. JULIEN:  Okay.

9    And was the disorderly conduct?

10          INMATE BURNS:  Drinking beer and making a

11   nuisance of myself.

12          PRESIDING COMMISSIONER ST. JULIEN:  Was

13   it a party or?

14          INMATE BURNS:  I think I was just leaving

15   a bar, drinking illegally.

16          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

17   And then in 1980 you were convicted of burglary

18   third degree, which resulted in a 10-month count

19   jail sentence and probation.  And what did you

20   burglarize?

21          INMATE BURNS:  A residence.

22          PRESIDING COMMISSIONER ST. JULIEN:  Was

23   it someone you knew or?  I mean was it just a

24   random house?

25          INMATE BURNS:  Just a random act.

26          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

27   And had you done that type of thing before?

15

1              INMATE BURNS:  Yes, Ma'am.

2              PRESIDING COMMISSIONER ST. JULIEN:  Okay.

3    So would you -- what did you -- I guess you were

4    somehow trying to get money.  So what were you

5    going -- What did you need the money for?

6              INMATE BURNS:  Marijuana.

7              PRESIDING COMMISSIONER ST. JULIEN:  Okay.

8    And did you have a job?

9              INMATE BURNS:  No.  I was collecting SSI.

10             PRESIDING COMMISSIONER ST. JULIEN:  Were

11   you ill?

12             INMATE BURNS:  I was considered at the

13   time functionally illiterate because I was in

14   different foster homes, group homes.  So the

15   Department of Child Welfare, before I went on my

16   own, became an emancipated minor, got me placed

17   on social security, supplemental --

18             PRESIDING COMMISSIONER ST. JULIEN:

19   Really.  And how -- how long does that cover

20   you?

21             INMATE BURNS:  The rest of my life.

22             PRESIDING COMMISSIONER ST. JULIEN:

23   Really?

24             INMATE BURNS:  If I were to get out --

25             PRESIDING COMMISSIONER ST. JULIEN:  I

26   didn't know that.

27             INMATE BURNS:  -- I could start it up

16

1    again, but I don't plan on doing that.

2         PRESIDING COMMISSIONER ST. JULIEN:  Okay.

3    So how would you describe your drug use?  You've

4    had some -- obviously marijuana use.  Did you

5    drink alcohol too much or?

6         INMATE BURNS:  More marijuana than

7    alcohol.  Alcohol was occasional.  You know,

8    friends do it, I would do it.  I wasn't a lone

9    drinker.  I'd always drink with friends.  But

10   marijuana more than anything.

11        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

12   And would you say -- How often would you say you

13   smoked marijuana in a week?

14        INMATE BURNS:  In a week (indiscernible)

15   you say?

16        PRESIDING COMMISSIONER ST. JULIEN:

17   Uh-hmm.

18        INMATE BURNS:  It's a sad thing but I'd

19   have to say there wasn't a day I didn't go to

20   bed high or wake up high.  I was high 24 hours.

21        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

22        INMATE BURNS:  Seven days a week.

23        PRESIDING COMMISSIONER ST. JULIEN:  And

24   starting at what age?

25        INMATE BURNS:  I smoked my first

26   marijuana joint when I was nine-years-old.

27        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

17

1   So how did you -- Obviously you must have liked

2   the way it made you feel then.  How did it make

3   you feel?

4           INMATE BURNS:  Made me forget problems.

5   Made me giddy, happy.

6           PRESIDING COMMISSIONER ST. JULIEN:  And

7   then did you ever -- Then did you use other

8   kinds of drugs later?

9           INMATE BURNS:  When I was about 19, I

10  tried LSD one time.  Didn't like it.  That was

11  it.

12          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

13  Okay.  So you had a pretty tremulous childhood.

14          INMATE BURNS:  Yes, Ma'am.

15          PRESIDING COMMISSIONER ST. JULIEN:  So

16  you saw your father shoot your mother to death?

17          INMATE BURNS:  My father/uncle.

18          PRESIDING COMMISSIONER ST. JULIEN:  Yeah,

19  I know.

20          INMATE BURNS:  So it's confusing.

21          PRESIDING COMMISSIONER ST. JULIEN:  But

22  you were just -- You were three-years-old.  You

23  remember that?

24          INMATE BURNS:  I remember bits and pieces

25  of it.

26          PRESIDING COMMISSIONER ST. JULIEN:  And

27  then you have -- There were six of you?  Six

18

1    kids.   Six other -- You had six other brothers

2    and sisters?

3              INMATE BURNS:   One other brother and the

4    rest were sisters.

5              PRESIDING COMMISSIONER ST. JULIEN:   Wow.

6    And then were they all of this same

7    relationship?

8              INMATE BURNS:   I was the only one out of

9    an incestuous --

10             PRESIDING COMMISSIONER ST. JULIEN:   Okay.

11             INMATE BURNS:   -- relationship.

12             PRESIDING COMMISSIONER ST. JULIEN:   Okay.

13   And then who were the -- Were the other kids

14   from the same father?

15             INMATE BURNS:   Same mother, different

16   father.

17             PRESIDING COMMISSIONER ST. JULIEN:   Okay.

18   And where are you in the birth order?

19             INMATE BURNS:   I was the youngest.

20             PRESIDING COMMISSIONER ST. JULIEN:   Okay.

21   Now was that a consensual relationship?

22             INMATE BURNS:   I don't --

23             PRESIDING COMMISSIONER ST. JULIEN:   You

24   don't know.

25             INMATE BURNS:   I was just --

26             PRESIDING COMMISSIONER ST. JULIEN:   Okay.

27   So you don't have any recollection of your

19

1    mother?

2            INMATE BURNS:  Right.

3            PRESIDING COMMISSIONER ST. JULIEN:   Okay.

4    Then it says your mother's husband began raising

5    you.  But is that your --

6            INMATE BURNS:  That's Patrick Burns.

7            PRESIDING COMMISSIONER ST. JULIEN:   Okay.

8            INMATE BURNS:  Not her brother.

9            PRESIDING COMMISSIONER ST. JULIEN:   Okay.

10   Okay.  But then all the kids were taken because

11   of abuse and neglect.  Now do you know your --

12   any of your siblings now?

13           INMATE BURNS:  I knew my sister Jane and

14   I knew my brother James and Patricia.  James

15   passed away about three years before I moved to

16   California at a young age.  My sister Jane, last

17   time I knew she was still alive.  As soon as I

18   got arrested for this crime, she disinherited

19   me.  She didn't want nothing to do with me.  But

20   I wasn't that close with my family to begin

21   with.

22           PRESIDING COMMISSIONER ST. JULIEN:   Do

23   you have aunts, uncles?

24           INMATE BURNS:  If I do, I don't know

25   them.

26           PRESIDING COMMISSIONER ST. JULIEN:   Okay.

27           INMATE BURNS:  No contact.

20

1        PRESIDING COMMISSIONER ST. JULIEN:   Okay.

2   So you went to different foster homes.   And you

3   were the youngest.   And then you were labeled

4   uncontrollable and hyperactive.   And you were

5   placed in 40 to 50 different foster homes or

6   group homes?

7        INMATE BURNS:   Some of it was because of

8   my hyperactivity and others was because the

9   family just couldn't take care of me.

10       PRESIDING COMMISSIONER ST. JULIEN:   So is

11  this in the '70s?

12       INMATE BURNS:   Yes, '70s and '60s.

13       PRESIDING COMMISSIONER ST. JULIEN:   Did

14  they have -- did they -- Did they try any

15  medications?

16       INMATE BURNS:   I think --

17       PRESIDING COMMISSIONER ST. JULIEN:

18  Because I'm not sure how prevalent Ritalin or

19  anything was then.

20       INMATE BURNS:   Ritalin, a little blue

21  bill.

22       PRESIDING COMMISSIONER ST. JULIEN:   Yeah.

23  Did that help you?

24       INMATE BURNS:   None of the medications

25  worked.

26       PRESIDING COMMISSIONER ST. JULIEN:   What

27  do you think -- What do you think you had?   What

21

1    condition do you think you had?

2          INMATE BURNS:  I think it was a traumatic

3    upbringing and witnessing my mother's murder,

4    being thrown against the wall when I was just a

5    small child.  I think that might have had a lot

6    to do with it.  And then an unstable family,

7    being transferred from one foster home to

8    another.  They're trying to get close and I

9    didn't want that.

10          PRESIDING COMMISSIONER ST. JULIEN:  So do

11   you -- So you think it was more emotional as

12   opposed to anything physical being wrong with

13   you?

14          INMATE BURNS:  Right.

15          PRESIDING COMMISSIONER ST. JULIEN:  You

16   just acted out because that was your coping

17   mechanism?

18          INMATE BURNS:  I believe there might have

19   been some mental problems involved.

20          PRESIDING COMMISSIONER ST. JULIEN:

21   Because of your -- the hitting?

22          INMATE BURNS:  Right, psychological.

23          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

24   So it says the normal cycle was foster home

25   placement and then a psychiatric ward and then

26   another foster home.  Is this California?

27          INMATE BURNS:  No.

22

1        PRESIDING COMMISSIONER ST. JULIEN:   What

2   state?

3        INMATE BURNS:   No foster -- No foster

4   homes, nothing.   New York state was everything.

5   And this is my first arrest ever in the state,

6   California.   First termer.

7        PRESIDING COMMISSIONER ST. JULIEN:   Okay.

8   Okay.   And then that's when you said you went to

9   -- you got SSI to be emancipated.   So now what

10   -- Were you going to school during these times

11   or was it --

12        INMATE BURNS:   I was going --

13        PRESIDING COMMISSIONER ST. JULIEN:   --

14   just one school?

15        INMATE BURNS:   I was going to a career

16   development center in upstate New York.

17        PRESIDING COMMISSIONER ST. JULIEN:   But

18   could you function well in that school?   I mean,

19   could you read and --

20        INMATE BURNS:   Yes.

21        PRESIDING COMMISSIONER ST. JULIEN:   Okay.

22        INMATE BURNS:   Reading was my main thing.

23   I wanted to learn how to read so I basically

24   taught myself.   Math, even today math's still a

25   problem.

26        PRESIDING COMMISSIONER ST. JULIEN:

27   You're not alone.   Okay.   Okay.   So then you

23

1    took a Greyhound bus and started to travel the

2    Country.

3              **INMATE BURNS:**  Travel and seeing the

4    United States.  Yes.

5              **PRESIDING COMMISSIONER ST. JULIEN:**  So it

6    says you've attempted suicide 10 to 12 times in

7    your life.

8              **INMATE BURNS:**  When I was younger, yes.

9              **PRESIDING COMMISSIONER ST. JULIEN:**  And

10   when is the last time you thought of suicide?

11             **INMATE BURNS:**  Shoot, I guess when I

12   first came into the prison, I was so depressed

13   and distraught because of where I was and what I

14   did and I didn't know how to cope with it.  So I

15   talked about it.  And because I talked about it,

16   they placed me in CMC non-medication.

17             **PRESIDING COMMISSIONER ST. JULIEN:**  Did

18   you get some therapy there?

19             **INMATE BURNS:**  We talked one-on-one.  And

20   the psychiatrist there stated that nothing --

21   everything can be dealt with if I'm willing to

22   try.

23             **PRESIDING COMMISSIONER ST. JULIEN:**  Did

24   that help you?

25             **INMATE BURNS:**  Yes.

26             **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

27   So then you -- It says you once sought to search

24

1   out and kill your father/uncle.

2       INMATE BURNS:  That was in my --

3       PRESIDING COMMISSIONER ST. JULIEN:  And

4   then when you met him, you felt sorry for him.

5       INMATE BURNS:  Yes, I did.

6       PRESIDING COMMISSIONER ST. JULIEN:  So

7   did you -- About how old were you then?

8       INMATE BURNS:  Maybe 15, 16.

9       PRESIDING COMMISSIONER ST. JULIEN:  So do

10  you think that you had a lot -- Well, obviously

11  you had a lot of --

12      INMATE BURNS:  Anger.

13      PRESIDING COMMISSIONER ST. JULIEN:  --

14  bitterness and anger.

15      INMATE BURNS:  Yes.

16      PRESIDING COMMISSIONER ST. JULIEN:  Yeah.

17  Okay.  And what about his parents?  Your, you

18  know, their grandparents?

19      INMATE BURNS:  I didn't know anything

20  about them.

21      PRESIDING COMMISSIONER ST. JULIEN:  You

22  never knew any of them?

23      INMATE BURNS:  No.

24      PRESIDING COMMISSIONER ST. JULIEN:  Did

25  your parents have any other brothers and

26  sisters?

27      INMATE BURNS:  I don't know.  I don't

25

1   know basically about my family.  I was like

2   separated from them.

3          PRESIDING COMMISSIONER ST. JULIEN:  Then

4   how do you know that your father's -- who he is?

5          INMATE BURNS:  Because my brother James

6   told me.  And then I went and did some research

7   when I lived in New York state and I was told

8   that that was true.  My sister verified it.  She

9   said it was true.

10         PRESIDING COMMISSIONER ST. JULIEN:  Okay.

11  Okay.  So your future plans.  You plan to reside

12  -- So you have -- it says close friends and

13  support.  So I'm sure we'll see --

14         INMATE BURNS:  Right.

15         PRESIDING COMMISSIONER ST. JULIEN:  --

16  see a letter there.  And how did you meet the

17  Aaronson's?

18         INMATE BURNS:  I met the Aaronson's

19  through my cellie because --

20         PRESIDING COMMISSIONER ST. JULIEN:  He

21  was their --

22         INMATE BURNS:  I had no, like I said, no

23  family.

24         PRESIDING COMMISSIONER ST. JULIEN:  Yeah.

25         INMATE BURNS:  Or friends.  Over the

26  years his family's got to trust me.  They know

27  all about the crime.  They know about my

26

1    upbringing.  And they still support me.  They

2    still would like to help me.  I have -- well --

3         **PRESIDING COMMISSIONER ST. JULIEN:**  Yeah.

4    I'll read these in a minute.

5         **INMATE BURNS:**  You also have letters from

6    years past where they've sent letters in stating

7    they're still willing to help me.

8         **PRESIDING COMMISSIONER ST. JULIEN:**  Do

9    you have any pen pals?

10        **INMATE BURNS:**  When I first came into the

11   prison system, I was hooked up with the Match

12   Two program.  That was when I was in --

13        **PRESIDING COMMISSIONER ST. JULIEN:**  Yeah.

14        **INMATE BURNS:**  -- San Quentin.  The

15   person had to leave and I never pursued it after

16   that.

17        **PRESIDING COMMISSIONER ST. JULIEN:**

18   Because I know, I mean I see people who have a

19   lot of pen pals.  And you might -- You know,

20   that's a way to get some interaction and

21   communication with people.  Okay.  So I'm sorry,

22   we need to go back to your drug use.  So how

23   would you describe your alcohol use?

24        **INMATE BURNS:**  Today in remission.

25        **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

26   But before you came to prison.

27        **INMATE BURNS:**  Before I came to prison,

27

1    not that bad.  I mean, yes, I would drink but

2    not to the point where it would cause me

3    problems.

4         PRESIDING COMMISSIONER ST. JULIEN:  So

5    would you drink to get drunk?

6         INMATE BURNS:  Sometimes, sometimes just

7    drink to have a beer with a friend and that

8    would be it.

9         PRESIDING COMMISSIONER ST. JULIEN:  So

10   how often would you drink to get drunk in a

11   month?

12        INMATE BURNS:  In a month, if I was lucky

13   maybe two times.

14        PRESIDING COMMISSIONER ST. JULIEN:  So

15   why did you say if you were lucky?

16        INMATE BURNS:  Because normally I smoked

17   marijuana.  That was my drug of choice.

18        PRESIDING COMMISSIONER ST. JULIEN:  Your

19   drug of choice was marijuana and not alcohol?

20        INMATE BURNS:  Right.  And alcohol, I

21   didn't like the taste of it when I smoked

22   marijuana.

23        PRESIDING COMMISSIONER ST. JULIEN:  You

24   mean the both of them?

25        INMATE BURNS:  Right, together.

26        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

27   Okay.  So you were basically -- marijuana --

28

1        **INMATE BURNS:**  Yes.

2        **PRESIDING COMMISSIONER ST. JULIEN:**  --

3    addict or -- Well you don't say that, but that's

4    what it is.

5        **INMATE BURNS:**  You can't physically get

6    addicted to it but you definitely can get

7    psychologically addicted to it.

8        **PRESIDING COMMISSIONER ST. JULIEN:**  Yeah,

9    well, if you were smoking it all day, every day

10   I'd say that was -- you were addicted.  Okay.

11   Okay.  And how would you get the money to buy

12   the marijuana?

13       **INMATE BURNS:**  Borrow from friends or

14   commit burglaries.

15       **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

16   And you're going to AA now.

17       **INMATE BURNS:**  Yes, Ma'am.

18       **PRESIDING COMMISSIONER ST. JULIEN:**  And

19   I'm assuming you have been.

20       **INMATE BURNS:**  Yes, Ma'am.  As a matter

21   of fact I went last night.

22       **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

23   Good.

24       **INMATE BURNS:**  AA group.

25       **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

26   So let's read your plans.  So you would live

27   with the Aaronson's and they live in Santa

29

1    Barbara.

2            **INMATE BURNS:**  Yes, Ma'am.

3            **PRESIDING COMMISSIONER ST. JULIEN:**   I'll

4    read their letter.

5            **INMATE BURNS:**  There's two separate

6    Aaronson families that would be willing to help

7    me out.

8            **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

9    And it says that they have also supplied you

10   with the AA sites in the area so that -- to

11   ensure that you have --

12           **INMATE BURNS:**  Right.

13           **PRESIDING COMMISSIONER ST. JULIEN:**   -- a

14   sobriety plan.  Okay.  And then the Scott's.

15   And they are the brother of the Aaronson's?

16           **INMATE BURNS:**  Right.  One of them is the

17   --

18           **PRESIDING COMMISSIONER ST. JULIEN:**  One

19   of them is the son.

20           **INMATE BURNS:**  Well, one's a sister and

21   one's a brother-in-law.

22           **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

23   Okay.

24           **INMATE BURNS:**  They all come up and visit

25   me.  I get letters, birthday cards.  It's just

26   like they -- like I'm part of the family.

27           **PRESIDING COMMISSIONER ST. JULIEN:**  Well

30

1    you're very lucky.

2        INMATE BURNS:  Very lucky.

3        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

4    And then for work you've done vocational print

5    shop.  And with that training you would seek to

6    do a job in printing or desktop publishing.

7        INMATE BURNS:  I also have office machine

8    repair --

9        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

10       INMATE BURNS:  -- as a trade.

11       PRESIDING COMMISSIONER ST. JULIEN:  Okay.

12   Yeah, Commissioner Mejia's going to take care of

13   that.  And then you -- So Ms. Aaronson works for

14   a museum and she -- even though you don't have a

15   job offer now, she can assist you with that.  Is

16   that correct?

17       INMATE BURNS:  Yes, everybody's willing

18   to help me financially, emotionally and any

19   other way that they can.

20       PRESIDING COMMISSIONER ST. JULIEN:  Okay.

21       INMATE BURNS:  Place to live.

22       PRESIDING COMMISSIONER ST. JULIEN:  Okay.

23   So this counselor says:  "Considering the

24   absence of firm employment, related parole

25   plans, as well as alternative residence parole

26   plans, this officer foresees some degree of

27   difficulty for Burns's transitioning after

31

1    parole." I'm sure you read that. What did you

2    think when you read that?

3         INMATE BURNS: When I read it, I asked

4    for a meeting with her. We discussed it. And I

5    asked her why she said what she said. And she

6    says, that's my opinion. And I -- where do you

7    base this? I've given you three support

8    letters, you put one in the file. And now I

9    have a thing from the Department of Corrections

10   themselves, it should be with your packet there,

11   I wrote them and they said that there are

12   programs for me when I get out. If I'm found

13   suitable, there are programs through the

14   Department of Corrections, a place to live. But

15   I didn't have a chance to show that to my

16   counselor.

17        PRESIDING COMMISSIONER ST. JULIEN: Okay.

18   Actually, I see a -- And I'm just asking you

19   because I was just trying to gage your feelings.

20        INMATE BURNS: Yes, Ma'am.

21        PRESIDING COMMISSIONER ST. JULIEN: We

22   really don't take that into consideration, the

23   opinion. It's interesting to read, but --

24   Because some prisons they make a recommendation

25   and others they don't. So I was just trying to

26   gage your opinion of that.

27        INMATE BURNS: You know how hard it is to

32

1    find any kind of support when you don't have

2    anybody?  It's extremely hard.

3            PRESIDING COMMISSIONER ST. JULIEN:  No.

4    I can only imagine.  That's why I said you're

5    lucky that you found the Aaronson's.

6            INMATE BURNS:  Very nice people.

7            PRESIDING COMMISSIONER ST. JULIEN:  Yeah.

8    No, we see a lot of people who don't have any

9    family.  And it -- Yeah, you just don't know how

10   they're going to get anything, you know, in

11   terms of plans.  Okay.  And then so we have a

12   letter July 8 from -- is it Chis?  Or did he

13   leave out the R?

14           INMATE BURNS:  What's that?

15           PRESIDING COMMISSIONER ST. JULIEN:  Is it

16   Chris Aaronson.

17           INMATE BURNS:  Chris Aaronson.

18           PRESIDING COMMISSIONER ST. JULIEN:  They

19   left out the R because it says C-H-I-S.

20           INMATE BURNS:  Chris and Sog Aaronson,

21   yes.

22           PRESIDING COMMISSIONER ST. JULIEN:  And

23   it's S-O-G and then A-A-R-O-N-S-O-N.

24           INMATE BURNS:  Yes.

25           PRESIDING COMMISSIONER ST. JULIEN:  And

26   it says they are --

27           "We've been visiting Scott several

33

1       times a year for the past five

2       years and noticed a very positive

3       change in his outlook.  He is very

4       accepting of his environment and

5       always seems to be able to see

6       both sides of the situation.  When

7       we visit him, we are amazed of his

8       great sense of humor and upbeat

9       attitude.  We're also writing to

10      let you know that when it comes

11      time for Scott to be released, we

12      will be there to support him in

13      all situations.  For example, he

14      will be able to live with me and

15      my wife in Santa Barbara,

16      California.  Both me and my wife

17      will be there for him to help him

18      adjust to life outside of prison.

19      Since we have both lived in Santa

20      Barbara most of our lives, we'll

21      be able to help him find

22      employment and of course he would

23      be helped financially until he

24      could get on his feet."

25  Okay.  And then this is a letter from Joyce

26  Aaronson.  Is she their daughter?

27          **INMATE BURNS:**  That's the daughter of my

34

1   cellie's mom.

2           **PRESIDING COMMISSIONER ST. JULIEN:**   So

3   Chris and Sog, Sog's daughter?

4           **INMATE BURNS:**   Okay.  Chris is Pat

5   Aaronson's, my cellie, brother.  Sog is the

6   sister-in-law.  Joyce is the mom.  Joyce is the

7   mother.

8           **PRESIDING COMMISSIONER ST. JULIEN:**   Okay.

9   Okay.

10          **INMATE BURNS:**   I hope I made myself --

11          **PRESIDING COMMISSIONER ST. JULIEN:**   Okay.

12  Okay.  So she's also saying that she is writing

13  to ask us to consider Scott Burns for parole and

14  to recommend him has a highly -- recommend him

15  highly as a close friend with the highest value.

16  "He's of good character and is highly motivated

17  to succeed on the outside."  And she's known you

18  for quite a few years and you've always been

19  polite, good natured and kind to everyone when

20  she's gone to visit.  "I'll be very proud to

21  help him get off to a good start by getting him

22  new clothes and also by helping him financially

23  until he will be able to take care of himself."

24  And she'll give you any other help as well.  And

25  then Bob and Cindy Scott.

26          "We are writing on behalf of Scott

27          Burns.  My husband and I visited

35

1          Scott many times in the past six
2          years.  We think of him as part of
3          our family and have seen him grow
4          in so many ways.  We have always
5          enjoyed our visits.  We would help
6          him in as many ways possible to
7          find employment and a place to
8          live.  We'd also help financially.
9          We hope you will give him every
10         consideration."
11   And they live in Prospect, Oregon.
12         INMATE BURNS:  They live in Oregon, but
13   they have a residence also in Santa Barbara.
14         PRESIDING COMMISSIONER ST. JULIEN:  Santa
15   Barbara.
16         INMATE BURNS:  They travel a lot.
17         PRESIDING COMMISSIONER ST. JULIEN:  Okay.
18   And then this is the AA and Commissioner Mejia
19   will go over that.  Okay.  Okay.  So Jill --
20   Okay.  So Joyce works in the museum?
21         INMATE BURNS:  No.  Sog Aaronson works in
22   the museum.
23         PRESIDING COMMISSIONER ST. JULIEN:  Okay.
24   Okay.  Okay.
25         INMATE BURNS:  The psych report?
26         PRESIDING COMMISSIONER ST. JULIEN:
27   Pardon me?

36

1          **INMATE BURNS:**  Are we going to go over

2    the psych report?

3          **PRESIDING COMMISSIONER ST. JULIEN:**

4    That's Commissioner Mejia.

5          **INMATE BURNS:**  I'm sorry.

6          **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

7    And you go -- Commissioner Mejia.

8          **DEPUTY COMMISSIONER MEJIA:**  I'll be

9    covering your -- Mr. Burns, I'll be covering

10   your institutional adjustment since your last

11   Board appearance.  Your last Board appearance

12   was on October 1, 2001.  There was a hearing

13   conducted in 2002, but there was a discrepancy

14   when it comes to your due process being deemed

15   as being violated because you weren't present.

16   So I'll base the period from 2001 to present

17   when it comes to your programming.  On

18   October 1, 2001 you received a two year denial.

19   The recommendations were for you to remain

20   disciplinary-free, upgrade educationally and

21   participate in self-help.  Your custody level is

22   Medium A.  Classification score is 19.  You're

23   currently working on your GED.

24         **INMATE BURNS:**  Yes.

25         **DEPUTY COMMISSIONER MEJIA:**  And academic

26   history, you have a 6.4 GPL (indiscernible) ABE

27   II.  And you have a vocational history of office

37

1    machine repair completion, vocational graphic

2    arts and print shop.  Entrepreneur development

3    class, Anger Management in 1998 for your

4    self-help.  Parenting program.  And it seems

5    like your AA has been very sporadic and very

6    minimal.  I see a waiting list in 2001 and I

7    heard that you're attending now -- 2003.

8              INMATE BURNS:  Yes.

9              DEPUTY COMMISSIONER MEJIA:  What took you

10   so long to get into self-help programs?

11             INMATE BURNS:  It was the waiting list

12   itself.  There's so many other individuals that

13   want to participate.  You have to wait your

14   turn.

15             DEPUTY COMMISSIONER MEJIA:  You've been

16   down since 1988, 17 years.

17             INMATE BURNS:  Yes.

18             DEPUTY COMMISSIONER MEJIA:  And you're

19   telling me you've been waiting for 17 years to

20   get in AA?

21             INMATE BURNS:  I mean here at this

22   facility, not the rest of the --

23             DEPUTY COMMISSIONER MEJIA:  Okay.

24             INMATE BURNS:  -- time I've been down.

25             DEPUTY COMMISSIONER MEJIA:  I see your

26   file is very easy to navigate because there's

27   nothing much about self-help.

38

1          INMATE BURNS:  Right.

2          DEPUTY COMMISSIONER MEJIA:  Why is there

3  no self-help between 2001 and 1988?

4          INMATE BURNS:  I have Anger Management.

5          DEPUTY COMMISSIONER MEJIA:  I did that.

6  The other self-help, continued self-help

7  especially with substance abuse.  You were

8  intoxicated when the crime was committed.

9          INMATE BURNS:  Right.

10          DEPUTY COMMISSIONER MEJIA:  I heard you

11  saying that you like marijuana although alcohol

12  is not your preference.

13          INMATE BURNS:  Right.

14          DEPUTY COMMISSIONER MEJIA:  It's still

15  substance abuse.  Why is there no substance

16  abuse treatment program or anything to help you

17  dealing with substance abuse other than you

18  saying you don't have a problem?

19          INMATE BURNS:  I've been going to AA,

20  that's the only program I've been in involved in

21  right now.

22          DEPUTY COMMISSIONER MEJIA:  How long have

23  you been going to AA?

24          INMATE BURNS:  A little over a year now.

25          DEPUTY COMMISSIONER MEJIA:  Okay.  That's

26  why -- My question is why did it take you so

27  long to get into all these programs?

39

1      **INMATE BURNS:**  I have no -- I don't know,

2      Sir.

3      **DEPUTY COMMISSIONER MEJIA:**  You don't

4      know.  Your 115, you have -- from the hearing of

5      2001, October you have received one 115.  You

6      actually just have two.  One in 1992 and the

7      most recent is 2-25-02 for being out-of-bounds.

8      You have actually three.  You have three.  The

9      third one was in 2002 for being out-of-bounds

10     and two 128(a)'s.  One in -- For this period you

11     received -- October 29, 2003 for an unexcused

12     absence and 4-24-01 for failure to report.  So

13     you did have a 115 and a 128(a) for this period

14     of evaluation for your suitability.  No gang

15     affiliation was noted.  And your psychiatric

16     report, that was dated 8-26-05 is also -- I

17     would say did not address your need for

18     substance abuse treatment.  It actually did say

19     that you have a diagnostic impression of Axis I,

20     Alcohol Abuse In Sustained Full Remission In

21     Controlled Environment; Cannabis Abuse In

22     Sustained Full Remission In Controlled

23     Environment.  Axis II, Antisocial Personality

24     Disorder By History Only.  Axis III of

25     Hypertension And Heart problems.  And a review

26     of the life crime he described the circumstances

27     surrounding this commitment offense involving

40

1   second degree murder with a handgun.  Admitted
2   full responsibility for the death of the inmate
3   [sic].  He recalled that he had been staying
4   with a friend in the mountains at a campsite and
5   that the victim had offered them dinner.

6           "He said he went by himself to the
7           victim's residence and the victim
8           had what he thought was an antique
9           pistol.  He noted that the victim
10          had been drinking heavily and that
11          he himself had been smoking
12          marijuana and that a bitter
13          argument later ensued over the
14          gun.  Afterwards he said the
15          victim continued to drink and
16          subsequently made sexual advances
17          towards him and would not let him
18          leave the trailer.  Sometime later
19          the victim passed out and inmate
20          Burns stated that in fear -- that
21          in fear -- he shot the victim in
22          fear.  The victim was passed --
23          Sometime later the victim passed
24          out and inmate Burns stated that
25          in fear he shot the victim in the
26          head then left with the firearm.
27          He said that he reported both

41

1        being angry and fearful for his

2        life at the time as the victim was

3        a very large man -- was a very

4        large man.  He noted that he later

5        threw the handgun away.  Notably

6        the story is not consistent with

7        the record.  Although it should be

8        noted that inmate Burns completed

9        group therapy and Anger Management

10       group with Dr. Welcher in 1999.

11       Here Dr. Welcher stated that

12       inmate Burns talked openly about

13       his commitment offense, expressed

14       remorse for the victim and his

15       family and understands the factors

16       that led to the instant offense

17       and what he needs to do to avoid a

18       repeat.  He further stated 'I see

19       him as a good candidate for

20       parole' quote/unquote.  I agree

21       with both Dr. Welcher's and

22       Dr. Howlin's 2001 conclusions that

23       he did appear to be remorseful for

24       the damage done to the victim and

25       appears to be -- to understand the

26       causative factors related to the

27       instant offense.  His risk for

42

1             violent behavior within a

2             controlled setting is considered

3             to be low relative to the average

4             inmate population.  If released to

5             the community, clinically assessed

6             his high risk for future violent

7             -- violence potential appears to

8             be approximately that of the

9             average citizen in the community

10           if he remains substance abuse

11           free.  Substance abuse is a risk

12           factor which may be a precursor to

13           violence for the individual."

14  That's the same thing with the other evaluation,

15  substance abuse is a problem.  And it appears

16  that you haven't really taken the steps to deal

17  with that the last 17 years.  You're only

18  dealing with two years ago.  And counsel, would

19  you like to make additional comments or any

20  remarks?  And he can answer me as to my comment,

21  took you what, 16 years or 15 years to get into

22  substance abuse.

23        **ATTORNEY CHRISTENSEN:**  Are you working

24  any of the steps right now?

25        **INMATE BURNS:**  Right now I'm just

26  participating in the class, getting ready to do

27  it.

43

1            **ATTORNEY CHRISTENSEN:**  You have the book,

2    the materials?

3            **INMATE BURNS:**  I have all that in my

4    cell.

5            **ATTORNEY CHRISTENSEN:**  So you do

6    (indiscernible)?

7            **DEPUTY COMMISSIONER MEJIA:**  What made you

8    decided to join the AA now after years and years

9    of the Board telling you to join -- do something

10   for substance abuse, self-help?

11           **INMATE BURNS:**  Because I figured it was

12   about time that I started taking some kind of

13   course help to help realize what I've done.

14           **DEPUTY COMMISSIONER MEJIA:**  Yeah.

15           **INMATE BURNS:**  The fact -- The fact is

16   that I am going.  I am trying to better myself.

17   There are a lot of gentleman that don't, they

18   don't do any.  I've made strides.  I've wrote to

19   people on the street.  I got brochures that came

20   in from AA.  So if I were to ever be released,

21   I'd have addresses and places to go to for moral

22   support.  That's even in the file.

23           **DEPUTY COMMISSIONER MEJIA:**  Okay.  Let me

24   return this back to the Chair.

25           **PRESIDING COMMISSIONER ST. JULIEN:**  But

26   do you understand why we're asking you these

27   questions about the AA?

44

1           **INMATE BURNS:**  You want to make sure that

2      I do not drink.   You want to make sure I do not

3      take marijuana.   You want to make sure that I

4      understand the consequences if I do.

5           **PRESIDING COMMISSIONER ST. JULIEN:**  Yeah.

6      But there's another issue.   That's definitely

7      correct.   But also you have to use this time

8      while you're in here wisely.   It has to be

9      productive learning time or rehabilitative time.

10     I mean, the prison -- You know, the reason for

11     prison is twofold.   Punishment and

12     rehabilitation.   There's probably not enough

13     rehabilitation programs in the system.   But

14     where there is -- And AA and NA are constant.

15     They're about the only programs we can depend on

16     in here.   You have to take full advantage of

17     them, especially when your commitment crime,

18     there was, you know, drug use and drinking

19     involved in that.   So we can't have somebody

20     who's been in prison, you know, over 10 years or

21     even five years, you know, who had these types

22     of history of this type of problem not be taking

23     these courses.   You know, it's not only so that

24     we know you're not going to re-offend, but so

25     that we know that you're mentally set, you know,

26     you're mentally straight and set not to become a

27     user of these drugs again.

45

1           **DEPUTY COMMISSIONER MEJIA:**   I have no

2     other questions.

3           **PRESIDING COMMISSIONER ST. JULIEN:**   Okay.

4     Do you have any questions for your client?

5           **ATTORNEY CHRISTENSEN:**   Well just to

6     follow up on that.   Is there some particular

7     reason why you haven't been able to fully commit

8     to AA?

9           **INMATE BURNS:**   Not that I can think of.

10    There's one thing, well, it's probably going to

11    get me a denial because I'm bringing this up,

12    but I would like to state it for the record

13    anyway.

14          **PRESIDING COMMISSIONER ST. JULIEN:**   Okay.

15          **INMATE BURNS:**   There is a -- There was

16    two cases ruled on, they're actual legal cases

17    and this Board should be aware of them.   One is

18    Turner versus Hickman.   It was a California

19    case.   They stated -- Basically it states the

20    State Board of Prison Terms no longer can use an

21    inmate's lack of participation in a faith based

22    substance abuse prevention program as an excuse

23    to keep him behind bars and to deny him a parole

24    date.   It's a -- Sacramento U.S. District Judge

25    Frank C. Damrell, D-A-M-R-E-L-L, Jr. decided and

26    ruled on.   And there was a case also --

27          **ATTORNEY CHRISTENSEN:**   Mr. Burns, I don't

46

1    think this is going to help you.  I would

2    suggest that you not go any farther with this.

3              **INMATE BURNS:**  Okay.

4              **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

5    But I will --

6              **INMATE BURNS:**  You were stating, you know

7    --

8              **PRESIDING COMMISSIONER ST. JULIEN:**  Yeah,

9    (indiscernible) --

10             **INMATE BURNS:**  I'm participating.  I am

11   participating in AA, slow as it may be, right.

12   I'm trying my best.  I'm trying to do the right

13   thing.  I'm trying to better myself.

14             **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

15             **INMATE BURNS:**  You know.

16             **PRESIDING COMMISSIONER ST. JULIEN:**  But I

17   will address that.  You know, personally I'm not

18   a big fan of AA and I think that there are a lot

19   of inmates who because of its Christian

20   foundation might not want to participate in AA.

21   And I perfectly understand that.  However, I

22   stated before --

23             [Thereupon, the tape was turned over.]

24             **DEPUTY COMMISSIONER MEJIA:**  We're back on

25   record.

26             **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

27             **DEPUTY COMMISSIONER MEJIA:**  Side B.

47

1          PRESIDING COMMISSIONER ST. JULIEN:   There

2    are not that many programs that are available to

3    people who have alcohol and substance abuse

4    problems.   Therefore, you can do a self-study

5    program, you know, which would involve you --

6    involve you, you know, doing book reading,

7    self-help, you know, that type of thing.   But AA

8    is -- Like I said before, it's a program that's

9    been around the longest.   It's a program that's

10   available to you.

11         INMATE BURNS:   Right.

12         PRESIDING COMMISSIONER ST. JULIEN:   So I

13   perfectly understand that you might not want to

14   participate in AA.   But if that's the only game

15   in town and you might derive some benefit from

16   it, then I would encourage you to do so.   And I

17   can also assure you that if you do receive a

18   denial it is not going to be because you are not

19   participating in AA.

20         DEPUTY COMMISSIONER MEJIA:   Well

21   (indiscernible) to make it more clear, that will

22   not be the only reason that --

23         PRESIDING COMMISSIONER ST. JULIEN:   Yeah.

24   Yeah.

25         DEPUTY COMMISSIONER MEJIA:   There is some

26   other factors --

27         PRESIDING COMMISSIONER ST. JULIEN:   Yeah.

48

1    These are --

2         **DEPUTY COMMISSIONER MEJIA:**    That will be

3    considered but there's some other factors that

4    will contribute --

5         **PRESIDING COMMISSIONER ST. JULIEN:**    Yeah.

6    It's a big --

7         **DEPUTY COMMISSIONER MEJIA:**    -- to a

8    denial.

9         **PRESIDING COMMISSIONER ST. JULIEN:**    It's

10   a puzzle and there are lots of pieces to the

11   puzzle.    And because of your background and

12   because of the situation around the crime, I

13   mean, we have to zero in on that.    And I'm

14   zeroing it on it because in your last transcript

15   I'm reading they're telling you the same thing.

16   And I'm sure they've told you the same thing in

17   numerous transcripts.    And even if this -- if it

18   weren't AA, if he were --

19        **DEPUTY COMMISSIONER MEJIA:**    Any substance

20   abuse program.

21        **PRESIDING COMMISSIONER ST. JULIEN:**    Yeah.

22   A vocation.    If you were told by the Board you

23   need to get a vocation and you didn't do it, I'd

24   be saying the same thing --

25        **INMATE BURNS:**    Right.

26        **PRESIDING COMMISSIONER ST. JULIEN:**    -- to

27   you.    So you know, so don't get hung up on the

49

1    AA.  And I know a lot of -- And I know

2    Commissioners do.  And you know, I'm not --

3    we're not hung up on the AA, but you have to do

4    something to help yourself.

5         **DEPUTY COMMISSIONER MEJIA:**  But you're

6    attending now.  I suggest that you continue now.

7    It's just like you're an early -- like a late

8    bloomer as far as I'm concerned when it comes to

9    that.

10        **ATTORNEY CHRISTENSEN:**  Is there any other

11    self-help program available that you would be

12    interested in?  Not necessary dealing with

13    substance abuse, but any other areas that you

14    would like to involve yourself in

15    (indiscernible) available?

16        **INMATE BURNS:**  The only programs that

17    they have that I know of are your own self-study

18    like you recommended in the college -- excuse me

19    -- the library is the only thing they have.

20        **ATTORNEY CHRISTENSEN:**  But you do like to

21    read.

22        **INMATE BURNS:**  Right.

23        **ATTORNEY CHRISTENSEN:**  So you'd be able

24    to check out some books you can --

25        **DEPUTY COMMISSIONER MEJIA:**  Another thing

26    too is you can't have 115's or 128's.  It's not

27    tolerated.  It's not acceptable for us.  Or even

50

1   wherever this thing goes if you have a 115 or a

2   128 in that period it doesn't really help you.

3   No matter how you think how minimal or minimal

4   -- insignificant it is, out-of-bounds, but you

5   know that's another issue that you will have to

6   face.  Okay.

7        ATTORNEY CHRISTENSEN:  And I'll ask one

8   more and then I'll go to closing.  Have you ever

9   had any one-on-one therapy that focused on your

10  childhood?

11       INMATE BURNS:  No.  They've never offered

12  it.

13       ATTORNEY CHRISTENSEN:  Nothing's

14  available here?

15       INMATE BURNS:  Right, at this facility.

16       ATTORNEY CHRISTENSEN:  That's true.  But

17  perhaps you might be able to read some books.

18       INMATE BURNS:  Yes.

19       PRESIDING COMMISSIONER ST. JULIEN:  So

20  did you mention that the one-on-one therapy was

21  available at CMC?

22       INMATE BURNS:  It was when I was there.

23  I don't know how many years ago that was.

24       ATTORNEY CHRISTENSEN:  He would need to

25  be in the Triple CMS --

26       PRESIDING COMMISSIONER ST. JULIEN:  Yeah.

27       ATTORNEY CHRISTENSEN:  -- program.

51

```
 1          INMATE BURNS:  And I'm not Triple CMS.
 2          PRESIDING COMMISSIONER ST. JULIEN:
 3  That's too bad.
 4          DEPUTY COMMISSIONER MEJIA:  I see a note
 5  here in 1990 you were recommended to go to Cat J
 6  at CMC.
 7          INMATE BURNS:  Non-medicated J Cat
 8  status.
 9          DEPUTY COMMISSIONER MEJIA:  Yeah.
10          INMATE BURNS:  That was the one that I
11  was very extremely depressed and they sent me
12  there for evaluation.
13          DEPUTY COMMISSIONER MEJIA:  I do have the
14  --
15          PRESIDING COMMISSIONER ST. JULIEN:  Do
16  you have the perception that being in the Triple
17  CMS program works against you?
18          INMATE BURNS:  Now I do since I have
19  everything -- personally to me I feel like
20  everything's coming up roses positive wise.  I
21  have my trades.  And I believe if I go to CMC
22  under a program such as that it will just only
23  set me back.
24          DEPUTY COMMISSIONER MEJIA:  They have --
25          PRESIDING COMMISSIONER ST. JULIEN:  I
26  don't think it will.
27          DEPUTY COMMISSIONER MEJIA:  --
```

52

1    (indiscernible) conduct an evaluation there.

2              **PRESIDING COMMISSIONER ST. JULIEN:**  Yeah,

3    it doesn't -- it just shows that you're willing

4    to work on your problems.

5              **ATTORNEY CHRISTENSEN:**  You could go there

6    for a period of time, get some therapy and then

7    come back --

8              **PRESIDING COMMISSIONER ST. JULIEN:**  Does

9    that bother you when someone's in Triple CMS?

10             **DEPUTY COMMISSIONER MEJIA:**  You know, it

11   depends what people see CMC is.  But there is an

12   evaluation that they did for you in the '90s

13   about your need for additional therapy.  And

14   they concluded that Category GP with psychiatric

15   services, to be retained at CMC, currently

16   non-management problem, was fearful of general

17   population, somewhat immature, naïve individual,

18   seems unable to protect himself (indiscernible)

19   population or higher level of institution.

20   (Indiscernible) role as a victim due to his

21   naivety is likely -- is likely to function with

22   difficulty within the (indiscernible).

23   Individual or group therapy to deal with his

24   inadequacies and fear may assist him in adapting

25   to general population more favorably.  That was

26   in 1990.  What was the recommendation for you to

27   get therapy?  I don't know what (indiscernible).

53

1          **ATTORNEY CHRISTENSEN:**  Yeah.  Mr. Burns,

2    do you feel that there is a stigma with being in

3    a mental health treatment program?

4          **INMATE BURNS:**  I feel that by going there

5    it would cause more problems and harm especially

6    --

7          **ATTORNEY CHRISTENSEN:**  But yet when you

8    were there you said that you liked it and it

9    helped you, right?

10         **INMATE BURNS:**  The program helped me.

11   The facility did not.  If you will look in your

12   file, you'll notice that CMC is one of the

13   prisons where I received two of my 115's because

14   they're very strict.  They write you up for

15   anything.  If you say, no, I don't want to do

16   this, you'll get a write-up for it.  And I'm

17   doing good where I'm at.

18         **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

19   Well that's fine.

20         **ATTORNEY CHRISTENSEN:**  Okay.  All right.

21   I'll just go --

22         **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

23   Do you have --

24         **ATTORNEY CHRISTENSEN:**  -- to close.

25         **PRESIDING COMMISSIONER ST. JULIEN:**  -- a

26   closing?  Yeah.

27         **ATTORNEY CHRISTENSEN:**  All right.  I have

54

1    to say that Mr. Burns is a late bloomer, but

2    nonetheless he is blooming. And he has recently

3    -- Well not that recently, one year ago he

4    recommenced being in AA and I think that after

5    today and hearing what's been said here I think

6    this may be the very motivating force necessary

7    to propel him forward such that that will really

8    help him. I think that there are other programs

9    that Mr. Burns can also explore. And hopefully,

10    if he's not granted parole this time, he can

11    meet with this counselor and find out exactly

12    what is going on in here. Because there may be

13    a lot more than he's aware of. Certainly we

14    hear of inmates being involved in all kinds of

15    programs. So Mr. Burns can look into that and

16    expand his horizons. I think it's great that he

17    has basically an adopted family that speaks very

18    highly of him, that he is the kind of person

19    that the family of his cellie has found to be

20    someone that they want to reach out to. And

21    this has been going on for a very long period of

22    time. So Mr. Burns can establish relationships

23    with others. And it is great because they have

24    offered him residence and they've also -- I

25    think there was something in there such that

26    they will help you with AA, substance abuse.

27         **INMATE BURNS:** Yes.

55

1      **ATTORNEY CHRISTENSEN:** Okay. And that

2    sounds like a very positive influence for him.

3    Let me see, what else do I want to say. Yes.

4    Yes. Also with regard to this parole plans, he

5    also -- although he has no job offer, he does

6    have marketable skills. But most importantly he

7    would be able to be self-supporting because I'm

8    sure that he will qualify for SSI since he has

9    qualified in the past. And all he has to do is

10   reapply. And that would provide him with

11   subsistence at least so he would be able to get

12   by on that. So I think Mr. Burns has a lot to

13   look forward to and I think he's done well at

14   his own pace. And Mr. Burns is very hopeful of

15   being found suitable for parole and he thanks

16   you for considering him today.

17      **PRESIDING COMMISSIONER ST. JULIEN:** Okay.

18   Thank you. Sir, do you have a statement to make

19   regarding your parole suitability?

20      **INMATE BURNS:** Yes, Commissioner. First,

21   I'd like to say, as I've said in every other

22   hearing, I am truly sorry for my act, what I've

23   done. I'm sorry for taking Mr. Smith's life.

24   I'm sorry for the harm that I've caused him and

25   his family and any other harm that might have

26   happened that I don't know about because of my

27   actions. I would like to state that while I've

56

1    been incarcerated there's never been any kind of

2    write-up for violence of any kind.  I've never

3    had a write-up for a fight.  No kind of

4    incidents of any kind.  That in itself should

5    speak volumes because prison is a violent place.

6    People get into fights.  People get into

7    situations that make them get into fights and

8    cause violence.  I have not.  I've stayed away

9    from all that.  True, I've only been to AA for a

10   year.  But the fact of the matter is I'm going.

11   There are a lot of guys that don't want to go

12   and don't go and would come in and argue with

13   you about it.  I had no support for the outside,

14   now I do.  I have loving, caring people that

15   understand me.  They want to help me.  My psych

16   report, all of them, all my psych reports have

17   been great.  This most recent one stated that I

18   was a candidate for parole.  I understand I need

19   a lot of work or some work still and I hope the

20   Board will consider me for parole.  If not, I

21   hope they'll consider at least a one year

22   denial.  That's all.  Thank you.

23           **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

24   Sir, thank you very much.  We'll recess for

25   deliberations.

26                   **R E C E S S**

27                    --oOo--

57

1    **CALIFORNIA BOARD OF PAROLE HEARINGS**

2                    **D E C I S I O N**

3        **DEPUTY COMMISSIONER MEJIA:**    Okay.    We're

4    back on record for our decision in the matter of

5    Mr. Burns, Scott.    The Panel has reviewed all

6    information received from the public and relied

7    on the following circumstances in concluding

8    that the prisoner is not suitable for parole and

9    would pose an unreasonable risk of danger to

10   society or a threat to public safety if released

11   from prison.    The first reason will be the

12   commitment offense.    The commitment offense was

13   carried out in an especially cruel and callous

14   manner.    The motive for the crime was

15   inexplicable and very trivial in relation to the

16   offense.    The circumstances of the offense is

17   that:

18            "On 6-7-1987 early in the

19             afternoon Burns left his campsite,

20             went to the victim's campsite and

21             began drinking with him.    Later

22             that afternoon Burns took

23             Mr. Robert Smith's, the victim,

24             pistol and shot him twice in the

25             head.    Burns then drove Smith's

26             pickup truck to his own campsite

27   **SCOTT BURNS    D-99247    DECISION PAGE 1    9/29/05**

58

1       and later returned the pickup to

2       Smith's campsite.  On the way to

3       Downieville Sheriff's Office to

4       report the discovery of a dead

5       body, Burns had a friend stop the

6       van while Burns threw the weapon

7       and other items down a ravine.

8       After reporting the discovery of

9       the body, Burns was later arrested

10      for burglary and then murder."

11  He failed to profit from society's previous

12  attempt to correct his criminality.  He was on

13  adult probation and county jail and -- an

14  unstable social history prior to -- criminality

15  which includes robbery.  The prisoner has

16  programmed in a limited manner while

17  incarcerated.  He failed to upgrade

18  educationally and has not sufficiently

19  participated in beneficial self-help and therapy

20  programs.  He failed to demonstrate positive

21  change.  Misconduct while incarcerated, he had

22  two 128(a)'s, custodial counseling chronos, the

23  last being in 2003, and three 115's, the last

24  being in 2002.  The psychiatric, psychological

25  report dated 8-26-05 authored by Dr. Reed,

26  R-E-E-D, indicates:  "If released to the

27  **SCOTT BURNS    D-99247    DECISION PAGE 2    9/29/05**

59

1    community, clinically assessed his risk for

2    future violence potential appears to be

3    approximately that of an -- that of the average

4    citizen in the community if he remains substance

5    abuse free." It is noted that this

6    psychological report did not address the issue

7    of his need for further therapy and treatment

8    with regards to substance abuse issues. And

9    therefore another psychological evaluation will

10   be requested in order to address those issues of

11   substance abuse treatment program needs in order

12   to assure -- ensure that Mr. Burns will not have

13   issues with substance abuse since that is a

14   precursor to violence for this individual. The

15   hearing Panel notes that responses to PC 3042

16   Notices indicate opposition to a finding of

17   parole suitability. Specifically the Sierra

18   City -- Sierra City --

19          **PRESIDING COMMISSIONER ST. JULIEN:**

20   Sierra.

21          **DEPUTY COMMISSIONER MEJIA:** -- Sierra

22   City Sheriff's -- County Sheriff's Department,

23   the police which was the law enforcement agency

24   which investigated the case, and the Sierra

25   County DA. The Panel makes the following

26   findings. The prisoner needs therapy or slash

27   **SCOTT BURNS  D-99247  DECISION PAGE 3  9/29/05**

60

1   self-help in order to face, discuss, understand

2   and cope with stress in a nondestructive manner.

3   Until progress is made, the prisoner continues

4   to be unpredictable and a threat to others.

5   This will be a two year denial.  The prisoner's

6   gains are recent and he must demonstrate an

7   ability to maintain gains over an extended

8   period of time.  You should be commended,

9   Mr. Burns, for your initiative now for going to

10  AA or attending substance abuse the last two

11  years.  Okay.  And also completing two

12  vocations, office repair and the graphic arts,

13  vocational offset printing and graphic arts.

14          **INMATE BURNS:**  Yes, Sir.

15          **DEPUTY COMMISSIONER MEJIA:**  And also your

16  attendance in Anger Management, although it's

17  old, 1998.  I advise and recommend that you

18  continue attending any anger management classes

19  you can make -- you can get a hold of in the

20  yard.  Because I feel that anger management is

21  almost like a lifestyle, like AA that you should

22  always be feeding yourself with so that you will

23  be able to actually modify your issues within

24  you.  Okay.  However, in a separate decision the

25  hearing Panel finds the prisoner has been

26  convicted of murder in the second degree and it

27  **SCOTT BURNS    D-99247    DECISION PAGE 4    9/29/05**

61

1   is not reasonable to expect that parole would be

2   granted at a hearing during the next two years

3   just like I said.  The prisoner committed the

4   offense in an especially cruel and callous

5   manner wherein he shot the victim twice in the

6   head.  The offense was carried out in a

7   dispassionate and calculated manner.  He was

8   invited for dinner, he went there, and when the

9   victim was passed out, he shot him twice.  The

10  offense was carried out in a manner which

11  demonstrates exceptional callous disregard for

12  human suffering.  The motive for the crime was

13  inexplicable and very trivial in relation to the

14  offense.  The prisoner has not completed the

15  necessary program which is essential to his

16  adjustment and needs additional time to gain

17  such programming.  He has failed to -- He just

18  recently attended self-help (indiscernible)

19  abuse.  And he's, you know, he's been commended

20  for taking the step now to do that.  Therefore,

21  a longer period of observation or evaluation of

22  the prisoner is required before the Board should

23  find the prisoner suitable for parole.  It's

24  like we have an issue about the time that

25  (indiscernible) deny you for because of your

26  115's.  However, we took into consideration what

27  **SCOTT BURNS   D-99247   DECISION PAGE 5   9/29/05**

62

1    you told us, at least you're trying now.  And

2    because of that we were able to -- we agreed to

3    two years.  I think you'll be looking better two

4    years from now when you have all those chronos

5    piled up in your C-File about your self-help.

6    Okay.

7         **INMATE BURNS:**  Yes, Sir.

8         **PRESIDING COMMISSIONER ST. JULIEN:**  We

9    need to make a comment about the parole plans.

10   You do have reasonable or acceptable residential

11   parole plans.  They're not in the county of last

12   legal residence.  However, they are in

13   California.  And you do have a marketable skill.

14   In terms of employment plans, you need to firm

15   that up.  Even though you're -- you know, it

16   looks like you have -- you've lined up some

17   great support out there, however, you need to be

18   a little more specific as to where you're going

19   to work, what you want to do and that type of

20   thing.  So I would encourage you to try to

21   solidify a more secure employment plan.  And

22   also, you know, try to reach out to more people.

23   It's great you have the Aaronson's.  But you

24   know, you're a likeable guy.  I don't see why

25   you can't try to reach out and you know make

26   some more friends on the outside.  Maybe try the

27   **SCOTT BURNS    D-99247    DECISION PAGE 6    9/29/05**

63

1    pen pal thing.  I don't know how that would

2    work.  But you know, it always -- more is better

3    when it comes to friends.  Okay.

4         INMATE BURNS:  Yes, Ma'am.

5         DEPUTY COMMISSIONER MEJIA:  So next --

6    next two years I want you to stay

7    disciplinary-free, no more 115's, no more 128's,

8    get self-help and get a GED.  That's good.

9    You're trying for the GED.  That's another one I

10   want you to bring in two years.  Okay.  And

11   positive chronos.  Anything helps.  Make sure it

12   gets in the file.  Good luck to you, sir.

13        INMATE BURNS:  Thank you.

14        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

15   Good luck to you, sir.  Go ahead.

16        DEPUTY COMMISSIONER MEJIA:  It's now

17   8:45.  This hearing is completed.

18                    --oOo--

19

20

21

22

23   PAROLE DENIED TWO YEARS

24   THIS DECISION WILL BE FINAL ON Jan. 27, 2006

25   YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

26   DATE, THE DECISION IS MODIFIED.

27   SCOTT BURNS   D-99247   DECISION PAGE 7   9/29/05

64

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, Marsha Mees, a duly designated
transcriber, PETERS SHORTHAND REPORTING, do hereby
declare and certify under penalty of perjury that
I have transcribed tape(s) which total one in
number and cover a total of pages numbered 1 - 63,
and which recording was duly recorded at
CORRECTIONAL TRAINING FACILITY, at SOLEDAD,
CALIFORNIA, in the matter of the SUBSEQUENT PAROLE
CONSIDERATION HEARING of SCOTT BURNS,
CDC No. D-99247 on SEPTEMBER 29, 2005, and that
the foregoing pages constitute a true, complete,
and accurate transcription of the aforementioned
tape(s) to the best of my ability.

I hereby certify that I am a disinterested
party in the above-captioned matter and have no
interest in the outcome of the hearing.

Dated October 14, 2005 at Sacramento County,
California.


Marsha Mees
Transcriber
**PETERS SHORTHAND REPORTING**

# EXHIBIT C

1

2                                                    FILED

3                                                OCT 18 1988

4                                            SANDRA LOVING
                                                   COUNTY CLERK
5                                        BY _____
                                                   DEPUTY CLERK

6           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7              IN AND FOR THE COUNTY OF SIERRA

8                            --oOo--

9    THE PEOPLE OF THE STATE OF CALIFORNIA )
                                           )
10                            Plaintiff,   )   NO. 4161
                                           )
11               vs                        ).  PROBATION OFFICER'S REPORT
                                           )
12   SCOTT STEVEN BURNS                    )   (presentence)
                                           )
13   _____)
                              Defendant.   )   Sentencing Date: 10-28-88

14   To the Above Entitled Honorable Court:

15        Pursuant to the statutes and the direction of the Court, the

16   Probation Officer hereby respectfully submits the following report

17   and recommendation concerning the application for release on proba-

18   tion of the above named defendant.

19                          DATES IN CASE

20   Present Offense: 187 P.C.2nd degree, 12022.5 P.C., 487(3) P.C.

21

22   Date Committed: 06-07-87                Arrested: 06-07-87

23   Complaint Filed:                      Custody Status: in custody

24   Referral to Probation Officer: 09-28-87

25   Days in Jail at Time of Report:   508

26                        PERSONAL HISTORY

27   Name: Scott Steven Burns                    Age: 27

28   Address: 175 19th Ave. #11, San Francisco   Attorney: Blake

PERSONAL INFORMATION:

Address: 175 19th Ave. #11, San Francisco      Telephone No.:_____

Present Whereabouts: /X/ Custody /_/ O.R. /_/ Bail /_/ Other_____

Age: 27      D.O.B.: 12-14-60      Place of Birth: New York City  Sex   M
                    ~~12-15-88~~

Height 5'8"  Weight 171 lbs.  Hair bln      Eyes hzl      SSN  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

DL#_____   Date of Arrival in California_____ Sierra Co.___

Marital Status:   single      Spouse_____

When:_____  Where:_____

No. of Previous Marriages:   none _____

_____

Habits (Tobacco, Alcohol, Drugs):_____

_____

Financial Status:: Income:_____ Spouse's Income:_____

Other:_____

FAMILY INFORMATION:

Father: Patrick Burns _____ Age:_____ Place of Birth:_____

Address:_____

Occupation:_____

Marriage Date (to Defendant's Mother):_____ Status:_____

Died: 1982 _____ Where:_____ Cause:_____

Mother: Jane Burns _____ Age:_____ Place of Birth:_____

Address:_____ deceased 1963 _____

Occupation:_____

Other Marriages:

Father            Name            Date            Status


Mother

Brothers & Sisters                    Address                              Occupation

The defendant has six brothers and sisters of which ▓. is the youngest.
One brother and one sister are deceased.

Former Residences                                    From              To

EMPLOYMENT HISTORY:

☐ Present or ☐ Last Employer:_____

Address:_____ Salary:_____

Date Began:_____ Terminated:_____ Reason:_____

Previous Employment:

| From | To | Employer | Job | Salary | Reason Terminated |
|------|-----|----------|-----|--------|-------------------|
|      |     |          |     |        |                   |
|      |     |          |     |        |                   |
|      |     |          |     |        |                   |

Military Record:  Service: none          Type of Discharge:_____

Rank:_____ Duty Station:_____

EDUCATIONAL HISTORY:

Last School Attended: Attended school through 8th grade    Graduated?_____

College or Training:_____ Career Development Center _____

PRIOR RECORD: (see attached)

| Date | Where | Offense | Disposition |
|------|-------|---------|-------------|
|      |       |         |             |
|      |       |         |             |
|      |       |         |             |

OTHER:_____

-3-

PRESENT OFFENSE:

The District Attorney of the County of Sierra, in a three felony count information, charged the defendant, Scott Steven Burns, with the following violations: ·

Count I:         violation of Section 187 of the Penal Code, murder.

Enhancement:     violation of Section 12022.5 of the Penal Code, personal use of a firearm.

Special Allegation Prohibiting Probation:    violation of Section 1203.09 of the Penal Code, crimes committed against a person 60 years of age or older, or a person who is blind, paraplegic or quadriplegic.

Special Circumstances for Imposition of Death Penalty or Life Without Parole: violation of Section 190.2(a)(17) of the Penal Code, crime committed while engaged in a burglary.

Count II:        violation of Section 487(3) of the Penal Code, grand theft.

Count III:       violation of Section 459 of the Penal Code, burglary.

On September 28, 1988, a Sierra County Superior Court Jury found the defendant guilty of the following counts and enhancement:

Count I:         violation of Section 187 of the Penal Code, murder in the second degree.

Enhancement:     violation of Section 12022.5 of the Penal Code, personal use of a firearm.

Count II:        violation of Section 487(3) of the Penal Code, grand theft.

1    It should also be pointed out that prior to the trial the

2    special allegation that the victim was over the age of 60 years

3    was stipulated to by both the District Attorney, Mr. James

4    Reichle and the defense counsel, Mr. Donald Blake.    Therefore,

5    given the jury's verdict in Count I of the complaint the special

6    allegation prohibiting probation in this matter pursuant to

7    Section 1203.09 of the Penal Code is also found to be true.

8    After the verdict was rendered the Court referred the matter

9    to the Sierra County Probation Department for a Presentence

10   Investigation Report and recommendation and continued the entire

11   matter until October 28, 1988, for consideration of that report

12   and sentencing.

13   CIRCUMSTANCES OF THE OFFENSE:

14   Following is a brief summary of the Sierra County Sheriff's

15   Department arrest report #6-87-284-D in this matter:

16   On June 7, 1987, at approximately 12:36 a.m., the defendant,

17   Scott Steven Burns, and a friend, Gary Bloem, arrived at the

18   Sierra County Sheriff's Department and advised that they were

19   reporting a possible dead body.  Bloem stated that the defendant

20   had just found the victim, Robert Smith, dead in his own trailer

21   up by Culvert Mine.    When asked why he felt that the victim was

22   dead the defendant stated that he had two bullet holes in his

23   head.    After describing the location of the bullet holes the

24   defendant stated, "It looks like he's been murdered."

25   Upon further questioning the defendant gave the officer the

26   following story:

27   On June 6, 1987, at approximately 3:00 p.m., the defendant

28   went for a walk from his camp and stopped by the victim's

PSI3BS38.PSI                            5

1 trailer. After talking to the victim for about a half an hour and
2 being invited back for dinner, the defendant left and just walked
3 down the road. At about 10:00 p.m. the defendant returned to the
4 victim's trailer and noticed that both doors of the trailer were
5 open. Upon looking inside the defendant observed the victim
6 leaning on a chair against the wall with blood all over himself
7 and the floor. The defendant then checked the victim's pulse and
8 breathing and realized that the victim was dead. He then
9 panicked and jumped in the victim's truck which already had the
10 keys in it and drove to his camp where he told Gary Bloem what
11 had happened. Gary Bloem was then able to persuade the defendant
12 to report the incident to the Sheriff's Department.

13 Gary Bloem was then interviewed and gave the following
14 information:

15 On June 6, 1987, at approximately 3:30 p.m., the defendant
16 left camp for a walk. He then returned to camp about 10:00 p.m.
17 in the victim's pickup truck. The defendant then stated, "Bob's
18 been shot." The defendant then drove the truck back to the
19 victim's camp and Gary Bloem picked the defendant up in his van
20 and drove to Downieville to report the crime.

21 The defendant and Gray Bloem were then allowed to leave the
22 Sheriff's Department and return to their camp. On June 7, 1987,
23 at approximately 3:20 a.m., two Sheriff's Department's patrol
24 units arrived at the victim's trailer and located the body.
25 However all attempts to locate the weapon proved futile. At
26 approximately 4:20 a.m., the defendant was questioned as to
27 whether he had remembered seeing a weapon in the trailer. The
28 defendant stated that he was scared and in a panic and did not

PSI3BS38.PSI                6

1  remember seeing any weapon.  The defendant also stated, however,
2  that both doors to the trailer were closed, which contradicted
3  his previous statement.    At approximately 3:45 p.m., after
4  securing the area and upon further investigation, the defendant
5  was arrested on burglary charges and transported to the Sierra
6  County Sheriff's Department in Downieville, California.  On June
7  8, 1987, the defendant was rebooked on the murder charge.

8        In reviewing the Jury Trial Transcripts in this matter it is
9  quite apparent that two additional testimonies should be added to
10 this circumstances of the offense section.     Those testimonies
11 include those of Gary Bloem and Sheriff Kenneth Alexander.

12       In the first testimony on pages 611-616 of the transcripts,
13 Gary Bloem testified that when the defendant arrived at the
14 campsite in the victim's pickup truck that the defendant was
15 wearing a revolver in a holster and also had a cartridge belt.
16 After driving the victim's pickup truck back to the victim's
17 campsite, the defendant got into Gary Bloem's van still wearing
18 the pistol, but this time he also had a large yellowish-orange
19 flashlight.  On the way to Downieville the defendant got sick and
20 began vomiting and Gary Bloem stopped the van.  When the van
21 stopped the defendant threw the pistol, holster, cartridge belt
22 and flashlight over into a canyon or ravine down the side of the
23 mountain road.

24       When asked if the defendant had made any statements about
25 where the gun had come from, Gary Bloem, on page 640 of the Trial
26 Transcript, testified that the defendant had stated that "...he
27 had got the gun from Bob's camp, and it was laying on the
28 table..."

PS13BS38.PSI                      7

1    On page 954 of that same transcript, Sheriff Kenneth
2 Alexander testified that on October 23, 1987, while in a holding
3 cell in the Sierra County Sheriff's Department, the defendant
4 made the following statement:

5    "...He said he wanted to change his story, that he had
6    lied to the Undersheriff and to the other officer, who
7    was Agent Leonard from the Department of Justice, and
8    that the first shot wasn't accidental, that he had
9    planned it, because he heard that Smith had a thousand
10    dollars in gold..."

11 DEFENDANT'S STATEMENT:

12    On September 29, 1988, the undersigned officer interviewed
13 the defendant at the Nevada County Jail. During that interview
14 the defendant advised that he did not wish to make any statements
15 about the offense as he was going to appeal the verdict.

16    The defendant did however, wish to advise the Court that he
17 was a child born out of an incestuous relationship between his
18 mother and her brother. In 1963, when the defendant was three
19 years old, the defendant's mother was killed by his uncle/father.
20 He stated that the reports indicated that this uncle/father took
21 a .30.30 rifle and shot her in the face. The defendant advised
22 that his uncle/father probably was found guilty of manslaughter
23 as he did not do much time for the killing.

24    The defendant stated that his mother's husband then began
25 raising the seven children alone, but that within six months to
26 one year all of the children were taken away because the father
27 had molested two of the defendant's sisters and had neglected all
28 of the children. The defendant advised that all of the children,

PSI3BS38.PSI                    8

1  of which he was the youngest, were separated and placed in foster

2  homes and shelter care homes.

3    The defendant stated that between the age of three and

4  twelve that he was labeled an uncontrollable and hyperactive

5  child and was placed in 40 to 50 different foster homes or group

6  homes.  The defendant stated that the normal cycle was foster

7  home placement then a psychiatric ward placement and then to

8  another foster home.  He stated that while in the hospital

9  settings he would be on "mood medications" and remain there from

10 two month to two year periods.

11   When the defendant was seven or eight years old he was in a

12 foster home in which he was doing well.  However, after a few

13 months he was removed from that foster home and placed in another

14 foster home with an older brother.  That placement was also

15 unsuccessful and the previously mentioned cycle began over again.

16 The defendant stated that when he was 16 to 17 years of age he

17 was receiving SSI and petitioned the Court to be emancipated.

18 The defendant stated that he was granted that request.  After

19 that the defendant stated that he rode the Greyhound bus around

20 the United States and eventually settled in San Francisco,

21 California.

22   As to prior suicide attempts the defendant stated that he

23 had attempted probably ten to twelve serious suicide attempts in

24 his life.  Those attempts included ramming his head against the

25 wall to fracture his skull, an overdose of medications, as well

26 as cutting the veins in his arms.

27   As to the statement made to the Sheriff, the defendant

28 stated that he made that statement because he thought that the

1  District Attorney was going to withdraw the death penalty
2  allegation. Further, he knew that he could not live the
3  remainder of his life in prison and would rather die. The
4  defendant stated that he can not deal with pressure and that he
5  sets stupid thoughts in his head when he gets under pressure.
6  The defendant advised that he is willing to go to school and work
7  while in prison. He stated that he does want to better himself.

8      The defendant concluded by advising that fifteen years to
9  life is still life in prison and that the defendant can still
10 face the death penalty. When asked how, the defendant stated
11 that a murder of a correctional officer or another inmate by an
12 inmate serving life is still punishable by the death penalty.
13 The defendant stated that he probably could not do that but that
14 he could take the blame for somebody else.

15 VICTIM'S STATEMENT:

16     On October 4, 1988, the undersigned officer contacted the
17 victim's wife in reference to a victim's statement. Mrs. Smith
18 advised that she has been very upset since the incident because
19 her husband was a good man and everybody loved him. She advised
20 that her daughter, Dorothy Johnson, would be the individual to
21 contact in reference to any more information. Mrs. Smith was
22 notified of the sentencing date as well as her right to be
23 personally present. She was also informed of her right to make a
24 formal statement in the probation report and/or at the sentencing
25 hearing.

26     On that same date the undersigned officer contacted the
27 victim's daughter, Dorothy Johnson, in reference to a victim's
28 statement. Mrs. Johnson indicated that she wished to speak to

PSI3BS38.PSI                10

1  her husband first and then would submit a written statement.
2  Once that statement is received it will be attached to the end of
3  this report for the Court's consideration.
4  DEFENDANT'S CURRENT STATUS:
5      The defendant was arrested on these offenses on June 7,
6  1987, and has remained in custody since that time. To date, the
7  defendant has credit for 508 actual days served plus an
8  additional 254 days good time/work time for a total of 762 days
9  credit for time served.
10  PRIOR RECORD:
11      The defendant's CII and FBI Rap Sheets revealed the
12  following information:

| | | |
|---|---|---|
| 13 02-05-79 | disorderly conduct | time served |
| 14 12-23-80 | burglary 3rd degree | 10 mos. maximum |
| 15 | class D felony | |

16  09-07-83         certificate of relief
17      The defendant advised that the burglary charge in 1980
18  resulted in a ten month county jail sentence and then felony
19  probation. He advised that he successfully completed that
20  probationary grant and later, in 1983, was given a certificate of
21  relief from those charges.
22  RESTITUTION:
23      Restitution does not appear to be an issue in this matter.
24  RESTITUTION FUND FINE:    (Government Code Section 13967)
25      The undersigned officer respectfully recommends that the
26  defendant be ordered to pay a $5,000.00 restitution fund fine.
27  ADDITIONAL INFORMATION:
28      Inasmuch as the defendant and his counsel previously

PSI3BS38.PSI                    11

1  stipulated to the fact that the victim was over the age of 60

2  years, a review of Penal Code Section 1203.09 is deemed

3  appropriate. That section, which prohibits probation in this

4  matter unless the Court declares this an unusual case, reads in

5  part:

6      "1203.09 Denial of Probation or Suspended Sentence to

7      Persons Who Committed Crimes Against a Person 60 Years

8      of Age or Older, or a Person Who is Blind, Paraplegic,

9      or Quadriplegic.

10     (a) Notwithstanding any other provision of law,

11     probation shall not be granted to, nor shall the

12     execution or imposition of sentence by suspended for,

13     any person who commits or attempts to commit one or

14     more of the crimes listed in subdivision (b) against a

15     person who is 60 years of age or older; or against a

16     person who is blind, a paraplegic, or a quadriplegic,

17     and such disability is known or reasonable should be

18     known to the person committing the crime; and who

19     during the course of the offense inflicts great bodily

20     injury upon such person.

21     (b) Subdivision (a) applies to the following

22     crimes:

23     (i) Murder.

24     (ii) Assault with intent to commit murder, in

25     violation of Section 217.

26     (iii) Robbery, in violation of Section 211.

27     (iv) Kidnapping, in violation of Section 207.

28     (v) Kidnapping for ransom, extortion, or robbery,

1    in violation of Section 209.

2        (vi)  Burglary of the first degree, as  defined in

3    Section 460.

4        (vii)   Rape by force or violence, in violation of

5    subdivision (2) of Section 261.

6        (viii)    Assault  with  intent  to  commit  rape,

7    sodomy, or robbery, in violation of Section 220.

8        (c)  The existence  of any fact which would make a

9    person    ineligible    for    probation    under    either

10    subdivision  (a)   or  (f)  shall  be  alleged   in   the

11    information or indictment, and  either admitted  by the

12    defendant  in  open court,   or found  to be  true by the

13    jury trying the issue of guilt  or by  the court where

14    guilt  is    established  by  plea  of  guilty  or  nolo

15    contendere or by trial by the  court sitting  without a

16    jury.

17        (d) 'As used  in this section"great bodily injury"

18    means  "great  bodily  injury"  as  defined  in Section

19    12022.7.

20        (e) ·This  section   shall   apply  in  all  cases,

21    including ·those cases  where  the  infliction  of great

22    bodily injury is an element of the offense.

23        (f)  Except in  unusual cases  where the interests

24    of justice . would  be  best  served  if  the  person is

25    granted probation,  probation shall  not be granted to,

26    nor shall  the execution  or imposition  of sentence be

27    suspended for, any person convicted of having committed

28    one or more of the following crimes against a person 60

PSI3BS38.PSI                13

1    years of  age or older: assault with a deadly weapon or

2    instrument,. battery which  results  in  physical injury

3    which requires professional medical treatment, robbery,

4    or mayhem."

5    It is the undersigned officer's opinion that this  is not an

6    unusual case  where the interests of justice would be best served

7    if the defendant is granted probation.  Therefore the undersigned

8    officer would suggest that Penal Code Section 1202.09 prohibits a

9    grant of probation in this matter.

10    Inasmuch as the defendant was found  guilty of  two separate

11    felonies,  a  review  of  the  Judicial  Council  Rules and other

12    statutes which pertain to concurrent and consecutive sentences is

13    now deemed appropriate.

14    The first  to be  reviewed is  Penal Code  Section 654 which

15    addresses the alternative punishment issue.  That section reads:

16    "An  act  or  omission  which  is  made. punishable  in

17    different ways by different provisions of this code may

18    be punished under either of such provisions, but  in no

19    case  can  it  be  punished  under  more  than  one; an

20    acquittal or conviction and  sentence under  either one

21    bars prosecution for the same act or omission under any

22    other."

23    In this particular case,  in  Count  II,  the  defendant was

24    convicted  of  stealing  the  firearm  which  was also used in the

25    killing of the victim.  In addition to  that fact,  the defendant

26    was also  found guilty  of an additional enhancement for personal

27    use of that same stolen firearm.  It is the undersigned officer's

28    opinion that  the theft  and killing  offenses are offenses which

PSI3BS38.PSI                    14

continue the same general course of conduct and may indeed be encompassed in the same offense. For that reason it is the undersigned officer's opinion that a 654 P.C. problem may prohibit the Court from imposing consecutive sentences on the defendant for the grand theft conviction.

In that same vein Judicial Council, in its Rule 425, gave the following factual criteria for effecting a decision to impose consecutive sentences rather than concurrent sentences:

"(1)  The crimes and their objectives were predominately independent of each other;

(2)  The crimes involved separate acts of violence or threat of violence;

(3)  The crimes were committed at different times or separate places, rather than being committed so close in time and place as to indicate a single period of aberrant behavior:

(4)  Any of the crimes involved multiple victims;

(5)  The convictions for which the sentences are to be imposed are numerous:

(6)  Any circumstances in aggravation or mitigation;

In this case the following facts appear to apply:

(1)  The crimes in both counts had the same overall objectives and were predominately dependant on each other;

(2)  The crimes apparently involved no separate acts of violence;

(3)  The crimes were committed so close in time and place as to indicate a single period of aberrant behavior;

1   (4) Neither crime involved multiple victims;

2   (5) Given the potential 654 P.C. problems the defendant

3     could be sentenced on two counts plus one enhancement;

4     however, there is some question as to whether more than

5     two of those offenses could actually be run

6     consecutively;

7   (6) The undersigned officer has suggested that two factors

8     in aggravation be found to be true as well as one

9     factor in mitigation.

10  Therefore, as to the current offenses, it would appear that

11 in applying the Judicial Council's Rule 425, the offenses of 187

12 P.C. and 487(3) P.C. should be run concurrently.

13  As to the enhancement charged in this case, Judicial Council

14 Rule 445 reads:

15  "Procedure in Striking Enhancements

16   The sentencing judge should not strike an

17  allegation what was charged and found under Section

18  667.5, 12022, 12022.5, 12022.6 or 12022.7. If he finds

19  that there are circumstances in mitigation, he may

20  strike the additional term of imprisonment provided as

21  an enhancement by the applicable section."

22  Under the Advisory Committee Comment section the following

23 information was provided:

24  "Advisory Committee Comment:

25   Under the law in effect prior to July 1, 1977, the

26  court had no discretion concerning the imposition of

27  additional terms prescribed for being armed with a

28  deadly weapon or using a firearm. The practice

PSI3BS38.PSI      16

1    therefore arose of striking the allegation giving rise

2    to those additional terms, when the sentencing judge

3    felt the additional term would be excessive; this

4    action was taken under section 1385. See, for example,

5    People v. Dorsey (1972) 28 Cal.App.3d 15.

6        Because the court now has discretion to strike the

7    punishment (1170.1(g)), there is no necessity for

8    following the old practice of striking the allegation;

9    and by urging that it be left intact this section

10   should help ensure that the record accurately reflects

11   the fact found by the judge and jury in the event that

12   defendant commits further crimes.  E.g., section

13   1203(d)(6) (effect on probation eligibility of prior

14   felony while armed).

15       This rule applies only when the court merely

16   determines that the additional term of imprisonment

17   provided as an enhancement should not be imposed.  The

18   advisory 'should' is used, and there is no intention to

19   negate the inherent and independent judicial power,

20   under section 1385, to strike the allegation when that

21   action is deemed necessary 'in furtherance of justice.'

22   People v. Tenoris (1970) 3 Cal.3d 89. (section 1385

23   dismissal as an exercise of judicial sentencing

24   discretion); but see People v. Orin (1975) 12 Cal.3d

25   937 (power must be exercised reasonable)."

26   In this particular case the enhancement charged, 12022.5 of

27   the Penal Code, is listed in Rule 445 as an enhancement which

28   should not be stricken.  However, the rule merely suggests that

1    action with a _should_ and does not mandate it with a _shall_.

2    Further, the avenue is still left open if the Judge finds

3    circumstances in mitigation to warrant the striking of the

4    additional punishment or punishments.

5       As stated previously there appear to be two factors in

6    aggravation 421(a)(3), 421(a)(12). There also is a factor in

7    mitigation under Rule 423(b)(6). Given all of the circumstances

8    of this particular case, it is the undersigned officer's opinion

9    that the two year enhancement should not be stricken. However,

10   it is quite apparent that pursuant to Section 1170.1 of the Penal

11   Code the Court does have some discretion and at least three

12   possible sentencing dispositions.

13      First, the Court could sentence the defendant to state

14   prison for 15 years to life for the 187 P.C. offense. Further,

15   the Court could also strike the 12022.5 P.C. enhancement and run

16   the 487(3) P.C. charge concurrently for a total sentencing of 15

17   years to life for the 187 P.C. offense.

18      The Court could also impose the two year enhancement for the

19   12022.5 P.C. charge and run the 487(3) P.C. offense concurrently

20   for a total sentence of 15 years to life plus two years.

21      Thirdly, the Court could sentence the defendant to state

22   prison for 15 years to life for the 1987 P.C. offense. Further

23   the Court could also impose the two year enhancement for the

24   12022.5 P.C. charge and run one third of the middle term of the

25   487(3) P.C. offense consecutively for a total sentence of 15

26   years to life plus two years, eight months.

27      Fourthly, inasmuch as the defendant is facing a maximum term

28   of life imprisonment, it would appear that Section 3000.1 of the

PSI3BS38.PSI           18

1  Penal Code allows for a possible lifetime period of parole.
2  Therefore a review of that section is now deemed appropriate.
3  That section reads in part:

4      3000.1    Lifetime Parole for Person Sentenced to Life
5      Imprisonment.

6          (a)  In the case of any inmate sentenced under
7      Section 1168 for any offense of first or second degree
8      murder with a maximum term of life imprisonment, the
9      period of parole, if parole is granted, shall be the
10     remainder of the inmate's life.

11         (b)  Notwithstanding any other provision of law,
12     when any person referred to in subdivision (a) has been
13     released on parole from the state prison, and has been
14     on parole continuously for seven years in the case of
15     any person imprisoned for first degree murder, and five
16     years in the case of any person imprisoned for second
17     degree murder, since release from confinement, the
18     board shall, within 30 days, discharge such person from
19     parole, unless the board, for good cause, determines
20     that such person will be retained on parole.  The board
21     shall make a written record of its determination and
22     transmit a copy thereof to the parolee.

23         (c)  In the event of a retention on parole, the
24     parolee shall be entitled to a review by the board each
25     year thereafter.

26         (d)  There shall be a hearing as provided in
27     Sections 3041.5 and 3041.7 within 12 months of the date
28     of any revocation of parole to consider the release of

1   the inmate on parole, and notwithstanding the

2   provisions of paragraph (2) of subdivision (b) of

3   Section 3041.5, there shall be annual parole

4   consideration hearings thereafter, unless the person is

5   released or otherwise ineligible for parole release.

6   The panel or board shall release the person within one

7   year of the date of the revocation unless it determines

8   that the circumstances and gravity of the parole

9   violation are such that consideration of the public

10  safety requires a more lengthy period of incarceration

11  or unless there is a new prison commitment following

12  conviction.

13       (e) The provisions of Section 3042 shall not

14  apply to any hearing held pursuant to this section."

15       In reviewing the defendant's competency evaluations prepared

16  by Dr. Leek and Dr. Thomson the following background information

17  was gleaned:

18  1.   At age three the defendant witnessed his mother's

19       murder by his uncle/father.

20  2.   The defendant was in juvenile hall for setting fires.

21  3.   The defendant reported that he was physically abused by

22       foster parents.

23  4.   The defendant had one brother who is now dead from

24       asthma and five sisters; one sister was killed when she

25       was attacked by a thief on the street.  Both brother

26       and sister had mental problems and had been

27       hospitalized.

28  5.   The defendant's stepfather is mentally deranged and in

PSI3BS38.PSI                    20

1    a mental hospital in New York City.    He was a heavy

2    drinker.

3    6.    The defendant once sought to kill his uncle/father;

4    however, when he met him he felt sorry for him and

5    changed his mind. His uncle/father died while in his

6    sixties to seventies.

7    DISCUSSION AND EVALUATION:

8    The undersigned officer suggests that the attached facts

9    according to Rules 421, 423, 414, and 425 apply.

10   ENHANCEMENTS:

11   The following enhancement was charged and proven:

12   1.    12022.5 of the Penal Code - personal use of a firearm

13   (2 years)

14   ANALYSIS AND PLAN:

15   Appearing before the Court is a 27 year old man who was

16   found guilty of murder in the second degree. Further, he was

17   found guilty of grand theft as well as personally using a firearm

18   in the commission of a crime. The defendant had previously

19   admitted that the victim was over the age of 60 years, thereby

20   prohibiting probation in this matter unless the Court were to

21   declare this an unusual case and that the best intent of justice

22   would be served by granting probation to the defendant.

23   The crimes stemmed from the defendant leaving his campsite

24   early in the afternoon. The defendant apparently went to the

25   victim's campsite and began drinking with him. Later that

26   afternoon the defendant took the victim's pistol and shot him

27   twice in the head. The defendant then drove the victim's pickup

28   truck to his own campsite and later returned the pickup to the

1  victim's campsite. On the way to Downieville to report the

2  discovery of a dead body, the defendant had his friend stop the

3  van and the defendant threw the weapon and other items down a

4  ravine. After reporting the discovery of the body, the defendant

5  was later arrested for burglary and then murder.

6  In reviewing the case file in this matter it is quite

7  apparent that the defendant is a young man who has "a very long

8  history of emotional deprivation, instability and institutional

9  rearing." Since the age of three years the defendant has seen

10 his mother murdered, been placed in 40 to 50 foster homes and

11 been placed in several different psychiatric wards for various

12 periods of time. Further, the defendant has also been physically

13 abused while at his home as well as in foster homes.

14 Furthermore, in addition to losing his mother, the defendant has

15 also lost a brother and a sister. In short, the defendant is not

16 a stranger to traumatic experiences.

17 While one can only begin to estimate what these types of

18 traumas can do to a young individual, one thing is certain: the

19 defendant is accustomed to death and emotional tragedy. Another

20 interesting point is that the defendant apparently once vowed to

21 search out and kill his uncle/father who, apparently when he

22 died, was approximately the same age as the victim. This factor

23 is not being suggested as an excuse for the defendant's behavior,

24 for the taking of another's life in this type of circumstance is

25 unexcusable, but as an item of information which hopefully may

26 allow the Court a broader avenue in its attempt to understand the

27 defendant.

28 As far as alternatives for the Court in this matter it is

PSI3BS38.PSI                          22

1  quite apparent that legislation has destined the eventual final

2  outcome of this matter. Indeed, unless the Court were to declare

3  this an "unusual case" the Court must sentence the defendant to

4  state prison. So now the matter really is, "for how long?" In

5  reality, the Court's only real discretion is whether the Court

6  should impose any or all of the addition two years and eight

7  months which may potentially be possible for the enhancement and

8  consecutive sentencing of the subordinate term.

9      In reviewing all of the pertinent information, it is the

10 undersigned officer's opinion that the defendant should be

11 sentence to the second degree 187 P.C. offense, with an

12 additional two year consecutive enhancement, and with the grand

13 theft charge running concurrently. Hopefully the young defendant

14 will utilize the psychiatric resources of the Department of

15 Corrections and start his own healing process in an attempt to

16 resocialize himself back into society once his sentence is

17 completed. Without that, both the defendant and society will

18 eventually dread his release back onto the streets.

19     If the Court were to sentence the defendant to state prison

20 the following would be suggested:

21 | Crime | Mit. | Agg. | Base Term | Enhance. | Term |
   |---|---|---|---|---|---|
22 | Count I<br>187 P.C.<br>2nd degree | no | no | 15 yrs. to<br>life | 12022.5 P.C.<br>2 yrs. | 15 yrs. to<br>life plus<br>2 yrs. |
24 | | | | | | |
25 | Count II<br>Grand Theft | no | no | 2 yrs.<br>concurrent | none | 2 yrs.<br>concurrent |
27 | | | | | Total = | 15 years to life<br>plus 2 years. |

RECOMMENDATION:

Taking into consideration all of the aforementioned information, it is respectfully recommended that the defendant's, Scott Steven Burns', application for probation be denied. Further, that for Count I, a violation of Section 187 of the Penal Code, murder in the second degree, the defendant be sentenced to state prison for fifteen (15) years to life. Moreover, that for the enhancement of 12022.5 of the Penal Code, personal use of a firearm, the defendant be sentenced to an additional two (2) years consecutively to the fifteen years to life sentence.

As to Count II, a violation of Section 487(3) of the Penal Code, grand theft, the defendant be sentenced to the middle term of two (2) years in state prison; said sentence to be run concurrently with Count I and the 12022.5 P.C. enhancement.

Further, that the defendant should:

1. Be ordered to pay a restitution fund fine in the amount of Five Thousand Dollars and 00/100 ($5,000.00) pursuant to Section 13967 of the Government Code;

2. Be advised of a possible lifetime period of parole.

Respectfully submitted,

Pete Villarreal, Jr., Ph.D.
Chief Probation Officer
Sierra County

DATED:    October 18, 1988

PSI3BS38.PSI                    24

# EXHIBIT D

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
SEPTEMBER 2005 CALENDAR

BURNS, SCOTT                                                    D99247

## I.  COMMITMENT FACTORS:

**A.**    **Life Crime:**  Murder 2nd Degree, PC 187 with Use of Firearm, PC 12022.5 Weapon: .22 Caliber Ruger revolver. Sierra County Superior Court Case No. 4161-A. Victim: Robert Smith, more than 60 year old person. Date received by CDC 10/31/88. Sentence: 15 years base term 2 years enhancement for total term of 17 years to Life. MEPD: 12/7/98.

1.    **Summary of Crime:**  On 6/7/87, early in the afternoon, Burns left his campsite, went to the victim's campsite and began drinking with him. Later that afternoon, Burns took Robert Smith's (victim) pistol and shot him twice in the head. Burns then drove Smith's pickup truck to his own campsite and later returned the pickup to Smith's campsite. On the way to Downieville Sheriff's Office to report the discovery of a dead body, Burns had a friend stop the van while Burns threw the weapon and other items down a ravine. After reporting the discovery of the body, Burns was later arrested for Burglary and then Murder. Information obtained from POR, pages 21 and 22.

2.    **Prisoner's Version:**  In an interview with this author on 6/24/05, Burns reiterated that the following is his version of the instant offense. Burns stated that he went to the victim's campsite to have some beers. He tried to buy an old pistol from the victim but he didn't want to sell it. Burns and the victim argued and continued to drink until the victim passed out. Burns took the pistol, shot the victim and left the trailer with the victim's pistol. Burns stated that he went to the Sheriff's Office to report the crime but he got scared and just reported the discovery of the dead body. Later, when the officers came to his campsite to question him about the pistol which wasn't at the scene, he confessed to shooting the victim and throwing the pistol into a ravine. During the recounting of the incident Burns showed remorse for the victim and stated that what he did was stupid and senseless.

3.    **Aggravating/Mitigating Circumstances:**

a.    **Aggravating Factors:**


COPY TO INMATE ON Aug 16 2005

LIFE PRISONER EVALUAT    REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
SEPTEMBER 2005 CALENDAR

- The victim was particularly vulnerable due to his age.

- During the commission of the crime, the prisoner had a clear
  opportunity to cease but instead continued.

- The murder was senseless and served no purpose in completing
  that crime.

     b.    **Mitigating Factors:**

- The prisoner has a minimal history of criminal behavior.

**B.**    **Multiple Crime(s):**  N/A.

    1.    **Summary of Crime:**  N/A.

    2.    **Prisoner's Version:**  N/A.

**II.**    **PRECONVICTION FACTORS:**

**A.**    **Juvenile Record:** None.

**B.**    **Adult Convictions and Arrests:**  Burns was arrested on 2/5/79 for Disorderly
Conduct and released with time served. On 12/23/80 he was convicted of Burglary
3rd Degree which resulted in a ten month county jail sentence and probation.
Information obtained form POR, page 11.

**C.**    **Personal Factors:** Burns was born out of an incestuous relationship between his
mother and her brother. In 1963, when he was just three years old, he witnessed
his father/uncle shoot his mother to death. His mother's husband then began
raising the seven children, but within six months all of the children were taken
away because of abuse and neglect. All of the children, of which Burns was the
youngest, were separated and placed in foster homes and shelters. Between the
ages of three and twelve, Burns was labeled an uncontrollable and hyperactive
child and was placed in 40 to 50 different foster homes or group homes. The
normal cycle was foster home placement and then a psychiatric ward and then to
another foster home. When he was 16 to 17 years of age he was receiving SSI and
petitioned the court to be emancipated, which was granted. After that he rode the
Greyhound bus around the United States and settled in San Francisco. Burns
attempted suicide about ten to twelve times in his life. Those attempts included
ramming his head against the wall to fracture his skull, an overdose of
medications, as well as cutting the veins in his arms. Burns once sought to search
out and kill his father/uncle, however, when he met him he felt sorry for him and

LIFE PRISONER EVALUAT    REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
SEPTEMBER 2005 CALENDAR

changed his mind. His father/uncle died while in his sixties to seventies, which interestingly was approximately the same age as the victim.

III.    **POSTCONVICTION FACTORS:**

A.    **Special Programming/Accommodations:** None.

B.    **Custody History:** Documents from the previous hearing(s) have been considered and that information remains valid. During this period of review, Burns remained at CTF Soledad and was housed with the general population. Burns has continued with his assignment as a student in Education/G.E.D. Preparation. CDC 128E dated 6/29/04 cites that Burns is focused and has passed 4 out of 5 tests required to receive his G.E.D. Certificate.

C.    **Therapy and Self-Help Activities:** During this period of review, Burns successfully completed courses in the Cause, Prevention, Treatment, and Management of HIV/AIDS and Hepatitis (per CDC 128B's dated 2/11/04 and 5/21/04). In addition, Burns received a Certificate on 5/21/04 reflecting that he successfully completed a course of instruction HIV/AIDS. Burns also continued his active participation in Alcoholics Anonymous, per CDC 128B's dated 3/19/04 and 1/18/05.

D.    **Disciplinary History:** Burns remained disciplinary free during this period of review.

E.    **Other:** On 5/28/04, a BPT hearing took place without Mr. Burns' presence, despite his written request to attend. However, the BPT made the following decision and recommendations: 2 year denial of parole with recommendations to stay disciplinary free (no more 115's or 128A's), get self help, and get a G.E.D. A new Psychological Evaluation Report was also ordered. BPT 1138 form dated 8/16/04 indicates that the 5/28/04 BPT decision was to be disapproved and a new hearing was ordered for the next available calendar.

IV.    **FUTURE PLANS:**

A.    **Residence:** In an interview with this author on 6/24/05, Burns submitted updated parole plans. If paroled, Burns plans to reside with close friends and supporters Chris and Soj Aronson at 312 Ladera #1, Santa Barbara, Calif. 93101. Telephone (805) 560-3734 (see support letter dated 5/5/04 in Miscellaneous Section of C-File). It should be noted that Chris Aronson is a relative of Burns' cell mate Patrick Aronson (D44929). Soj Aronson authored a letter to Burns expressing her support of his continued participation in Alcoholics Anonymous. She provided Burns with addresses of local AA sites and states that if paroled, she will assist in

LIFE PRISONER EVALUAT'  ' REPORT
SUBSEQUENT PAROLE CO.. .SIDERATION HEARING
SEPTEMBER 2005 CALENDAR

making sure that Burns stays clean and sober attending AA meetings (see Miscellaneous section of C-File). In addition, Burns states that Robert Scott (brother of Burns' cellmate Patrick Aronson, D61888) and Cindy Scott are also willing to support Burns with clothing, food, and transportation. This support letter is also located in the Miscellaneous section of the Central File.

B. **Employment:** In an interview with this author on 6/24/05, Burns expressed that if paroled, he plans to seek employment in the field of office machine repair. He also plans to use his vocational training that he received in the Vocational Print Shop. With that training, he foresees employment in either the printing industry or desk top publishing. It should be noted that Burns does not have any formal job offers at this time. Burns states that Soj Aronson (supporter for residential assistance) is a source for potential jobs in that she works for a museum. Burns continued to add that he "could be trained as a museum tour guide or even a museum curator." Burns continue to add that Joyce Aronson has offered to help him financially until he is able to "take care of himself" (see support letter dated 5/21/04). This author notes that Burns commented that Joyce Aronson is the mother of Burns's cellmate Patrick Aronson, D61888. Burns states that Joyce Aronson is elderly (as Patrick Aronson is approximately 15 years older than Burns), but "financially well off". He further added that Aronson's family also "visits me and sends me packages."

C. **Assessment:** Considering the absence of firm employment related parole plans as well as alternate residential parole plans (other than the Aronson family), this author foresees some degree of difficulty for Burn's transitioning after parole. More extensive parole plans and updated letters of support are highly recommended.

V. **USINS STATUS:** Burns is a United States citizen.

VI. **SUMMARY:**

A. Prior to release the prisoner could benefit from:
   1. Upgrading educationally – (Obtaining a G.E.D).
   2. Formulating more viable employment related parole plans.
   3. Remaining disciplinary free.
   4. Continued participation in self-help and therapy.
   5. Alternate residence related parole plans (other than the Aronson family).

B. This Board Report is based on 3 hours of Central File research, an interview with Inmate Burns and incidental contact with the prisoner during this period of review.

LIFE PRISONER EVALUAT  REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
SEPTEMBER 2005 CALENDAR

    C.    Inmate Burns reviewed his Central File on 6/24/05 as verified by the CDC 128B
dated 6/24/05.

    D.    No accommodation was required per the Armstrong vs. Davis BPT Parole
Proceedings Remedial Plan (ARP) for effective communication.

LIFE PRISONER EVALUAT   REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
SEPTEMBER 2005 CALENDAR


_C. Ellison_____ 7-28-05_
C. Ellison,                    Date
Correctional Counselor I


_R. Leach_____ 8/1/05_
R. Leach,                      Date
Correctional Counselor II


_R. Pope_____ 8/5/05_
R. Pope,                       Date
Facility Captain


_D.S. Levorse, C&PR____ 8/8/05_
D.S. Levorse                   Date
Classification and Parole Representative

BOARD OF PRISON TERMS                                                                 STATE OF CALIFORNIA

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING

INSTRUCTIONS
  TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
  TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
      ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
| YEAR | BPT | PBR | REASONS |
| --- | --- | --- | --- |
| 4/2004 to 4/2005 | | | **PLACEMENT**: Remains at CTF Soledad and housed with the general population.<br>**CUSTODY**: MED A.<br>**VOC. TRAINING**: None noted.<br>**ACADEMICS**: Continued with his assignment as a student in Education/G.E.D preparation. CDC 128E dated 6/29/04 cites that Burns is focused and has passed 4 out of 5 tests required to receive his G.E.D Certificate. CDC 128B dated 3/4/05 reflects a total TABE score of 8.3<br>**WORK RECORD**: None noted.<br>**GROUP ACTIVITIES**: Burns successfully completed courses in the Cause, Prevention, Treatment, and Management of HIV/AIDS and Hepatitis (per CDC 128B's dated 2/11/04 and 5/21/04). In addition, Burns received a Certificate on 5/21/04 reflecting successful completion of a course of instruction in HIV/AIDS. Burns also continued his active participation in Alcoholics Anonymous, per CDC 128B's dated 3/19/04 and 1/18/05.<br>**PSYCH. TREATMENT**: None noted during this period.<br>**PRISON BEHAVIOR**: Remained disciplinary free.<br>**OTHER**: On 5/28/04, a BPT hearing took place without Mr. Burns' presence, despite his written request to attend. However, the BPT made the following decision and recommendations: 2 year denial of parole with recommendations to stay disciplinary free (no more 115's or 128A's), get self-help, and get a G.E.D. A new Psychological Evaluation report was also ordered. BPT 1138 form dated 8/16/04 indicates that the 5/28/04 BPT decision was to be disapproved and that a new hearing was ordered for the next available calendar. |

CORRECTIONAL COUNSELOR'S SIGNATURE   _C. Eltisaw, CCI_                     DATE _7-28-05_

BURNS, SCOTT          D99247          CTF-SOLEDAD          SEP/2005

BPT 1004 (REV 7/86)                          Page _1_

BOARD OF PRISON TERMS                                                                 STATE OF CALIFORNIA

CONTINUATION SHEET:  LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 4/2005 to 6/24/05 (Present) | | | **PLACEMENT:** Remains at CTF Soledad and housed with the general population. **CUSTODY:** MED A. **VOC. TRAINING:** None noted. **ACADEMICS:** Continued with his assignment as a student in Education/G.E.D. preparation. **WORK RECORD:** None noted. **GROUP ACTIVITIES:** Continued with his active participation in Alcoholics Anonymous. **PSYCH. TREATMENT:** None noted. **PRISON BEHAVIOR:** Remained disciplinary free. **OTHER:** None noted. |

ORDER:

☐ BPT date advanced by        months.
☐ PBR date advanced by        months.

☐ BPT date affirmed without change.
☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
☐ Previously imposed conditions affirmed.
☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

BURNS, SCOTT            D99247              CTF-SOLEDAD              SEP/2005

BOARD OF PRISON TERMS                                                                 STATE OF CALIFORNIA

BPT 1004 (REV 7/86)                          Page _2_

BOARD OF PRISON TERMS
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT                                STATE OF CALIFORNIA

☐  DOCUMENTATION HEARING

☒  PAROLE CONSIDERATION HEARING                                      **ADDENDUM**

☐  PROGRESS HEARING

INSTRUCTIONS
   TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
   TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
               ESTABLISHED, ie., 0-2  MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
| --- | --- | --- | --- |
| YEAR | BPT | PBR | REASONS |
| 8/03 to 4/04 (present) | | | **PLACEMENT:** CTF II, GP<br>**CUSTODY:** Med A<br>**VOC. TRAINING:** None.<br>**ACADEMICS:** GED Course, with good progress, latest 128E 12/31/03. TABE Results now above 7.0<br>**WORK RECORD:** None.<br>**GROUP ACTIVITIES:** Continues good AA participation, 128B 1/20/04. Hepatitis prevention course completed, 128B 2/11/04.<br>**PSYCH. TREATMENT:** None.<br>**PRISON BEHAVIOR:** Discipline free (since 8/7/92). No record of violent or aggravated RVR's.<br>**OTHER:** None. |

| CORRECTIONAL COUNSELOR'S SIGNATURE | DATE |
| --- | --- |
| *D. Wadleigh* | 04/12/04 |
| BURNS                    D99247                    CTF-SOLEDAD | |

SENT TO I/M ON ___4-22-04___

BPT 1004 (REV 7/86)

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT                    ADDENDUM


*D. Wadleigh*                04/12/04
D. WADLEIGH                      Date
Correctional Counselor I


_____        4-20-04
                                Date
R. Leach
Correctional Counselor II


_____        4-20-04
                                Date
R. Pope
Facility Captain


_____        Date
D.S. Levorse
Classification and Parole Representative


BURNS                   D99247              CTF-SOLEDAD

BPT 1004 (REV 7/86)

**EXHIBIT E**
**Part 1 of 2**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SIERRA

DATE & TIME:                    DEPT. NO.  :
JUDGE      :                    CLERK      :
REPORTER   :                    BAILIFF    :

# FILED

NOV 3 0 2006

SIERRA SUPERIOR COURT
BY _Dan E Hamilton_
DEPUTY CLERK

NATURE OF PROCEEDINGS: PETITION FOR WRIT OF HABEAS CORPUS - ORDER

The petition for writ of habeas corpus has been filed and considered.

IT IS ORDERED that the petition for writ of habeas corpus is DENIED.

Petitioner challenges the September 29, 2005 denial of parole to him by the Board of Parole Hearings.

Petitioner first claims that the 2005 denial of parole made his sentence grossly disproportionate to his commitment offense, in violation of California's cruel or unusual punishment prohibition. He argues that the time he has already served surpasses the 15 Cal. Code Reg. § 2402(c) matrix for second degree murder. He claims that he now is being punished as if he had committed first degree murder.

Not so. Petitioner was sentenced to 17 years to life in prison. That is an indeterminate term, that is commonly understood as meaning that petitioner could serve anywhere from 17 years to the rest of his life in prison, depending on whether he is granted parole at any point in time after he becomes eligible for parole. It is commonly understood that a defendant who receives such a sentence might never become suitable for parole and may well end up spending the rest of his life in prison. That the Board of Parole Hearings panel in 2005 found that petitioner is not yet suitable for parole does not somehow render his sentence excessive. Nor at this late date should he be able to now challenge the maximum punishment of life as constituting cruel or unusual punishment. Rather, petitioner should have done so in an appeal from the judgment, or in a timely filed habeas corpus petition challenging the judgment on cruel or unusual punishment grounds. At this point in time, years after the times for appeal and timely habeas have passed, such a claim should be barred under In re Robbins (1998) 18 Cal.4th 770, 811-812, 812 fn. 32 and In re Clark (1993) 5 Cal.4th 750, 774-775. Nor does it appear, in any event, that the particular circumstances of petitioner's crime, in which he took a pistol and shot an unconscious and defenseless victim twice in the head, render a maximum sentence of life imprisonment cruel or unusual in violation of Cal.

BOOK       :
PAGE       :                         SIERRA COURT
DATE       :
CASE NO.   :  6671
CASE TITLE:  In re Scott Burns
DISTRIB.   :              BY _____ Deputy

DATE: _____, 19____ COURT MET AT _____ |

TITLE: _____ |

NATURE OF PROCEEDINGS: _____ |

CONTINUATION PAGE OF ___ OF___ |

Const., art. I, § 17 (see, e.g., People v. Dillon (1983) 34 Cal.3d 441, 451). As such, the claim is denied (In re Bower (1985) 38 Cal.3d 865).

Petitioner next claims that there is no evidence in the record to support the Board panel's use of the commitment offense as a parole unsuitability factor, for being committed in an especially cruel and callous manner and for having a motive that was inexplicable and trivial compared to the offense. Petitioner claims that in the Third District Court of Appeal's opinion affirming the judgment, that court had stated that the nature of the offense "was neither sensational nor atrocious."

The standard for judicial review of a parole decision by the Board of Parole Hearings is that there is "some evidence" to support the decision (In re Rosenkrantz (2002) 29 Cal.4th 616 [decided when parole decision was made by former Board of Prison Terms]; see Superintendent v. Hill (1985) 472 U.S. 445, 456-457; In re Powell (1988) 45 Cal.3d 894, 903-904).

Although the Third District did not find the commitment offense to be "sensational" or "atrocious," that court's use of those terms does not necessarily comport with the 15 Cal. Code Reg. § 2402(c)(1) factor of unsuitability for when the offense is committed in an "especially heinous, atrocious or cruel manner," which has specific examples indicating a specific definition of the term that may well be different from the Third District's characterization. This factor of unsuitability can include the offense being carried out in a dispassionate and calculated manner, such as an execution-style murder, which the instant commitment offense was, petitioner having twice shot in the head an unconscious, defenseless victim. It can also include an offense carried out in a manner showing an exceptionally callous disregard for human suffering, which the instant commitment offense was, petitioner having left the victim for dead without attempting to obtain medical help and in attempting to cover up the crime. It can also include an offense for which the motive is inexplicable or very trivial in relation to the offense, which this offense was, as petitioner had no reason to kill the victim, not even to steal the victim's gun as petitioner could simply have walked away with it after the victim passed out, without any need to actually shoot and kill the victim in the process. And, although not mentioned at the hearing, the record of conviction shows that at trial, petitioner was acquitted of robbery and a robbery-murder special circumstance, indicating that the jury had rejected the theory that

BOOK     :
PAGE     :                          SIERRA COURT
DATE     :
CASE NO. : 6671
CASE TITLE: In re Scott Burns
DISTRIB. :                    BY_____Deputy

DATE: _____, 19____  COURT MET AT _____ |

TITLE: _____ |

NATURE OF PROCEEDINGS: _____ |

CONTINUATION PAGE OF ____OF____ |

petitioner had intended to steal the gun when he committed the murder, thus petitioner did not even have that as a motive for the crime; and, even if he did, despite the jury's rejection of that theory, petitioner chose not to keep the gun after all, and simply disposed of it after shooting the victim, as noted by the Board panel, which showed how little petitioner really desired to have the gun and how trivial his desire for it had ever been.    Thus, the Board panel's reliance on the "especially cruel and callous manner" is supported by "some evidence."

Petitioner next claims that there was nothing in the commitment offense to show that he had committed anything beyond that minimally necessary to convict for second degree murder.

The court need not determine whether this is so, as this would be relevant only to a claim that the Board panel had relied solely on the commitment offense in denying parole (see Rosenkrantz, supra).    The Board panel in this case, however, relied not only on the commitment offense but on numerous other factors as well, in denying parole, including petitioner's lack of self-help or therapy, lack of participation until only recently in any alcohol or substance abuse program, when the crime was alcohol-related, petitioner's numerous in-prison disciplinaries for failure to follow various rules, some of which were recent and which show a risk that petitioner would fail to follow rules while on parole, and petitioner's lack of firm employment plans.    As such, this claim is denied (Bower, supra).

Petitioner next claims that using "motive" to deny parole lacks sufficient constitutional procedures, and cites Carey v. Piphus (1978) 435 U.S. 247, 259 in support.

That case is irrelevant.    It concerns only whether 42 U.S.C. § 1983 litigants may recover nominal damages.    The claim is denied (Bower, supra).

Petitioner also claims that the Board panel otherwise erred in relying on motive.    This fails, however, as petitioner's lack of a substantial motive for the commitment offense is related to his criminality, and was supported by "some evidence" as discussed above.

BOOK       :
PAGE       :                         SIERRA COURT
DATE       :
CASE NO.   :  6671
CASE TITLE:  In re Scott Burns
DISTRIB.   :                    BY _____Deputy

DATE:_____, 19____  COURT MET AT_____|

TITLE:_____|

NATURE OF PROCEEDINGS:_____|

CONTINUATION PAGE OF ___OF___|

   Petitioner next claims that the Board panel's use of petitioner's prior criminality as a parole unsuitability factor was arbitrary and capricious.

   Not so.  Petitioner's history of criminality is directly relevant to predicting whether petitioner could be successful on parole or pose a risk of danger to society if released on parole.  That 15 Cal. Code Reg. § 2402(c) does not include an inmate's non-violent criminal record as a specifically listed unsuitability factor does not mean that such a record cannot be considered in the suitability determination.  15 Cal. Code Reg. § 2402(c) does not purport to set forth an exclusive list of unsuitability factors, and specifies that it acts only as a general guideline and "includes" what is listed, without precluding the Board panel from considering non-listed factors that are directly relevant to the suitability question.  The claim is denied (Bower, supra).

   Petitioner next claims that the Board panel erred in relying on a past conviction of robbery, that petitioner claims he never suffered, in denying petitioner parole.

   The Board panel does appear to have misspoken on this point, in rendering its decision.  During the first part of the parole hearing, the Board noted petitioner's past record of a burglary conviction, rather than robbery; petitioner, additionally, admitted to having committed innumerable burglaries to finance his marijuana habit.  The Board panel appears to have meant petitioner's past history of burglary, rather than robbery, in rendering its denial decision.  Had the Board panel realized its mistake, it is most likely that the panel would have instead relied on petitioner's past history of burglary and his admission to having committed innumerable other burglaries of which he was not convicted.  As such, it is not reasonably probable that absent the error, the Board panel would have reached a different result.  The claim, therefore, is denied (Bower, supra).

   Petitioner next claims that there was no evidence to support the Board panel's finding of an unstable social history.

   Not so.  The Board panel noted that at age 3, petitioner had witnessed his father, who was also his uncle, kill his mother; that thereafter

**BOOK**      :
**PAGE**      :                           **SIERRA COURT**
**DATE**      :
**CASE NO.**  :  6671
**CASE TITLE**:  **In re Scott Burns**
**DISTRIB.**  :                **BY**_____**Deputy**

DATE:_____, 19____ COURT MET AT_____|

TITLE:_____|

NATURE OF PROCEEDINGS:_____|

CONTINUATION PAGE OF ___OF___|

petitioner was moved from 40 to 50 foster homes; that thereafter petitioner engaged in drug use and criminality; that petitioner has practically no family of his own. That is "some evidence" of an unstable social history, and relates to a prediction of future risk to society if released on parole. The claim is denied (Bower, supra).

Petitioner next claims that the Board panel's reliance on petitioner's lack of sufficient programming, self-help, and therapy to learn how to cope with stress was arbitrary.

Not so. Whether petitioner will be able to obtain and retain realistic employment upon release is directly relevant to whether he would pose a risk to society if released. Whether petitioner has gained sufficient insight into his criminality and the reasons for his criminality, as well as other emotional problems that he may have and his problems with substance abuse, also are directly relevant to whether he would pose a risk to society if released. The question before the Board panel is whether petitioner is prepared enough emotionally and educationally to successfully survive in the outside world, without returning to criminality; lack of skills and insight, as well as lack of tools with which to cope and refrain from returning to substance abuse, indicate a low probability for such success. The claim is denied (Bower, supra).

Petitioner also complains that insufficient self-help programs are available. Petitioner, however, has been incarcerated since 1987, and the Board panel noted that he had done little if anything to avail himself of those programs that have been available throughout his incarceration, and had only recently sought out Alcoholics Anonymous. His failure to seek sufficient self-help over the years is supported by "some evidence" in the record.

Petitioner next claims that he has in fact upgraded educationally and in the self-help area.

That is not the query to be posed on habeas corpus. Rather, court review of the parole denial is limited to whether there is "some evidence" to support the Board panel's conclusion that petitioner has not

BOOK     :
PAGE     :                              SIERRA COURT
DATE     :
CASE NO. :   6671
CASE TITLE:  In re Scott Burns
DISTRIB. :              BY_____Deputy

DATE: _____, 19____  COURT MET AT _____|

TITLE: _____|

NATURE OF PROCEEDINGS: _____|

CONTINUATION PAGE OF ____OF___|

sufficiently upgraded educationally or in self-help. There is "some evidence" to support that, as petitioner still has not completed so much as a GED, and only in the past year or two had begun to attend Alcoholics Anonymous, despite his having been incarcerated since the 1987 commitment offense. The claim is denied (Bower, supra).

Petitioner next claims that his latest CDC-115 in-prison disciplinary does not constitute "some evidence" of predicting future dangerousness.

Not so. The 2002 CDC-115 disciplinary was for being out of bounds; other recent lesser disciplinaries were for failure to report and unexcused absence. These evidence that petitioner will have problems meeting his parole obligations, to regularly meet with his parole agent, to follow the rules and conditions of parole, and in general to follow the rules of society, both in employment and in general. That is "some evidence" that he would pose a risk to society if released on parole. The claim is denied (Bower, supra).

Petitioner next claims that the two-year denial is unconstitutionally beyond the scope of governing statutory/limiting language and therefore violates procedural due process. He gives no further explanation, other than to cast the claim as being a challenge to there being "some evidence" to support the two-year denial.

The Board panel's two-year denial was indeed supported by "some evidence," including the commitment offense, petitioner's past criminality, petitioner's substance abuse and failure to seek self-help for it or any of petitioner's other emotional problems, and petitioner's recent in-prison disciplinary record evidencing his inability to follow rules. The claim is denied (Bower, supra).

Petitioner next claims that his counsel was ineffective at the parole hearing. Petitioner claims that counsel failed to object to "the factual/legal errors" that petitioner "has identified the Board as having made," attempted to discourage petitioner from citing law to the Board, allowed the Board to make inaccurate or irrelevant findings, and failed to raise the issue of collateral estoppel.

BOOK      :
PAGE      :                          SIERRA COURT
DATE      :
CASE NO.  :  6671
CASE TITLE:  In re Scott Burns
DISTRIB.  :              BY_____Deputy

DATE: _____ , 19 ___ COURT MET AT _____

TITLE: _____

NATURE OF PROCEEDINGS: _____

CONTINUATION PAGE OF ____ OF ____

The only error the Board panel appears to have made is citing petitioner's conviction for "robbery," instead of burglary, in announcing its decision denying parole. As noted above, had the mistake been brought to the Board panel's attention, the Board panel would have corrected itself, relied on petitioner's past burglary conviction as well as his admitted other burglaries, and rendered the same decision of denial of parole. As for discouraging petitioner from citing law to the Board panel, that occurred only once when petitioner was attempting to explain why he had failed to seek self-help, and appears to have been a reasonable tactical choice by counsel; regardless, the matter was still discussed, and petitioner's point was conveyed that he should not be denied parole solely for failure to seek religious-based self-help, which did not occur. As or collateral estoppel, the only conceivable instance that would seem to apply would be to give such effect to the Third District's conclusion in its affirmance of petitioner's conviction on appeal, that the murder was not sensational or atrocious; that argument, however, was already rejected, above. Petitioner, however, does not even claim that, but instead focuses again on the Board's use of unchanging factors, meaning his commitment offense; that has no relation to collateral estoppel. As such, petitioner fails to show ineffective assistance of counsel, requiring denial of the claim.

Petitioner finally claims that the Board panel should not have relied on unchanging circumstances, meaning the commitment offense, in denying him parole.

This is another way to cast a claim that the Board panel improperly relied solely on the commitment offense in denying parole. As explained and rejected above, the Board panel did not rely solely on the commitment offense in denying parole, thus this claim is rejected.

The claims are all denied, and the petition is denied.

DATED: _Nov. 30, 2006_

_William W. Pangman_
JUDGE

William W. Pangman

BOOK
PAGE
DATE
CASE NO. CASE   6671
TITLE: DISTRIB. In re Scott Burns

SIERRA COURT

BY _____ Deputy

1    SCOTT BURNS (CDCR No. D-99247)
2    G-WING 312-UP, CTF-SOLEDAD (CENTRAL)
     P.O. 689
3    SOLEDAD, CA 93960-0689
4      (IN PRO PER)

**FILED**

JUL 3 1 2006

SIERRA COUNTY SUPERIOR COURT
BY *Jan Jawish*
                DEPUTY CLERK

8        IN THE SIERRA COUNTY SUPERIOR COURT
9     IN AND FOR THE STATE OF CALIFORNIA

13    <u>IN RE SCOTT BURNS</u>
14      SCOTT BURNS - PETITIONER
15      B. CURRY, WARDEN (A) - RESPONDENT

CASE NO. ~~6478~~ 6671
RE: Petition For Writ of Habeas
Corpus / Amendment —
SUPPLEMENT IN SUPPORT
THEREOF

**[ORIGINAL]**

<u>TABLE OF CONTENTS</u>

SECTION                                                          PAGE(S)

COVER PAGE _____ i
TABLE OF CONTENTS _____ ii
TABLE OF AUTHORITIES _____ iii - iiiiii
MC275 FORM FOR PRISONER HABEAS CORPUS _____ 1 - 31
    (VERIFICATION PAGE) _____ (31)
SUPPLEMENT TO HABEAS CORPUS _____ 32 - 81
    (INTRODUCTION) _____ (32)
    (JURISDICTION) _____ (33)
    (VENUE) _____ (33)
    (PARTIES) _____ (33)
    (REFERENCE TO FACTS) _____ (34)
    (CONTENTIONS) _____ (34-35)
    (POINTS + AUTHORITIES) _____ (36-78)
    (CONCLUSION) _____ (79)
    (PRAYER FOR RELIEF) _____ (80)
    (INDEX to EXHIBITS) _____ (81)

<u>EXHIBITS</u>

A: 9/29/2005 BPH PAROLE HEARING TX'S _____ (82-148)
B: USDOJ PRIOR RECORD _____ (149-151)
C: PSYCH REPORT _____ (152-156)
D: JANUARY 26, 2006 MEMO TO BPH COMMISSIONERS _____ (157-159)
E: EXCERPTS FROM 2004 GOVERNOR'S REPORT (TIME FROM 115'S) _ (160-168)
F: NOVEMBER 18, 2005 REPORT (PSYCH REPORTS/MENTAL HEALTH) _ (163-168)
G: CAL-DEPT. CORRECTIONS + REHAB. DEPT. OP. MANUAL EXCERPT (PSYCH) _ (169-172)
H: BPH Commissioner Biographies _____ (173-176)
I: 1998 Parole Hearing Decision (Reasons for Denial) _ (177-182)
J: 2001 Parole Hearing Decision (Reasons for Denial) _ (183-191)
K: AT-A-GLANCE 1998, 2001, 2005 HEARING EXCERPTS (AFFIDAVIT) _ (192-196)
L: ABSTRACT OF JUDGEMENT (LIFE/NON-LIFE OFFENSES) _ (197-200)

PROOF OF SERVICE BY MAIL _____ (201)
                                        TOTAL PAGES (201    )

ii

TABLE OF AUTHORITIES                    PAGE(S)

U.S. CONST.

U.S. CONST. AMEND. VI "ASSISTANCE OF COUNSEL" _____ 74
U.S. CONST. AMEND. VIII "CRUEL/UNUSUAL" _____ 37
U.S. CONST. AMEND. XIV DUE PROCESS _____ 37, 41, 45, 47, 52, 54, 50, 58, 62, 67, 70, 74, 78

FEDERAL CASE LAW

ARKANSAS –v– OKLAHOMA (1992) 112 S.Ct. 1046, 1060, 503US 592 ____ 48, 52, 61
ASTORIA FED. SAV. AND LOAN ASS'N –v– SOLIMINO (1991) _____ 75
    [ 111 S.Ct. 2166, 2168, 501 US 104 ]
BIGGS –v– TERHUNE (9TH Cir. 2003) 334 F3d 910, 2003 DJDAR 8863 ____ 77
CAREY –v– PIPHUS (1978) 435 US 247, 259, 98 S.Ct 1042, 1050 _____ 46
COLLINS –v– CITY OF HARKER HEIGHTS, TX. (1992) 112 S.Ct. 1061, 1070 __ 60
    [ 503 U.S. 116 ]
CONCRETE PIPE AND PROD. –v– CONST. LABORER'S UNION (1993) 113 S.Ct 2264, __ 50
    [ 2280 ]
CONNECTICUT NAT. BANK –v– GERMAIN (1992) 112 S.Ct 1146, 1149 _____ 65
    [ 503US 250 ]
COUNTY OF SACRAMENTO –v– LEWIS (1998) 118 S.Ct 1708, 523 US 833 ____ 53, 67
ENRICO'S, INC. –v– RICE (9TH Cir. Cal. 1984) 730 F.2d 1250, 1253 _____ 52
F.D.I.C. –v– MEYER (1994) 114 S. Ct. 996, 1001 _____ 66
GARNER –v– JONES (2000) 120 S.Ct. 1362, 1366, 529 US 250 _____ 69
In Re Cantrell (9TH Cir. 2003) 329 F3d 1119, 1123 _____ 75
In Re Haxman (9TH Cir. 2001) 250 F3d 1240, 1245 _____ 76
Iroms –v– Warden of C.S.P. Solano (USDC E.D. Cal. 2005) _____ 54
    [ 358 F.Supp 2d 936, 948 ]
JANCSEK –v– OREGON BD. OF PAROLE (9TH Cir. 1987) 833 F.2d 1389, 1390 _ 52, 57
JONES –v– MORAN 900 F.Supp 1267, 1271-72 _____ 61
HOWARD –v– U.S. (N.D. Al. 1994) 864 F.Supp 1197, 1200 _____ 67
LAKE MOHAVE BOAT OWNERS –v– NATIONAL PARK SERVICE _____ 62
    (9TH Cir. 1998) 438 F3d 759
LEE –v– WEISMAN (1992) 505 US 577, 587, 112 S.Ct 2649 _____ passim
    [ 120 L.Ed 2d 467 ]
McQuillion –v– Duncan (9TH Cir. 2002) 306 F.3d 895 _____ 43, 44, 46
Mixes –v– Sullivan (9TH Cir. 1992) 981 F.2d 1068, 1070 _____ 44
    [ cert. den. 113 S.Ct. 2993, 509 US 903 ]

iii

TABLE OF AUTHORITIES CONTINUED                    PAGE(S)

(FEDERAL CASE LAW CONT.)

MORRISSEY -v- BREWER (1972) 408 US 471, 481, 92 S. Ct. 2593, _____ 43
    [2600, 33 L. Ed 2d 484]

NEWMAN -v- APFEL (9TH CIR. 2000) 223 F.3d 937, 943 _____ 52

N.L.R.B. -v- As Kenazy Property Management Corp. (CA9. 1987) _____
    [811 F.2d 74]

OREGON NATURAL RESOURCES COUNCIL -v- LOWE (CA9, 1997) 109 F.3d 521, 526 _____ 49, 60

Pennsylvania DOC -v- Yeskey (1998) 524 US 206, 118 S. Ct. 1952, 1954 _____ passim

STRICKLAND -v- WASHINGTON (1984) 466 US 668, 104 S. Ct. 2052 _____ 71
    [80 L. Ed 2d 674]

SUPERINTENDENT -v- HILL (1985) 472 US 445, 105 S. Ct. 2768 _____ passim, 56
    [86 L. Ed 2d 356]

THOMPSON -v- DAVIS (9TH CIR. 2002) 295 F.3d 890, 898 _____ 54, passim

TURNER -v- HICKMAN (E.D. Cal. 2004) 342 F. Supp 2d 887, 896 _____ 62

UNITED STATES -v- CACERES (    ) 59 L. Ed 2d 733, 743 Fn. 14 _____ 41, 47, 51

Wolff -v- McDonnell (1974) 418 US 539, 94 S. Ct 2963, 42 L. Ed 2d 935 _____ 60, 43

Zinermon -v- Burch (1990) 110 S. Ct. 975, 983, 494 US 113 _____ 50
    [108 L. Ed 2d 100]


STATE CASE LAW

Adamson -v- Department of Social Services (Cal. App. 1 Dist. 1988) _____ 50
    [254 Cal Rptr 667, 672]

Cal. Hotel + Motel Ass'n -v- Indus. Welfare (Cal Sup. Ct. 1979) _____ 45, 54
    [157 Cal Rptr 840, 847]

Castillo -v- City of Los Angeles (Cal App 2 Dist. 2001) 111 Cal Rptr 2d _____ 77
    [87 0, 92 Cal. App. 4TH 477 rehg den.]

Galland -v- City of Clovis (Cal. Sup. Ct. 2001) 103 Cal Rptr 2d 711, 739 _____ 44, 46
    [24 Cal. 4TH 1003]

In re John E. Dannenberg (Cal Sup. Ct. 2005) 34 Cal 4M 1061 _____ 38, 42, 49
    [23 Cal Rptr 3d 417]

In re Deluna (2005) 126 Cal App 4TH 585, 598 _____ 57

In re Hypolite (Cal App 1st Dist. 1973) 108 Cal Rptr 751, 755 _____ 67
    [cert. den. 94 S. Ct 1449, 415 US 939, 39 L. Ed 2d 492]

ii iii

1       TABLE OF AUTHORITIES CONTINUED                    PAGE(S)
2           (STATE CASE LAWS CONT.)
3  In Re Jackson (Cal. 1985) 39 Cal 3d 464, 216 Cal Rptr 760 _____ 70
4  In Re Johnson (Cal App 4 Dist. 1995) 41 Cal Rptr 2d 449, 456 _____ 42,59
5  In Re Morill (2000) 125 Cal Rptr 2d 391, 102 Cal App 4TH 280 _____ 49
6  In Re Roberts (Cal. 2005) 31 Cal Rptr 3d 458, 467 fn.7 _____ 37
7  In Re Rodriguez (Cal. 1975) 14 C.3d 639, 649, 651, 653 _____ 38,39
8  In Re Rogers (Cal. 1980) 169 Cal Rptr 222, 28 Cal 3d 432 _____ 39
9  In Re Rosenkrantz (Cal. 2002) 128 Cal Rptr 2d 104, 138 _____ 59,61,66
        [29 Cal 4TH 616, 59 P.3d 174 cert. den. 123 S.Ct 1808, 155 L.Ed 2d 667] _
10 Nightlife Partners -v- City of Beverly Hills (Cal. App. 2 Dist. 2003) _____ 57
        [133 Cal Rptr 2d 234, 242, 108 Cal App 4TH 81]
11 In Re George Scott (Cal. App. 1 Dist. 2004) 119 Cal App 4TH 871, 15 Cal Rptr 3d 32 _ 47
12 In Re Seabock (Cal. 1983) 140 Cal App. 3d 29, 40; 189 Cal Rptr 310 _____ 68
13 In Re Williams (Cal. App. 3 Dist. 1975) 53 CA 3d 10, 13, 125 Cal Rptr 457 _ 40,68,69
14 People -v- Duran (Cal. App. 1, 1983) 189 Cal Rptr 595, 140 Cal App 3d 485 _____ 40
15 People -v- Wingo (Cal. 1975) 14 C.3d 182, 184 _____ 38
16 Terhune -v- Sup. Ct. (Whitley) (1998) 65 Cal App 4TH 864, 872 _____ 45,66
   Walsh -v- Kirby (Cal. 1974) 118 Cal Rptr 1, 8, 13 Cal 3d 95, 529 P.2d 33 __ 52
   In Re Powell (1988) 45 Cal. 3d 894 _____ passim
17

18                  STATUTORY CODES
19 Cal. Pen. Code §3041 (b) _____ 6A, 68
20 Cal. Pen. Code §3041.5 (b)(2) _____ 6A
21 Cal. Pen. Code §3041 (b)(2)(B) _____ 65
22 Cal. Pen. Code §3041.7 _____ 71
23 Cal. Pen. Code §5078 (a) _____ passim, 68

24                  CALIFORNIA CONST.
25 Article I. Sec. 17 "cruel or unusual punishment" _ 37, 40
26 Article I. Sec. 24 "cruel or unusual punishment _ 37, 40
27
28                      ¿¿¿¿¿

TABLE OF AUTHORITIES CONTINUED            PAGE(S)

CALIF. CODE OF REGULATIONS, TITLE 15 B

§2270 (d) _____ 66

§2402 (a) _____ 55

§2402 (b) _____ 60,61

§2402 (c) _____ passim

§2402 (c)(1) _____ 47

§2402 (c)(1,2,3,4) _____ 42,43

§2402 (c)(1)(E) _____ 47

§2402 (c)(2) _____ 48

§2402 (c)(3) _____ 51

§2402 (c)(5) _____ 62

§2402 (c)(6) _____ 55

§2402 (d) _____ passim

§2402 (d)(1) _____ 48

§2402 (d)(6) _____ 49

§2402 (d)(9) _____ 56

Name SCOTT BURNS

Address GW-312-Up, CTF-Soledad (Central)

P.O. Box 689

Soledad, CA 93960-0689

CDC or ID Number D-99 247

MC-275

## IN THE SIERRA COUNTY SUPERIOR COURT

## FOR THE STATE OF CALIFORNIA
(Court)

IN RE SCOTT BURNS

SCOTT BURNS
Petitioner

vs.

B. CURRY, WARDEN (A), et al
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. _____

(To be supplied by the Clerk of the Court)

[ORIGINAL]

### INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

PAGE 1 of 204

Penal Code, § 1473 et seq.,
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

- [ ] A conviction
- [X] Parole
- [ ] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [ ] Prison discipline
- [X] Other (specify): CALIFORNIA BOARD OF PAROLE HEARINGS UNCONSTITUTIONAL ACTIONS DEPRIVING LIBERTY INTEREST(S) W/O DUE PROCESS

1. Your name: SCOTT BURNS

2. Where are you incarcerated? CORRECTIONAL TRAINING FACILITY - SOLEDAD G-WING 312-U, CTF-CENTRAL, SOLEDAD, CA 93960-0689.

3. Why are you in custody? [X] Criminal Conviction  [ ] Civil Commitment

Answer subdivisions a. through i. to the best of your ability.

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Second Degree Murder, Grand Theft Firearm, Gun Enhancement

b. Penal or other code sections: Pen. Code §§ 187 (2nd Degree), 487(3), 120225

c. Name and location of sentencing or committing court: Sierra County Superior Court
P.O. Box 476   Downieville, CA 95936

d. Case number: 4161

e. Date convicted or committed: September 28, 1988

f. Date sentenced: October 28, 1988

g. Length of sentence: 17 years-to-life

h. When do you expect to be released? UNDETERMINED

i. Were you represented by counsel in the trial court? [X] Yes.  [ ] No.  If yes, state the attorney's name and address:
Donald J. Blake, Jr.
2175 Feather River Blvd., Oroville, CA 95965-5706

4. What was the LAST plea you entered? (check one)
[X] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?
[X] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6.  GROUNDS FOR RELIEF
    Ground 1:  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement."  (If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four.  For additional grounds, make copies of page four and number the additional grounds in order.)

Petitioner contends that the B.P.H. s denying parole on 9/29/05 made his sentence grossly disproportionate to the offense (penalty being excessive under facts/circumstances of convicted crime) in violation of Calif. Const. Article I Sections 17/24 prohibition against cruel or unusual punishment limitations

a.  Supporting facts:
    Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. If necessary, attach additional pages. CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See In re Swain (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time (when) or place (where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

(1) Petitioner was sentenced to 17 years to-life. Two years was due to a weapon enhancement.

(2) The 15-to-life term began 10/31/88 [EXH "A" p.1 l.9-10]

(3) From 10/31/1988 : Petitioner had his Initial Parole Hearing 1/29/98, a Subsequent Hearing 10/1/01 and the latest hearing 9/29/05 (about 17 years).

(4) Presuming, without arguing, Petitioner is minimally entitled 4 months of Post-Conviction Credit (CCR § 2410) for every year. 17 years × 4 months = 68 months credit (5 years 8 months). This presumption is made assuming the liberty interest in parole, there also exists a liberty interest in earned credits (e.g. Pen. Code § 2933).

* Ground 1 Facts Continued at Page(s) 4,5

b.  Supporting cases, rules, or other authority (optional):
    (Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

Please See Points + Authorities At Pages 37-40.

MC-275 [Rev. January 1, 1999]        PETITION FOR WRIT OF HABEAS CORPUS        Page three of six

1  GROUND 1 FACTS CONTINUED:

2  (5) ±17 years actual Prison Incarceration plus 5 years 8 months

3  credit is over 22 years (±22 years 8 months) as of 9/29/05.

4  (6) In Ground 2, post, Petitioner has established how the Parole

5  Board's actions are Contrary to the Appellate Courts findings,

6  not supported by unsuitability factors, and how his 2nd

7  Degree Crime is not beyond the limits of 2nd Degree

8  murder.

9  (7) The parole board has a suggested penalty matrix for

10  determining the term (i.e. CCR§ 2402(c)), which has a low

11  of 15 years and a high of 21 years. At no time did the

12  9/29/05 Parole board ever state that Petitioner's crime would

13  be punished beyond the CCR§ 2402(c) matrix, or that

14  there are aggravating circumstances.

15  (8) Petitioner's actual time in prison and to be awarded

16  credits exceed the 2nd Degree Murder matrix.

17  (9) Since Petitioner's 1/29/98 Initial Parole Hearing, he

18  has, at the time of the 9/29/05 hearing ±7 years 8 months

19  additional incarceration or since Petitioner's MEPD of ±10/31/98

20  ±6 years 11 months incarceration: either is beyond the 5 year

21  limitation for denials under Pen. Code §3041.5

22  (10) Petitioner's case is not: A death penalty case, life without the

23  possibility of parole, life with the possibility of parole or

24  25 years to life.

25  (11) Within the jurisprudence of California Legislature laws,

26  all second degree crimes are to carry less time than

27  their first degree counterpart.

28                    PAGE 4 of 20?

GROUND 1 FACTS CONTINUED :

(12) IF Petitioner is Granted Parole at his next hearing, and after the Governor's review period, he will have over 25 years credit (actual + post-conviction).

(13) At this time it is inevitable that Petitioner's 2nd Degree Murder conviction is now being punished so harshly that he is receiving 1st Degree Murder Punishment (25 years to life).

(14) It was not the intent of the Legislature to have Petitioner's earn so much post-conviction credit that if they are ever Found Parole Suitable, they would have so many credits that they would be overdue for release.

7. **Ground 2** ▓▓▓▓▓▓▓▓ *(if appli____le):*

Petitioner contends that there is no evidence in the record, to support
the B.P.H.'s use of the crime as a parole unsuitability factor, in
violation of procedural due process mandated by regulations, in light
of In Re John E. Dannenberg (passim), where United States -v- Caceres 59 L.Ed.2d
733, 440 US 741, 99 S.Ct. 1465 mandates adherence to Due Process procedures.

a. Supporting facts:

(1) ON 9/29/05 Petitioner had his 2nd Subsequent Parole Hearing.
   [EXH" A "]. Parole was denied. *(Next)*

(2) The First reason the BPH panel used to deny parole
   was:
   
   "The First reason will be the commitment
   offense. The commitment offense was carried
   out in an especially cruel and callous
   manner." — EXH" A " p.57 ℓ 11-14

(3) The only CCR §2402 (c)(1)(A-E) Factor used by the
   BPH to support their chosen CCR §2402 (c)(1)
   use of the crime as an unsuitability circumstance
   was motive (i.e. CCR§2402(c)(1)(E): "The motive for
   the crime was inexplicable and very trivial in relation
   to the offense." [Emphasis Added, E.A. hereafter]. — See
   EXH" A " p.57. Note: Petitioner will address "motive"
   in Ground 3 of this Petition, as additional and seperate
   analysis is believed to be needed; see, post.

   * Note: Ground 2 Facts Continued at Page. 7

b. Supporting cases, rules, or other authority:

   Please See Points + Authorities at Pages 41-45

PAGE 6 of 201

GROUND 2 FACTS CONTINUED 8

(4) After Petitioner's Criminal Conviction of 2nd Degree Murder, he did have a Direct Appeal to the Calif. 3rd Dist. Ct. of Appeals for California.

(5) In the Direct Appeal, People... ~ Burns Case No. 3 Crim C005520, decided 7/25/90. the Appellate Decision stated: [At p. 8/16]
"As revealed by our recitation of the facts, although the crime involved in the present case was grave, the nature of the offense was neither sensational nor atrocious. [E.A.]

(6) The Board's use of "Motive" is a make-weight rationalization to describe the character of the crime; however "motive" has nothing to do with describing the crime.

(7) There is nothing in the record before the Parole Board to substantiate any acts beyond those minimally necessary to convict for 2nd Degree Murder.

(8) The Board had a duty to look to the Appellate Record, as it is to use all relevant, reliable evidence. In the 5/28/2004 hearing, the BPH cited to the Appellate Record and thus had a duty to go by all relevant/reliable evidence related to the crime. In EXH "A" p. 8 & 11, the Panel claims they reviewed prior transcripts: thus, BPH Panel should have known about #(5), supra.

PAGE 7 of 20?

7. ▓▓▓▓▓Ground  3,  (if applicable):

Petitioner contends that the B.P.H.'s use of "motive", to deny parole suitability on 9/29/05, lacked sufficient Constitutional procedures under holding in Carey -v- Piphus (1978) 435 US 247, 259, 98 S.Ct 1042, 1050, to be valid under procedural due process when constitutionally inadequate under law.

a. Supporting facts:

(1) At Petitioner's 9/29/05 Parole Hearing, he was denied Parole (EXH"A" p. 57-63).

(2) Supporting the Board's use of the Circumstance of the crime, the Board used "motive."

(3) Specifically, at EXH"A" p.57 the Board claimed: "The motive for the crime was inexplicable and very trivial in relation to the offense." [E.A.]

(4) Nowhere in the "Decision" EXH"A" p.57-63 does the Panel address any motive.

(5) The Board's use of motive was contrary to law. Also, it was arbitrary.

/// 
/// 
/// 
/// 
/// 
///

* Ground 3 Facts Continued at Page  N/A

b. Supporting cases, rules, or other authority:

Please See Points and Authorities at Pages 46-47

MC-275 [Rev. January 1, 1999]    **PETITION FOR WRIT OF HABEAS CORPUS**    Page four of six

7. ▇▇▇▇▇ Ground  4  (if applicable):

Petitioner contends that the B.P.H.'s use of his prior criminality, as a parole unsuitability factor, is 'arbitrary and capricious' within the meaning (holding) of Arkansas -v- Oklahoma (1992) 112 S.Ct. 1046, 1060, 503 US 592, due to the B.P.H.'s failure to make a rational connection under guidelines governing when prior criminality is an unsuitability circumstance.

a. Supporting facts:

(1) At Petitioners 9/29/05 Parole Hearing (EXH "A"), he was denied parole (EXH "A" pp. 52-63).

(2) The Third Reason Petitioner was denied parole for, under Prior Criminality, was at page 58 of EXH "A" where the Panel stated:

"He failed to profit from society's previous attempt to correct his criminality. He was on adult probation and county jail and --r." lines 11-13.

(3) Regarding prior criminality, as an unsuitability factor the BPH has enacted CCR § 2402(c)(2), passim.

(4) Additionally, where the existance of certain prior criminality is not in the unsuitability section of CCR § 2402(c)(2), CCR § 2402(d) #'s (1,6) address other prior criminality as a circumstance tending to show suitability.

(5) Petitioner's prior criminality does not fall into scope and meaning of CCR § 2402(c)(2).

* Note: Please see Ground #4 Facts Continued, at page  10 .

b. Supporting cases, rules, or other authority:

Please See Points + Authorities at Pages  48-50

PAGE 9 of 201

GROUND 4 FACTS CONTINUED 8

(6)  An in depth discussion about Petitioner's prior
     criminality was had with the Panel (EXH "A"
     pp. 14 to 17 l 11).

(7)  Additionally, EXH "A" p. 58 l 14-15 claims as
     Petitioner's prior criminality as: "criminality which
     includes robbery." [E.A.]

(8)  Petitioner has never been arrested, let alone
     convicted of robbery. Thus, the Board Panel and
     Board's Review Unit have allowed false evidence
     into a State Record to allege Petitioner has an
     alleged "violent" prior criminality of robbery
     to justify use of CCR § 2402(c)(2).

(9)  Petitioner's Record of Prior Criminality record is
     attached at EXH "B".

(10) Upon information and belief, and thereon alleged,
     because Petitioner had Appointed Counsel to
     represent his interest at the hearing, no
     objection was made to prove the Board's
     arbitrary and capricious decision making that
     lacks any basis in fact. Failure to object
     may in fact be Ineffective Assistance of Counsel
     as: no lawyer should be allowed to perform when
     allowing false information to infect the proceedings
     and resulting prejudice is denial of parole based
     on false evidence, used cumulatively, to outweigh
     the parole unsuitability circumstances.

7. ▆▆▆▆ Ground __5__ (if applicable):

Petitioner contends that there is no evidence to support a finding of an "unstable social history" (CCR §2402(c), #(3)), and therefore it is arbitrary and capricious for the B.P.H. not to follow their own procedure under the holding of **United States - v- Caceres** 59 L.Ed2d 733, 743, 440 US 741, 99 Sct. 1465, which mandates administrative agency obey its procedures.

a. Supporting facts:

(1) At Petitioner's 9/29/2005 Parole Hearing (EXH "A"), the Board claimed he had an unstable social history.

(2) Under CCR§2402(c)(3) the Board has adopted regulations dealing with unstable social history.

(3) Conversely, as a suitability factor, the Board has adopted CCR§2402(d)(2), that apply to stable social history.

(4) When dealing with Petitioner's "social history" as a denial reason, the Board claimed: [As the Fourth Reason] p58 ] "He was on adult probation and county jail {12-15} and -- an unstable social history prior to -- criminality, which includes robbery." [E.A.]

(5) Nowhere, within the meaning of CCR§2402(c)(3), has the Board reasoned in its decision the rationale meeting their requirement under this regulation.

(6) The Board, in fact, is attempting to camouflage the same issue (prior criminality) so they can misuse it more than one time in a manner that is arbitrary, capricious, lacking basis in fact and contrary to law.

* Note: Ground 5 facts continued at Page! 12

b. Supporting cases, rules, or other authority:

Please See Points and Authorities at Pages __51-52__

MC-275 [Rev. January 1, 1999]      **PETITION FOR WRIT OF HABEAS CORPUS**      Page four of six

1  GROUND #5  FACTS CONTINUED:

2  (7) There is no evidence in the record that shows how

3      either any/cumulative aspects of adult probation, county jail,

4      equate to unstable social history.

5  (8) Other than the facts relied upon by the Board in # (4), is ures.

6      it is unknown what the Board Panel meant.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7. ▮▮▮▮ Ground  6  (if applicable):

Petitioner contends that the B.P.H.'s unsuitability rationale of Petitioner's allegedly limited program and insufficient self-help/ therapy is not supported by any evidence to establish that he is an unreasonable danger to society, and is thusly arbitrary with in holding of County of Sacramento -v- Lewis (1998) 118 SCt 1708, 523 US 833

a. Supporting facts:

(1) On 9/29/05 Petitioner was denied parole. (EXH " A ").

(2) As part of the totality of reasons to deny parole, the B.P.H. Panel spoke of Petitioner's program as follows and excepted from EXH " A " p.58 l 15-21 [5th Reason]:

"The prisoner has programmed in a limited manner while incarcerated. He failed to upgrade educationally and has not sufficiently participated in beneficial self-help and therapy programs. He failed to demonstrate positive change."

(3) The Psychologist has not scheduled Petitioner for any therapy and there is no need for any as the record shows it is unavailable! (See EXH " C " page 50 l 19-27 / page 51 l 1-3). Therapy could even be made a special condition of parole

(4) The parole board hasn't clarified how much/what sufficient participation in self-help is needed/required for parole.

* Ground 6 Facts Continued at Pages 14, 15

b. Supporting cases, rules, or other authority:

Please See Points + Authorities At Pages 53-54.

PAGE 13 f 204

GROUND 6 FACTS CONTINUED:

(5) Petitioner has in fact upgraded educationally, and it was recognized by the panel: (1) "AA or substance abuse the last two years"; (2) "[A] attendance in Anger Management although its old [-]"; (3) "Two completed vocations" — See EXH "A" p.60 l.8-17

(6) Which/what therapy the Board wants Petitioner to participate in is unknown.

(7) In the decision (EXH "A" p.59), the Board panel stated in regards to therapy, contrary to the panel's need for therapy finding:

   "It is noted that this psychological report did not address the issue of his need for further therapy and treatment with regards to substance abuse issues. And therefore another psychological evaluation will be requested in order to address those issues of substance abuse treatment program needs."

(8) Regarding the Board's regulatory factors related to Psychological issues, CCR §2402(c)(5) deals with "Psychological factors". Petitioner does not meet this criteria.

(9) According to a January 26, 2006 memo (EXH "D"), to the BPH's commissioners/deputy commissioners: Psychological Reports for subsequent life hearings for non-MHSDS inmates **will not** be generated thereafter." and "Psychological reports **shall not** be ordered for the purposes of evaluating parole suitability of non-MHSDS inmates." [EA., bold added]

PAGE 14 of 201

GROUND 6 FACTS CONTINUED:

(10) Petitioner is not a MHSDS patient within CDCR.

(11) Although Petitioner's parole hearing occured 9/29/05, the "Decision" was not final until on January 27, 2006. Thus, as the 1/26/06 memo was in effect before finality, it applied to the Board's findings of the hearing: and the review unit/ Governor should have reversed the Psych Report/ therapy issue.

(12) Additionally, the Panel's conclusory allegation that "He failed to demonstrate positive change" is belied by the record: Petitioner was continuing his education and had been participating in AA.

7. ~~Fifth State~~ Ground  7  (if applicable):

~~Petitioner contends that there~~ is no evidence in the record of his 9/29/05 parole consideration hearing to permit his last "serious" Rules Violation Report (CDC 115) to be "some evidence" within the meaning of ~~Superintendent v~~ Hill (1985) 472 US 445, 105 S.Ct. 2768, as indicia of reliability to predict future dangerousness, to be an unreasonable risk of danger to society under CCR §2402(a).

a. Supporting facts:

(1) On 9/29/05, denial of parole occured for many alleged reasons (See EXH "A" pp. 57-63).

(2) Chronologically, the sixth reason for denial is specifically located at p.58 of EXH "A", lines 21-24 as follows:

"Misconduct while incarcerated, he had two 128(a)'s, custodial counseling chronos, the last being in 2005, and three 115's, the last being in 2002."

(3) As part of the Board's CCR §2402(c) Circumstances Tending to Show Unsuitability, #(6) deals with institutional behavior post-conviction.

(4) Opposite, CCR §2402(c)(6), the Board also has CCR § 2402(d)(9) also related to institutional behavior — but as a suitability circumstance

(5) In the hearing (EXH "A" p. 49): "[Y]ou can't have 115's or 128's. It's not tolerated. It's not acceptable for us." l 26-27

* Note: Ground 7 Facts Continued at Page  17

b. Supporting cases, rules, or other authority:

Please See Points + Authorities At Pages  55-58

PAGE 16 of 201

MC-275 [Rev. January 1, 1999]     **PETITION FOR WRIT OF HABEAS CORPUS**     Page four of six

1    GROUND # 7  FACTS CONTINUED.

2    (6) The Board is failing to view the disciplinaries (115's)

3    in their proper context. In CCR § 2410 (c)(3) minor

4    disciplinary shall not necessarily prevent post-

5    conviction credit. Both out-of-bounds disciplinaries

6    were administrative (minor) and CDC 128-a's are

7    custodial counseling chronos (not even a

8    disciplinary."

9    (7) Petitioner's only "serious" CDC 115 was in the year 1992.

10   (8) Parole being denied because of disciplinaries,

11   where such disciplinary(ies) are not enough to

12   deny credit, is a misuse of minor disciplinary(ies).

13   (9) For this court's convenience, the chronology is

14                    128 (a)'s

15       a) 4/24/01 - FAILURE TO REPORT TO WORK

16       b) 10/29/03 — UNEXCUSED ABSENCE

17                    115's

18       c) 7/20/92  FAILURE TO REPORT TO JOB (SERIOUS)

19       d) 8/7/92  SELF-MUTILATION (SERIOUS)

20       e) 2/25/02  OUT-OF-BOUNDS (ADMINISTRATIVE)

21   (10) CDC 128 (a)'s are Custodial Counseling Chronos

22   and Administrative 115's are not serious within

23   the meaning of CCR § 2402 (c)(6).

24   (11) Petitioner has 13+ years since serious RVR's.

25   (12) Attached at EXH. "_E_" are excerpts from the 2004

26   Governor Schwarzenegger Parole Decision Report

27   that establish time periods for time since serious RVR's

28   being parole suitability circumstances.

                    PAGE 11 of 201

7. ▮▮▮▮Ground  8  (if applicable):

Petitioner contends that the B.P.H.'s identification of needed therapy/self-help
and coping. with stress is arbitrary and capricious parole unsuitability
criteria, which violates the **Arkansas — v— Oklahoma** (1992) 112 S.Ct. 1046, 1060,
503 U.S. 529 holding, because the B.P.H. panel has fictitiously created their
conclusion on unsupported facts contrary to Due Process procedures.

a. Supporting facts:

(1) On 9/29/05 Petitioner went to his parole hearing (EXH."A"),
and was denied parole (EXH."A" pp. 57-63).

(2) In denying parole elegibility, the 7TH reason the Board
of Prison Terms Panel denied parole by was for:

" The prisoner needs therapy or slash self-
help in order to face, discuss, understand and
cope with stress in a nondestructive manner.
Until progress is made, the prisoner continues
to be unpredictable and a threat to others. // p. 59 £ 26-
                                                                    p. 60 £ 4

(3) The record before the Panel included the Psych Report.

(4) The Board never states what type of "therapy" is
needed.

(5) The Psych Report doesn't mandate/require any therapy
(See EXH" C ").

(6) Further, the Board doesn't specify what "Self-help"
program is required before a parole date will be set.
They recommend/advise more anger management classes (EXH"A" p. 60
l. 16-19).

* Note 8 Ground 8 Facts Continued at Pages 19-21

b. Supporting cases, rules, or other authority:

Please See Points and Authorities at Pages 59-63

1  GROUND # 8  FACTS CONTINUED 8

2  (7) CCR§2410 (c)(2) , discusses what the Board considers

3  as "Self-Help and Rehabilitative Programs". Specifically

4  they refer to CDC Rules 3040 and 3041 (i.e. CCR§3040,

5  §3041). Since Petitioner's incarceration, he has participated

6  in the CCR§3040 §3041 programs: as assigned.

7  (8) Petitioner is coerced into Alchoholics Anonymous participation:

8    — "AA is ... a program that's available to you." — p. 47

9     l 7-10 of EXH " A ".

10   — " So I perfectly understand that you might not want

11    to participate in AA. But if that's the only game

12    in town and you might derive some benefit from

13    it, then I would encourage you to do so. And I

14    can also assure you that if you do receive a

15    denial it is not going to be because you are not

16    participating in AA." p. 47 l 12-19

17   — "Well (indiscernible) to make it more clear, that

18    will not be the only reason, that — " p. 47 l

19    20-22 [Emphasis Added]

20   — " Yeah. Yeah." p. 47 l 23-24

21  [NOTE: THE AFOREMENTIONED QUOTES ARE BY COMMISSIONER ST.

22        JULIEN AND DEPUTY COMMISSIONER MEJIA]

23  (9) Attorney Christensen: "Have you ever had any one-on-one

24  therapy that focused on your childhood?" EXH " A " p. 50 l 8-10.

25  Inmate Burns: "No. They've never offered it." p. 50 l 11-12. "Nothing's

26  available here?" p. 50 l 13-14. " Right, at this facility." p 50 l 15

27  "That's true." p. 50 l 16.

28                    PAGE 19 of 201

GROUND #8 FACTS CONTINUED:

(10) Attorney Christensen: "He would need to be in the Triple CMS -- " Presiding Commissioner St. Julien: "Yeah." Attorney Christensen: "-- program." Inmate Burns: "And I'm not Triple CMS." Presiding Commissioner St. Julien: "That's too bad." - EXH "A" p. 5ℓ24 - p. 5ℓ23.

(11) According to CCR§ 2410(c), lack of self-help/ rehabilitative programs shall not necessarily prevent the granting of post conviction credit. Therefore, if the availability of programs is minimal, the use of minimal participation cannot be used to deny parole suitability.

(12) In EXH. "A" p. 42 ℓ15-17:
"[S]ubstance abuse is a problem. And it appears that you haven't really taken the steps to deal with that in the last 17 years."

(13) Where the State isn't providing any substance abuse program that is/has been available, Petitioner should not have to participate in the religious based AA.

(14) Psychotherapy is currently unavailable to Petitioner.

(15) Petitioner has no mental health disorder.

(16) Petitioner has no violent behavior or drug problems in about 17 years.

(17) There is not one iota of evidence that Petitioner has any history of coping with stress in a destructive manner: thus, the B.P.H.'s conclusion (#(2) supra) is belied by the record.

PAGE 20 of 201

GROUND #8 FACTS CONTINUED

(18) Petitioner stated he had no disabilities. [EXH "A " p. 3]

(19) The Board's decision (A(2) supra, Gnd. 8) has concluded medical treatment is needed , via therapy/self help. so Petitioner's daily major life function of coping well enable him to deal with stress in a non-destructive manner. Effectively, the board has stated your medical problem is preventing you parole to Petitioner.

(20) ATTACHED at EXH "F" is a November 18, 2005 letter type memo/policy. EXH "D" JANUARY 26, 2006 LETTER/MEMO FURTHER expounded on the policy.

(21) Notwithstanding the Parole Board's policy(cies) about Psych Reports, the California Department of Corrections and Rehabilitation has CDC D.O.M. § 62090.13 , et seq. (See EXH "G") which explicitly explains the purpose and scope of Psych Evaluations.

(22) As the record reflects Commissioner Tracey L. St. Julien was present at Petitioner's 9/29/05 hearing (EXH "A"). Attached at EXH "H" is an excerpt of Commissioner Biographies , which includes Commissioner St. Julien's.

(23) Nothing in Commissioner St. Julien's biography establishes that she can conclude contrary to the Psych Reports risk assessment.

(24) The finding of therapy/self-help is a makeweight rationalization in search of justification for support of their Panel decision.

PAGE 21 of 201

7. ▓▓▓▓▓▓ Ground  9  (if applicable):

Petitioner contends that the B.P.H.'s regulatory multi-year parole denial, during his last parole hearing, is unconstitutionally beyond scope of governing statutory/limiting language, violating the U.S. Const. Amend. 14 "procedural due process" doctrine, when quasi-judicial parole board fails to reasonably adhere to enabling legislation, which County of Sacramento v. Lewis (1998) 118 S.Ct. 1708, 523 US 833 forbade abuse of power under Due Process.

a. Supporting facts:

(1) At Petitioner's 9/29/05 Parole Hearing (EXH "A"), after the Board's rationale for denying parole (EXH "A" p.57 l.1 through p.60 l.23), a seperate decision was invoked to justify a multi-year parole denial (See EXH "A" p.60 l.25 and p.60 l.24 to p.62 l.6).

(2) Additionally, at EXH "A" p.63 l.9-10, the panel wants Petitioner to get a G.E.D. within the 2 years.

(3) Specifically, for purposes of this ground, Petitioner argues the following as the Board's Rationale not substantiated to justify another multi-year denial:

[REASONS]

[ONE] "The prisoner committed the offense in an especially cruel and callous manner wherein he shot the victim twice in the head." EXH "A" p.61 l.3-6

[TWO] "The offense was carried out in a dispassionate and calculated manner." p.61 l.6-7

[CONTINUED]

* Note: Ground 9 Facts Continued at Page  23

b. Supporting cases, rules, or other authority:

Please See Points and Authorities at Pages 64-70

PAGE 22 of 201

1   GROUND # 9 . FACTS CONTINUED.

2   [P3 cont.]

3       [THREE] "The offense was carried out in a manner

4                which demonstrates exceptional callous

5                disregard for human suffering." p.61 l 9-12

6       [FOUR] "The motive for the crime was inexplicable

7                and very trivial in relation to the offense."

8                p.61 l 12-14

8       [FIVE] "The prisoner has not completed the

9                necessary PROGRAM which is essential

10               to his adjustment and needs additional

11               time to gain such PROGRAMMING." p.61 l 14-17

12      [SIX] "It's like we have an issue about the

13               time that (indisceenible) deny you for

14               because of your 115's." - p.61 l 23-26

15  (4) Petitioner's Initial Parole Hearing Occured during

16      the year 1998 . At this hearing he was given

17      a 3 year denial. At this hearing occuring

18      on 1 /22 /98 , the Board of Prison teems used

19      both Petitioner's current offense and past criminality

20      to deny parole.

21  (5) Petitioner's 9/29/05 Parole Hearing occured approximately

22      7 years 8 months after his 1998 Initial Parole

23      Hearing.

24  (6) In the event that the Board wants Petitioner to

25      complete AA : AA is never complete as it is a lifetime

26      PROGRAM. He also has his G.E.D. now.

27  (7) No CDC 115 resulted in any criminal conviction.

28                    PAGE 23 f 201

7. ▓▓▓▓▓Ground 10 *(if applicable)*:

Petitioner contends that his right to effective assistance of counsel, under the 6ᵗʰ Amend., was denied by appointed counsel's actions meeting the two-prong test of Strickland v. Washington (1984) 466 US 668, 104 S. Ct 2052, 80 L ed 2d 674, thus: Ineffective assistance of counsel (IAC) at parole hearing.

a. Supporting facts:

(1) As a term-to-life prisoner in California, under the Determinate Sentencing Law (DSL), Petitioner gets appointed counsel for parole suitability hearings (See e.g. EXH "A").

(2) At parole suitability hearings, DSL inmates have the right to appointed counsel (See e.g. Penal Code § 3041.7, passim.)

(3) The lawyer that is to represent the DSL inmate, is there to protect the inmate's rights, represent the inmate's interest(s) at the parole suitability hearing, and includes, but is not limited to, the duty to enter relevant objections so as to correct the Board of Parole Hearings' Findings/ statements of law and/or fact.

(4) Although DSL inmates going before the BPH for parole suitability have the right to hire private lawyers, prisoners such as Petitioner, if they fall into the indigent category, will have/had BPH appointed and paid lawyer to represent him before the panel.

* Note: Ground 10 Facts Continued at Pages 25-27

b. Supporting cases, rules, or other authority:

Please see Points and Authorities at Pages 71-74

MC-275 [Rev. January 1. 1999]    **PETITION FOR WRIT OF HABEAS CORPUS**    Page four of six

GROUND 10 FACTS CONTINUED:

(5) At Petitioner's 9/29/05 hearing, he had Candice Christensen as his BPH appointed lawyer.

(6) On January 5, 2006, Michael Brady (Project Manager in charge of some of the class action legal proceedings), as assigned to work with the Board of Parole Hearings was deposed in the In Re Rutherford Marin County Class Action Habeas Corpus case. The Prison Law Office of San Quentin had an attorney there by the name of Mr. Keith Wattley. Mr. Brady/BPH were represented by the California Attorney General's Office's lawyers Anya Binsacca and Patricia W. Helm.

(7) At pp. 26-27 of the aforementioned Brady deposition, the following was stated by Mr. Brady as answers to the questions:                    [p. 26]

    Q. In the time you've been working with the board and the various capacities in which you've done that, have you become familiar with the process of appointing counsel for prisoners going to parole consideration hearings? - l 4 to 8

    A. Yes, I have. - l 9.

    Q. Have you identified any problems with that process? l 10-11

    A. Yes, we have. l 12

    Q. Can you explain what you've identified - l 13

    A. We believe that the training of the counsel that represents the -- represents inmates and life suitability hearings is inadequate. We have identified the appointment -- the timing of the appointments of inmates counsel is too short in order for the -- attorney to have adequate time to meet with and prepare for the hearing." l 14-20

1   GROUND 10 FACTS CONTINUED:

2   (8) Also, out of the Brady Deposition:

3                                  [P. 27]

4        "[T]he board is in the position where

5        they appoint -- they chose the attorneys

6        that represent the inmates and oversee

        them and discipline them[]"

7   (9) Petitioner adopts and incorporates by reference

8   thereto, the facts/points/authorities of Grounds

9   2-9, supra, in their independent/cumulative effect.

10  (10) Upon information and belief, and thereon alleged,

11  the facts of Grounds 2-9, supra, were

12  Known to Attorney Christensen (hereafter counsel)

13  before the hearing. This is because inmates

14  such as Petitioner release their file(s) to

15  lawyers representing them, who are presumed

16  Knowledgeable about parole hearings.

17  (11) Counsel did not enter any objection/correction

18  into the record, so as to point out the factual/

19  legal errors Petitioner has identified the Board

20  as having made.

21  (12) Counsel even attempted to discourage Petitioner

22  from citing law to the Parole Board [EXH "A" pp.

23  45-46].

24  (13) Counsel's performance allowed the Board to make

25  findings which Petitioner, upon information

26  and belief, has shown to be inaccurate

27  or irrelevant under Grounds 2-9, supra.

28                  PAGE 26 of 201

GROUND 10 FACTS CONTINUED:

(14) Premised on the fact that Counsel was a lawyer allegedly deemed unknowledgeable in the parole laws, the Points and Authorities of Grounds 2-9, supra, were allegedly known to her upon information and belief.

(15) Upon information and belief, further, Petitioner claims he is entitled to writ relief based on the Points and Authorities of Grounds 2-9, supra.

(16) Petitioner claims he was prejudiciously denied parole, as counsel failed to point out the legal bases of Grounds 2-9, supra, to the Parole Board.

(17) Presuming, without specifying, that the Board Panel would uphold the laws as cited by Petitioner, had they known of them prior to the hearing being over, their decision would not have reflected, upon information and belief, the illegal rationale to deny parole.

(18) Petitioner also adopts and incorporates Ground 11 facts and points/authorities by reference thereto. Counsel's performance should have brought to the attention of the parole board the doctrine of issue preclusion (administrative collateral estoppel). It was objectively unreasonable performance by counsel to let Petitioner be punished more than once for specific grounds. Prejudice has thusly arisen when the Parole denial is premised on issues that are contrary to law by the Parole Board.

///

PAGE 27 F 201

7. ~~████████~~ Ground _11_ (if applicable):

Petitioner contends that the Administrative Collateral Estoppel Doctrine as held in Astoria Federal Sav. and Loan Ass'n -v- Solimino (1991) 111 S.Ct. 2166, 2169, 501 US 104 is violated by the B.P.H.'s repetitive use of facts (rationale) to deny parole suitability, which, thusly, is in violation of U.S. Const. Amend 14 procedural due process.

a. Supporting facts:

[1] On 1/29/98 Petitioner attended his Initial Parole Hearing. The rationale used by the Board of Prison Terms is in the "Decision" of the 1/29/98 hearing at attached (EXH "~~I~~") Petitioner was denied parole for a multitude of reasons.

[2] Approximately 3 years and 8 months later, after the 1/29/98 hearing's denial, Petitioner attended his next Parole Hearing on 10/1/01, where he was once again denied Parole for a multitude of reasons (See EXH. "J")

[3] Approximately 4 years lapsed until the 9/29/05 hearing, where parole was once again denied. The entire transcripts and decision see attached at (EXH. "A"). Parole was denied for numerous reasons.

[4] Some of the reasons, in which parole was denied, were the same as reasons at either/both of the two preceding hearings.

\* Ground 11 Facts Continued at Page 29

b. Supporting cases, rules, or other authority:

Please see Points and Authorities at Pages 75-78

PAGE 28 OF 201

MC-275 (Rev. January 1, 1999)   **PETITION FOR WRIT OF HABEAS CORPUS**   Page four of six

1  GROUND 11 FACTS  CONTINUED

2  [5] By the Former Parole Boards citing to certain

3  reasons against Petitioner, they litigated reasons

4  for denial in the technical sense that litigation

5  takes place within an administrative hearing.

6  [6] Because the former parole Boards' actions took

7  place in the "Decision" parts of the 1998 and 2001

8  hearings, the like issues were previously necessarily

9  decided against Petitioner.

10  [7] At the end of the Decisions, the Parole Board

11  set dates for finality of their findings.

12  [8] The PRIOR  Board of Prison Terms is now renamed

13  to the Board of Parole Hearings, and as such is the

14  same as its predecessor entity(ies).

15  [9] Petitioner has created an AT-A-GLANCE AFFidavit

16  [EXH. "K"], containing information from other

17  EXHIBITS "A", "I" and "J". The purpose of this

18  AT-A-GLANCE EXHIBIT is to establish the parole

19  board's continual use of unchanging circumstances

20  when denying parole suitability. These are the issues

21  Petitioner claims should be barred from their review.

22  [10] Part of the Parole Board's duties when denying

23  parole, for "up to five years" under Pen. Code § 3041.5

24  is to  consider ALL RELEVANT, RELIABLE

25  information. When parole is denied, punishment

26  is lengthened. It is this repetitive punishment

27  that Petitioner complains violates Due PROCESS.

28                    PAGE 29 of 208

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.  If yes, give the following information:
   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
   COURT OF APPEAL — THIRD APPELLATE DISTRICT

   b. Result: AFFIRMED          c. Date of decision: DON'T REMEMBER   ±7/25/90?

   d. Case number or citation of opinion, if known: 3 CRIM C005520

   e. Issues raised: (1) Change of Venue
      (2) Instructing The Jury With An Allen Charge (Allen v U.S.
      (2) (1986) 164 U.S. 492, 46 L.Ed.2d 528, 175 S.Ct 154)

   f. Were you represented by counsel on appeal?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:
   I DO NOT REMEMBER

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.   If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised:  (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
    Not Applicable

11. Administrative Review:
    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:
    Pursuant to the Board of Prison Terms (BPT's) New
    Policy enacted as "Emergency Regulations Filed 4/15/04
    and effective 5/1/04 "Due Process" APPEALS ARE NO LONGER
    FILED WITH PAROLE BOARD. THUS, FOR JUDICIAL REVIEW, DOES NOT
    HAVE ANY BPH (BPT) APPEAL FOR ACTIONS DENYING PAROLE.

    _____

    _____

    _____

    b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☒ No.
    Attach documents that show you have exhausted your administrative remedies.  See P 11 Explanation

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.
THIS PETITION DEALS W/ 9/29/05 HEARING.

13. a. (1) Name of court: _____

(2) Nature of proceeding (for example, "habeas corpus petition"): _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (Attach order or explain why unavailable): _____

(5) Date of decision: _____

b. (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (Attach order or explain why unavailable): _____

(5) Date of decision: _____

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
No undue delay as Petitioner has prepared this Petition, with help, as facts and law supporting all grounds were known to him.

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes. ☐ No. If yes, explain:

28 USC § 2254 Federal Habeas Corpus In United States Dist. Ct. Eastern Dist.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
No Lower Court has Jurisdiction to Hear This Petition.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 7 / 26 / 2006

PAGE 34 OF 201

_____
(SIGNATURE OF PETITIONER)

# EXHIBIT E
# Part 2 of 2

1  SCOTT BURNS (CDCR No. D-99247)
   G-WING 312-UP, CTF-SOLEDAD (CENTRAL)
2  P.O. BOX 689
   SOLEDAD, CA  93960-0689
3    (IN PRO PER)

4

5

6

7

8        IN THE SIERRA COUNTY SUPERIOR COURT
9     IN AND FOR THE STATE OF CALIFORNIA

10

11

12

13  IN RE SCOTT BURNS                RE: AMENDMENT-SUPPLEMENT IN
                                     SUPPORT OF HABEAS
14    SCOTT BURNS - (PETITIONER)     CORPUS PETITION
      B. CURRY - WARDEN(A), et al
15      (Respondent)

16

17                              I.

18                      INTRODUCTION

19     Petitioner submits this Amendment - Supplement in
20  support of the accompanying Habeas Corpus Petition. He
21  is a term-to-life prisoner, serving 17-to-life, out of
22  Sierra County. After attending the 9/29/05 Parole hearing
23  that became final on 1/27/06. Subsequent to the finality,
24  Petitioner has gone to the library and sought help in
25  preparing this Petition. To the best of Petitioner's due diligence
26  he has argued everything. Additionally, this Petition should
27  be deemed timely as it is within 1-year of Federal AEDPA for
28  tolling.            PAGE 32 of 201

II.

JURISDICTION

This Court is Constitutionally enabled to act upon authority granted by Cal. Const. Art. VI Sec. 10 and Penal Code § 1473 et seq.

III

VENUE

Venue is appropriate in light of In Re Roberts (Cal. 2005) 31 Cal Rptr 3d 458 471 to county of conviction, on parole matters

IV.

PARTIES

Petitioner is currently incarcerated at Correctional Training Facility - Soledad after commitment to prison (see Abstract of Judgement at EXH. "L" page 198 of 200).

Respondent, B. Curry is the Warden (Acting) of Correctional Training Facility - Soledad. He is currently the State official having direct and immediate supervision/control over Petitioner.

Respondent is represented by the Office of the Attorney General (i.e. Bill Lockyer, Attorney General) via the Sacramento address.

PAGE 33 of 204

V.

FACTS OF CASE

Facts are enclosed on official MC275 Form, pages 3 to 29.

VI

CONTENTIONS

1.

Parole denial violates Cal. Const. Art. I, Sec. § 17, 24 clauses.

2.

Use of crime to deny parole was violation of procedures where Board failed to adhere to United States v. Caceros ( ) 59 L.Ed 2d 733, 440 US 741, 89 S.Ct. 1465 governing adherence to procedure and Appellate Court's findings.

3.

Use of Motive was violation of Due Process protections delineated by Carey v. Piphus (1978) 435 US 247, 259, 98 S.Ct. 1042, 1050 and fundamentally unfair when illegally used.

4.

Denial of Parole based on prior criminality was arbitrary within meaning of Arkansas v. Oklahoma (1992) 112 S.Ct. 1046, 1069, 503 US 592, when not an unsuitability circumstance.

5.

The Board's allegation of prior criminality violated procedures that were mandated to be observed according to United States v. Caceros ( ) 59 L.Ed 2d 733, 440 US 741, 99 S.Ct. 1465.

PAGE 34 f 201

<u>VI Continued</u>

(Contentions continued)

6.

It was arbitrary and an abuse of power within the holding of County of Sacramento —v–Lewis (1998) 118 S.Ct 1708, 523 US 832 to diagnose needed self-help/therapy and failure to upgrade educationally for parole denial.

7.

There is no evidence to use 13yearold Series 115 as an unsuitability factor to establish said action posing unreasonable threat to society and thus not "some evidence" within the Superintendent ... –v–Hill (1985) 472 US 445, 105 S.Ct 2768 holding.

8.

It was arbitrary within the holding of Arkansas –v–Oklahoma (1992) 112 S.Ct 1046, 1060, 503 US 539 to claim needed therapy/self-help to claim Petitioner unpredictable or threat.

9.

It was arbitrary and oppressive within the meaning of County of Sacramento –v–Lewis (1998) 118 S.Ct 1708, 523 US 833, to illegally issue multi-resedenial.

10.

Petitioner received Ineffective Assistance of Counsel at 9/29/05 parole Hearing in violation of Strickland –v–Washington (1984) 466 US 668, 104 S.Ct 2052, 80 L.Ed 2d 674.

11.

Repetitive use of unchanging unsuitability circumstances violates issue preclusion/collateral estoppel applicable to Astoria Federal Sav. and Loan Assn –v–Solimino (1991) 111 S.Ct 2166, 2169 501 US 104.

PAGE 35 of 201

## VII

### MEMORANDUM OF POINTS AND AUTHORITIES

(PREFACE)

1  Petitioner has a liberty interest in parole suitability
2  as a prisoner in California. **McQuillion -v- Duncan** (9th Cir.
3  2002) 306 F.3d 895, **BIGGS -v- TERHUNE** (9th Cir. 2003) 334
4  F.3d 910, 2003 DJDAR 8863.

5  Thus, the Board cannot argue otherwise. **N.L.R.B. -v- Askenazy**
6  **Property Management Corp.** (CA9. 1987) 817 F.2d 748 (Administrative agencies
7  are not free to refuse to follow circuit precedent in cases originating
8  within circuit, unless agency has good faith intention of seeking
9  review of particular proceeding by Supreme Court.)

10  Therefore, having unequivocally established the liberty
11  interest question for 14th Amendment Analysis, and Federal
12  AEDPA Jurisdiction, the question is what process is due. BIGGS,
13  supra at 8874, is demonstrative in advising to the Calif. Judiciary:

> "To insure that the state-created parole scheme
> serves the public interest purpose of rehabilitation
> and deterence, the Parole Board must be cognizant
> not only of the facts required by state statute to
> be considered, but also concepts embodied in the
> Constitution requiring due process of law." [Emphasis
> Added, E.A. Hereafter]

14  Therefore, the "some evidence" test of **Superintendent...-v- Hill**
15  (1985) 472 US 445, 105 S.Ct. 2768, 86 L.Ed 2d 356 is only a gateway to
16  analyze whether the Board's action(s) was / were arbetrary, capricious,
17  lacking basis in fact or contrary to law. U.S. Constitution embodied
18  concepts requiring due process of law are expansive beyond "some
19  evidence" and require seperate / harmonized analysis as allegedly
20  violative of U.S.S. Ct. holdings directing interpretation of: law, fact and
21  law, and proper factual analysis under Due Process review.

PAGE 36 of 201

<u>VII</u>

1  <u>MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED</u>

2                          <u>1.</u>

3  Petitioner contends that the B.P.H's denying
4  parole on 9/29/05 made his sentence grossly
   disproportionate to the offense (penalty being
5  excessive under facts/circumstances
6  of convicted crime) in violation of Calif. Const.
   Article I, Sections 17/24 against cruel
7  or unusual punishment limitations

8  _____

9  <u>Cal. Const. Article I, Sec. 17</u> advises to every Peace Officer/
10 State Officer (e.g. Board of Parole Hearing's Commissioners and
11 Deputy Commissioners): "Cruel or Unusual punishment may not
12 be inflicted." This guarantee is so important, that the
13 <u>Cal. Const. Article I, Sec. 24</u> has also stated:
14    "In criminal cases the rights of a defendant
15    to ... not suffer the imposition of cruel or
      unusual punishment, shall be construed by the
16    courts of this State in a manner consistent
17    with the Constitution of the United States [i.e. 8TH
      <u>Amendment</u> v/s <u>14TH Amendment</u> procedural protections]."
18
19 As Petitioner is found guilty, while no longer a defendant these
20 rights still protect him as incarceration is ancillary to
21 the criminal case.

22 <u>In Re Roberts</u> (Cal. 2005 (7/21/05)) 31 Cal. Retr. 3d 458, 467 fn.7 in pert.
23    "The Board may not, by denying parole, retain a prisoner
24    sentenced to a life-maximum term for a period,
      grossly disproportionate to the offense, in violation
25    of the state Constitution's prohibition against cruel
      or unusual punishment." (Dannenberg [passim] @ p. 1076,
26    In Re Rodriguez, supra, @ pp. 651,656) [E.A.]
27 Rhetorically: what punishment for a 2nd Degree Murder is
28                    PAGE 37 f 201

1  MEMORANDUM OF POINTS <u>VII</u> AND AUTHORITIES CONTINUED

2  (1 Cont.)

3  "grossly disproportionate"?

4  Approximately 6 months before <u>In Re Roberts</u>, supra, the Cal.

5  Supreme Court also ruled in <u>In Re John E. Dannenberg</u> (2005

6  (1/24/05)) 34 Cal 4TH 1061, 23 Cal Rptr 3d 417, cert. denied ___U.S.___,

7  126 S.Ct. 92, 163 L.Ed 2d 109 (2005):

8  "However, Wingo, ruled a constitutional challenge to
9  the proportionality of an individual indeterminate
10  sentence should await the Adult Authority's fixing
11  of an actual release date for the inmate. If
   such a date was promptly set, Wingo concluded
   proportionality would be measured by that date, rather
12  than the statutory maximum."

13  This part of <u>Dannenberg</u>, supra, appears partially harmonized

14  with <u>People -v- Wingo</u> (Cal. 1975) 14 C.3d 182, 184, which

15  still holds:

16  "Thus a sentence may be unconstitutionally excessive
17  either because the Adult Authority [Now Board of
   Parole Hearings] has fixed a term disproportionate
18  to the offense <u>or in some circumstances because</u>
19  <u>no term whatever has been set</u> ... [p. 184] Only
   when such a term is set, or <u>if the Authority</u>
20  <u>within a reasonable time decides not to fix a</u>
21  <u>term</u>, may defendant utilize the remedy of
   habeas corpus to determine if the penalty
22  is <u>excessive</u> under the facts and circumstances
23  of the crime of which he stands convicted.'[E.A.]

24  Neither <u>Dannenberg</u>, nor <u>Roberts</u> address this 2nd

25  prong that guides this Ground's analysis.

26  <u>In Re Rodriguez</u> (1975) 14 C.3d 639, 649, 651, 653 has

27  still held:

28

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(1 Cont.)

"The obligation of the Court to assure the [ ] law is properly administered, however is not limited to procedural due process alone... our duty to assure that practices followed by the [ parole ] Authority do not permit constitutionally _excessive punishment_ is surely no less compelling than our duty to assure that the legislative purpose of the law [ Pen Code § 3041.5's 5 year cap? ] is carried out... [p. 651] The oft-stated rule that a prisoner has no right to a term fixed at less than maximum [Cites omitted] is therefore subject to the overriding constitutionality compelled qualification that the maximum 'may not be disproportionate to the individual prisoners offense... [p.653] Thus, the rule that the measure of the constitutionality of punishment for crime is individual culpability is well established in the law of this state.'"

Here, the California legislature limited multi-year parole denials to a maximum of 5 years, where the Board knows of this limit by express language in Pen Code §3041.5. (See also Ground _9_, post.)

25 years before Dannenberg / In re Roberts, the California Supreme Court also held in **In Re Rogers** (1980) 169 Cal Rptr 222, 28 Cal.3d 432:

"Under the statutory scheme of the DSL, the Board of Prison Terms is given no discretion as ~~to the setting of parole. Once a prisoner has~~ completed his fixed term, the Board is mandated to release him. This was not true under the ISL, where the Adult Authority was given broad discretion in determining whether an individual should be released on parole."

Thus, if the Board has no discretion, where is Petitioner's parole date?

PAGE 39 of 201

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(1. Cont.)

Reminding this Court, Petitioner does have an enhancement. Therefore, when analyzing this case under Calif. Const. Art. I, Sections 17/24, supra, _People -v- Duran_ (App. 1983) 189 Cal Rptr 595, 140 Cal App. 3d 485 (1st App. Dist. Cal. Div. 4) as modified on denial of Rehearing, hearing denied 6/2/83; at p. 606 this court should consider:

"In the present case, appellant was sentenced under a statute providing that "every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life." (Pen. Code § 190). _In Re Jeanice D._ (1980) 28 Cal. 3d. 210, 168 Cal Rptr 455, 617 P. 2d 1087, interpreted similar statutory language as referring to an indeterminate sentence; it thus rejected the contention that the statute establishes a determinate life sentence with a minimum parole eligibility date of 15 years. Under this statute, then, the penalty for second degree murder will be fixed at a definite number of years — anywhere from 15 to life. Once this figure has been determined, a defendant would be released as soon as his term expires. It is not impossible to add an enhancement to the term decided upon so long as that term is not life."

In arguendo, if Petitioner's term is not life due to his enhancement, and notwithstanding Pen. Code §§ 3041, 3041.5 that the People Board must adhere to ~~Pen. Code § 5078 (a)~~, passim, his date should have been set at his Initial Hearing (see _In Re Williams_, post, Ground 9 Points and Authorities at PAGES 68, 69 - _Cal. Const. Art. I, Sec's 17/24_, as cited are violated.

PAGE 40 f 204

VII

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  2.

3  Petitioner contends that there is
no evidence in the record to support
4  the B.P.H.'s use of the crime as a
parole unsuitability factor, in violation
5  of procedural due process mandated by
6  Regulations, in light of In Re John E.
7  Dannenberg (passim), where **United States**
8  **-v- Caceres** 59 L.Ed 2d 733, 440 US 741,
99 S.Ct. 1465 mandates adherence to
9  Due Process procedures.

10  **United States -v- Caceres** (   ) 59 L.Ed 2d 733, 743 Fn.14 in part,
11  440 US 741, 99 S.Ct 1465 has held:
12  "Where the rights of individuals are affected it
13  is incumbent upon agencies to follow their own
procedures. This is so even where internal
14  procedures are possibly more rigorous than otherwise
15  would be required. (Morton -v- Ruiz 415 US 199, 235,
39 L.Ed 2d 270, 94 S.Ct 1055)."
16

17  In this particular case, the Court of Appeals for
18  the 3rd Dist. of California had ruled the crime as not
19  sensational or atrocious. Thus, it doesn't fall into the
20  Board's "especially heinous, atrocious, or cruel" criteria that
21  Dannenberg, passim, says applies to the decision. The Board
22  claims the crime as especially cruel and callous. Petitioner
23  sets forth how this "Decision"'s use is arbitrary to the point
24  of illegally keeping him imprisoned, in violation of his 14TH
25  Amendment **Due Process** protections.

26  (RIGHT TO PROCEDURAL DUE PROCESS)

27  There must be a "liberty interest" to some right /expectation/

28  PAGE 44 of 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(2. CONT.)

benefit before the 14TH Amendment's Due Process clause is triggered. Denial of parole is one of these situations. In Re Johnson (Cal. App. 1 Dist. 1995) 41 Cal Rptr 2d. 449, 456 "Although the Board has broad discretion in parole matters, that discretion is subject to the prisoner's right to procedural due process."

Solidifying the need of specific procedures in which to deny parole, In Re John E. Dannenberg (Cal. Sup. Ct. 2005) 34 Cal 4TH 1061, 23 Cal Rptr 3d 417 has stated:

"[Penal Code] Section 3041 addresses how the Board is to make parole decisions for indeterminate life inmates ....[P] In response to these requirements, the Board has adopted regulations covering the various categories of indeterminate life inmates... [P] The regulations do set detailed standards and criteria for determining whether a murderer with an indeterminate life sentence is suitable for parole." [E.A.]

(COMMITMENT OFFENSE UNSUITABILITY CRITERIA)

Within the Calif. Code of Regulations (CCR), Div. 2 (i.e. the Regulations of the Board of Parole Hearings), CCR§§ 2402 (c)(1)(A,B,C,D) deal with the manner of the Commitment Offense, as follows:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

1        VII

2    MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

3                (2. CONT.)

4    (D) The offense was carried out in a manner which demonstrates
5        an exceptionally callous disregard for human suffering."

6    NOTE: THERE IS ONE MORE SUB PARAGRAPH, i.e. 4 (E) under
7        2402(c)(1)(E) which deals with motive rather
        than manner. It is addressed as a separate ground.

8    As previously pointed out in the facts of this Ground (see
9    PAGE 6 f 201 , P 2 ), the Board Panel claims the 2nd
10   Degree Murder was "especially cruel and callous". However,
11   the Appellate Court (See Ground 2 P (5) at PAGE 7 f 201)
12   has declared the crime "neither sensational nor atrocious."
13   Therefore, the Board's Panel refused to adhere to the
14   Relevant/Reliable evidence in this case as related
15   to the description of the crime. This action makes
16   their description arbitrary and unsupported. They point to no factor.
17   Wolff v McDonnel (1974) 418 US 539, 94 S.Ct. 2963, 42 L.Ed 2d 935
18   at 418 US 558, 94 S.Ct at 2976: "The touchstone of due process is
19   protection of the individual against arbitrary action of
20   government [citations]." Additionally, Morrissey v Brewer
21   (1972) 408 US 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed 2d 484 instructs:
22   "[D]ue process is flexible and calls for such procedural
23   protections as the particular situation demands."
24       Here, the B.P.H. should not be allowed to deny
25   parole based on the Commitment Offense.
26                (PRONGS TO PROVE)
27   McQuillion v Duncan (9TH CIR. 2002) 306 F.3d 895, has
28                PAGE 13 f 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(2. CONT.)

emphasized the two-prong test: "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. Brewster -v- Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir.1998)."

Galland -v- City of Clovis (Cal. 2001) 103 Cal Rptr 2d 711, 24 Cal 4th 1003 at p.739 8 "[W]hen the process itself is fundamentally unfair, even agency determinations supported by substantial evidence [a higher prong than "some evidence"] may be overturned: it is the very unfairness of the hearing that undermines the reliability of the administrative record being reviewed."

In this case, Petitioner has substantiated both McQuillion prongs in his prima facie case. The record shows that the B.P.H. panel was aware of the Appellate record and completely ignored the findings.

Mines -v- Sullivan (9th Cir.1992) 981 F.2d 1068, 1070 cert. den. 113 S.Ct. 2993, 501 U.S. 903 has stated: "A court need not accept an agency's interpretation of its own regulations if that interpretation is inconsistent with the wording of the regulation, or inconsistent with the statute under which the regulations were promulgated."

Here, this Court shouldn't presume that the B.P.H. legally used the crime to deny parole, when by statute they know of Direct Appeals findings contrary to their regulations, and their lack of factors in support

PAGE 44 of 201

VII.

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(2. CONT.)

Cal. Hotel & Motel Assn -v- Indus. Welfare (Cal. Sup. Ct. 1979) 157
Cal Retr 840, 847:8
"A court will uphold the agency action unless the action
is arbitrary, capricious, or lacking in evidentiary
support. A court must ensure that an agency has
adequately considered all relevant factors, and has
demonstrated a rational connection between those
factors, the choice made, and the purposes of the
enabling statute.

Analogous for purposes of this argument is Superintendent
Mass. Corr. Inst. -v- Hill (1985) 472 US 445, 105 S.Ct 2768 (passim)
"some evidence" test as In Re Powell (1988) 45 Cal. 3d 894 has
adopted into Calif. parole hearings for Judicial Review.
Administrative law principles then attach to the review,
which require reversal of the administrative agency's
finding(s) if: arbitrary, capricious, lacking basis in fact,
or being contrary to law. Terhune -v- Sup. Ct. (Whitley)
(1998) 65 Cal. App. 4th 864, 872: "[A]dministrative actions
exceeding those powers [Constitutional, Statutory] are void."
The 14th Amend. to the U.S. Const. is violated here as Due
Process should ~~prevent the B.P.H. from finding what the~~
Appellate Court already determined did not exist, and
finding what the record didn't support as an
unsuitability factor.
 TWO HEAD SHOTS GUARANTEED DEATH ALMOST INSTANTANEOUSLY, AND
THERE ARE NO FACTS BEYOND MINIMUM TO CONVICT.

PAGE 45 of 201

# VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

3.

Petitioner contends that the B.P.H.'s use of "motive", to deny parole suitability on 9/29/05, lacked sufficient Constitutional procedures under holding in <u>Carey-v-Piphus</u> (1978) 435 US 247, 259, 98 S.Ct. 1042, 1050, to be valid under procedural due process when constitutionally inadequate under law.

<u>Carey-v-Piphus</u> (1978) 435 US 247, 259, 98 S.Ct 1042, 1050 holds: "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property .... Therefore, to determine whether a constitutional violation has occured it is necessary to ask what process the state provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." - From Zinnemon-v-Burch (1990) 110 S.Ct 975

California has stated in <u>Galland-v-City of Clovis</u> (Cal. 2001) 103 Cal Rptr 2d 711, 731-732, 739, 24 Cal 4TH 1003: "A procedural due process claim possesses two components: First, that an individual has been deprived of a constitutionally protected liberty [] interest; and second, that this deprivation, while not necessarily unconstitutional in and of itself, was rendered unconstitutional because it was undertaken without according the individual the appropriate hearing ... [p.739] [W]hen the process itself is fundamentally unfair, even agency determinations supported by substantial evidence [even a higher standard than "some evidence"] may be over-turned; it is the very unfairness of the hearing that undermines the reliability of the administrative record [B.P.H. parole hearing transcripts] being reviewed." - <u>McQuillion-v-Duncan</u>, supra, same analysis.

PAGE 46 of 204

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(3. CONT.)

Under <u>CCR § 2402(c)(1)</u> " Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include: * * * [A] (E) The motive for the crime is inexplicable or very trivial in relation to the offense."

The Calif. Judiciary has clarified for the B.P.H., how this (2402(c)(1)) is to be used. <u>In Re George Scott</u> (Cal. App. 1st Dist. 2004) 119 Cal App 4TH 871, 15 Cal Retr 3d 32: " The Board did not indicate whether it found Scott's motive " inexplicable" or " very trivial" in relationship to the offense," <u>as it could not be both</u>." [E.A.] Here the B.P.H. panel did in fact allege " <u>both</u>", which was contrary to law (inadequate).

Additionally, the B.P.H. panel pointed to no fact in its decision to substantiate the motive as " inexplicable". <u>In Re George Scott</u>, supra: " An " inexplicable" motive, as we understand it, is one that is unexplained or is unintelligible, as where the commitment offense does not appear to be related to the conduct of the victim and has no other discernible purpose."

Also, <u>In Re George Scott</u>, supra: " The reference in Board regulations to motives that are " <u>very trivial in relationship to the offense</u>" therefore requires comparisons: to fit the regulatory description the motive must be materially less significant (or more " trivial") than those which conventially drive people to commit the offense in question [.]

<u>Carey v. Piphus</u>, supra, is further supported by <u>United States v Caceres</u> (   ) 59 L Ed 2d 733, 743 Fn. 14, 440 US 741, 99 S. Ct 1465: " Where the rights of individuals are affected it is incumbent upon agencies to follow their own procedures." This includes Judicial interpretation of procedures. Due Process was violated by Board's use of motive.

PAGE 47 f 201

## VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

### 4.

Petitioner contends that the B.P.H.'s use of his prior criminality, as a parole unsuitability factor, is 'arbitrary and capricious' within the meaning (holding) of Arkansas -v- Oklahoma (1992) 112 S. Ct. 1046, 1060, 503 US 592, due to the B.P.H.'s failure to make a rational connection under Guidelines Governing when prior criminality is an unsuitability circumstance.

Arkansas -v- Oklahoma (1992) 112 S.Ct. 1046, 1060, 503 US 592 holds "As we have often said an agency ruling is 'arbitrary and capricious' if the agency has ... entirely failed to consider an important aspect of the problem."

Within the B.P.H.'s parole scheme they have adopted two different ranges of factors (i.e. suitability for parole/unsuitability for parole). These are under CCR §2402(c), passim, Circumstances Tending to Show Unsuitability, and CCR §2402(d), passim, Circumstances Tending to Show Suitability. Specifically, as based on Prior Criminality, the B.P.H.'s regulations provide:

CCR §2402(c), ¶(2): (UNSUITABILITY) "Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, ~~particularly if the prisoner demonstrated~~ serious assaultive behavior at an early age."

CCR §2402(d), ¶(1): (SUITABILITY) "No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims."

## VII
## MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
### (4. cont.)

CCR §2402 (d), ¶(6): Lack of Criminal History. The prisoner lacks any significant history of violent crime.

Therefore, Petitioner's prior criminality (Ground 4, ¶ 6 at Page 10/201) is not a parole unsuitability circumstance.

<u>In Re Morrall</u>                    (2002) 125 Cal.Rptr. 2d 391, 102 Cal. App. 4th 280 has specified:

"[T]he law requires that when an inmate becomes eligible for parole, he is entitled to individualized consideration of his suitability for parole (Pen. Code §3041, 3041.5). A refusal to consider the <u>particular circumstances</u> relevant to an inmate's individual suitability for parole would be contrary to law." [E.A.]

<u>In Re John E. Dannenberg</u>, supra, has clearly specified that the B.P.H. has adopted specified regulations. The aforementioned CCR §§ 2402 (c), ¶(2) and 2402(d) (1,6) are the <u>only</u> parameters on prior criminality. Here, the B.P.H. has contradicted their own regulations to pigeon-hole Petitioner's prior criminality into criteria that is contrary to the mandate in <u>Arkensas-v-Oklahoma</u>, supra. Thus, the B.P.H.'s use of Petitioner's prior criminality as an "unsuitability" criteria is arbitrary and capricious.

<u>Oregon Natural Resources Council-v-Lowe</u> (9th Cir. 1997) 109 F.3d 521, 526: "Although review under the arbitrary and capricious standard is narrow, the agency must articulate a rational connection between the facts found and the conclusions made." The B.P.H.'s use of the prior criminality to deny parole is irrational.

PAGE 49 of 201

## VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(4. cont.)

Here, the B.P.H.'s prior criminality decision is closely erroneous. Adamson -v- Department of Social Services (Cal. App. 1 Dist. 1988) 254 Cal. Rptr. 667, 673 : "Under California Law ... courts will not depart from the agency's construction unless it is closely erroneous or unauthorized."

There is absolutely no evidence in the record before the B.P.H., that establishes how Petitioner's prior criminality is within the parameters of CCR § 2402 (c), 4 (2), supra. Zinermon -v- Burch (1990) 110 S. Ct. 975, 983, 494 US 113, 108 L. Ed 2d 100 : " Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Thus, Petitioner's 14TH Amend. Due Process right related to prior criminality has been violated.

Concrete Pipe and Prod. -v- Const. Laborers Pen. (1993) 113 S. Ct 2264, 2280 : "Thus, review under the 'closely erroneous' standard is significantly deferential requiring a 'definite and firm conviction that a mistake has been committed." Petitioner proffers that a mistake has in fact occured, where in the B.P.H. has deemed a parole suitability circumstance as an unsuitability circumstance.

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

5.

Petitioner contends that there is no evidence to support a finding of an "unstable social history" (CCR§ 2402 (c).4(3)), and therefore it is arbitrary and capricious for the B.P.H. not to follow their own procedure under the holding of United States -v- Caceres 59 L.Ed2d 733, 743, 440 US 741, 99 S.Ct 1465, which mandates administrative agency obey its procedure.

Under CCR§ 2402 (c).4(3), the B.P.H. has the parole unsuitability circumstance of: "Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others."

Nowhere in the facts of this case, as stated in the decision, is there evidence of any unstable social history related to prior criminality. The B.P.H. Panel has used rote language without support.

Petitioner's numerous Foster-family placements are no way indicative of unstable or tumultuous relationships with others.

In United States -v- Caceres ( ) 59 L.Ed 2d 733, 743 fn.14 in part, 440 U.S. 741, 99 S.Ct 1465, the Court held:

"Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where internal procedures are possibly more rigorous than otherwise would be required."

Therefore when a regulation (i.e. CCR§ 2402 (c),4(3)) exists for a certain purpose, the B.P.H. should use it correctly, within the meaning and spirit of the regulation, with support based on reliable data. The B.P.H. doesn't have carte-blanche to make up irrational categories to compound facts otherwise not being unsuitability criteria.

## VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(5. CONT.)

Jancsek -v- Oregon Bd. of Parole (9TH Cir. 1987) 833 F.2d 1389, 13908

"[T]he evidence underlying the [parole] board's decision must have some indicia of reliability."

Arkansas-v-Oklahoma (1992) 112 S.Ct 1046, 1060, 503 US 529 holds that: "As we have often said an agency ruling is 'arbitrary and capricious' if the agency has .... entirely failed to consider an important aspect of the problem." Here, the B.P.H. panel failed to consider/articulate facts in support of CCR §2402(c), 9(3), to prove any unstable or tumultuous relationships with others.

In this situation, the B.P.H. panel has refused to adhere to Walsh -v- Kirby (Cal. Sup. Ct. 1974) 418 Cal. Rptr. 1, 8, 13 Cal. 3d 95, 529 P.2d 33: "However, discretion cannot be exercised so as to "enlarge its own boundaries or support acts requiring other legal bases." It is evident that the B.P.H. has illegally enlarged its boundaries.

Further, the B.P.H. fails to adhere to the instructive mandates of: Newman -v- Apfel (9TH Cir. 2000) 223 F.3d 937, 943: "The fact that an agency has broad discretion in choosing whether to act does not establish that the agency may justify its choice on specious grounds."; and Enrico's, Inc. -v- Rice (CA9. Cal. 1984) 730 F.2d 1250, 1253: "[A]n agency must follow the correct interpretation of a rule or regulation."

Based on the aforementioned, Due Process clause of the 14TH Amendment has been violated by the panel's use of unstable social history to deny parole.

PAGE 52 of 201

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

6.

Petitioner contends that the B.P.H.'s
unsuitability rationale of Petitioner's
allegedly limited program and insufficient
self-help/therapy is not supported by any
evidence to establish that he is an
unreasonable danger to society, and is
thusly arbitrary within holding of
<u>County of Sacramento -v- Lewis</u> (1998)
118 S.Ct. 1708, 523 US 833

<u>County of Sacramento -v-Lewis</u> (1998) 118 S.Ct. 1708,
523 US 833:

   "We have emphasized time and again that "[t]he
   touchstone of due process is protection of the
   individual against arbitrary action of government,"
   ... Thus in <u>Collins -v- Harker Heights</u>, for example,
   we said that the Due Process Clause was intended
   to prevent government officials" " "from abusing
   [their] power or employing it as an instrument
   of oppression."

In this case, Petitioner has been incarcerated since
10/31/88, and at the time of the 9/29/05 hearing he
was about 1 month shy of 17 years of imprisonment in
state prison. He has held numerous prison job assignments,
been a student, acquired two trades, participated in
self-help (e.g. AA and Anger Management). Therefore, the
Board's finding limited program is abuse of power.

   Further, when ordering a new psych report, the
Board refuses to adhere to the instructional memo
dated 1 day before hearing finality

PAGE 53 of 201

1   MEMORANDUM OF POINTS AND AUTHORITIES    CONTINUED

2                              (6 . CONT.)

3   Petitioner has no substance abuse issues in Prison.

4   Further, the substance abuse issues were pre-commitment

5   offense. (The board may not deny parole based on a

6   petitioner's history of substance abuse) - see **Thompson -V**

7   **Davis** (9TH CIR 2002) 295 F-3d 890, 898, as cited to in Prisoner's

8   Rights Handbook 2004 supplement.

9       Further, the Board Ignores **Irons -V Warden of**

10  **Calif. State Prison -Solano** (USDC E.D. Cal. 2005) 358

11  F.Supp. 2d 936, 948: "[A] conclusion by lay BPT commissioners

12  that petitioner has not yet achieved required therapy for insight

13  or other reasons is not reasonably sustainable[.]" It is

14  arbitrary and oppressive for the Board to ignore the

15  Ground 6 # 9, EXH "_D_." excerpts.

16      Even before the "some evidence" Test as stated in

17  Superintendent ... -v-Hill, passim, and upheld in In Re Powell,

18  passim. California had already determined what would

19  overturn an administrative agency's action. **Cal- Hotel and**

20  **Motel Assn -v- Indus. Welfare** (Cal. Sup. Ct. 1979) 157 Cal. Rptr.

21  840, 847:

22              "A court will uphold the agency action unless the
             action is arbitrary, capricious, or lacking in
23           evidentiary support. A court must ensure that
             an agency has adequately considered all relevant
24           factors, and has demonstrated a rational connection
             between those factors, the choice made, and the
25           purposes of the enabling statute." [E.A.]

26      Here, the Board's actions related to limited program
    are devoid of factual support in an arbitrary manner
27  which violates Petitioner's 14TH Amend. DUE PROCESS rights to
    fair procedures.
28                      PAGE 54 of 201

VII

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2                              7.

3  Petitioner contends that there is no
4  evidence in the record of his 9/29/05
5  parole consideration hearing to reemit his
   last "serious Rules Violation Report
6  (CDC 115's) to be "some evidence" within
7  the meaning of Superintendent ... v Hill
   (1985) 472 US 445, 105 S.Ct. 2768, as indicia of
8  reliability, to predict future dangerousness,
9  to be an unreasonable risk of danger to
10 society under CCR§ 2402 (a).

11 CCR§2402 (a) states:
12 "General. The panel shall first determine whether the
13 life prisoner is suitable for release on parole. Regardless
   of the length of time served, a life prisoner shall be
14 found unsuitable for and denied parole if in the judgement
15 of the panel the prisoner will pose an unreasonable
16 risk of danger to society if released from prison."

17 Therefore, the B.P.H.'s rationale must reasonably relate to an
18 unreasonable risk of danger, as supported by cognizable
19 evidence devoid of rote language. However, the analysis
20 doesn't stop at CCR§2402 (a), supra. Specifically, the Board
21 has adopted the parameter of CCR§2402(c), #(6) as follows:
22 "Circumstances tending to indicate unsuitability
23 include:
24      Institutional Behavior. The prisoner has engaged
25 in serious misconduct in prison or jail."

26 However, CCR§2402(c), #(6) is not carte blanche
27 to use "serious misconduct" that is minor ad infinitum.

28              PAGE 55 of 201

VII

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  (7. CONT.)

3  Reciprocal and counter to CCR§2402(c), #(6) is CCR§2402

4  (d).#(9): "Institutional Behavior - Institutional activities

5  indicate an enhanced ability to Function within the

6  law upon release." Here, Petitioner's ±13 years without a

7  "serious" Rules Violation Report (CDC 115), clearly establish

8  his ability to Function within the law if released. Also,

9  CDC 128(a)'s are not "Disciplinary (ies)".

10  If this Court will remember EXH" _E_ ", where

11  Petitioner has shown the BPH Finding 2nd Degree Murderers

12  suitable for parole, these prisoners were found suitable

13  even though reversed by Governor. Some had more current 115's.

14  In _Superintendent, Mass. Corr. Inst. - v - Hill_ (1985) 105 S.Ct

15  2768, 2774, 472 US 445:

16  "We hold that the requirements of due process are
   satisfied if some evidence supports the decision ...

17  This standard is met if there was some evidence from

18  which the conclusion of the administrative tribunal

19  could be deduced ... [T]he relevant question is whether

20  there is any evidence in the record that could support

21  the conclusion ... The fundamental fairness guaranteed

22  by the Due Process Clause does not require courts

23  to set aside decisions of prison administrators that

24  have some basis in fact." [E.A.]

24  Here the Board used rote language of the existence

25  of minor disciplinaries to allude to "unreasonable risk of danger

26  to society", while forgetting not only about the time since the

27  "serious" disciplinaries but their prior actions in other cases as

28  related to CDC 115's.    PAGE 56 of 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(7. Cont.)

The Board has apparently forgotten about the Jancsek -v- Oregon Bd. of Parole (9th Cir. 1987) 833 F.2d 1389, 1390 instruction: "[T]he evidence underlying the [parole] board's decision must have some indicia of reliability." This is reliability as related to "unreasonable risk of danger to society."

Petitioner further proffers the analysis of "serious" rules violation reports with past criminality that was minor in nature. Petitioner cannot say that these two distinct aspects are synonymous; however, they should be parallel under the following case's analogy:

In Re Deluna (2005) 126 Cal. App. 4th 585, 598 (inmate's previous arrest record did not constitute "some evidence" of a threat to public safety because the alleged acts did not involve serious injury or attempted serious injury to a victim.)

If a prior arrest record that didn't pose "some evidence" because there was a lack of injury to a victim; the same should be true of a CDC 115 Rules Violation Report.

Nightlife Partners -v- City of Beverly Hills (Cal. App. 2 Dist. 2003) 133 Cal. Rptr. 2d 234, 242, 108 Cal. App. 4th 81 8 "The protections of procedural due process apply to administrative hearings (Richardson -v- Perales (1971) 402 US 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed 2d 842)... Due process, however, always requires a relatively level playing field, the 'constitutional floor' of a 'fair trial in a fair tribunal'; in other words, a fair hearing before a neutral or unbiased decisionmaker. (Bradley -v- Gromley (1997) 520 US 899, 904-905, 117 S. Ct 1793, 1797, 138 L. Ed 2d 97; Withrow -v- Larkin (1975) 421 US 35, 46, 95 S. ct 1456, 1464, 43 L. Ed 2d 712 (Withrow))." [E.A.]

PAGE 57 of 201

VII (7. Cont.)

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

Here, the B.P.H.'s use of known serious 115's, that are 13 plus years old, are being used as an instrument of oppression = which minimally violates the 14th Amendments' Due Process protections both under Federal and State law.

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

8.

Petitioner contends that the B.P.H.'s identification of needed therapy / self-help and coping with stress is arbitrary and capricious parole unsuitability criteria, which violates the <u>Arkansas -v- Oklahoma</u> (1992) 112 S.Ct. 1046, 1060, 503 US 529 holding, because the B.P.H. panel has fictitiously created their conclusion on unsupported facts contrary to Due Process procedures.

First, procedural due process applies to B.P.H. parole suitability hearings. <u>In Re Johnson</u> (Cal. App. 1 Dist. 1995) 41 Cal. Rptr. 2d 449, 456: "Although the Board has broad discretion in parole matters, that discretion is subject to the prisoner's right to procedural due process."

Second, the process due in California parole hearings requires the B.P.H. panel to identify how the unsuitability for meets certain circumstances. <u>In Re Rosenkrantz</u> (2002) 128 Cal. Rptr. 2d 104, 138, 29 Cal. 4th 616, 59 P. 3d 174 cert. den. 123 S.Ct. 1808, 155 L.Ed. 2d 669: "Parole applicants in this state have an expectation that they will be granted parole unless the Board [of Parole Hearings] finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and regulation." Thus, there must be some modicum of evidence in the record (i.e. in this case needed therapy / more self-help / coping with stress) as relevant to Petitioner's situation. Thirdly, the B.P.H.'s unsuitability circumstances are listed in Cal. Code of Regs. (CCR) Title 15 §2402(c), passim.

PAGE <u>59</u> of <u>201</u>

VII

1   MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED.

2   (8. Cont.)

3   Fourth, Collins -v- City of Harker Heights, Tx. (1992) 112

4   S.Ct. 1061, 1070, 503 US 116 has held:

5   "The 'process' that the Constitution guarantees in

6   connection with any deprivation of liberty

7   thus includes a continuing obligation to

     satisfy certain minimal custodial standards."

8   Fifth, the "minimal custodial standards" spoken of in

9   Collins, id., necessarily require a logical connection between

10  the agency's conclusion and application thereof. Otherwise,

11  how would any court even be able to review a choice

12  made as "some evidence" [Superintendent ...-v- Hill, passim]

13  when there isn't basis(es) for the choice Oregon Natural

14  Resources Council -v- Lowe (9TH CIR. 1997) 109 F.3d 521, 526:

15  "Although review under the arbitrary and capricious standard

16  is narrow, the agency must articulate a rational connection

17  between the facts found and the conclusions made." Here,

18  the B.P.H. panel recommends "anger management" even though

19  the data supports no need for such.

20  Sixth, necessarily, the B.P.H. is obligated to obey their

21  procedures when affecting Petitioners rights. United

22  States -v- Caceres ( ) 59 L.Ed.2d 733, 743 fn. 14 on part 440 US

23  741, 99 S.Ct. 1465: "Where the rights of individuals are affected,

24  it is incumbent upon agencies to follow their own

25  procedures. This is so even where internal procedures

26  are possibly more rigorous than otherwise would

27  be required." The CCR §2402(b) "all relevant, reliable

28  PAGE 60 of 201

1   MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2   VII

(8 Cont.)

3   "information" clause mandates applicability of B.P.H.

4   statements for unsuitability being valid and supportable.

5   Seventh, Jones-v-Moran 900 F. Supp 1267, 1271-72 has

6   illustrated:

7   "However, a state statute or regulation can create a

right triggering due process protections to insure

8   that the state created right is not arbitrarily

9   abrogated. [Cite omitted] In analyzing whether

a claimed liberty interest was created by state

10   regulation ... the Court focused on whether

11   the regulation limited the discretion of ... officials

12   by imposing substantive criteria. [Cite omitted]."

13   Here, the California Supreme Court has explicitly held

14   that "circumstances specified by statute and by regulation"

15   must be found (Rosenkrantz, supra). Where there is no

16   nexus between: ① The B.P.H.'s determination of "prisoner

17   needs therapy/self-help in order to ... cope with stress",

18   and ② any clinical/diagnostic support showing that

19   petitioner is an unreasonable threat without it/them;

20   the B.P.H. has used rote language when failing to consider

21   what is important.

22   The preceding seven points, in harmonization, establish

23   how the B.P.H.'s "therapy/self-help" decision is arbitrary

24   and capricious." Arkansas-v-Oklahoma (1992) 112 S.Ct. 1046, 1060,

25   503 U.S. 529 has held: "As we have often said an

26   agency has ... entirely failed to consider an important

27   aspect of the problem."

28   PAGE 64 of 201

<u>VII</u>
1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2                    (8 cont.)

3  Specifically, the B.P.H. has adopted <u>CCR §2402(c)(5)</u>, which

4  states: "Psychological Factors. The prisoner has a lengthy

5  history of severe mental problems related to the offense."

6  The evidence before the panel belies this application: For

7  coping with stress/needed therapy/self-help. Petitioner has no

8  mental problems related to the offense. <u>Lake Mohave Boat</u>

9  <u>Owners -v- National Park Service</u> (9TH Cir. 1998) 138 F.3d 759: "We

10 determine the importance of a problem by determining what

11 the statute [or regulation having power of statute]...makes

12 important. Due Process of the 14TH Amendment has been

13 violated by the B.P.H.'s disingenuous rationale related

14 therapy/self help for coping with stress.

15  Additionally, the B.P.H.'s continued reliance on AA (NA)

16 is failing to consider how it violates the "Establishment"

17 clause as ruled in <u>Turner -v- Hickman</u> (E.D. Cal. 2004)

18 342 F.Supp.2d 887, 896: "Requiring participation in NA [AA] is

19 an establishment of religion prohibited by the First Amendment."

20 Coerced participation violates <u>Lee -v- Weisman</u> (1992) 505 US 577,

21 587, 112 S.Ct. 2649, 120 L.Ed.2d 467, passim.

22  Minimally, the B.P.H. panel is making a medical finding as

23 to therapy. In arguendo, where a medical problem exists

24 and parole denial is premised on a major life activity

25 needing therapy: the B.P.H. has denied parole in

26 violation of the Americans with Disabilities Act (ADA) where

27 treatment could be found on parole.

28                PAGE 62 of 201

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  (8. Cont.)

3  As a prisoner, Petitioner would be covered by the ADA,

4  see Pennsylvania DOC -v- Yeskey (1998) 524 US 206, 118 S. Ct 1952,

5  1954 passim. Further, parole hearings are covered under the

6  ADA, see Thompson; Bogovich - v- Davis (CA9. Cal. 2002) 2002

7  DJDAR 2743, 2744-45, 295 F.3d 890, passim.

8  Here, the B.P.H. even failed to apply Arkansas -v- Oklahoma,

9  supra, to the Turner -v- Hickman, Lee -v- Weisman, Pennsylvania

10  DOC -v- Yeskey and Thompson; Bogovich -v- Davis problems caused

11  by their decision.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

9.

Petitioner contends that the B.P.H.'s regulatory multi-year parole denial, during his last parole hearing, is unconstitutionally beyond scope of governing statutory/limiting language, violating the U.S. Const. Amend. 14 "Procedural Due Process" doctrine, when quasi-judicial parole board fails to reasonably adhere to enabling legislation, which County of Sacramento -v- Lewis (1998) 118 S.Ct. 1708, 523 US 833 forbade abuse of power under Due Process.

(Multi-Year Denial, The Statutes)

Penal Code §3041 (b), in part:
"The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." [Emphasis Added, E.A. hereafter]

Penal Code §3041.5 (b)(2):
"Within 20 days following any meeting where a parole date has not been set for the reasons stated in subdivision (b) of Section 3041, the board shall send the prisoner a written statement setting forth the reason or reasons for refusal to set a parole date, and suggest activities in which he or she might participate that will benefit him or her while he or she is incarcerated." [E.A.]

In interpreting these statutes, the legal principle of harmonization comes into play. Notwithstanding the necessary conjoined harmonization, the tenet of rules of construction

PAGE 64 of 209

VII

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2                    (9. CONT.)

3  as applied to these multi-year parole denial statutes must

4  also be applied.

5     This court should also not forget that Penal Code § 3041.5

6  (b)(2)(B), passim, only allows the Board to deny parole "up to five

7  years". In this case +5 years has lapsed since Petitioner's

8  initial parole hearing, so prior criminality and commitment

9  offense should no longer be an issue to deny parole beyond 1 year.

10    Connecticut Nat. Bank -v- Germain (1992) 112 S.Ct. 1146, 1149,

11  503 US 250 adds the following clarity to interpreting

12  preceding Penal Code §§ 3041(b), 3041.5(b)(2), and 3041.5(b)(2)(B):

13        "We have stated time and again that courts must
          presume that a legislature says in a statute what
14        it means and means in a statute what it says there. [Cite
          omitted] When the words of a statute are unambiguous,
15        then the first cannon is also the last: Judicial inquiry
16        is complete.'"

17

18    There can only be an logical conclusion that Pen. Code §§

19  3041(b) and 3041.5(b)(2) can only be premised on either

20  (A) "current convicted offense or offenses" or (B) "current or past

21  convicted offense or offenses". These clauses of "convicted offense

22  or offenses" are limiting instructions under which the Board

23  adopted regulations to use current/past criminality (e.g.

24  CCR § 2402(c)(1) - "Commitment offense" [Unsuitability], CCR § 2402(c)(2)-

25  "Previous Record of Violence" [Unsuitability]; CCR § 2402(d)(1)- "No

26  Juvenile Record" [Suitability], and CCR § 2402(d)(6)- "Lack of Criminal

27  History [Suitability]) and the specific parameters therein;

28                    PAGE 65 OF 201

VII

1 MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2 (9 cont.)

3 see Rosenkrantz, passim, supra.

4 Relating back to Pen. Code §§ 3041(b), 3041.5(b)(2) and 3041.5

5 (b)(2)(B), the Board of Parole Hearings has further avoided the

6 following holding of F.D.I.C. -v- Meyer (1994) 114 S.Ct. 996, 1001:

7 "In the absence of such a definition, we construe the statutory

8 in accordance with its ordinary or natural meaning. (Smith -v-

9 United States, 508 US 223, 228, 113 S.Ct. 2050, 2054, 124 L.Ed.2d

10 138 (1993))." First, the Board in this case has used the crime

11 beyond 5 years for a multi-year denial, and secondly the

12 Board used reasons (i.e. necessary program, 115's not resulting in

13 any criminal "convicted offense" to deny parole).

14 Here, the Board forgets (or intentionally refuses) to adhere to

15 Terhune -v- Superior Court (Whitley) (Cal. App. 1st Dist. 1998)

16 65 Cal App 4TH 864, 872-73, 76 Cal Rptr 2d 841:

17 "Administrative agencies have only the powers conferred

    on them, either expressly or impliedly, by the Constitution

18 or by statute, and administrative actions exceeding

    those powers are void. [Cite omitted] To be valid,

19 administrative action must be within the scope of

20 authority conferred by the enabling statutes."

21 In CCR § 2270(d), in part 8 "Multiple Year Denials ... it shall

22 use the criteria in section [] ... 2402 as applicable." CCR §

23 2270 has been promulgated under the relevant guidelines of

24 Pen. Code §§ 3041, 3041.5, according to "note:" at the bottom of

25 CCR § 2270(d). Here, in Petitioner's particular circumstance

26 the Board's "multi-year" denials are beyond their authority.

27 This Court's Authority is needed to correct the abuse of discretion

28

PAGE 66 of 201

<u>VII</u>
1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
2  (9. Cont.)

3  Further supporting <u>Terhune -v- Sup. Ct.</u>, supra, <u>In Re.</u>
4  <u>Hyolite</u> (Cal. App 1st. Dist. 1973) 108 Cal. Rptr 751, 755 cert. den.
5  94 S.Ct. 1449, 415 US 934, 39 L.ed2d 492 instructs:
6  "[A] dministrative regulations must conform to the
   legislative will and that if such regulations violate
7  acts of the legislature they are void."
8  <u>Howard -v- U.S.</u> (N.D. Cal. 1994) 868 F.Supp. 1197, 1200 also
9  enlightens: "However, a government agency cannot change
10  a long-standing position [i.e. Pen. Code §§ 3041(6), 3041.5 (b)(a) and
11  3041.5(b)(2)(B). in this Petitioner's case] merely because it
12  [i.e. CCR § 2270 (d)] suits the agency's purpose in a particular
13  case."

14  Having established what is and what is not valid multi-
15  year parole denial criteria, Petitioner cites to <u>County of</u>
16  <u>Sacramento -v- Lewis</u> (U.S.S. Ct. Cal. 1998) 118 S.Ct. 1708, 523 US 833;
17  as to what <u>Due Process</u> protects at p. 1716:
18  "We have emphasized time and again that "[t]he
19  touchstone of due process is protection of the
   individual against arbitrary action of government,"
20  --- Thus, in <u>Collins -v- Harker Heights</u>, for example,
21  we said that the Due Process Clause was intended to
   prevent ~~government officials~~ "... from ~~abusing~~ [their]
22  power or employing it as an instrument of oppression.""
23
24  Petitioner is not arguing that multi-year denials are
25  illegal as a whole, but as applied when criteria is now
26  defunct according to statutory language: thus invalidated.
27  Procedural due process is violated.
28  PAGE 67 of 201

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(9 cont.)

Notwithstanding the aforementioned argument about that "multi-year" denials can only be used based on current/past convicted offenses for up to 5 years, in <u>Penal Code § 3041(b)</u> there is are the relevant clauses of "<u>a more lengthy period</u>" and "<u>cannot be fixed at this meeting</u>". The word "<u>a</u>" is singular. Further, the word "<u>period</u>" is a definite length. Thus, "a more lengthy period" should only allow multi-year denial (for up to 5 years — Pen. Code § 3041.5 (b)(2)(B)) FROM the Initial Parole Hearing only, not infinitum without new rationale. Additionally, the clause "<u>at this meeting</u>" only appears to mean the Initial Parole Hearing, without new PC§3041(b) rationale post-conviction. The aforementioned analysis helps expound on the argument in the next paragraph.

<u>Penal Code §5078(a)</u> provides: "The Board of Prison Terms [post Sen. Bill 737 Board of Parole Hearings] shall succeed to and shall exercise and perform <u>all</u> powers and duties granted to, exercised by and imposed upon the Adult Authority." [E.A.] <u>In Re Williams</u> (CA 3 Dist. 1975) 53 CA3d 10, 13, 125 Cal. Rptr. 457: "In its return, <u>the Adult Authority</u> avers that it is diligently seeking to set the terms <u>of all prisoners</u>...." [E.A.] <u>In Re Seabock</u> [Feb. 1983] 140 Cal. App. 3d 29, 40, 189 Cal. Rptr. 310: "It cannot be said that Seabock could be disadvantaged by the application of the DSL guidelines to him; these newer regulations do not in any way decrease his parole eligibility or chance therefore." [E.A.] <u>In Re Williams</u>, supra: "Primary

PAGE 68 f 204

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(9 Cont.)

teems will be fixed ... A primary teem will be fixed
for each inmate on each of his offenses the first time he
appears before the Adult Authority on or after that
date." (E.A.)

Unfortunately for Petitionee, the unsuitability/suitability
circumstances under CCR §§2402 (c)/2402 (d) have apparently
only been promulgated under Pen-Code §3041 ⁄ 5076.2, under
Authority cited; with reference to Pen-Code §§3041, 4801. Nowhere
has the Board shown/cited to Pen-Code 5078(a) as part of its
hsemonized duties of the parole consideration hearing
process (i.e. Article 11 – CCR §2400 et seq.).

Unequivocally, the newer DSL parole laws are not to
be harsher, nor are they to decrease chance for parole.
However, when date has not been set at Initial, see In Re
Williams, supra, chance for parole has in fact been decreased
to the point of the Board of Parole Hearings ignoring
the California Legislatures DSL Mandate of Pen-Code §5078(a).
Petitioner has, in fact, now demonstrated evidence of how the
Board has refused to follow statutory commands of Pen-Code §
5078 (a)

Garner - v - Jones (2000) 120 S.Ct. 1362, 1366, 529 US 250:
"Absent a demonstration to the contrary, we presume
the Board follows its statutory commands and
internal policies in fulfilling its obligations."

Petitioner has a liberty interest in parole, thus the

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(9. Cont.)

procedures to deny parole must not only be fair, but must also be authorized and not beyond scope of statute(s). Where his liberty interest has been negated and the record of valid rationale: the decision is arbitrary.

In Re Jackson (Cal. 1985) 39 Cal. 3d 464, 216 Cal. Rptr. 760 at p. 479: "The latter decision [ie. multi-year denial] involves a prediction.... What is required, however, is an identification of reasons which justify the postponement. [p. 480] The Board is required, however, to support all such postponement determinations with a separate statement of reasons, as section 3041.5, subdivision (b) requires." [E.A.]

As previously discussed, Pen. Code § 3041.5 (b)(2) refers to Pen. Code § 3041 (b) and has implied maximum statute of limitations of 5 years (Pen. Code § 3041.5 (b)(2)(B)) unless there are new post-conviction reasons to qualify post-conviction conduct within criteria of Pen. Code § 3041 (b).

Multiple multi-year denials based on unchanging factors / invalid factors are the whim / caprice the record / law do not support to be valid under the U.S. Const. Amend. 14 procedural due process doctrine.

In Ground 2, ante, the crime was addressed. Motive was addressed in Ground 3, ante, Program addressed Ground 6, ante, and Disciplinary in Ground 7, ante.

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

10.

Petitioner contends that his right to effective assistance of counsel, under the 6TH Amend. was denied by appointed counsels actions meeting the two-prong test of Strickland-v-Washington (1984) 466 US 668, 104 S. Ct. 2052, 80 L.Ed.2d 674, thus: ineffective assistance of counsel (IAC) at parole hearing.

The STANDARD for effective assistance of counsel is still under the Strickland-v-Washington (1984) 466 US 668, 104 S.Ct 2052, 80 L.Ed 2d 674 2-prong analysis. These two prongs in any situation, allegedly, are: (1) a court must determine that counsels performance fell "below an objective standard of reasonableness ... under prevailing professional norms" — performance prong, and (2) that there is a reasonable probability that "but for counsels unprofessional errors, the result of the proceeding would have been different" — prejudice prong.

This Performance / Prejudice prong STANDARD should apply to a courts reviewing of parole hearing actions by lawyers, also; especially where there is a right to counsel as a matter of law. In California, Calif. Pen. Code §3041.7, in relevant part states: "[A] prisoner under a life sentence ... shall be entitled to be represented by counsel."

PAGE 71 of 201

<u>VII.</u>

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(10. CONT.)

THE Importance of being able to review I.A.C. claims, as related to parole consideration hearings is illuminated by the requirements of the Anti-Terrorist Effective Death Penalty Act (AEDPA) wherein Federal Habeas Corpus relief will only be granted under:

    A) 28USC§2254(d)(1)'s "contrary to" or "unreasonable application" analysis; and/or

    B) 28USC§2254(d)(2)'s "unreasonable" determination of facts in light of the evidence presented.

Where a parole hearing lawyer fails to (1) make the required/necessary/appropriate objection, or (2) ~~fails to~~ correct the BPH Panel's decision under fact/law: ~~state courts are~~ apt to use "Failure to object" waives review analysis. Minimally, the parole hearing inmate should at least have some idea of what errors exist in the decision part of the hearing — — by appointed counsel having identified ~~the error~~ For the record before the BPH's Decision Review Unit — — as post-hearing inmates are left in a quagmire of then having to research the record and guess as to what is error ~~For~~ Habeas Corpus ~~Filings.~~

The BPH is mandated to consider <u>ALL RELEVANT/ RELIABLE INFORMATION</u> (EVIDENCE). This includes evidence of the court/law as applied to the conviction, and evidence of the law as applicable to the Board's pre/post-decision findings.

PAGE 72 of 202

<u>VII</u>

1  MEMORANDUM  OF  POINTS  AND  AUTHORITIES  CONTINUED

2  (10. CONT.)

3  No BPH panel member or member of the review

4  units panel should be permitted to hide behind the

5  regulatory language like rogues: when facts parallel

6  to case law should have prevented their action to begin

7  with.

8  The fact that the BPH's parole violation functions

9  are under federal oversight is prima facie evidence

10  that the same commissioners/deputy commissioners

11  have made errors.

12  Parallel to a trial, the Board's hearing procedure

13  is divided into two parts: (A) Discussion of the evidence

14  and establishment of fact, and (B) Sentence determination.

15  A prisoner at trial is guaranteed the effective

16  assistance of counsel at both trial and sentencing.

17  Therefore, a prisoner at a California Parole Consideration

18  hearing should be entitled to assistance of counsel

19  both(1) while the facts are being discussed, and(2)

20  after the panel's decision. Otherwise, the decision(s)

21  to deny parole doesn't receive any adversarial testing.

22  In the facts of this case, appointed counsel

23  did not speak once during the decision part of the

24  hearing.

25  Appointed counsel should have known of the grounds

26  2-9 of this petition, incorporated by reference thereto, and

27  not have allowed Due Process to be violated as such.

28

## VII
## MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
### (10. CONT.)

1
2
3    Attorney Christensen's performance was below that
4    of which an attorney should have represented her
5    client before the quasi-judicial parole board. It
6    was objectively unreasonable to not enter any corrections
7    as to fact/law and/or mixed questions of fact and
8    law. Presuming that the parole board would act
9    in a lawful manner, based on the law and facts
10   presented by Petitioner in grounds 2-9, supra, of the
11   Superior Court Petition for Writ of Habeas Corpus, there
12   is a reasonable probability the result of the proceeding
13   (B.P.H. Parole Decision on 9/29/05 to deny parole) would
14   have been different (as Petitioner has shown that the
15   Parole Board's decision to deny parole was arbitrary,
16   capricious, lacking basis in fact or contrary to law).
17      As the parole hearing is a derivative of a criminal
18   proceeding, the 6th Amendment's right to 'assistance of
19   counsel' as applicable through the 14th Amendment's 'due
20   process' clause, has been violated.
21
22
23
24
25
26
27
28

VII.

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

11.

Petitioner contends that the Administrative Collateral Estoppel Doctrine as held in Astoria Federal Sav. and Loan Ass'n -v- Solimino (1991) 111 S. Ct. 2166, 2169, 501 US 104 is violated by the B.P.H.'s repetitive use of facts (rationale) to deny parole suitability, which, thusly, is in violation of U.S. Const. Amend. 14 procedural due process.

The U.S. Supreme Court stated in **Astoria Federal Sav. and Loan Ass'n -v- Solimino** (1991) 111 S. Ct. 2166, 2169, 501 US 104:

"We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality...."

Therefore, it is a well settled principle that the Administrative Collateral Estoppel doctrine exists. More recently, the Ninth Circuit stated in **In Re Cantrell** (9th Cir. 2003) 329 F.3d 1119, 1123 a 5-prong test:

"Under California law, collateral estoppel only applies if certain threshold requirements are met: First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding."

In Petitioner's case, he has substantiated all 5-prongs of this claim. Thus, a prima facie case has been established to

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(11 Cont.)

support in Administrative Collateral Estoppel claim.

In Re Haeman (9th Cir. 2001) 250 F.3d 1240, 1245 stated: "The party asserting collateral estoppel bears the burden of establishing these requirements."

Petitioner thus proffers that the 5-requirements, as addressed in In Re Cantrell, supra, have been proved as follows:

[PRONG-1] As Petitioner has shown in EXH "K" (Affidavit at pagination 193 to 196 the issues (i.e - (1) Use of Crime, (2) Motive, (3) Prior Criminality -Unstable/Tumultuous History & (4) Self-Help/Therapy) have all previously been decided at either and/or both the 1998 and 2001 hearings; and were used again to deny parole at the 9/29/05 hearing (the majority 7 years 8 months after 1st Use).

[PRONG-2] By review of the prior 1998 and 2001 decisions (respectively EXH "I" pagination 178 to 182 and EXH "J" pagination 184 to 191) the "Decision Pages are Factual evidence of (1) Use of Crime, (2) Motive, (3) Prior Crimes & (4) Self-Help/Therapy having all been actually litigated in the former parole proceedings.

[PRONG-3] It was necessarily decided in both of the former proceedings: (A) 1998 "Decision": "This is an unanimous decision" - P.1; and (B) 2001 "Decision": "That concludes the hearing" - P.7

PAGE 76 of 204

VII

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  (11 cont.)

3  [PRONG-4] "The prior decisions were final and on the

4  merits: (A) The 1/29/98 hearing [EXH "I"] was

5  final on 4/13/98 and (B) The 10/1/01 hearing

6  (EXH "J") was final on 10/22/2002.

7  [PRONG-5] "Petitioner is seeking issue preclusion (administrative

8  collateral estoppel) against the Board of Parole

9  Hearings (previously known as the Board of PRISON

10  Terms) which is the same agency as the prior

11  hearings but with another name. (Compare

12  EXHIBITS "A"-2005, "J"-2001 and "I"-1998)

13  In Biggs-v-Terhune (9th Cir, Cal.2003) 334 F.3d 910, the 9th

14  Circuit declared: "[T]he Parole Board must be cognizant

15  not only of the factors required by state statute [e.g. Pen.

16  Code § 3041 and progeny of Administrative Regulations], but also

17  the concepts embodied in the Constitution requiring due process

18  of law." [E.A.]

19  California has accepted the restriction (administrative

20  collateral estoppel) against agencies - Castillo -v- City of

21  Los Angeles (Cal.App.2 Dist. 2001) 111 Cal.Rptr.2d 870, 92 Cal.App.

22  4th 477 rehg denied, has delineated:

23  "The applicable principle that bars relitigation is issue

24  preclusion, also known as collateral estoppel... Issue

25  preclusion prevents "relitigation of issues argued and

26  decided in prior proceedings." ... Issue preclusion is not

27  limited to barring relitigation of court findings. It

28  also "bars the relitigating of issues which were

    previously resolved in an administrative hearing by an

    PAGE 77 of 204

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(11 Cont.)

agency acting in a judicial capacity." (Knickerbocker
-v- City of Stockton (1988) 199 Cal App. 3d 235, 242,
244 Cal Rptr 764)."

When the 5-prongs of In Re Cantrell, supra, have been
substantiated on Petitioner's behalf, then Due Process in
light of Biggs -v- Terhune, supra, is absolutely violated
when parole denials are based on unchanging factors
and/or certain conduct prior to current imprisonment.

# VIII
## CONCLUSION

1
2   The rationale used by the Board of Parole Hearings
3   panel at Petitioner's 9/29/05 parole hearing is violative
4   of U.S. Supreme Court holdings.
5   Petitioner has substantiated each of his 11 claims,
6   wherein claims 1, 10 and 11 also require analysis beyond
7   the "some evidence" analysis.
8   Thus, this Court should vacate the Board's actions
9   and hold the California Board of Parole Hearings to the
10  standards of the U.S. Supreme Court and not there
11  Far-fetched/rote/erroneous conclusions.
12  This court should conclude that an evidentiary should
13  occur, so as to permit discovery and to show to this Court
14  that the Parole Board, when setting a date, even after
15  a prisoner serves beyond the matrix, that they use the
16  matrix for 2nd Degree Murderers.
17  Petitioner has readily proven that, under the California
18  Determinate Sentencing Law, inclusive of Penal Code § 5078(a)
19  and In Re Williams, that his date should have been
20  set.
21  Finally, this Court has the authority to state that
22  Administrative Collateral Estoppel/Issue Preclusion applies to
23  the parole board.
24  ///
25  ///
26  ///
27  ///
28

PAGE 79 of 201

## IX
### PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully Prays this Court to:

1) Grant the Writ of Habeas Corpus; or

2) Issue an Order to Show Cause; and

3) Appoint Counsel; and

4) Order an Evidentiary Hearing; and

5) Declare the rights of the Parties; and

6) Enter the attached documents into evidence and take Judicial Notice of them pursuant to Cal. Evidence Code; and

7) Vacate all of the Board's conclusions of the 9/29/05 Parole Hearing Decision; and

8) Order that Petitioner's sentence is violative of Cal. Const. Art. I. Sec. 17/24 "cruel or unusual punishment" clauses;

9) Find that appointed counsel rendered IAC; and

10) Rule that the Parole Board, like any Administrative Agency, is barred from relitigating issues previously decided at prior Board hearings; and

11) Grant any other relief deemed equitable, fair and in the interest of JUSTICE.

Respectfully submitted,

7 / 26 / 2006

Scott ~ B~

Scott Burns, Petitioner
In ProPer

PAGE 80 of 201

X

INDEX TO EXHIBITS

EXHIBIT:                                                          PAGE(S)
                                                              (1st Page is Cover)

A : 9/29/2005 BPH PAROLE HEARING TX'S                          82-148

B : USDOJ PRIOR RECORD                                         149-151

C : PSYCH REPORT                                               152-156

D : JANUARY 26,2006 MEMO TO BPH COMMISSIONERS                  157-159

E : EXCERPTS FROM 2004 GOVERNOR'S REPORT (TIME FROM 1155)      160-166

F : NOVEMBER 18,2005 REPORT (PSYCH REPORTS/MENTAL HEALTH)      167-168

G : CAL.DEPT. CORRECTIONS +REHAB, DEPT. OP. MANUAL EXCERPT (PSYCH) 169-172

H : BPH COMMISSIONER BIOGRAPHIES                               173-176

I : 1998 PAROLE HEARING DECISION (REASONS FOR DENIAL)          177-182

J : 2001 PAROLE HEARING DECISION (REASONS FOR DENIAL)          183-191

K : AT-A-GLANCE 1998,2001,2005 HEARING EXCERPTS (AFFIDAVIT)    192-196

L : ABSTRACT OF JUDGEMENT (LIFE/NON-LIFE OFFENSES)             197-200

# EXHIBIT F

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

## THIRD APPELLATE DISTRICT

DOCKETED

APR 0 6 2007

By B. Lard
No. _____

# FILED

APR - 5 2007

COURT OF APPEAL - THIRD DISTRICT
DEENA C. FAWCETT

In re SCOTT BURNS on Habeas Corpus.

BY_____ Deputy

C055292
Monterey County
No.

BY THE COURT:

The petition for writ of habeas corpus is denied.

Dated: April 5, 2007

SIMS, Acting P.J.

-------------------------------

cc: See Mailing List

IN THE

# Court of Appeal of the State of California

## AND FOR THE

## THIRD APPELLATE DISTRICT

MAILING LIST

Re:    In re Scott Burns on Habeas Corpus.
       C055292
       Monterey County
       No.

Copies of the attached document have been sent to the individuals checked below:

Scott Burns
D-99247
 Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Office of the State Attorney General
P.O. Box 944255
Sacramento, CA 94244-2550

Monterey County Superior Court
240 Church Street, Rm. 320
Salinas, CA 93901

misc

1    SCOTT BURNS (CDCR NO. D-99247)
2    GW-312-UP, CTF-CENTRAL
     P.O. BOX 689
3    SOLEDAD, CA  93960-0689
     (IN PROPER)
4



5

6

7

8              THIRD DISTRICT COURT OF APPEALS

9           FOR  THE  STATE  OF  CALIFORNIA

10

11

12   IN RE SCOTT BURNS
13     SCOTT BURNS - PETITIONER          CASE NO.
14             -V-                        6671
                                       (SIERRA COUNTY CASE NO.)
15   B.CURRY, WARDEN (A), et al          RE: PETITION FOR WRIT OF
16     (RESPONDENT(S))                      HABEAS CORPUS
17

18

19

20

21

22

23

24

25

26

27

28                        -A-

— TABLE OF CONTENTS —                                    PAGE(S)

COVER PAGE _____ A

TABLE OF CONTENTS _____ B

TABLE OF AUTHORITIES _____ C, D

MC 275 FORM FOR HABEAS CORPUS _____ 1-32

    (GROUND 1 FACTS) _____ (3-5)

    (GROUND 1 P+A's) _____ (6-10)

    (GROUND 2 FACTS) _____ (11-13)

    (GROUND 2 P+A's) _____ (14-17)

    (GROUND 3 FACTS) _____ (18-20)

    (GROUND 3 P+A's) _____ (21-23)

    (GROUND 4 FACTS) _____ (25-27)

    (GROUND 4 P+A's) _____ (28-30)

CONCLUSION _____ 33

PRAYER FOR RELIEF _____ 34

VERIFICATION / PROOF OF SERVICE _____ 35

— TABLE OF AUTHORITIES —                     PAGE(S)

U.S. CONST. AMEND. XIV "DUE PROCESS" _____ 17, 23, 30

CAL. CONST. ART. I, SEC. 7, 15, 24 "DUE PROCESS" _____ 10

— FEDERAL CASE LAW —

BURLINGTON TRUCK LINES —V— UNITED STATES (1962) 371 US 156, 168
    83 S.Ct. 239, 245-246, 9 L.Ed 2d 207, 216 _____ 30

CUNNINGHAM —V— CALIFORNIA (2007) ___ US ___, ___ S.Ct ___ 8

DANIELS —V— WILLIAMS (1986) 106 S.Ct 662, 665, 474 US 332 ____ 16, 17

EVITTS —V— LUCEY (1985) 105 S.Ct 830, 838-39, 469 US 388 ____ 16

GILLS —V— AYERS (9TH CIR. 2003) 342 F.3d 911, 920 _____ 22

HAMDI —V— RUMSFELD (2004) 542 US 507, 124 S.Ct 2633 _____ 7, 15

HOLLAND —V— JACKSON (2004) 124 S.Ct 2736 _____ 22

IRONS —V— WARDEN OF C.S.P.—SOLANO (F.D. Cal 2005)
    358 F.Supp. 2d 936, 941 [Note: Order Granting Writ Reversed 3-6-07] 6

PELTIER —V— WRIGHT (9TH CIR. 1994) 15 F.3d 860, 862 _____ 16

RICE —V— COLLINS (2006) 546 US ___, ___ US ___, slip opinion 7-8 ___ 14

ROSE —V— LUNDY (1982) 71 L.Ed 2d 379, 387 _____ 14

ROSENKRANTZ —V— MARSHALL (C.D. Cal 2006, 84-06) 444 F.Supp. 2d 1065, 1084 _ 7

SIMS —V— ROWLAND (9TH CIR. 2005) 414 F.3d 1148, 1152 cert. 126 S.Ct 809 (2005) __ 21

STRICKLAND —V— WASHINGTON (1984) 466 US 668, 104 S.Ct 2052 ____ 10

SUPERINTENDENT... —V— HILL (1985) 472 US 445, 105 S.Ct 2768 ____ 16, 30

TAYLOR —V— MADDOX (9TH CIR. 2004) 366 F.3d 992, 999 _____ 14, 28

WALTERS —V— NAT. ASSN. OF RADIATION SURVIVORS (1985)
    473 US 305, 105 S.Ct 3180, 3189 _____ 17, 30

WILLIAMS —V— TAYLOR (2000) 120 S.Ct 1495, 1519-20, 529 US 362 ____ 19, 16

VASQUEZ —V— HILLERY (1986) 474 US 254, 88 L.Ed 2d 598, 605 ____ 14

YARBOROUGH —V— ALVARADO (2004) 124 S.Ct 2140, 2149 _____ 22

UNITED STATES CODE

28 USC § 2254 (d)(1) _____ passim

28 USC § 2254 (d)(2) _____ passim

—C—

─TABLE OF AUTHORITIES CONTINUED ─          PAGE(S)

CALIFORNIA CASE LAW

In Re Clark _____ passim

In Re Jeffrey David Elkins (Cal. App. 1st Dist. Div. 2) 2006 DJDAR 14489, 14498

In Re Foss (Cal. 1974) 10 C. 3d 910, 919 _____ 6

In Re Wen Lee (Cal. App. 2nd Dist.) 2006 DJDAR 13961, 13964-65 _____ 6, 8

In Re Powell _____ passim

In Re Eduard Ramirez (Cal. App. 1st Dist. 2001) 94 Cal. App. 4th 549
    114 Cal. Rptr. 2d 381 _____ 7, 17

In Re Robbins _____ passim

In Re Rosenkrantz (Cal. 2002) 128 Cal. Rptr. 2d. 104, 138 _____ passim @ 29

In Re George Scott (Cal. App. 1st Dist. 2004) 119 Cal. App. 4th 871,
    15 Cal. Rptr. 3d 32 _____ 7

In Re Earnest Smith (Cal. App. 6th Dist. 2003) 114 Cal. App. 4th 343, 372 → 9, 29

In Re Mark Smith (2003) 109 Cal. App. 4th 489, 505, 134 Cal. Rptr. 2d 781, 792 → 8, 9

In Re DeLuna (Cal. App. 6th Dist. 2005) 24 Cal. Rptr. 3d 643, 649-50 _____ 30

PEOPLE-V- MANUEL ALEX TRUJILLO (Cal. 2006) 2006 DJDAR 16081, 16083 ___ 30

PEOPLE-V- WINGO (Cal. 1975) 14 C. 3d 182, 184 _____ 6

CAL. ADMIN. PROC. ACT-1/ GOV. CODE §§ 11340.2, 11342.600 _____ passim

CALIF. CODE OF REGS - TIT. 15

§ 2402 (c)(1) _____ passim

§ 2402 (c)(4)(A-D) _____ passim

§ 2402 (cc) _____ 30

─ D─

MC-275

Name Scott Burns (CDCR No. D-99247)

Address GW-312-Up, CTF-Central

P.O. Box 689

Soledad, CA 93960-0689

CDC or ID Number D-99247

## THIRD DISTRICT COURT OF APPEALS

## FOR THE STATE OF CALIFORNIA
(Court)

IN RE SCOTT BURNS

| |
|---|
| Scott Burns |
| Petitioner |
| vs. |
| B. Curry, Warden (A), et al |
| Respondent |

PETITION FOR WRIT OF HABEAS CORPUS

No. _____
(To be supplied by the Clerk of the Court)

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

1/35

**This petition concerns:**

☐ A conviction                   ☒ Parole

☐ A sentence                     ☐ Credits

☐ Jail or prison conditions      ☐ Prison discipline

☒ Other (specify): Denial of Parole and Requested Review of Lower Court's Ruling

1. Your name: SCOTT BURNS

2. Where are you incarcerated? CORRECTIONAL TRAINING FACILITY - SOLEDAD (CENTRAL) GW-312 Up, P.O. BOX 689, SOLEDAD, CA 93960-0689

3. Why are you in custody? ☒ Criminal Conviction   ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Second Degree Murder, Grand Theft Firearm, Gun Enhancement

b. Penal or other code sections: Pen. Code §§ 187, 487(3), 12022.5

c. Name and location of sentencing or committing court: Sierra County Superior Court
P.O. Box 476  Downieville, CA 95936

d. Case number: 4161

e. Date convicted or committed: September 28, 1988

f. Date sentenced: October 28, 1988

g. Length of sentence: 17 years -to -life

h. When do you expect to be released? Undetermined

i. Were you represented by counsel in the trial court? ☒ Yes. ☐ No. If yes, state the attorney's name and address:
Donald J. Blake, Jr.
2175 Feather River Blvd., Oroville, CA 95965-5706

4. What was the LAST plea you entered? *(check one)*

☒ Not guilty  ☐ Guilty  ☐ Nolo Contendere  ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

☒ Jury  ☐ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Petitioner contends that the Superior Court abused its discretion, in denying relief when ruling against Petitioners claims, as violative of California law.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

[A] Petitioner submitted a Habeas Corpus Petition (See Supporting Document (Supp. Doc., hereafter,) "I" ) to Sierra County, after Denial of Parole on 9/29/05 ; See EXH. "A" of Supp. Doc 'I'.
[B] On 11/30/06, the Sierra County Superior Court entered an Order (Supp. Doc. "II") which denied relief. The court didn't mail the denial to Petitioner until 2/14/07.
[C] Petitioner did not find out about the Denial until 2½ months later, when correspondence (Supp. Doc. III) advised him of such Order denying relief.
[D] Petitioner adopts by reference thereto and fully incorporates as if stated herein (Supp. Doc's I - III; inclusive of Grounds 1 - 11 of Supp. Doc. 'I' for review. (Continued at pages 4,5 )

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Please See Appellate Court P+A's, Part 1 @ page(s) 6-10

STATEMENT OF FACTS FOR GROUND 1 CONTINUED:

[1] Challenges for proportionality can be made after direct appeal.

[2] The Board violated the Administrative Procedures Act when altering regulatory score of CCR§2402(c)(1)'s language and violated case law when allowing themselves to claim "motive" as inexplicable and trivial. Then, these illegal actions were affirmed by the Superior Court's order.

[3] It is the Board which is supposed to be aware of Sentencing Court/Appellate Court findings and not the otherway around. Here, the court claims a factor (execution style murder) never alleged by Board. Also, this Court's lower ruling claimed (exceptionally callous disregard for human suffering) which the Board never claimed. Finally, the lower court attempts to help the Board by claiming the motive was inexplicable or trivial (a violation of law). "Due Process" as cited, controls under U.S.S. Ct. case.

[4] Also, the lower court disregarded the fact that there was nothing beyond the minimal elements necessary to convict as Petitioner was acquitted of other elements.

[5] Where the state administrative agency refuses to obey its regulatory language, as interpreted by state judiciary, the administrative decision is abuse of discretion. Likewise, where a court does same, it is also an abuse of discretion.

[6] Where "unsuitability" and "suitability" criteria both have parameters of when "priors" can be used: the Administrative Agency is barred from flip-flopping criteria - The law determines "particular circumstances relevant". Neither the Board nor Court can deny procedural due process protections.

STATEMENT OF
GROUND #1 FACTS CONTINUED:

[7] Petitioner proved how the Board violated the scope of its regulatory language as related to "unstable social history." However, drug use, prior criminality and having no family ties does not prove/hint at unstable or tumultuous relationships.

[8] CDCR has pre-release and Community Services Division to help with job assistance. No psych/counselor report claims more insight is needed. The question is not whether there is a risk, but whether the risk of release would be an unreasonable risk of danger to society. The record belies lack of skills, lack of insight, and lack of tools to refrain from substance abuse. Also, the Court is imposing as a factual analysis that past lack of self-help is usable to outweigh current programs. Petitioner has already been punished for no earlier programs at earlier denial(s)

[9] The last "serious" 115 is no longer germane in light of positive change.

[10] The lower court is also disingenuous to allege there is no explanation how multi-year denial was beyond scope. 7 pages of Points + Authorities disprove this analysis.

[11] The law cited by Petitioner it his lower court petition prove how his lawyer just allowed the Board to violate the law to his prejudice.

[12] Finally, the U.S.S.Ct. doctrine of Administrative Collateral Estoppel (Issue Preclusion) is binding against the parole Board to prohibit multiple punishments. Yet, lower court misread ground and concluded erroneously.

AC
5/35

MEMORANDUM OF POINTS AND AUTHORITIES

1.

Petitioner contends that the Superior Court abused its discretion, in denying relief when ruling against Petitioners claims, as violative of California law.

Petitioner Raised 11 grounds in his Superior Court Petition filed 7/31/06. The Superior Court, conveniently denied the Petition Nov. 30, 2006. This was + 120 days after filing instead of within 60 days mandated by the Calif. Rules of the Court.

Additionally, the Superior Court made Findings of Fact without an Order to Show Cause or Evidentiary Hearing. This was the beginning of violation of California law.

In Regards to Petitioners 1st Superior Court claim, the lower court disregarded People v. Wingo (Cal. 1975) 14 C.3d 182, 184 (where Petitioner has right to determination if sentence excessive) This parallels In Re Foss (Cal. 1974) 10 C.3d 910, 919 (maximum term does not affect whether term constitutes cruel or unusual punishment) Also, at p. 920 (if more serious crimes punished less severely than offense in question, the challenged penalty is to that extent suspect (In Re Lynch, supra 8 Cal. 3d 410, 426)"

In Irons v. Warden of C.S.P. - Solano (E.D. Cal. 2005) 358 F.Supp. 2d 936, 941 (over term after Initial hearing serious liberty interest questions would arise).

At the time of Judges ruling In Re Jeffrey David Elkins (Cal. App. 1st. Dist. Div. 2) 2006 DJDAR 14489, 14498 (after nearly two decades commitment offense unreliable predictor). Preceding Elkins, In Re WenLee (Cal. App. 2nd Dist.) 2006 DJDAR 13961, 13964-65:

AC
6/35

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
                                    (1. cont.)
2  (crimes almost 20 years ago lost much of their usefulness). Also,

3  Rosenkrantz v. Marshall (C.D. Cal. 2006, 8-1-06) 444 F.Supp.2d 1065,

4  1084 (after nearly 20 years since crime ability to predict future

5  dangerousness on crime near nil ... after 15 years in prison

6  where prisoner doesn't show instability, cruelty, violent tendencies,

7  ... predictive ability of crime near zero) Thus if use of crime

8  is out of picture: Is it cruel or unusual punishment to

9  imprison for maximum ("life") on non-unsuitability reasons? He

10  should not be time barred by In re Clark, passim or In re Robbins

11  passim, as used by Court.

12      Secondly, in violation of the Calif. Admin. Procedures Act (e.g.

13  Gov. Code § 11340.2, 11342.600) the parole Board made up a new

14  criteria of "especially cruel and callous". It was also not

15  supported by any statement of CCR § 2402(c)(1)(A-D) to

16  use CCR § 2402(c)(1) if implied.

17      "Some evidence" is not only test for parole hearings.

18  Hamdi v. Rumsfeld (2004) 542 U.S. 507, 124 S.Ct. 2633 (some evidence

19  is a standard of review, not standard of proof). Also, In re

20  Eduard Ramirez (Cal.App. 1st Dist. 2001) 94 Cal.App 4th 549, 114 Cal.

21  Rptr.2d 381 (some evidence only applies to questions of evidentiary

22  sufficiency and does not substitute for other due process

23  requirements). The fact that the Board's now affirmed "motive...

24  was inexplicable and very trivial" violated In re George Scott (Cal.

25  App. 1st Dist. 2004) 119 Cal.App. 4th 871, 15 Cal Rptr 3d 32 (motive can't

26  be both).

27      Petitioner also argues that where court cannot find any

28

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(1. Cont.)

aggravating circumstances unless upheld by JURY (see Cunningham -v- California (2007) ___ us___, ___ s.ct ___) the Board should not be able to punish a crime more severely than sentenced.

Also, both the Penal Code and Div. 2 of Title 15 mandate that the Board be cognizant of the Sentencing Rules of the Superior Courts.

Finally in regards to Part 2, In Re Weekee, supra, @ p. 13965 - the base minimum test exists: how the crime was committed not how it was/could have been plead. Thus, where Appellate court deemed it not atrocious as compared to other 2nd degree crimes it clearly was not enough to have more than that.

Thirdly, the Superior Court is misguided when claiming the Carey -v- Pirhus (1978) 435 US 247, 268 doesn't apply. In the context of Procedural O Due Process the Board had to obey In Re George Scott as "motive" cannot be inexplicable and trivial. The Court is not allowed to substitute its own judgement.

Prior criminality not being violent is a parole suitability criteria. See, e.g. In Re Mark Smith (2003) 109 Cal. App. 4th 489, 505, 134 Cal. Rptr 2d 781, 792.

Movement through the juvenile foster-care system is not a valid unstable social history criteria. Additionally, there is no direct evidence that any prior relationship was long enough to be deemed unstable / tumultuous. The fact that family members disown him doesn't imply it is his fault. Here, prior criminality used as unstable social history is also violative of Calif. Admin. Procedures Act: mixing apples and oranges to create new standard. The Court must judge what the Board stated.

AC
8/35

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(1 Cont.)

Regarding programming, the record belies the grounds alleged by the Board and affirmed by the Court. Also, the Superior Court ignores the argument of Ground 6. Petitioner should not be continually punished for the prison systems shortcoming (e.g. lack of program). CDCR has a Parole and Community Services Division that will help with employment. In Re Ernest Smith (Cal. App. 6th Dist., 2003) 114 Cal. App. 4th 343, 372 stated (pastuse of drugs, without current desire or likelihood of relapse was not unsuitability criteria). Also, In Re (Mark) Smith (2003) 109 Cal. App. 4th 489, 134 Cal. Rptr. 781, 792 (a prisoners prior addiction is not an appropriate consideration in determining parole suitability).

The Superior Court's rationale about Petitioner's 115's establishing that he wouldn't meet parole obligations is disingenuous. In Re Ernest Smith, supra, at p. 372 (absence of "serious" misconduct a suitability factor). Further, In Re (Mark) Smith, supra, at p. 792 (128(a)'s, see counseling.) 15 year old "serious" misconduct, having previously been punished shouldn't matter when no new prosecution and guilt for felony misconduct has occured.

Regarding Petitioner's claim about Multi-year denial being beyond scope of law, is a question of law which "some evidence" doesn't apply. Here, the Superior Court misdirected the legal claim so as not to conduct any legal review of statutory construction.

<u>MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED</u>
(9. cont.)

Here, the Superior Court fails to give the proper deference to the facts alleged and the 2-prong test of <u>Strickland v. Washington</u>, passim. Petitioner is not arguing <u>collateral estoppel</u> as to his charges, but the doctrine of <u>administrative collateral estoppel</u> as alleged on the basis of unchanging factors. His lawyer should have known of this doctrine, and allowed the prejudice of the denial to violate said doctrine.

Finally, the Superior Court mischaracterizes the last claim. Petitioner alleges repetitive use of any prior used reason is barred by issue preclusion. Where California recognizes this restriction; the Board of Parole Hearings cannot refuse to adhere to it for convenience.

Thus, under "California Law, "<u>Due Process</u>" has been violated in violation of Cal. Const. Article I, Sections 7, 15, 24.

7. **Ground 2** ▓▓▓▓▓▓▓▓ *(if applicable)*:

Petitioner contends that the lower courts refusal to grant Habeas Corpus relief was "contrary to" controlling U.S. Supreme Court holdings, as applicable via the 14th Amendment's "Due Process" clause, when denying liberty interest in parole by affirming Parole Boards decision.

a. Supporting facts:

Preface

[A] Petitioner adopts and incorporates by reference thereto, as if fully stated herein, P's [A] through [D] of Ground 1 aforementioned.

(Continued at pages 12, 13 )

b. Supporting cases, rules, or other authority:

Please See Appellate Court P+A's, Part 2 @ page(s) 14-17

1  STATEMENT OF FACTS FOR GROUND # 8

2  [1] In Petitioner's Superior Court Habeas Corpus Petition,

3  he raised 11 Grounds. In summary, they were:

4  [ONE] Sentence is grossly disproportionate, a state claim
       not addressed hereafter.

5
6  [TWO] Refusal to obey procedures in light of <u>United States</u>
       <u>-v- Caceres</u> 59 L.Ed 2d 733, 440 US 741, 99 S.Ct 1465; [CRIME]

7  [THREE] Lack of constitutionally adequate procedures in light of
       <u>Cafey -v- Piphus</u> (1978) 435 US 247, 259, 98 S.Ct 1042, 1050;

8  [FOUR] Use of priors was arbitrary and capricious within
9       the holding of <u>Arkansas -v- Oklahoma</u> (1992) 112 S.Ct 1046, 1060,
       503 US 592;

10  [FIVE] Claimed unstable social history was violative of
11       procedures violating <u>U.S. -v- Caceres</u>, supra;

12  [SIX] Alleged limited program was arbitrary within
13       holding of <u>County of Sacramento -v- Lewis</u> (1998) 118 S.Ct.
       1708; 523 US 833;

14  [SEVEN] Last "serious" rules violation report was no longer
       "some evidence" within meaning declared in <u>Superintendent</u>
15       <u>-v- Hill</u> (1985) 472 US 445, 105 S.Ct 2768;

16  [EIGHT] Alleged needed therapy/self-help and identified coping
17       with stress was arbitrary and capricious as defined
       in <u>Arkansas -v- Oklahoma</u>, supra;

18  [NINE] Refusal of Parole Board to obey statutory construction
19       of multi-year language also violative of <u>County of</u>
       <u>Sacramento -v- Lewis</u>, supra;

20  [TEN] Appointed Counsel rendered Ineffective Assistance of
21       Counsel at Parole Hearing within "performance" and
22       "prejudice" prongs of <u>Strickland -v- Washington</u> (1984) 466 US
       668, 104 S.Ct. 2052, 80 L.Ed 2d 674; and

23  [ELEVEN] Administrative collateral estoppel doctrine, as
24       stated in <u>Astoria Federal Sav. and Loan Ass'n -v- Solimino</u>
       (1991) 111 S.Ct. 2166, 2169, 501 US 104, is violated by
25       parole board's continual use of unchanging factors
26       to deny parole.

27  [2] Clearly, lower Court Grounds [TWO] - [ELEVEN] were
28       Federalized.

1  STATEMENT OF FACTS FOR GROUND 2 CONTINUED 8

2  [3] The lower court order (reasoned opinion) denied

3      relief via a 7 PAGE ORDER.

4  [4] Excluding the state question on proportionality, the

5      Order denying relief is replete with review only

6      under "some evidence". However, "some evidence" is

7      only a standard of evidentiary resolve, not legal application.

8  [5]  With the exception of Ground 1, P[1], #[SEVEN]

9      all other Grounds (i.e. Ground 1, P[1], #'s [TWO-SIX,

10     EIGHT-ELEVEN] WERE SOLELY BASED ON QUESTIONS OF LAW.

11  [6] Regardless, the lower court's order was opposite to

12     all Federal conclusions cited as questions of law.

13  [7]  Here, the Superior Court denied relief to questions

14     of law with decision based on analysis dealing with

15     questions of fact.

16  [8] Thus, the "reasoned opinion" by the Superior Court has not

17     addressed the merits cited for relief.

18

19

20

21

22

23

24

25

26

27

28

AC
13/35

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  PREFACE TO GROUNDS 2-4 OF PETITION

3  FEDERAL STANDARD OF REVIEW

4  Notwithstanding how Petitioner has alleged abuse of

5  discretion by the Superior Court in Ground 1, under

6  state standards, he proffers how the Superior Court's

7  lower order violated 28 USC § 2254 (d)(1,2):

8  Williams -v- Taylor (2000) 120 S.Ct. 1495, 1519-20, 529 US 362 holds:    28 USC § 2254 (d)(1)

9  "First, a state court decision is contrary to this Court's
   precedent if the state court arrives at a conclusion

10  opposite to that reached by this Court on a question
   of law....."[E.A.]

11  "[A] state court decision involves an unreasonable

12  application of this Court's precedent if the state

13  court identifies the correct governing legal rule
   ...but unreasonably applies it to the facts.....

14  [OR] a state-court decision also involves an

15  unreasonable application of this Court's precedent
   if the State Court either unreasonably extends a

16  legal principle ...where it should not apply

17  or unreasonably refuses to extend that principle
   to a new context where it should apply."[E.A.]

18  28 USC § 2254 (d)(2)

19  Rice -v- Collins (2006) 546 US ___ , ___ US ___ slip opinion 7-8:

20  "[W]hether a state court errs in determining the facts is a

21  different question from whether it errs in applying the law."

22  Taylor -v- Maddox (9th Cir. 2004) 366 F.3d 992, 999 (unreasonable

23  determination of the facts in light of the evidence presented

24  presumed correct unless Rebutted by "clear and convincing"

25  evidence) Rose -v- Lundy (1982) 71 L.Ed 2d 379, 387 (state

26  courts equally bound to guard and protect U.S. Const. Rights).

27  Thus, State Appellate Judiciary now presented further ability

28  of FEDERAL QUESTIONS, e.g. Vasquez -v- Hillery (1986) 474 US 254, 88 L.Ed 2d.
   598, 605.

AC
14/35

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2.

Petitioner contends that the lower court's refusal to grant Habeas Corpus relief was "contrary to" controlling U.S. Supreme Court holdings as applicable via the 14TH Amendment's "Due Process" clause when denying liberty interest in parole by affirming Parole Board's decision.

It is unmistakable that the lower court's denial was completely based on "some evidence" analysis, with the exception of the "cruel or unusual" ground and the Ineffective Assistance of Counsel ground. The state law question is listed/secured in the preceding ground. This analysis is premised on the Federal standard of Review. Only one of Petitioner's 10 remaining grounds dealt with the evidentiary sufficiency under "some evidence". The rest of the grounds requested review under procedural due process.

Here, the Superior Court has used "some evidence" opposite the holding in Hamdi -v- Rumsfeld (2004) 542 US 507, 124 S.Ct. 2633 : "[W]e have utilized the "some evidence" standard in the past as a standard of review, not a standard of proof." The proof is only proof under the proper guidelines which the Superior Court refused to address. Thus, the total analysis was "contrary to" the cases cited and relied upon by Petitioner.

It is evident that the lower court's order, that it has ignored the alleged constitutional allegations being

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(2. Cont.)
in violation of relied upon U.S.S.Ct. holdings. This violated
Petitioner's right to Due Process.

Evitts v. Lucey (1985) 105 S.Ct. 830, 838-39, 469 US 388:
    "[A] State has great discretion in setting policies
    governing parole decisions; but it must nonetheless
    make those decisions in accord with Due Process
    Clause[ cites Omitted] In short, when a state opts
    to act in a field where its action has significant
    discretionary elements, it must nonetheless act in
    accord with dictates of the Constitution — and, in
    particular, in accord with the Due Process Clause."

In this case none of the evidence has any reliable, and
relevant basis in fact to parole unsuitability. Williams v.
Taylor, supra, guides that a state-court decision is "contrary
to" closely established precedent when state court applies
a rule that contradicts governing law. Simply put, the
standard of review for a factual matter is not to be
used as to a question of law. Minimally, even deference
shouldn't be paid. Peltier v. Wright (9th Cir. 1994) 15 F.3d 860,
862:
    "[W]e see bound by the state's construction,
    except when it appears that its interpretation
    is an obvious subterfuge to evade the
    consideration of a federal issue."

Here, the Board denied parole by rote opinion, and
which was consequently upheld by the lower court's order.
Superintendent ... v. Hill (1985) 472 US 445, 105 S.Ct. 2768,
2775 guaranteed the right to "fundamental fairness."
However, where the Board's actions violate holdings of the
U.S.S.Ct., the promoted fairness of the Due Process Clause
is not followed by appropriate procedures — violating Daniels

1   MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
2   -v- Williams (1986) 106 S. Ct 662, 665, 474 US 332.
    (2 Cont.)
3       In Walters -v- Nat. Assn. of Radiation Survivors (1985) 473 US
4   305, 87 L. ed 2d 220, 105 S. Ct. 3180, 3189 (Fundamental fairness
5   does not turn on result obtained in any individual case
6   but the ... process as applied to the generality of
7   cases).
8       Even a lower California court (i.e. In Re Eduard
9   Ramirez (Cal. App. 1st Dist. 2001) 114 Cal. Rptr. 2d 381) partially
10  reversed on another ground, held that "some evidence"
11  is one aspect of judicial review. It only applies to
12  questions of evidentiary sufficiency. It is an additional
13  requirement of due process, not a substitute for other
14  established due process requirements. [E.A.]
15      Here, in violation of Petitioner's right to due process,
16  the "some evidence" proffered to deny habeas corpus
17  relief was "contrary to" the controlling cases relied
18  upon by Petitioner.
19
20
21
22
23
24
25
26
27
28

AC
17/35

7. ▓▓▓▓▓▓▓ Ground __3__ (if applicable):

Petitioner contends that the lower court's refusal to grant Habeas Corpus relief was due to the order beeing an "unreasonable application" of contralling U.S.S.ct. cases which should have contralled decision as applicable via 14TH Amend's "Due Process" clause when denying liberty interest in parole.

a. Supporting facts:

Preface

[A.] Petitioner adopts and incorporates by reference thereto, as if fully stated herein, P's [A] through [D] of Ground 1 aforementioned.

(Continued at pages 19, 20 )

b. Supporting cases, rules, or other authority:

Please See Appellate Court PtA's, Part 3 @ page (s) 21-23 .

AC

1  STATEMENT OF FACTS FOR GROUND 3:

2  [1] By reference thereto, Petitioner adopts and incorporates

3      as if fully stated herein, ground 2 [P1] facts.

4  [2] Here is a chart of the cited to controlling cases used (☆)

5      and other supporting cases (✳) by U.S.S. Ct. on Federal claims:

| GROUND | CASE(S) |
|---|---|
| TWO | ☆ U.S. -v- Caceres (   ) 440 US 741, 99 S. Ct 1465 |
|  | ✳ Wolff -v- McDonnell (1974) 418 US 539, 94 S Ct 2963 |
|  | ✳ Morrissey -v- Brewer (1972) 408 US 471, 481, 92 S. Ct. 2593 |
|  | ✳ Superintendent... -v- Hill (1985) 472 US 445, 105 S. Ct 2768 |
| THREE | ☆ Carey -v- Piphus (1978) 435 US 247, 259, 98 S. Ct 1042 |
|  | ✳ U.S. -v- Caceres, supra |
| FOUR | ☆ Arkansas -v- Oklahoma (1992) 112 S. Ct. 1046, 503 US 592 |
|  | ✳ Zinermon -v- Burch (1990) 110 S. Ct. 975, 494 US 113 |
|  | ✳ Concrete Pipe + Prod. -v- Const. Laborers Pen. (1993) 113 S. Ct. 2264 |
| FIVE | ☆ U.S. -v- Caceres, supra. |
|  | ✳ Arkansas -v- Oklahoma, supra |
| SIX | ☆ County of Sacramento -v- Lewis (1998) 118 S. Ct 1708 |
| SEVEN | ☆ Superintendent -v- Hill, supra |
| EIGHT | ☆ Arkansas -v- Oklahoma, supra |
|  | ✳ Collins -v- City of Harker Heights, Tx. (1992) 112 S. Ct 1061 |
|  | ✳ Superintendent -v- Hill, supra |
|  | ✳ U.S. -v- Caceres, supra |
|  | ✳ Arkansas -v- Oklahoma, supra |
|  | ✳ Lee -v- Weisman (1992) 505 US 577, 587, 112 S. Ct 2649 |
|  | ✳ Pennsylvania DOC -v- Yeskey (1998) 524 US 206, 118 S. Ct. 1952 |
| NINE | ☆ County of Sacramento -v- Lewis, supra |
|  | ✳ Connecticut Nat. Bank -v- Germain (1992) 112 S. Ct 1146 |
|  | ✳ F.D.I.C. -v- Meyer (1994) 114 S. Ct. 996, 1001 |
|  | ✳ Garner -v- Jones (2000) 120 S. Ct. 1362, 529 US 250 |
| TEN | ☆ Strickland -v- Washington (1984) 466 US 668, 104 S. Ct. 2052 |
| ELEVEN | ☆ Astoria Federal Sav. & Loan -v- Solimino (1991) 111 S. Ct. 2166, 2169 |

1  STATEMENT OF FACTS FOR GROUND 3 CONTINUED:

2  [3] Nowhere in the "Superintendent -v-Hill" case did it

3     overrule or state that the other U.S.S.Ct. holdings

4     cited by Petitioner were not applicable.

5  [4] The lower court's action of strictly limiting the

6     review under "some evidence" was an objectively

7     unreasonable manner because they refused to extend

8     controlling U.S.S.Ct. cases to situations where they

9     should apply.

10 [5] No reasonable mind could differ as to the lower court's

11    order not addressing the grounds relied upon by Petitioner.

12 [6] Deference cannot and shouldn't even be paid to the

13    lower court's order having validity: Because it did

14    not properly address the claims presented.

15 [7] When it comes to a question of law "some evidence"

16    isn't even the proper standard of review.

17 [8] The Lower Court's order misquotes Superintendent-v-Hill

18    by claiming "the standard for judicial review of a parole

19    decision ... is that there is "some evidence" c.J "In

20    Evitts -v-Lucey, supra (parole decisions must comply with

21    due process clause).

22 [9] None of the U.S.S.Ct. holdings cited by Petitioner were vague.

23 [10] None of the U.S.S.Ct. holdings cited by Petitioner were ambiguous.

24

25

26

27

28

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2                                    3.

3        Petitioner contends that the lower
         court's refusal to grant Habeas

4        Corpus relief was due to the order
         being an "unreasonable application"

5        of controlling U.S.S.Ct. cases which
         should have controlled decision as

6        applicable via 14th Amend.'s "Due Process"

7        clause when denying liberty interest

8        in parole.

9   Notwithstanding how the Superior Court's order was "contrary

10  to" U.S.S.Ct. holdings, it was also an order denying relief

11  in a manner which was also an "unreasonable application"

12  of the relied upon U.S.S.Ct. authorities to grant relief.

13  Sims -v- Rowland (9th Cir. 2005) 414 F.3d 1148, 1152 cert.-den.

14  126 S.Ct. 809 (2005) has clarified:

15        "A state court decision is an unreasonable application
          of Supreme Court precedent when the court applies

16        those precedents to the facts in an objectively
          unreasonable manner. See Brown -v- Payton, 544 US ___,

17        ___, 125 S.Ct. 1432, 161 L.Ed 2d 334 (2005) [other cites
          omitted.] This phrase also encompasses an unreasonable
          failure to extend the holding or legal principle

19        of a Supreme Court decision to a situation in which
          it "should have controlled". Ramdass -v- Angelone,

20        530 US 156, 166, 120 S.Ct. 2113, 147 L.Ed 2d 125 (2000)

21        (plurality opinion)."

22  On the face of the lower court's' order, both of the

23  aforementioned Sims aspects have been violated. First, the

24  order has attempted to use the "same evidence" doctrine

25  in an objectively unreasonable manner, via In Re Rosenkrantz,

26  passim, and In Re Powell, passim.

27  Secondly, where Petitioner alleged Due Process was

28

AC
21/35

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(3 Cont.)

1  
2  violated, in his 10 Federalized Grounds, the order
3  clearly failed to extend the cited U.S.S.Ct. cases to the
4  circumstances (Grounds) where they should have controlled.

5  In Gill -v- Ayers (9TH Cir. 2003) 342 F.3d 911:920:
6  "It is logical to conclude that if a case presents
   an issue close enough for reasonable minds to differ,
7  then a state court's decision resolving that issue even
   if incorrect, would not be objectively unreasonable."
8  Here, no reasonable mind should be able to differ as to
9  the fact that Superior Court refused to properly address the
10 federal claims on their merits. As a mixed question of law/
11 fact, it is plain that the lower courts' order has failed
12 to make sure that the Board of Parole Hearings' actions
13 followed the codified prevailing professional norms of their
14 own regulations.

15 In Holland -v- Jackson (2004) 124 S.Ct. 2736:
16 "In this [unreasonable application] and related
   contexts, we have made clear that whether a
17 state court's decision was unreasonable must
   be assessed in light of the record the court
   had before it."
19 The record was explicit as to how the Board's actions
20 violated law (due process) including the "some evidence"
21 analysis.
22 Yarborough -v- Alvarado (2004) 124 S.Ct. 2140, 2149: "IF
23 a legal rule is specific, the range may be narrow."
24 Every due process ground alleged by Petitioner was
25 implicit in its scope and clarity. Further, the cases used
26 by Petitioner were neither vague nor ambiguous in
27 their meaning.
28

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(3 Cont.)

Minimally, of all the U.S. Supreme Court cases relied upon by Petitioner, the lower courts' order is relying on the "some evidence" test to supercede other Constitutional restraints that should apply.

In this instant case it is objectively unreasonable to allow deference to the lower court's order.

As the Superior Court Petition speaks for itself, there should be an independent review of the record.

Here, the lower court's order violated Due Process that which Petitioner was entitled.

7. ▓▓▓▓ Ground __4__ (if applicable):

Petitioner contends lower court's refusal to grant Habeas Corpus relief was due to order being an "unreasonable determination of the facts in light of the evidence presented", when denying liberty interest in parole which was contradicted by "clear and convincing evidence".

a. Supporting facts:

Preface

[A] Petitioner adopts and incorporates by Reference thereto, as if fully stated herein, P's [A] through [D] of Ground 1 aforementioned

( Continued at pages 25-27 )

b. Supporting cases, rules, or other authority:

Please See Appellate Court P+A's, Part 4 @ page(s) 28-30

1  STATEMENT OF FACTS FOR GROUND 4 :

2  (1) The "clear and convincing" evidence supporting

3      Petitioner's 10 Federal Claims, which were presented

4      as Superior Court Grounds 2 through 11 respectively,

5      can be fairly summarized as follows:

6  GROUND :            FACT(S)

7  TWO         THE APPELLATE COURT, DURING PETITIONER'S
               DIRECT APPEAL, STATED THAT "[T]HE NATURE OF

8              THE OFFENSE WAS NEITHER SENSATIONAL NOR
               ATROCIOUS"; HOWEVER THE PAROLE BOARD CLAIMED

9              THAT THE CRIME WAS ESPECIALLY CRUEL AND
               CALLOUS. ALSO, THE ONLY FACTOR USED TO SUPPORT

10             THE USE OF THE CRIME (UNDER MADE UP CRITERIA
               NOT "ESPECIALLY HEINOUS, ATROCIOUS (OR CRUEL)

11             WAS MOTIVE BEING <u>INEXPLICABLE AND VERY</u>
               <u>TRIVIAL</u> WHERE IT CANNOT LEGALLY BE BOTH.

12             <u>NOTE</u>: THEN THE COURT ATTEMPTS TO INVOKE CRITERIA
               TO SUPPORT CCR§2402(c)(1) BY INVOKING FACTORS

13             CCR§2402(c)(1)(A-E as used) to deny relief even
               though Board never used them.

14

15

16  THREE       MOTIVE CANNOT BE BOTH <u>INEXPLICABLE AND</u>
                <u>VERY TRIVIAL</u> TO DENY PAROLE, HOWEVER THE

17              SUPERIOR COURT ATTEMPTS TO JUSTIFY BOTH
                FURTHER, ALWAYS ENTITLED TO PROPER PROCEDURES.

18

19  FOUR        PETITIONER'S PRIOR CRIMINALITY IS NOT
                A PAROLE UNSUITABILITY CIRCUMSTANCE;

20              ESPECIALLY IN LIGHT OF UNSUITABILITY/
                SUITABILITY CIRCUMSTANCES HAVING TWO

21              SETS OF CRITERIA FOR PRIOR CRIMINALITY
                TO MAKE SAID FINDING. CLEARLY THE COURT

22              KNOWS ABOUT THE CALIF. ADMIN. PROCEDURES
                ACT (e.g. Gov. Code §§ 11340.5, 11342.600) and how

23              any illegal regulation change is
                unenforceable.

24

25  FIVE        PLACEMENT IN NUMEROUS FOSTER HOMES AS A YOUNG
                JUVENILE DOES NOT CONSTITUTE UNSTABLE

26              SOCIAL HISTORY FOR PAROLE DENIAL; AND PRIOR
                CRIMINALITY IS IMPROPERLY USED TO DEFINE

27              UNSTABLE SOCIAL HISTORY.

28

1. STATEMENT OF FACTS FOR GROUND 4 CONTINUED:
2. [P1 Cont.]

3.    GROUND:                FACT(S)
_____

4.    SIX          THERAPY IS NOT REQUESTED BY PSYCH DEPARTMENT.
5.                 SELF-HELP HAS BEEN MET BY PARTICIPATION IN
                   VARIOUS GROUP ACTIVITIES AND WORK ASSIGNMENTS.
6.                 SEEKING A G.E.D. (NOW OBTAINED) DIDN'T SHOW
                   HE WAS AN UNREASONABLE RISK TO SOCIETY
7.                 IF PAROLED. USE OF MECHANICAL FORMULA TO
                   DENY PAROLE WITHOUT PROPER INDIVIDUALIZED
8.                 CONSIDERATION. BASED ON THE FACT OF POSITIVE
                   CHANGE, THE RECORD BELIES FAILURE TO HAVE
9.                 POSITIVE CHANGE.

10.   SEVEN        MINOR DISCIPLINARY ACTIONS ARE NOT
                   "SERIOUS" AND 13 YEAR OLD SERIOUS MISCONDUCT
11.                ARE NO LONGER INDICATIVE OF BEING PAROLE
                   UNSUITABILITY CRITERIA ESPECIALLY IN LIGHT
12.                OF LACK OF VIOLENCE TO OTHERS. THE COURT CLAIMS
                   THAT THEY ARE INDICIA OF NOT BEING ABLE TO
13.                FOLLOW PAROLE OBLIGATIONS OR MEET WITH PAROLE
                   AGENT REGULARLY.
14.

15.   EIGHT        THERE IS NO EVIDENCE IN THE RECORD THAT
                   SUPPORTS NEEDED THERAPY (e.g. PSYCH doesn't
16.                say Pet. needs it.) other than unavailable
17.                one-on-one psychotherapy which would be
                   available through special condition of parole
18.                and/or C.D.C.R.'s Parole and Community Services
19.                Division.

20.   NINE         THE PAROLE BOARD USED 6 REASONS TO ISSUE
                   MULTI-YEAR UNSUITABILITY BASED ON AGAIN
21.                USED COMMITMENT OFFENSE CRITERIA NON SERIOUS
22.                DISCIPLINARY AND NEEDED PROGRAM: ALL OF
                   WHICH VIOLATE SCOPE OF STATUTORY LANGUAGE.
23.                COURT CLAIMED "SOME EVIDENCE" ONLY ARGUED.

24.   TEN          OTHER THAN A PERFUNCTORY ARGUMENT, THE
                   APPOINTED LAWYER REFUSED TO OBJECT TO
25.                THE BOARD'S REASONS FOR DENIAL AND/OR
26.                REFUSED TO ARGUE FOR PETITIONER'S RIGHTS
                   UNDER PROCEDURAL DUE PROCESS (i.e. Grounds
27.                2-9) Thus allowing Parole Board to violate law
                   which was bad performance causing prejudice
28.                of parole denial. ITS NEVER REASONABLE FOR A LAWYER
                   TO ALLOW AN AGENCY TO VIOLATE THE LAW.

AC
26/35

1  STATEMENT OF FACTS FOR GROUND 4 CONTINUED:

2  [#11 Cont.]

3  ELEVEN          IN PETITIONERS FINAL GROUND, UNDER PROCEDURAL
4                  DUE PROCESS, HE ALLEGED THAT THE ADMINISTRATIVE
                   COLLATERAL ESTOPPEL DOCTRINE BARRED THE BOARD
5                  FROM USING PREVIOUS CRITERIA (USED TO DENY
                   PAROLE AT PRIOR HEARINGS). THE LOWER COURTS
6                  ORDER CLAIMED: "THIS IS ANOTHER WAY TO
7                  CAST A CLAIM THAT THE BOARD PANEL
                   IMPROPERLY RELIED SOLELY ON THE COMMITMENT
8                  OFFENSE IN DENYING PAROLE." [EMPHASIS
9                  ADDED] THE LOWER COURTS' ORDER IS DISIN-
                   GENUOUS AS TO WHAT PETITIONER WAS
10                 INVOKING AS TO ALL PRIOR REASONS. THE
                   USE OF UNCHANGING FACTORS TO CONTINUALLY
11                 PUNISH IS THE PERFECT SITUATION TO INVOKE
12                 ADMINISTRATIVE COLLATERAL ESTOPPEL.

13 [2] THE SUPERIOR COURT REFUSED TO HOLD AN EVIDENTIARY
14     HEARING.

15 [3]  IT WAS OBJECTIVELY UNREASONABLE FOR THE LOWER JUDICIARY
16     TO ALLOW THE BOARD'S DECISION TO VIOLATE LAW WHICH
17     DETERMINES HOW/WHY/WHEN THE FACTS ARE RELEVANT.

18 [4] THE SUPERIOR COURT'S ORDER WAS NOT PROPERLY SUPPORTED AND
19     WAS DEFECTIVE IN ITS ANALYSIS. BY COMPOUNDING THE
20     BOARD'S ERRORS, THERE CAN BE NO PRESUMPTION OF
21     CORRECTNESS, WHEN FACT-FINDING WAS INFECTED WITH ERROR.

22 [5] Petitioner pointed out, via Federal law supported by state
23     law, how the Board's factual analysis failed because
24     the rationale used to deny parole was an unreasonable
25     determination of the facts in light of the evidence
26     presented.

27

28

AC
27/35

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

4.

Petitioner contends lower courts refusal to grant HabeasCorpus relief was due to order being an "unreasonable determination of the facts in light of the evidence presented" when denying liberty interest in parole which was contradicted by "clear and convincing evidence".

Notwithstanding how Petitioner has proven that the lower Calif. courts' order was both "contrary to" and an "unreasonable application" of controlling U.S.S.ct. principles (doctrines) applicable to his claims: the lower courts' order (reasoned opinion) was also an unreasonable determination of the facts in light of the evidence presented. The clear and convincing evidence was opposite to that relied upon by the Board and affirmed by the Judicial Branch.

Taylor v. Maddox (9th Cir. 2004) 366 F.3d 992 has established: "[T]he "unreasonable determination" clause applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence [cites omitted], that the process employed by the state court was defective, [cites omitted], or that no finding was made by the state court at all." — pp. 999-1000

"[T]he "unreasonable determination" standard comes in several flavors ... where the state court should have made a finding of fact but neglected to do so ... A somewhat different set of considerations applies where the state court does make factual findings, but does so under a misapprehension as to the current legal standard ... obviously, where the state court's legal error infects the fact finding process,
[cont.]

AC
28/35

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(4 Cont.)

the factual determination will be unreasonable and no presumption of correctness can attach to it." pp. 1000-1001.

"If, for example, a state court makes evidentiary findings without holding a hearing and giving Petitioner an opportunity to present evidence such findings closely result in an "unreasonable determination of the facts."— p. 1001.

First, the process used by the state court was defective as the analysis of the facts, to what the law makes relevant, was not undertaken to support the Superior Courts upholding of the Board's actions having indicia of reliability.

Secondly, there was no evidentiary hearing.

Supporting the necessity for independent review, *In Re Earnest Smith* (Cal. App. 6th Dist. 2003) 114 Cal. App. 4th 343, 360:

"As noted, the court below did not conduct an evidentiary hearing but reached its decision based on the exhibits attached to the petition and return. Under the circumstances, we shall independently review the record.

In this case a answer (return) wasn't even ordered. This court should also grant de novo review of the lower courts' grounds.

Further, the evidence cited by the Board does not reflect individualized consideration, having indicia of reliability, to the specified factors for unsuitability

*In Re Rosenkrantz* (Cal. 2002) 128 Cal. Rptr. 2d 104, 138:

"Accordingly, parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and regulation.

1  MEMORANDUM OF PLNTS AND AUTHORITIES CONTINUED
   (4. Cont.)
2  Thus, as regulations go (as they must comply with the
3  statutory law), when CCR §2402(c) "Circumstances Tending to
4  Show Unsuitability" are unequivocally refuted by the facts
5  cited negating any presumed validity of the Board's decision.
6  In Re De Luna (Cal. App. 6TH Dist. 2005) 24 Cal. Rptr 3d 643, 649-50
7  warned: "We must confine our review to the stated Factors
8  [e.g. CCR §2402(c)] found by the Board, and all the evidence
9  relevant to those Findings." [E.A.]
10  About 3 months ago People -v- Manuel Alex Trujillo (Cal. 2006)
11  2006 DJDAR 16081, 16083 identified the tenet of: "We are not at
12  liberty to, nor are we inclined to, disregard the holding of
13  the United States Supreme Court C.J" Heretofore, this court
14  shouldn't Forget the holding of Burlington Trucklines -v- United
15  States (1962) 371 US 156, 168, 83 S. Ct 239, 245-246, 9 L. ed 2d 207, 216:
16     "[A] simple but fundamental rule of administrative law
       ... is ... that a reviewing court, in dealing with a
17     determination or judgement which an administrative
       agency, alone is authorized to make, must judge the
18     propriety of such action solely by the grounds
19     invoked by the agency. If those grounds are inadequate
       or improper, the court is powerless to affirm the
20     administrative action."
21  "Some Evidence" as delineated in Superintendent -v- Hill, passim
22  does apply, but under the auspices of "Fundamental Fairness"
23  (see 105 S. Ct 2768 at 2774). Walters -v- Nat. Assn. of Radiation Survivors
24  (1985) 473 US 305, 110 S. Ct. 3180, 3189 went on to clarify that the
25  (Fundamental Fairness doctrine as applicable to procedure) is
26  based on generality of cases (e.g. case law) not rare exceptions).
27  Here, Due Process is violated by disregarding Facts which the
28  law makes important!

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.   If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

Court of Appeal - Third Appellate District

b. Result: Affirmed                    c. Date of decision: ≈7/25/90 DON'T REMEMBER EXACTLY

d. Case number or citation of opinion, if known: 3 CRIM C005520

e. Issues raised: (1) Change of Venue

(2) Instructing The Jury With An Allen Charge (Allen v U.S. (1986) 164 U.S. 492, #46 L.Ed2d 528, 175 S.Ct 154)

f. Were you represented by counsel on appeal?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

I DO NOT REMEMBER

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.   If yes, give the following information:

a. Result: _____    b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

Not Applicable

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

Administrative Remedy Doctrine Does Not Apply To Judicial Review of Lower Courts

_____

_____

_____

_____

_____

_____

b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No. SEE #11 above
Attach documents that show you have exhausted your administrative remedies.

PETITION FOR WRIT OF HABEAS CORPUS

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☒ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: SIERRA COUNTY SUPERIOR COURT

(2) Nature of proceeding (for example, "habeas corpus petition"): HABEAS CORPUS (Attached Supp. Doc. I) Seperate Document Included

(3) Issues raised: (a) _____

(b) _____

(4) Result (Attach order or explain why unavailable): DENIED (Attached Supp. Doc. II) Seperate Document Included

(5) Date of decision: NOV 30, 2006 (However NOT MAILED TO PET. UNTIL 2/14/07) See Supp. Doc. III

b. (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (Attach order or explain why unavailable): _____

(5) Date of decision: _____

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result: NO KNOWN HEARING, RULING WITH NO HEARING

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.) There is no unreasonable delay, within 60 days of receiving denial I am mailing to next highest court after discovering factual / legal bases for review.

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes. ☐ No. If yes, explain:

28 USC §2254 FEDERAL HABEAS CORPUS U.S. DIST. CT., EASTERN DISTRICT

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court: This Court has Jurisdiction to hear this petition and to review lower courts order with ruling on other grounds.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 3 / 26 / 2007

▶ Scott Blis
(SIGNATURE OF PETITIONER)

– CONCLUSION –

Petitioner is entitled to the relief sought in his Superior Court Petition and is further entitled relief under the grounds alleged in this petition.

Under state-law Petitioner has clearly shown how the Lower court's order was an abuse of discretion.

Notwithstanding how the lower courts' order was violative of state law, Petitioner also established how the lower courts' order was:

    (A) "contrary to" U.S.S.Ct. holdings;

    (B) "unreasonable application" of U.S.S.Ct. holdings; and

    (C) "unreasonable determination of the facts in light of the evidence presented" as established by "clear and convincing" evidence.

Deference is not owed to the lower courts' ruling when the order is apparent subterfuge to avoid the FEDERALIZED claims.

Therefore, the Board of Parole Hearings' decision to deny parole should not stand as it violates Due Process tenets as well as the lower courts' order.

A.C.
33/35

1

— PRAYER FOR RELIEF —

2  WHEREFORE, PETITIONER RESPECTFULLY PRAYS THIS COURT TO:

3  (1) Issue the Writ of Habeas Corpus;

4  (2) Issue an Order to Show Cause and appoint counsel

5      as other help is sporatic in assistance so far offered;

6  (3) Order an Evidentiary Hearing;

7  (4) Order a de novo review of the record and address

8      all claims of both the Superior Court and

9      Appellate Court;

10  (5) Vacate the Superior Courts order;

11  (6) Enter a permanent injunctive order against the

12      Board to not repeat reasons used for prior unsuitability;

13  (7) Declare Petitioner's rights;

14  (8) Grant any other relief deemed proper and in the

15      interest of justice.

16                          Respectfully submitted,

17

18  5 , 28 , 2007

19                          SCOTT BURNS
                            PETITIONER, IN PROPER

20

21

22

23

24

25

26

27

28

AC
34/35

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, SCOTT BURNS_____, declare:

I am over 18 years of age and I am party to this action.  I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California.  My prison address is:

SCOTT BURNS_____, CDCR #: D-99247
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: GW-312-Up
SOLEDAD, CA  93960-0689.

On MARCH 26, 2007, I served the attached:

Petition For Writ of Habeas Corpus
_____

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined.  The envelope was addressed as follows:

ATTN: CLERK OF THE COURT
THIRD DISTRICT COURT OF APPEAL
900 N. Street, Room 400
Sacramento, CA  95814-4869

Edmund G. Brown JR., Attorney General
c/o Office of the Attorney General
1300 "I" Street, Suite 125
P.O. Box 944255
Sacramento, CA
94244-2550

1 Writ original
4 Writ copies
1 Supporting Document copy

1 Writ copy – 1 Supporting Documents copy

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 3/18/2007.

_____
Declarant

AC 35/35

# EXHIBIT G
# Part 1 of 2

Name  Scott Burns

MC-275

Address  G-Wing-312-Up, CTF-Central

P.O. Box 689

Soledad, CA  93960-0689

CDC or ID Number  (D-99247)

California Supreme Court

_____
(Court)

**SUPREME COURT**
# FILED

JUN 04 2007

Frederick K. Ohlrich Clerk

Deputy

PETITION FOR WRIT OF HABEAS CORPUS

Scott Burns
Petitioner

vs.

B. Curry, Warden(A), et al
Respondent(s)

No. **S153138**
*(To be supplied by the Clerk of the Court)*

(3rd. Dist. Petition No: C055292 )
(Sierra County Case No: 6671 )

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.  [EVIDENTIARY HEARING REQUESTED]

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 (Rev. July 1, 2005)

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 at seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

HC1/14

**This petition concerns:**

☐ A conviction                    ☐ Parole

☐ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison discipline

☒ Other (specify): Denial of Parole and Requested Review of Appellate/Superior court orders

1. Your name: Scott Burns

2. Where are you incarcerated? Correctional Training Facility - Soledad (Central) GW-312 Up, P.O. BOX 689, Soledad, CA 93960-0689

3. Why are you in custody?   ☒ Criminal Conviction   ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon")..

   Second Degree Murder, Grand Theft Firearm, Gun Enhancement

   b. Penal or other code sections: Penal Code §§ 187, 487(3), 12022.5

   c. Name and location of sentencing or committing court: Sierra County Superior Court P.O. Box 476 Downieville, CA 95936

   d. Case number: 4161

   e. Date convicted or committed: September 28, 1988

   f. Date sentenced: October 28, 1988

   g. Length of sentence: 17 years to life (2 years + 15 to life)

   h. When do you expect to be released? Undetermined

   i. Were you represented by counsel in the trial court?   ☒ Yes.   ☐ No.   If yes, state the attorney's name and address:

   Donald J. Blake, JR.
   2175 Feather River Blvd., Oroville, CA 95965-5106

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Petitioner contends that the Appellate Court's order, affirming the Superior Court's order by 1 line summary denial violated Petitioner's rights under both state law and 14th Amendment "Due Process"

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

—PREFACE—

[A] On 3/26/2007 Petitioner Filed to the 3rd District Court of Appeals Supporting Documents [See Supporting Document "SC1"] which included his: Sierra County Superior Court Petition, Sierra County Order Denying Relief, and letter explaining delay of order to Petitioner.

[B] On 3/26/2007 Petitioner also submitted a Habeas Corpus [See Supporting Document "SC2"] to the 3rd District Court of Appeals.

[C] ON 4/5/2007, THE COURT OF APPEALS, 3rd Appellate District entered an order [Supporting Document "SC3"] denying relief.

[D] Adopted and incorporated by reference thereto are Supporting Document "SC1, SC2 and SC3" and Superior Court Claims as if fully stated herein.

* Supreme Court Ground 1 Facts continued at Pages 4/14

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

See Memorandum of Points and Authorities at Pages 5-9/14

SUPREME COURT
SUPPORTING FACTS:

[1] After seeking Habeas Corpus Review to 3rd District Court of Appeals, the Appellate Court issued a Summary 1 Line Denial.

[2] The 1 Line Denial By The Appellate Court Did Not Address any of the 11 Superior Court Grounds adopted and incorporated by reference.

[3] Also, the Appellate Court also refused to address any of the 4 claims dealing with standard of review under State + Federal doctrines.

[4] Thus, the only reasoned opinion is the Superior Court order which did not address the additional Grounds Raised to the 3rd District Court of Appeals.

[5]

[6]

[7]

[8]

HC4/14

1  MEMORANDUM OF POINTS AND AUTHORITIES

2  In the matter of the instant Petition, wherein Petitioner
3  has requested review of the Superior/Appellate Court
4  Grounds, this Court should find it necessary to order
5  relief under the Grounds violative of U.S. Supreme
6  Court holdings and the applicable standards of review.

7  People -v- Manuel Alex Trujillo (Cal. Supreme 2006)
8  2006 DJDAR 16081, 16083 : "We are not at liberty to, nor are
9  we inclined to, disregard the holding of the United States
10  Supreme Court [ ]" People-v-Bradley (Cal. Supreme 1969)
11  81 Cal. Rptr 457, 460, 1 Cal. 3d 80 : "[W]e are bound by decisions
12  of the United States Supreme Court interpreting the federal
13  Constitution [ ]"

14  Also, the Calif. Supreme Court has held in Topanga Ass'n.
15  Scenic Com. -v- County of Los Angeles (1974) 113 Cal. Rptr 836, 842,
16  11 Cal. 3d 506 :

17  "As stated by the United States Supreme Court, the
   "accepted ideal ... is that the orderly functioning
18  of the process of review requires that the grounds
   upon which the administrative agency acted be
19  clearly disclosed and adequately sustained." (S.E.C.
20  -v- Chenery Corp. (1943) 318 US 80, 94 [63 S.ct. 454, 87
21  L.Ed 626].)"

22  Petitioner has adequately established to the Superior
23  Court how, under controlling U.S.S.Ct. holdings, the B.P.H.
24  actions were arbitrary, capricious, lacking basis in fact
25  or contrary to law.

26  After being denied relief by the Superior Court, it was
27  further established how the Superior Court's order

28

HCS/14

1   MEMORANDUM  OF  POINTS  AND  AUTHORITIES  CONT.

2   was an abuse of discretion under state law and how

3   relief would be proper under the Federal standards authored

4   by the U.S. Congress.

5      The Board of Parole Hearings officers (i.e. Commissioners

6   and Deputy Commissioners) are Constitutional Officers under

7   Cal. Const. Article XX Sec. 3. At the parole hearing, they

8   mechanically claim the hearing is being held under

9   Penal Code § 3041, 3041.5 and the regulations governing

10  the B.P.H. However, the Judiciary, under the Democratic

11  system, has the Final interpretation under case law. Yet,

12  the Board of Parole Hearings appears to be unaware of the

13  controlling case law.

14     Not only does the hearing take place, the Board's review

15  unit (presumably also Constitutional officers), also, is supposed

16  to review the actions of the Board.

17     Here the Parole Board and Lower Judiciary have

18  refused to adhere to Federal law applicable to Petitioner's

19  parole hearing, as demonstrated in the Supporting Documents

20  SC1, SC2 and SC3.

21     Haulett By and Through Haulett v. Rose (1990) 110 S. Ct. 2430,

22  2438, 496 US 356 has explicitly held:

23        "Federal law is enforceable in state courts...
          because the Constitution and laws passed
24        pursuant to it are as much laws in the States
          as laws passed by the state legislature...."
25

26     Where the U.S. Constitution and laws thereunder

27  (including case law) are the Supreme Law of the land

28

HC6/14

1  MEMORANDUM OF POINTS AND AUTHORITIES cont.
2  there is no logical or rational reason for Petitioner's
3  parole eligibility to remain denied when in violation
4  of U.S.S.Ct. doctrine!
5      Presumptively, the Calif. Judiciary is competent to
6  adjudicate claims arising under laws of the United
7  States (see, e.g. Tafflin-v-Levitt (1990) 110 S.Ct. 792, 795, 493
8  US 456).
9      Heretofore, it is now necessary for this Court to vacate the
10 lower judgements so that the California Judiciary will
11 comply with the following; Pennzoil Co.-v-Texaco, Inc.
12 (1987) 107 S.Ct. 1519, 1528, 481 US.18:
13         "Article VI of the United States Constitution declares
           that "the Judges in every State shall be bound"
14         by the Federal Constitution, laws and treaties."
15 Presuming the look-through rule of "Ylst-v-Nunnemaker
16 (  )  US   ,   S.Ct    is used by this Court to
17 permit the Appellate Court's order: it would be invalid.
18 The reason for the invalidity is simply that the Superior
19 Courts order never addressed the additional grounds
20 raised to the Appellate Court. Where Petitioner has
21 a "right to be heard" (Fuentes -v-Shevin (  )  US
22    S.Ct   ) it cannot be said there was a fair hearing
23 when all grounds not addressed.
24     Minimally, a mixed question of law and fact and/or
25 question of law cannot be legally answered by the
26 standard of review for sole questions of fact (i.e. "some
27 evidence").
28

1  MEMORANDUM OF POINTS AND AUTHORITIES CONT.

2  As should be obvious to this Court, the lower court

3  orders rely on the "some evidence" test. This Court, in

4  *In Re John E. Dannenberg* (2005) 34 Cal. 4TH 1061, 23 Cal. Rptr. 3d

5  417 only partially overturned *In Re Ramirez* (Cal. App. 1st Dist.

6  2001) 94 Cal. App. 4TH 549, 114 Cal. Rptr. 2d 381. A part of the *In Re*

7  *Ramirez* case not changed was the recognition that "some

8  evidence" does not substitute for other due process procedures.

9  Petitioner has thus presented a prima facie case showing

10 how the lower court orders ignored the due process procedures

11 which were cited for review. *English -v- General Elec. Co.*

12 (1990) 110 S.Ct. 2270, 2275, 496 US 72 has warned the states:

13 "Finally, state law is pre-empted to the extent that it

14 actually conflicts with Federal law."

15 A Court, in *In Re Rosen Krantz* (Cal. App. 2 Dist. 2000)

16 95 Cal. Rptr. 2d 279 at fn. 13 p. 287 ([T]he Board must accept

17 the verdict of the JURY. In this case the defendant

18 was EXPRESSLY ACQUITTED OF FIRST DEGREE

19 MURDER.) Also at fn. 15 at p. 289 (parole or date of

20 base term to be commensurate with SECOND DEGREE

21 MURDER, not commensurate with first degree murder

22 or murder by special circumstances. This earlier

23 *Rosen Krantz* echoes the implications specified by this

24 Court's *In Re Rosen Krantz* (Cal. 2002) 128 Cal. Rptr. 2d 104, 138

25 " in light of circumstances specified by statute" clause.

26 However, the Board refuses to adhere to the tenet that

27 regulations opposite /contradictory to statute are _void_!

28

1  MEMORANDUM OF POINTS AND AUTHORITIES CONT.

2     Recently, in *In Re Ernest Smith* (2007 DJDAR 6217, May 2, 2007)

3  (the credits applied to parole were credited to expire the

4  parole term). California law never predicated a term-to-

5  life inmate having to serve his parole period in

6  prison, when not violating parole conditions.

7     In *Clebune - v Clebune Living Center* (1985)

8  473 US 432, 439, 105 S.Ct 3249, 3254 (equal protection does not

9  require things that are different in fact to be treated

10  the same in law). However, Petitioner is similarly

11  situated to other 2nd Degree Murder convicted

12  inmates having Case law properly applied. Minimally,

13  Due Process protections should be provided equally.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HC9/14

8. Did you appeal from the conviction, sentence, or commitment?   ☒ Yes.   ☐ No.   If yes, give the following information:
   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
      _Court of Appeal — Third Appellate District_

   b. Result: _Affirmed_                                    c. Date of decision: _±7/25/90 Don't Remember exactly_

   d. Case number or citation of opinion, if known: _3 CRIM C005520_

   e. Issues raised: (1) _Change of Venue_

      (2) _☒Instructing The Jury With An Allen Charge (Allen v U.S. (1986) 169_
      _☒ U.S. 492, 116 L Ed 2d 528, 175 S Ct 954_

   f. Were you represented by counsel on appeal?   ☒ Yes.   ☐ No.   If yes, state the attorney's name and address, if known:
      _I don't Remember_

9. Did you seek review in the California Supreme Court?   ☐ Yes.   ☐ No.   If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
    _Not Applicable_

    _____

11. Administrative Review:
    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See _In re Muszalski_ (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:
    _Administrative Remedy Doctrine Does Not Apply To Judicial_
    _Review of Lower Courts' orders_

    _____

    _____

    _____

    _____

    _____

    b. Did you seek the highest level of administrative review available?   ☐ Yes.   ☐ No. _SEE #11, above._
    _Attach documents that show you have exhausted your administrative remedies._

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  ☒ Yes. If yes, continue with number 13.  ☐ No. If no, skip to number 15.
[ISSUE BEING DENIAL OF PAROLE].

13. a. (1) Name of court: Sierra County Superior Court

(2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Petition (Case: 6671)

(3) Issues raised: (a) Please See Supporting Document SC1, Part I

(b) _____ Pages _____

(4) Result (Attach order or explain why unavailable): See Supporting Document SC1 Part II

(5) Date of decision: 11 / 30 / 2006 (Finally Sent to Pet 2/14/2007)

b. (1) Name of court: 3rd Dist. Court of Appeals, Sacramento (Case: C055292)

(2) Nature of proceeding: Habeas Petition

(3) Issues raised: (a) By adoption & incorporation, see ¶13 a. (3), supra and

(b) Supporting Document SC2, pages _____

(4) Result (Attach order or explain why unavailable): See Supporting Document SC3

(5) Date of decision: 4 / 5 / 2007

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
NO KNOWN HEARING

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
THERE IS NO UNREASONABLE DELAY, WITHIN THE MEANING OF IN RE SWAIN. THIS PETITION IS ALSO TIMELY FOR AEDPA PURPOSES

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  ☒ Yes.  ☐ No. If yes, explain:
28 USC §2254 U.S.D.C. Eastern Dist (SAC)

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
THIS COURT NOW HAS ORIGINAL JURISDICTION UNDER CAL. CONST. AS LOWER JUDICIARY HAS BEEN EXHAUSTED. PETITIONER'S FEDERALIZED CLAIMS NOW PRESENTED TO STATES HIGHEST COURT

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 5 / 31 / 2007                    (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]        PETITION FOR WRIT OF HABEAS CORPUS        Page six of six

HC 11/14

## – CONCLUSION –

Based on the aforementioned, this Court should conduct an independent review of all Superior Court and Appellate Court grounds for relief.

Petitioner has set forth a prima facie case which establishes: (A) the Board of Parole Hearings refuses to properly adhere to their regulations as interpreted by the various state and Federal Judiciaries, (B) the Board of Parole Hearings refuses to adhere to other tenets of Due Process (e.g. administrative collateral estoppel, statutory construction, and proper review standards); (C) The Superior Court closely attempted to use the "some evidence" test, a test for evidentiary questions, to mixed questions of law and fact, and/or questions of law which is improper; and (4) Based on this Court's People -v- Manuel Alex Trujillo, supra, case closely some California Court will comply with U.S.S.Ct. doctrine.

Therefore, having closely established an "abuse of discretion", rulings "contrary to"/ "unreasonable application of U.S.S.Ct. holdings, and rulings being unreasonable determinations of the facts in light of the evidence presented — which was clear and convincing — this Court has the obligation to protect Petitioner's rights.

Thus, where specific case law supports Petitioner's claims for relief, generalized citations to law are invalid.

Both state law and the "Due Process" clause of 14th Amendment are violated.

HC 12/14

1    — PRAYER FOR RELIEF —

2    WHEREFORE, PETITIONER RESPECTFULLY PRAYS THIS

3    COURT TO:

4    1) Issue the Writ of Habeas Corpus after an

5       Order to Show Cause;

6    2) Appoint Counsel as Petitioner has Random and

7       untrained help in Filing;

8    3) Order an Evidentiary Hearing;

9    4) Vacate the Superior Court's order;

10   5) Vacate the Appellate Court's order;

11   6) Remand this case back to the California Board

12      of Parole Hearings, for a Hearing which complies

13      with Due Process under both the Federal and

14      State Constitutions;

15   7) Order the Board to Conduct any/all Future Board

16      hearings not Just under Pen. Code § 3041, § 3041.5

17      and the rules governing the Board, but also,

18      case law interpretation of the D.S.L. statutes/

19      Regulations as determined by the Federal &

20      State Courts;

21   8) Declare that issue preclusion/administrative

22      collateral estoppel is binding against the B.P.H.

23      Just as it is binding on every other administrative

24      agency;

25   9) Grant any other relief deemed proper and in the

26      interest of Justice, including addressing the Superior/

27      Appellate Grounds raised.    Respectfully submitted.

28   5/31/2007                    SCOTT, 

                                 SCOTT BURNS

**PROOF OF SERVICE BY MAIL**
BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, PAUL HEBBE _____, declare:
I am over 18 years of age and I am party to this action. I am a
(NOT A)
resident of CORRECTIONAL TRAINING FACILITY prison, in the County
of Monterrey, State of California. My prison address is:

PAUL HEBBE_____, CDCR #: P-04364
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: GW-343-U
SOLEDAD, CA 93960-0689.

On May 31, 2007 _____, I served the attached:

RE8 Petition for Weit of Habeas Coepus _____

on the parties herein by placing true and correct copies
thereof, enclosed in a sealed envelope (verified by prison
staff), with postage thereon fully paid, in the United States
Mail in a deposit box so provided at the above-named institution
in which I am presently confined. The envelope was addressed as
follows:

ATTN: Cleek of the Court          Edmund G. Beaun, Attorney General, et al
California Supeeme Court           c/o Office of the Attorney General
350 McAllister                    1300 "I" Street, Suite 125
San Francisco, CA  94102          P.O. Box 944255
                                  Sacramento, CA
                                       94244-2550

I declare under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.
Executed on  5/31/2007  .

_____
Declarant

HC14/14

S153138

1   SCOTT BURNS (CDCR No.                    )
2   G-WING 312-UP, CTF-Central
    P.O. BOX 689
3   Soledad, CA 93960-0689
    (IN PRO PER)
4
5
6
7
8   IN THE SUPREME COURT FOR THE STATE OF CALIFORNIA
9
10
11
12  IN RE SCOTT BURNS                      | CASE NO.
        (SCOTT BURNS - PETITIONER)
13
14              -v-                        RE: Supporting Documents
                                              In Support of California
15                                            Supreme Court Habeas
16  B. CURRY, WARDEN (A), et al               Corpus Petition (MC 275)
        (Respondent(s))                       Simultaneously Filed
17                                            5/31/2007
18
19      Petitioner hereby files his Supporting Documents in
20  Support of simultaneously filed Calif. Supreme Court
21  Habeas Corpus Petition dated 5/31/2007.
22            TABLE OF SUPPORTING DOCUMENTS
23  "SC1": 3rd District Court of Appeals "Supporting Documents..."
        inclusive of I. Sierra County Superior Court Habeas Petition
24              II. Sierra County Order Denying Habeas Corpus
                III. Sierra County Explanation of Delayed Order to Petitioner
25  "SC2": 3rd District Court of Appeals Habeas Corpus Petition
26  "SC3": 3rd District Court of Appeals Order Denying Habeas Petition
27                                    Respectfully submitted,
                RECEIVED
28  5/31/2007                         Scott C. Burns
                JUN 04 2007           SCOTT BURNS - PETITIONER
        CLERK SUPREME COURT

# SUPPORTING DOCUMENT "SC1"

SUMMARY: 3rd District Court of Appeals
Supporting Documents

(A) Sierra County Superior Court Habeas Corpus Petition;

(B) Sierra County Superior Court Order Denying Habeas Corpus;

(C) Sierra County Letter explaining Delay Of Order being mailed to Petitioner

1  SCOTT BURNS (D-99247)
2  GW-312 -UP, CTF-Central
   P.O. Box 689
3  Soledad, CA 93960 -0689
4  (IN PRO PER)

5

6

7

8         THIRD DISTRICT COURT OF APPEALS

9         FOR THE STATE OF CALIFORNIA

10

11

12  IN RE SCOTT BURNS
13    SCOTT BURNS - PETITIONER          CASE NO.
                                         (SIERRA CO. 6671)
14         -V-                           RE8 SUPPORTING DOCUMENTS
15  B. CURRY, WARDEN(A), et al              IN SUPPORT OF PETITION
16      Respondent(s)                    FOR WRIT OF HABEAS.
                                         CORPUS SIMULTANEOUSLY
17                                       BUT SEPERATELY DETACHED
                                         (AS MAILED 3/26/07)
18

19

20         TABLE OF SUPPORTING DOCUMENTS

21  "I" - SIERRA COUNTY SUPERIOR COURT HABEAS CORPUS PETITION
22  "II" - DENIAL OF ABOVE PETITION
23  "III" - COURTS EXPLANATION OF DELAY TO PETITIONER

24

25  3 /26/2007                    Scott Bu
26                                 SCOTT BURNS

27

28

# SUPPORTING DOCUMENT "I"

SUMMARY: SIERRA COUNTY HABEAS PETITION
FILED 7/31/2006

SCOTT BURNS (CDCR No. D-99247)
G-WING 312-UP, CTF-SOLEDAD (CENTRAL)
P.O. 689
SOLEDAD, CA 93960-0689
   (IN PRO PER)

ENDORSED:
FILED

JUL 31 2006

SIERRA COUNTY SUPERIOR COURT
BY  Jan Parrish
                    DEPUTY CLERK


        IN THE SIERRA COUNTY SUPERIOR COURT
     IN AND FOR THE STATE OF CALIFORNIA


IN RE SCOTT BURNS
    SCOTT BURNS - PETITIONER
    B. CURRY, WARDEN (A) - RESPONDENT

CASE NO. [6498] PER ORDER 6671
RE: Petition FOR WRIT OF Habeas
Corpus / AMENDMENT -
SUPPLEMENT IN SUPPORT
THEREOF

[COPY]

# TABLE OF CONTENTS

SECTION                                                          PAGE(S)

COVER PAGE _____ i
TABLE OF CONTENTS _____ ii
TABLE OF AUTHORITIES _____ iii - iiiiii
MC275 FORM FOR PRISONER HABEAS CORPUS _____ 1-31
     (VERIFICATION PAGE) _____ (31)

SUPPLEMENT TO HABEAS CORPUS _____ 32-81
     (INTRODUCTION) _____ (32)
     (JURISDICTION) _____ (33)
     (VENUE) _____ (33)
     (PARTIES) _____ (33)
     (REFERENCE TO FACTS) _____ (34)
     (CONTENTIONS) _____ (34-35)
     (POINTS + AUTHORITIES) _____ (36-78)
     (CONCLUSION) _____ (79)
     (PRAYER FOR RELIEF) _____ (80)
     (INDEX TO EXHIBITS) _____ (81)

## EXHIBITS

A: 9/29/2005 BPH PAROLE HEARING TX'S _____ (82-148)
B: USDOJ PRIOR RECORD _____ (149-151)
C: PSYCH REPORT _____ (452-156)
D: JANUARY 26, 2006 MEMO TO BPH COMMISSIONERS ___ (157-159)
E: EXCERPTS FROM 2004 GOVERNORS REPORT (TIME FROM 115'S) _ (160-166)
F: NOVEMBER 18, 2005 REPORT (PSYCH REPORTS/MENTAL HEALTH) _ (167-168)
G: CAL.DEPT. CORRECTIONS + REHAB. DEPT. OP. MANUAL EXCERPT (PSYCH) _ (169-172)
H: BPH Commissioner Biographies _____ (173-176)
I: 1998 Parole Hearing Decision (Reasons For Denial) _ (177-182)
J: 2001 Parole Hearing Decision (Reasons For Denial) _ (183-191)
K: AT-A-GLANCE 1998, 2001, 2005 HEARING EXCERPTS (AFFIDAVIT) _ (192-196)
L: ABSTRACT OF JUDGEMENT (LIFE/NON-LIFE OFFENSES) _ (197-200)

PROOF OF SERVICE BY MAIL _____ (201)
                              TOTAL PAGES (201    )

TABLE OF AUTHORITIES                                    PAGE(S)

U.S. CONST.

U.S. CONST. AMEND. VI "ASSISTANCE OF COUNSEL" _____ 74
U.S. CONST. AMEND. VIII "CRUEL/UNUSUAL" _____ 37
U.S. CONST. AMEND. XIV "DUE PROCESS" _____ 37, 41, 45,
                                                      47, 52, 54,
                                                      50, 58, 62,
                                                      67, 70, 74,
                                                      78

FEDERAL CASE LAW

ARKANSAS -V- OKLAHOMA (1992) 112 S.Ct. 1046, 1060, 503 US 592 _____ 48, 52, 61
ASTORIA FED. SAV. AND LOAN ASS'N -V- SOLIMINO (1991) _____ 75
    [111 S.Ct. 2166, 2168, 501 US 104]
BIGGS -V- TERHUNE (9TH CIR. 2003) 334 F3d 910, 2003 DJDAR 8863 ___ 77
CAREY -V- PIPHUS (1978) 435 US 247, 259, 98 S.Ct. 1042, 1050 _____ 46
COLLINS -V- CITY OF HARKER HEIGHTS, TX. (1992) 112 S.Ct. 1061, 1070 __ 60
    [503 U.S. 116]
CONCRETE PIPE AND PROD. -V- CONST. LABORER'S UNION (1993) 113 S.Ct 2264, _ 50
    [2280]
CONNECTICUT NAT. BANK -V- GERMAIN (1992) 112 S.Ct 1146, 1149 _____ 65
    [503 US 250]
COUNTY OF SACRAMENTO -V- LEWIS (1998) 118 S.Ct 1708, 523 US 833 _____ 53, 67
ENRICO'S, INC. -V- RICE (9TH CIR. Cal 1984) 730 F.2d 1250, 1253 _____ 52
F.D.I.C. -V- MEYER (1994) 114 S. Ct. 996, 1001 _____ 66
GARNER -V- JONES (2000) 120 S.Ct. 1362, 1366, 529 US 250 _____ 69
In Re Cantrell (9TH CIR. 2003) 329 F3d 1119, 1123 _____ 75
In Re Hazman (9TH CIR. 2001) 250 F3d 1240, 1245 _____ 76
Irons -V- Warden of C.S.P.-Solano (USDC E.D. Cal 2005) _____ 54
    [358 F.Supp 2d 936, 948]
JANCSEK -V- OREGON BD. OF PAROLE (9TH CIR. 1987) 833 F2d 1389, 1390 _ 52, 57
JONES -V- MORAN 900 F.Supp 1267, 1271-72 _____ 64
HOWARD -V- U.S. (N.D. Cal 1994) 864 F.Supp 1197, 1200 _____ 67
LAKE MOHAVE BOAT OWNERS -V- NATIONAL PARK SERVICE _____ 62
    (9TH CIR. 1998) 138 F3d 759
LEE -V- WEISMAN (1992) 505 US 577, 587, 112 S.Ct 2649 _____ passim
    [120 L.Ed 2d 467]
McQuillion -V- Duncan (9TH CIR. 2002) 306 F3d 895 _____ 43, 44, 46
Miñes -V- Sullivan (9TH CIR. 1992) 981 F.2d 1068, 1070 _____ 44
    [cert. den. 113 S.Ct. 2993, 509 US 903]

iii

TABLE OF AUTHORITIES CONTINUED                     PAGE(S)

(FEDERAL CASE LAW cont.)

MORRISSEY —v— BREWER (1972) 408 US 471, 481, 92 S. Ct. 2593, _____ 43
    [2600, 33 L Ed 2d 484]

NEWMAN —v— APFEL (9TH Cir. 2000) 223 F 3d 937, 943 _____ 52

N.L.R.B. —v— AsKennzy Property Management Corp. (CA9. 1987) _____
    [817 F 2d 74]

OREGON NATURAL RESOURCES COUNCIL —v— LOWE (CA9, 1997) 109 F 3d 521, 526 __ 49, 60

Pennsylvania DOC —v— Yeskey (1998) 524 US 206, 118 S. Ct. 1952, 1954 ____ passim.

STRICKLAND —v— WASHINGTON (1984) 466 US 668, 104 S Ct 2052 _____ 71
    [80 L Ed 2d 674]

SUPERINTENDENT —v— HILL (1985) 472 US 445, 105 S. Ct 2768 _____ passim, 56
    [86 L Ed 2d 356]

THOMPSON —v— DAVIS (9TH Cir 2002) 295 F 3d 890, 898 _____ 54, passim

TURNER —v— HICKMAN (E.D. Cal 2004) 342 F Supp 2d 887, 896 ____ 62

UNITED STATES —v— CACERES (    ) 59 L Ed 2d 733, 743 fn. 14 ____ 41, 47, 51
                                                                      60

Wolff —v— McDonnell (1974) 418 US 539, 94 S. Ct 2963, 42 L Ed 2d 935 ___ 43

Zinermon —v— Burch (1990) 110 S. Ct. 975, 983, 494 US 113 ____ 50
    [108 L Ed 2d 100]

STATE CASE LAW

Adamson —v— Department of Social Services (Cal. App. 1 Dist. 1988) — 50
    [254 Cal Rptr 667, 672]

Cal. Hotel + Motel Assn —v— Indus. Welfare (Cal Sup. Ct. 1979) ___ 45, 54
    [157 Cal Rptr 840, 847?]

Castillo —v— City of Los Angeles (Cal App 2 Dist 2001) 111 Cal Rptr 2d ___ 77
    [870, 92 Cal. App. 4TH 477 rehg den.]

Galland —v— City of Clovis (Cal. Sup. Ct. 2001) 103 Cal Rptr 2d 711, 739 __ 44, 46
    [24 Cal 4TH 1003]

In Re John E. Dannenberg (Cal Sup. Ct. 2005) 34 Cal 4TH 1061 ____ 38, 42, 49
    [23 Cal Rptr 3d 417]

In Re Dekuna (2005) 126 Cal App 4TH 585, 598 ____ 50

In Re Hypolite (Cal. App 1st Dist. 1973) 208 Cal Rptr 751, 755 ____ 67
    [cert. den. 94 S. Ct 1449, 415 US 934, 39 L Ed 2d 492]

ii ii

TABLE OF AUTHORITIES CONTINUED                    PAGE(S)

(STATE CASE LAWS CONT.)

In Re Jackson (Cal. 1985) 39 Cal 3d 464, 216 Cal Rptr 760 _____ 70

In Re Johnson (Cal App 2 Dist. 1995) 41 Cal Rptr 2d 449, 456 ____ 42, 59

In Re Morill (2000) 125 Cal Rptr 2d 391, 102 Cal App 4th 280 ____ 49

In Re Roberts (Cal. 2005) 31 Cal Rptr 3d 458, 460 fn 7 _____ 37

In Re Rodriguez (Cal. 1975) 14 C. 3d 639, 649, 651, 653 _____ 38, 39

In Re Rogers (Cal. 1980) 169 Cal. Rptr 222, 28 Cal 3d 432 _____ 39

In Re Rosenkrantz (Cal 2002) 128 Cal Rptr 2d 104, 138 _____ 59, 61, 66
    [29 Cal 4th 616, 59 P.3d 174 cert. den. 123 S. Ct 1808, 155 L. Ed 2d (667)]

Nightlife Partners v. City of Beverly Hills (Cal App 2 Dist. 2003) ____ 57
    [133 Cal Rptr 2d 234, 242, 108 Cal App 4th 81]

In Re George Scott (Cal App 4 Dist. 2004) 119 Cal App 4th 871, 15 Cal Rptr 3d 32 __ 47

In Re Seabock (Cal. 1983) 140 Cal App. 3d 29, 40, 189 Cal Rptr 310 _____ 68

In Re Williams (Cal. App. 3 Dist. 1975) 53 CA 3d 10, 13, 125 Cal Rptr 457 __ 40, 68, 69

People v. Duran (Cal App. 1, 1983) 189 Cal Rptr 595, 140 Cal App 3d 485 ____ 40

People v. Wingo (Cal. 1975) 14 C. 3d 182, 184 _____ 38

Terhune v. Sup. Ct. (Whitley) (1998) 65 Cal App 4th 864, 872 _____ 45, 66

Walsh v. Kirby (Cal. 1974) 118 Cal Rptr 1, 8, 13 Cal 3d 95, 529 P.2d 33 __ 52

In Re Powell (1988) 45 Cal. 3d 894 _____ passim

STATUTORY CODES

Cal. Pen. Code §3041 (b) _____ 64, 68

Cal. Pen. Code §3041.5 (b)(2) _____ 64

Cal. Pen. Code §3041 (b)(2)(B) _____ 65

Cal. Pen. Code §3041.7 _____ 71

Cal. Pen. Code §5078 (a) _____ passim, 68

CALIFORNIA CONST.

Article I. Sec. 17 "cruel or unusual punishment" _ 37, 40

Article I. Sec. 24 "cruel or unusual punishment _ 37, 40

iiiii

TABLE OF AUTHORITIES CONTINUED          PAGE(S)

CALIF. CODE OF REGULATIONS, TITLE 15 §

§2270 (d) _____ 66

§2402 (a) _____ 55

§2402 (b) _____ 60,61

§2402 (c) _____ passim

§2402 (c)(1) _____ 47

§2402 (c)(1,2,3,4) _____ 42,43

§2402 (c)(1)(E) _____ 47

§2402 (c)(2) _____ 48

§2402 (c)(3) _____ 51

§2402 (d)(5) _____ 62

§2402 (c)(6) _____ 55

§2402 (d) _____ passim

§2402 (d)(1) _____ 48

§2402 (d)(6) _____ 49

§2402 (d)(9) _____ 56

MC-275

Name  SCOTT BURNS

Address  GW-312-Up, CTF-Soledad (Central)

P.O. Box 689

Soledad, CA 93960-0689

CDC or ID Number  D-99 247

IN THE SIERRA COUNTY SUPERIOR COURT

FOR THE STATE OF CALIFORNIA
(Court)

IN RE SCOTT BURNS

SCOTT BURNS
Petitioner

vs.

B. CURRY, WARDEN (A), et al
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. _____
(To be supplied by the Clerk of the Court)

[ COPY ]

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

PETITION FOR WRIT OF HABEAS CORPUS
PAGE 1 of 204
Penal Code, § 1473 et seq.,
Cal. Rules of Court, rule 60(a)
American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

☐ A conviction        ☒ Parole

☐ A sentence        ☐ Credits

☐ Jail or prison conditions        ☐ Prison discipline

☒ Other (specify): CALIFORNIA BOARD OF PAROLE HEARINGS UNCONSTITUTIONAL ACTIONS DEPRIVING LIBERTY INTEREST(S) W/O DUE PROCESS

1. Your name: SCOTT BURNS

2. Where are you incarcerated? CORRECTIONAL TRAINING FACILITY — SOLEDAD G-WING 312-U, CTF-CENTRAL, SOLEDAD, CA 93960 — 0689.

3. Why are you in custody? ☒ Criminal Conviction    ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Second Degree Murder, Grand Theft Firearm, Gun Enhancement

b. Penal or other code sections: Pen. Code §§ 187 (2nd Degree), 487 (3), 12022.5

c. Name and location of sentencing or committing court: Sierra County Superior Court
P.O. Box 476  Downieville, CA 95936

d. Case number: 4161

e. Date convicted or committed: September 28, 1988

f. Date sentenced: October 28, 1988

g. Length of sentence: 17 years-to-life

h. When do you expect to be released? UNDETERMINED

i. Were you represented by counsel in the trial court? ☒ Yes. ☐ No. If yes, state the attorney's name and address:
Donald J. Blake, JR.
2175 Feather River Blvd., Oroville, CA 95965 - 5706

4. What was the LAST plea you entered? *(check one)*

☒ Not guilty    ☐ Guilty    ☐ Nolo Contendere    ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

☒ Jury    ☐ Judge without a jury    ☐ Submitted on transcript    ☐ Awaiting trial

6.  GROUNDS FOR RELIEF
    Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal
    enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For
    additional grounds, make copies of page four and number the additional grounds in order.)*

Petitioner contends that the B.P.H.'s denying parole on 9/29/05 made his
sentence grossly disproportionate to the offense (penalty being excessive.
under facts/circumstances of convicted crime) in violation of Calif. Const.
Article I Sections 17/24 prohibition against cruel or unusual
punishment limitations

a.  Supporting facts:
    Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon
    which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For
    example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or
    failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re
    Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly *what* to violate your rights at what time *(when)* or
    place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

(1.)  Petitioner was sentenced to 17 years to-life. Two years was
      due to a weapon enhancement.
(2)   The 15-to-life term began 10/31/88 [EXH" A "p.1 l9-10.]
(3)   From 10/31/1988 = Petitioner had his Initial Parole Hearing
      1/29/98, a Subsequent Hearing 10/1/01 and the latest
      hearing 9/29/05 (about 17 years).
(4)   Presuming, without arguing, Petitioner is minimally entitled
      4 months of Post-Conviction Credit (CCR§2410) for every
      year. 17 years × 4 months = 68 months credit (5 years 8 months).
      This presumption is made assuming the liberty interest in
      parole, there also exists a liberty interest in earned
      credit (e.g. Pen. Code §2933).

*  Ground 1 Facts Continued at Page (s)  4,5

b.  Supporting cases, rules, or other authority (optional):
    *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary,
    attach an extra page.)*

Please See Points + Authorities At Pages 37 - 40

PAGE 3 of 204

1  GROUND 1 FACTS CONTINUED:

2  (5) ±17 years actual prison Incarceration plus 5 years 8 months

3    credit is over 22 years (±22 years 8 months) as of 9/29/05.

4  (6) In Ground 2, post, Petitioner has established how the Parole

5    Board's actions are Contrary to the Appellate Courts findings,

6    not supported by unsuitability factors, and how his 2nd

7    Degree Crime is not beyond the limits of 2nd Degree

8    murder.

9  (7) The parole board has a suggested penalty matrix for

10    determining the term (i.e. CCR§ 2402(c)), which has a low

11    of 15 years and a high of 21 years. At no time did the

12    9/29/05 Parole Board ever state that Petitioner's crime would

13    be punished beyond the CCR§ 2402(c) matrix, or that

14    there are aggravating circumstances.

15  (8) Petitioner's actual time in prison and to be awarded

16    credits exceed the 2nd Degree Murder matrix.

17  (9) Since Petitioner's 1/29/98 Initial Parole Hearing, he

18    has, at the time of the 9/29/05 hearing ±7 years 8 months

19    additional incarceration or since Petitioner's MEPD of ±10/31/98

20    ±6 years 11 months incarceration = either is beyond the 5 year

21    limitation for denials under Pen. Code §3041.5

22  (10) Petitioner's case is not: A death penalty case, life without the

23    possibility of parole, life with the possibility of parole or

24    25 years to life.

25  (11) Within the jurisprudence of California Legislature laws,

26    all second degree crimes are to carry less time than

27    their first degree counterpart.

28                    PAGE 4 of 201

GROUND 1 FACTS CONTINUED:

(12) IF Petitioner is Granted Parole at his next hearing, and after the Governor's review period, he will have over 25 years credit (actual + post-conviction).

(13) At this time it is inevitable that Petitioner's 2nd Degree Murder conviction is now being punished so harshly that he is receiving 1st Degree Murder Punishment (25 years to life).

(14) It was not the intent of the Legislature to have Petitioner's earn so much post-conviction credit that if they are ever found Parole Suitable, they would have so many credits that they would be overdue for release.

7. Ground 2 ▓▓▓▓▓▓▓▓▓ (if applicable):

Petitioner contends that there is no evidence in the record, to support
the B.P.H.'s use of the crime as a parole unsuitability factor, in
violation of procedural due process mandated by regulations, in light
of In Re John E Dannenberg (passim), where United States v Cooeees 59 L Ed 2d
733, 440 US 741, 99 S.Ct. 1465 mandates adherence to Due Process procedures.

a. Supporting facts:

(1) ON 9/29/05 Petitioner had his 2nd Subsequent Parole Hearing.
[EXH "A"]. Parole was denied.

(2) The First reason the BPH panel used to deny parole
was:
    "The First reason will be the commitment
    offense: The commitment offense was carried
    out in an especially cruel and callous
    manner." — EXH "A" p.57 ll 11-14

(3) The only CCR §2402 (c)(1)(A-E) factor used by the
BPH to support their chosen CCR §2402(c)(1)
use of the crime as an unsuitability circumstance
was motive (i.e. CCR §2402(c)(1)(E)): "The motive for
the crime was inexplicable and very trivial in relation
to the offense." [Emphasis Added, E.A. hereafter]. — See
EXH "A" p.57. Note: Petitioner will address "motive"
in Ground 3 of this Petition, as additional and seperate
analysis is believed to be needed; see, post.

* Note: Ground 2 Facts Continued at Page 7

b. Supporting cases, rules, or other authority:

    Please See Points + Authorities at Pages 41-45

PAGE 6 of 20 [struck through]

1  GROUND 2 FACTS CONTINUED 8

2  (4) After Petitioner's Criminal Conviction of 2nd

3  Degree Murder, he did have a Direct Appeal

4  to the Calif. 3rd Dist. Ct. of Appeals For California.

5  (5) In the Direct Appeal, People... v — Biens

6  Case No. 3 Crim C005520, decided 7/25/90, the Appellate

7  Decision stated: [At p. 8/16]

8  "As revealed by our recitation of the Facts,

9  although the crime involved in the present

10  case was grave, the nature of the offense

11  was neither sensational nor atrocious. [E.A.]

12  (6) The Board's use of "Motive" is a make-weight

13  rationalization to describe the character of

14  the crime; however, "motive" has nothing to

15  do with describing the crime.

16  (7) There is nothing in the Record before the Parole

17  Board to substantiate any acts beyond those

18  minimally necessary to convict for 2nd Degree

19  Murder.

20  (8) The Board had a duty to look to the Appellate

21  Record, as it is to use all relevant, reliable

22  evidence. In the 5/28/2004 hearing, the BPH

23  cited to the Appellate Record and thus had

24  a duty to go by all relevant/reliable evidence

25  related to the crime. In EXH "A" p. 8 & 11, the

26  Panel claims they reviewed prior transcripts;

27  thus, BPH Panel should have known about P(5),

28  supra.                    PAGE 7 of 201

7. ▓▓▓▓ Ground 3, (if applicable):

Petitioner contends that the B.P.H.'s use of "motive", to deny parole suitability on 9/29/05, lacked sufficient Constitutional procedures under holding in Carey -v- Piphus (1978) 435 US 247, 259, 98 S.Ct 1042, 1050, to be valid under procedural due process when constitutionally adequate under law.

a. Supporting facts:

(1) At Petitioners 9/29/05 Parole Hearing, he was denied Parole (EXH "A" p. 57-63).

(2) Supporting the Board's use of the circumstance of the crime, the Board used "motive."

(3) Specifically, at EXH "A" p. 57 the Board claimed: "The motive for the crime was inexplicable and very trivial in relation to the offense." [E.A.]

(4) Nowhere in the "Decision" EXH "A" p. 57-63 does the Panel address any motive.

(5) The Board's use of motive was contrary to law. Also, it was arbitrary.

///
///
///
///
///
///

* GROUND 3 Facts Continued at Page N/A

b. Supporting cases, rules, or other authority:

Please See Points and Authorities at Pages 46-47

PAGE 8 of 201

7. ▓▓▓▓ Ground __4__ (if applicable):

Petitioner contends that the B.P.H.'s use of his prior criminality, as a parole unsuitability factor, is 'arbitrary and capricious' within the meaning (holding) of Arkansas v. Oklahoma (1992) 112 S. Ct. 1046, 1060, 503 U.S. 592, due to the B.P.H.'s failure to make a rational connection under guidelines governing when prior criminality is an unsuitability circumstance.

a. Supporting facts:

(1) At Petitioner's 9/29/05 Parole Hearing (EXH "A"), he was denied parole (EXH "A" pp. 50-63).

(2) The Third Reason Petitioner was denied parole for, under Prior Criminality, was at page 58 of EXH "A" where the Panel stated:

"He failed to profit from society's previous attempt to correct his criminality. He was on adult probation and county jail and —" lines 11-13.

(3) Regarding prior criminality, as an unsuitability factor, the BPH has enacted CCR § 2402(c)(2), passim.

(4) Additionally, where the existence of certain prior criminality is not in the unsuitability section of CCR § 2402(c)(2), CCR § 2402(d) #'s (1,6) address other prior criminality as a Circumstance Tending to Show Suitability.

(5) Petitioner's prior criminality does not fall into scope and meaning of CCR § 2402(c)(2).

* Note: Please see Ground #4 Facts Continued, at page __10__.

b. Supporting cases, rules, or other authority:

Please See Points + Authorities at Pages __48-50__

1  GROUND 4 FACTS CONTINUED 8

2  (6)  An in depth discussion about Petitioner's prior

3       criminality was had with the Panel (EXH "A"

4       pp. 14 to 17 & 11).

5  (7)  Additionally, EXH "A" p.58 &14-15 claims as

6       Petitioner's prior criminality as: "criminality which

7       includes robbery." [E.A.]

8  (8)  Petitioner has never been arrested, let alone

9       convicted of robbery. Thus, the Board Panel and

10      Board's Review Unit have allowed false evidence

11      into a State Record to allege Petitioner has an

12      alleged "violent" prior criminality of robbery

13      to justify use of CCR § 2402(c)(2).

14 (9)  Petitioner's Record of Prior Criminality record is

15      attached at EXH "B".

16 (10) Upon information and belief, and thereon alleged,

17      because Petitioner had Appointed Counsel to

18      represent his interest at the hearing, no

19      objection was made to prove the Board's

20      arbitrary and capricious decision making that

21      lacks any basis in Fact. Failure to object

22      may infact be Ineffective Assistance of Counsel

23      as no lawyer should be allowed to perform when

24      allowing false information to infect the proceedings

25      and resulting prejudice is denial of parole based

26      on false evidence, used cumulatively, to outweigh

27      the parole unsuitability circumstances.

28                          PAGE 10 of 204

7. ▓▓▓▓▓ Ground  5  (if applicable):

Petitioner contends that there is no evidence to support a finding of an "unstable social history" (CCR §2402(c), #(3)), and therefore it is arbitrary and capricious for the B.P.H. not to follow their own procedure under the holding of **United States v Caceres** 59 L.Ed2d 733, 743, 440US741, 99 SCT 1465, which mandates administrative agency obey its procedures.

a. Supporting facts:

(1) At Petitioner's 9/29/2005 Parole Hearing (EXH "A"), the board claimed he had an unstable social history.

(2) Under CCR§2402(c)(3) the Board has adopted regulations dealing with unstable social history.

(3) Conversely, as a suitability factor, the Board has adopted CCR§2402(d)(2), that apply to stable social history.

(4) When dealing with Petitioner's "social history" as a denial reason, the Board claimed: [As the Fourth Reason] p58 ] "He was on adult probation and county jail ll2-15} and -- an unstable social history prior to -- criminality which includes robbery." [E.A.]

(5) Nowhere, within the meaning of CCR§2402(c)(3), has the Board reasoned in its decision the rationale meeting their requirement under their regulation.

(6) The Board, in fact, is attempting to camouflage the same issue (prior criminality) so they can misuse it more than one time in a manner that is arbitrary, capricious, lacking basis in fact and contrary to law.

* Note: Ground 5 Facts Continued at Page 12

b. Supporting cases, rules, or other authority:

Please See Points and Authorities at Pages  51-52

MC-275 [Rev. January 1, 1999]    PETITION FOR WRIT OF HABEAS CORPUS    Page four of six

GROUND #5 FACTS CONTINUED:

(7) There is no evidence in the record that shows how either any/cumulative aspects of adult probation, county jail, equate to unstable social history.

(8) Other than the facts relied upon by the Board in #(4), suffice it is unknown what the Board Panel meant.

7. ▓▓▓▓▓▓ Ground __6__ (if applicable):

Petitioner contends that the B.P.H.'s unsuitability rationale of Petitioner's allegedly limited program and insufficient self-help/therapy is not supported by any evidence to establish that he is an unreasonable danger to society, and is thusly arbitrary within holding of County of Sacramento - v- Lewis (1998) 118 St Ct 1708, 523 US 833

a. Supporting facts:

(1) On 9/29/05 Petitioner was denied parole. (EXH "A").

(2) As part of the totality of reasons to deny parole, the B.P.H. Panel spoke of Petitioner's program as follows and excerpted from EXH "A" p.58 l 15-21 [5TH Reason]:

"The prisoner has programmed in a limited manner while incarcerated. He failed to upgrade educationally and has not sufficiently participated in beneficial self-help and therapy programs. He failed to demonstrate positive change."

(3) The Psychologist has not scheduled Petitioner for any therapy and there is no need for any as the record shows it is unavailable. (See EXH "C" page 50 l 19-27 / page 51 l 1-3). Therapy could even be made a special condition of parole

(4) The parole board hasn't clarified how much/what sufficient participation in self-help is needed/required for parole.

* GROUND 6 Facts Continued at Pages 14, 15

b. Supporting cases, rules, or other authority:

Please See Points + Authorities At Pages 53-54.

PAGE 13 of 204

MC-275 [Rev January 1, 1999]    PETITION FOR WRIT OF HABEAS CORPUS    Page four of six

GROUND 6 FACTS CONTINUED:

(5) Petitioner has in fact upgraded educationally, and it was recognized by the panel: (1) "AA or substance abuse the last two years"; (2) "[A] Attendance in Anger Management, although its old [-]"; (3) "Two completed vocations" — See EXH "A" p-60 l.8-17

(6) Which/what therapy the Board wants Petitioner to participate in is unknown.

(7) In the decision (EXH "A" p.59), the Board Panel stated in regards to therapy, contrary to the Panels need for therapy finding:

"It is noted that this psychological report did not address the issue of his need for further therapy and treatment with regards to substance abuse issues. And therefore another psychological evaluation will be requested in order to address those issues of substance abuse treatment program needs."

(8) Regarding the Board's regulatory factors related to Psychological issues, CCR § 2402(c)(5) deals with "Psychological Factors". Petitioner does not meet this criteria.

(9) According to a January 26, 2006 memo (EXH "D"), to the BPH's commissioners/deputy commissioners: "Psychological Reports for subsequent lifer hearings for non-MHSDS inmates will not be generated thereafter." and "Psychological reports shall not be ordered for the purposes of evaluating parole suitability of non-MHSDS inmates." [EA., bold added]

PAGE 14 of 20A

1  GROUND 6 FACTS CONTINUED:

2  (10) Petitioner is not a MHSDS patient within CDCR.

3  (11) Although Petitioner's parole hearing occured
4      9/29/05, the "Decision" was not final until on
5      January 27, 2006. Thus, as the 1/26/06 memo was
6      in effect before finality, it applied to the Board's
7      findings of the hearing; and the review unit/
8      Governor should have reversed the Psych Report/
9      therapy issue.

10  [12]  Additionally, the Panel's conclusory allegation that
11      "He failed to demonstrate positive change" is belied
12      by the record; petitioner was continuing his education
13      and had been participating in AA.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7. ~~Fourth~~ Ground ___7___ (if applicable):

Petitioner contends that there is no evidence in the record of his 9/29/05 parole consideration hearing to permit his last "serious" Rules Violation Report (CDC 115) to be "some evidence" within the meaning of Superintendent v Hill (1985) 472 US 445, 105 S.Ct.2768, as indicia of reliability to predict future dangerousness, to be an unreasonable risk of danger to society under CCR §2402(a).

a. Supporting facts:

(1) On 9/29/05, denial of parole occurred for many alleged reasons (See EXH "A" pp. 57-63).

(2) Chronologically, the Sixth Reason for denial is specifically located at p.58 of EXH "A", lines 21-24 as follows:

"Misconduct while incarcerated, he had two 128(a)'s, custodial counseling chronos, the last being in 2005, and three 115's, the last being in 2002."

(3) As part of the Board's CCR §2402(c) Circumstances Tending to Show Unsuitability, #(6) deals with institutional behavior post-conviction.

(4) Opposite CCR §2402(c)(6), the Board also has CCR §2402(d)(9) also related to institutional behavior — but as a Suitability Circumstance.

(5) In the hearing (EXH "A" p.49): "[Y]ou can't have 115's or 128's. It's not tolerated. It's not acceptable for us." l 26-27.

* Note: Ground 7 Facts Continued at Page ___17___

b. Supporting cases, rules, or other authority:

Please See Points + Authorities At Pages ___55-58___

1  GROUND # 7 FACTS CONTINUED.

2  (6) The Board is failing to view the disciplinaries (115's)

3  in their proper context. In CCR § 2410 (c)(3) minor

4  disciplinary shall not necessarily prevent post-

5  conviction credit. Both out-of-bounds disciplinaries

6  were administrative (minor) and CDC 128-a's see

7  custodial counseling chronos (not even a

8  disciplinary."

9  (7) Petitioner's only "Serious" CDC 115 was in the year 1992.

10 (8) Parole being denied because of disciplinaries,

11 where such disciplinary(ies) are not enough to

12 deny credit, is a misuse of minor disciplinary(ies).

13 (9) For this court's convenance, the chronology is

14                          128 (a)'s

15      a) 4/24/01  - FAILURE TO REPORT TO WORK

16      b) 10/29/03 — UNEXCUSED ABSENCE

17                          115's

18      c) 7/20/92   FAILURE TO REPORT TO JOB (SERIOUS)

19      d) 8/7/92    SELF-MUTILATION (SERIOUS)

20      e) 2/25/02   OUT-OF-BOUNDS (ADMINISTRATIVE)

21 (10) CDC 128 (a)'s are Custodial Counseling Chronos

22 and Administrative 115's are not serious within

23 the meaning of CCR § 2402 (c)(6).

24 (11) Petitioner has 13+ years since serious RVR's.

25 (12) Attached at EXH." E " are Excerpts from the 2004

26 Governor Schwarzenegger Parole Decision Report

27 that establish time periods for time since Serious RVR's

28 being parole suitability circumstances.

PAGE 17 of 201

7. ████████Ground __8__ *(if applicable)*:

Petitioner contends that the B.P.H.'s identification of needed therapy/self-help and coping with stress is arbitrary and capricious parole unsuitability criteria, which violates the **Arkansas - v - Oklahoma** (1992) 112 S.Ct. 1046, 1060; 503 US 529 holding, because the B.P.H. panel has fictitiously created their conclusion on unsupported facts contrary to Due Process procedures.

a. Supporting facts:

(1) On 9/29/05 Petitioner went to his parole hearing (EXH. "A"), and was denied parole (EXH. "A" pp. 57-63).

(2) In denying parole elegibility, the 7th reason the Board of Prison Terms Panel denied parole by was for:

"The prisoner needs therapy or slash self-help in order to face, discuss, understand and cope with stress in a nondestructive manner. Until progress is made, the prisoner continues to be unpredictable and a threat to others." p.59 L26 - p.60 L4

(3) The record before the Panel included the Psych Report.

(4) The Board never states what type of "therapy" is needed.

(5) The Psych Report doesn't mandate / require any therapy (See EXH "C").

(6) Further, the Board doesn't specify what "self-help" program is required before a parole date will be set. They recommend / advise more anger management classes (EXH "A" p. 60 L1048).

* Note: Ground 8 Facts Continued at Pages 19-24

b. Supporting cases; rules, or other authority:

Please See Points and Authorities at Pages 59-63

GROUND # 8  FACTS CONTINUED 8

(7) CCR §2410 (c)(2), discusses what the Board considers as "Self-Help and Rehabilitative Programs". Specifically they refer to CDC Rules 3040 and 3041(i.e. CCR §3040, §3041). Since Petitioner's incarceration, he has participated in the CCR §3040 & §3041 PROGRAMS: as assigned.

(8) Petitioner is coerced into Alchoholics Anonymous participation:
  - "AA is ... a program thats available to you." — p.47 l 7-10 of EXH "A".
  - "So I perfectly understand that you might not want to participate in AA. But if that's the only game in town and you might derive some benefit from it, then I would encourage you to do so. And I can also assure you that if You do receive a denial it is not going to be because you are not participating in AA." p.47 l 12-19
  - "Well (indiscernible) to make it more clear, that will not be the only reason that --". p.47 l 20-22 [Emphasis Added]
  - "Yeah. Yeah." p.47 l 23-24
  [NOTE: THE AFOREMENTIONED QUOTES ARE BY COMMISSIONER ST. JULIEN AND DEPUTY COMMISSIONER MEJIA]

(9) Attorney Christensen: "Have you ever had any one-on-one therapy that focused on your childhood?" EXH "A" p.50 l 8-10. Inmate Burns: "No. They've never offered it." p.50 l 11-12. "Nothing's available here?" p.50 l 13-14. "Right, at this Facility." p.50 l 15 "That's true." p.50 l 16.

PAGE 19 OF 204

GROUND # 8 FACTS CONTINUED :

(10) Attorney Christensen: "He would need to be in the Triple CMS --" Presiding Commissioner St. Julien: "Yeah." Attorney Christensen: "-- program." Inmate Burns: "And I'm not Triple CMS." Presiding Commissioner St. Julien: "That's too bad." - EXH "A" p. 50 24 - p.51 l3.

(11) According to CCR § 2410(c), lack of self-help / rehabilitative programs shall not necessarily prevent the granting of post conviction credit. Therefore, if the availability of programs is minimal, the use of minimal participation cannot be used to deny parole suitability.

(12) In EXH. "A" p. 42 l15-17 :

   "[S]ubstance abuse is a problem. And it appears that you haven't really taken the steps to deal with that in the last 17 years."

(13) Where the state isn't providing any substance abuse program that is/has been available, Petitioner should not have to participate in the religious based AA.

(14) Psychotherapy is currently unavailable to Petitioner.

(15) Petitioner has no mental health disorder.

(16) Petitioner has no violent behavior or drug problems in about 17 years.

(17) There is not one iota of evidence that Petitioner has any history of coping with stress in a destructive manner; thus, the B.P.H.'s conclusion (#12 supra) is belied by the record:

PAGE 20 F 201

GROUND #8 FACTS CONTINUED

1

2  (18) Petitioner stated he had no disabilities. [EXH "A" p.3]

3  (19)  The Board's decision (A(2) supra, Gnd-8) has concluded

4  Medical Treatment is needed, via therapy/selfhelp.

5  so Petitioner's daily major life function of coping well

6  enable him to deal with stress in a non-destructive

7  manner. Effectively, the Board has stated your

8  medical problem is preventing you parole, to

9  Petitioner.

10  (20) ATTACHED at EXH "F" is a November 18, 2005 letter type

11  memo/policy - EXH "D" JANUARY 26, 2006 LETTER/MEMO

12  FURTHER expounded on the policy.

13  (21) Notwithstanding the Parole Board's policy(ies) about Psych

14  Reports, the California Department of Corrections and

15  Rehabilitation has CDC D.O.M. § 62090.13, et seq.

16  (See EXH "G") which explicitly explains the purpose

17  and scope of Psych Evaluations.

18  (22)  As the record reflects Commissioner Tracey L. St. Julien

19  was present at Petitioner's 9/29/05 hearing (EXH "A").

20  Attached at EXH "H" is an excerpt of Commissioner

21  Biographies, which includes Commissioner St. Julien's.

22  (23) Nothing in Commissioner St. Julien's biography establishes

23  that she can conclude contrary to the Psych Reports risk

24  assessment.

25  (24) The finding of therapy/selfhelp is a makeweight

26  rationalization in search of justification for support

27  of their Panel decision.

28                    PAGE 21 of 209

7. ~~Ground~~ Ground  9  *(if applicable)*:

Petitioner contends that the B.P.H.'s regulatory multi-year parole denial, during his last parole hearing, is unconstitutionally beyond scope of governing statutory/limiting language, violating the U.S. Const. Amend. 14 "procedural due process" doctrine, when quasi-judicial parole board fails to reasonably adhere to enabling legislation, which *County of Sacramento v. Lewis* (1998) 118 S.Ct. 1008, 523 US 833  forbade abuse of power under Due Process.

a. Supporting facts:

(1) At Petitioner's 9/29/05 Parole Hearing (EXH "A"), after the Board's rationale for denying parole (EXH "A" p.57 l 1 through p.60 l 23), a separate decision was invoked to justify a multi-year parole denial (See EXH "A" p.60 l 5 and p.60 l 24 to p.62 l 6).

(2) Additionally, at EXH "A" p.63 l 9-10, the panel wants Petitioner to get a G.E.D. within the 2 years.

(3) Specifically, for purposes of this ground, Petitioner argues the following as the Board's Rationale not substantiated to justify another multi-year denial:

[REASONS]

[ONE] "The prisoner committed the offense in an especially cruel and callous manner wherein he shot the victim twice in the head." EXH "A" p.61 l 3-6

[TWO] "The offense was carried out in a dispassionate and calculated manner." p.61 l 6-7

[CONTINUED]

\* Note: Ground 9 Facts Continued at Page 23

b. Supporting cases, rules, or other authority:

Please See Points and Authorities at Pages 64-70

MC-275 (Rev January 1 1999)   **PETITION FOR WRIT OF HABEAS CORPUS**   Page four of six

1  GROUND # 9   FACTS CONTINUED.

2  [P3 cont.]

3      [THREE] "The offense was carried out in a manner

4              which demonstrates exceptional callous

5              disregard for human suffering." p.61 l 9-12

6      [FOUR] "The motive for the crime was inexplicable

7              and very trivial in relation to the offense."
            p.61 l 12-14

8      [FIVE] "The prisoner has not completed the

9              necessary PROGRAM which is essential

10             to his adjustment and needs additional

11             time to gain such PROGRAMMING." p.61 l 14-117

12     [SIX] "It's like we have an issue about the

13             time that (indiscernible) deny you for

14             because of your 115's." – p.61 l 23-26

15 (4) Petitioner's Initial Parole Hearing Occured during

16     the year _1998_ . At this hearing he was given

17     a _3_ year denial. At this hearing occuring

18     on _1/22/98_ , the Board of Prison Terms used

19     both Petitioner's current offense and past criminality

20     to deny parole.

21 (5) Petitioner's 9/29/05 Parole Hearing occured approximately

22     _7_ years _8_ months after his _1998_ Initial Parole

23     Hearing.

24 (6) In the event that the Board wants Petitioner to

25     complete AA: AA is never complete as it is a lifetime

26     PROGRAM. He also has his G.E.D. now.

27 (7) No CDC 115 resulted in any criminal conviction.

28                  PAGE 23 of 201

7. ~~Ground~~ Ground __10__ *(if applicable)*:

Petitioner contends that his right to effective assistance of counsel, under the 6th Amend., was denied by appointed counsel's actions meeting the two-prong test of Strickland -v- Washington (1984) 466 US 668, 104 S.Ct 2052, 80 L.Ed2d 674, thus: ineffective assistance of counsel (IAC) at parole hearing.

a. Supporting facts:

(1) As a term-to-life prisoner in California, under the Determinate Sentencing Law (DSL), Petitioner gets appointed counsel for parole suitability hearings (See e.g. EXH "A").

(2) At parole suitability hearings, DSL inmates have the right to appointed counsel (See e.g. Penal Code § 3041.7, passim.)

(3) The lawyer that is to represent the DSL Inmate, is there to protect the inmate's rights, represent the inmate's interests at the parole suitability hearing, and includes, but is not limited to, the duty to enter relevant objections so as to correct the Board of Parole Hearings' Findings/ statements of law and/or fact.

(4) Although DSL inmates going before the BPH for parole suitability have the right to hire private lawyers, prisoners such as Petitioner, if they fall into the indigent category, will have/had BPH appointed and paid lawyer to represent him before the panel.

* Note: Ground 10 Facts Continued at Pages 25-27

b. Supporting cases, rules, or other authority:

Please see Points and Authorities at Pages 71-74

PAGE 24 of 204

1  GROUND 10 FACTS CONTINUED:

2  (5) At Petitioner's 9/29/05 hearing, he had Candice
3  Christensen as his BPH appointed lawyer.

4  (6) On January 5, 2006, Michael Brady (Project Manager in
5  charge of some of the class action legal proceedings),
6  as assigned to work with the Board of Parole Hearings
7  was deposed in the In Re Rutherford Marin County
8  Class Action Habeas Corpus case. The Prison Law Office
9  of San Quentin had an attorney there by the name of
10  Mr. Keith Wattley. Mr. Brady / BPH were represented
11  by the California Attorney General's Office's lawyers
12  Anya Binsacca and Patricia W. Helm.

13  (7) At pp. 26-27 of the aforementioned Brady deposition,
14  the following was stated by Mr. Brady as answers to
15  the questions:          [p. 26]
16    Q. In the time you've been working with the board
17       and the various capacities in which you've done
18       that, have you become familiar with the process
19       of appointing counsel for prisoners going to parole
          consideration hearings? — l4 & 8
20    A. Yes, I have. — l9.
       Q. Have you identified any problems with that process? l10-11
21    A. Yes, we have. l12
22    Q. Can you explain what you've identified. — l13
       A. We believe that the training of the counsel that
23       represents the — represents inmates and life
24       suitability hearings is inadequate. We have
         identified the appointment — the timing of the
25       appointments of inmate's counsel is too short in
26       order for the — attorney to have adequate time
         to meet with and prepare for the hearing." l14-20

27

28                    PAGE 35 of 201

GROUND 10 FACTS CONTINUED:

(8) Also, out of the Brady Deposition:

[p. 27]

"[T]he board is in the position where they appoint -- they chose the attorneys that represent the inmates and oversee them and discipline them[.]"

(9) Petitioner adopts and incorporates by reference thereto, the facts/points/authorities of Grounds 2-9, supra, in their independent/cumulative effect.

(10) Upon information and belief, and thereon alleged, the facts of Grounds 2-9, supra, were known to Attorney Christensen (hereafter counsel) before the hearing. This is because inmates such as Petitioner release their file(s) to lawyers representing them, who are presumed knowledgeable about parole hearings.

(11) Counsel did not enter any objection/correction into the record, so as to point out the factual/legal errors Petitioner has identified the Board as having made.

(12) Counsel even attempted to discourage Petitioner from citing law to the Parole Board [EXH "A" pp. 45-46].

(13) Counsel's performance allowed the Board to make findings which Petitioner, upon information and belief, has shown to be inaccurate or irrelevant under Grounds 2-9, supra.

PAGE 26 of 201

GROUNDS 10 FACTS CONTINUED:

(14) Premised on the fact that Counsel was a lawyer allegedly deemed knowledgeable in the parole laws, the Points and Authorities of Grounds 2-9, supra, were allegedly known to her upon information and belief.

(15) Upon information and belief, further, Petitioner claims he is entitled to writ relief based on the points and Authorities of Grounds 2-9, supra.

(16) Petitioner claims he was prejudiciously denied parole, as counsel failed to point out the legal bases of Grounds 2-9, supra, to the Parole Board.

(17) Presuming, without arguing, that the Board Panel would uphold the laws as cited by Petitioner, had they known of them prior to the hearing being over, their decision would not have reflected, upon information and belief, the illegal rationale to deny parole.

(18) Petitioner also adopts and incorporates Ground 11 facts and points/authorities by reference thereto. Counsel's performance should have brought to the attention of the parole board the doctrine of issue preclusion (administrative collateral estoppel). It was objectively unreasonable performance by counsel to let Petitioner be punished more than once for specific Grounds. Prejudice has thusly arisen when the parole denial is premised on issues that are contrary to law by the parole board.

/ / /

7. ▓▓▓▓▓ Ground  11  (if applicable):

Petitioner contends that the Administrative Collateral Estoppel Doctrine as held in Astoria Federal Sav. and Loan Ass'n -v- Solimino (1991) 111 S.Ct. 2166, 2169; 501 US 104 is violated by the B.P.H.'s repetitive use of facts (rationale) to deny parole suitability, which, thusly, is in violation of U.S.Const. Amend 14 procedural due process.

a. Supporting facts:

[1] On 1/29/98 Petitioner attended his Initial Parole Hearing. The rationale used by the Board of Prison Terms is in the "Decision" of the 1/29/98 hearing at attached (EXH "I") Petitioner was denied parole for a multitude of reasons.

[2] Approximately 3 years and 8 months later, after the 1/29/98 hearing's denial, Petitioner attended his next Parole Hearing on 10/1/01, where he was once again denied Parole for a multitude of reasons (See EXH. "J")

[3] Approximately 4 years lapsed until the 9/29/05 hearing, where parole was once again denied. The entire transcripts and decision see attached at (EXH. "A"). Parole was denied for numerous reasons.

[4] Some of the reasons, in which parole was denied, were the same as reasons at either/both of the two preceding hearings.

* Ground 11 Facts Continued at Page 29

b. Supporting cases, rules, or other authority:

Please see Points and Authorities at Pages 75-78

MC-275 [Rev. January 1 1999]    PETITION FOR WRIT OF HABEAS CORPUS    Page four of six

GROUND 11 FACTS CONTINUED

[5] By the Former Parole Boards citing to certain reasons against Petitioner, they litigated reasons for denial in the technical sense that litigation takes place within an administrative hearing.

[6] Because the former Parole Boards' actions took place in the "Decision" parts of the 1998 and 2001 hearings, the like issues were previously necessarily decided against Petitioner.

[7] At the end of the Decisions, the Parole Board set dates for finality of their findings.

[8] The prior Board of Prison Terms is now renamed to the Board of Parole Hearings, and as such is the same as its predecessor entity(ies).

[9] Petitioner has created an AT-A-GLANCE Affidavit [EXH. "K"], containing information from other EXHIBITS "A", "I" and "J". The purpose of this AT-A-GLANCE EXHIBIT is to establish the parole board's continual use of unchanging circumstances when denying parole suitability. These are the issues Petitioner claims should be barred from their review.

[10] Part of the Parole Board's duties when denying parole, for "up to five years" under Pen.Code §3041.5 is to consider ALL RELEVANT, RELIABLE information. When parole is denied, punishment is lengthened. It is this repetitive punishment that Petitioner complains violates Due Process.

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.  If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

_COURT OF APPEAL — THIRD APPELLATE DISTRICT_   ↑7/25/90?

b. Result: _AFFIRMED_    c. Date of decision: _DON'T REMEMBER_

d. Case number or citation of opinion, if known: _3 CRIM C005520_

e. Issues raised: (1) _Change of Venue_

(2) _Instructing The Jury With An Allen Charge. (Allen v. U.S._

_(1986) 164 U.S. 492, 46 L.Ed 2d 528, 17 S. Ct 154)_

f. Were you represented by counsel on appeal?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

_I DO NOT REMEMBER_

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.  If yes, give the following information:

a. Result: _____    b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

_Not Applicable_

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

_Pursuant to the Board of Prison Terms (BPT's) New_

_Policy enacted as "Emergency Regulations Filed 4/15/04_

_and effective 5/1/04 "Due Process" APPEALS ARE NO LONGER_

_FILED WITH PAROLE BOARD. THUS, FOR JUDICIAL REVIEW, DOES NOT_

_HAVE ANY BPH (BPT) APPEAL FOR ACTIONS DENYING PAROLE._

b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☒ No.    _See P 11 Explanation_

Attach documents that show you have exhausted your administrative remedies.

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13.  ☒ No. If no, skip to number 15.
THIS PETITION DEALS W/ 7/29/05 HEARING.

13. a. (1) Name of court: _____

       (2) Nature of proceeding (for example, "habeas corpus petition"): _____

       (3) Issues raised: (a) _____

           (b) _____

       (4) Result (Attach order or explain why unavailable): _____

       (5) Date of decision: _____

    b. (1) Name of court: _____

       (2) Nature of proceeding: _____

       (3) Issues raised: (a) _____

           (b) _____

       (4) Result (Attach order or explain why unavailable): _____

       (5) Date of decision: _____

    c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
_____
_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
No undue delay as Petitioner has prepared this Petition, with help, as facts and law supporting all grounds were known to him.

16. Are you presently represented by counsel? ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:
_____

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes. ☐ No. If yes, explain:
28 USC § 2254 Federal Habeas Corpus In United States Dist. Ct. Eastern Dist.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
No Lower Court has Jurisdiction to Hear This Petition.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 7 / 26 / 2006              PAGE 34 (-301      _____
                                                    (SIGNATURE OF PETITIONER)

# EXHIBIT G
# Part 2 of 2

1 | SCOTT BURNS (CDCR No. D-99247)
2 | G-WING 312-UP, CTF-SOLEDAD (CENTRAL)
  | P.O. BOX 689
3 | SOLEDAD, CA   93960-0689
  |   (IN PRO PER)
4 |
5 |
6 |
7 |
8 |          IN  THE  SIERRA  COUNTY  SUPERIOR  COURT
9 |      IN  AND  FOR  THE  STATE  OF  CALIFORNIA
10 |
11 |
12 |
13 | IN RE SCOTT BURNS                | RE8 AMENDMENT-SUPPLEMENT IN
14 |  . SCOTT BURNS -(PETITIONER)     | SUPPORT OF HABEAS
   | B. CURRY -WARDEN(A), et al       | CORPUS PETITION
15 |   (Respondent)
16 |
17 |                          I.
18 |                   INTRODUCTION
19 |    Petitioner submits this Amendment - Supplement in
20 | support of the accompanying Habeas Corpus Petition. He
21 | is a term-to-life prisoner, serving 17-to-life, out of
22 | Sierra County. After attending the 9/29/05 Parole hearing
23 | that became final on 1/27/06. Subsequent to the finality,
24 | Petitioner has gone to the library and sought help in
25 | preparing this Petition. To the best of Petitioner's due diligence
26 | he has argued everything. Additionally, this Petition should
27 | be deemed timely as it is within 1-year of Federal AEDPA for
28 | tolling.                  PAGE 32 of 207

II.

JURISDICTION

This Court is Constitutionally enabled to act upon authority granted by Cal. Const. Art. VI Sec. 10 and Penal Code § 1473 _____ et seq.

III

VENUE

Venue is appropriate in light of In Re Roberts (Cal. 2005) 31 Cal Retr 3d 45B A71 to county of conviction, on parole matters

IV.

PARTIES

Petitioner is currently incarcerated at Correctional Training Facility-Soledad after commitment to prison (see Abstract of Judgement at EXH. "L" page 198 of 200).

Respondent, B. Curry is the Warden (Acting) of Correctional Training Facility-Soledad. He is currently the State Official having direct and immediate supervision/control over Petitioner.

Respondent is represented by the Office of the Attorney General (i.e. Bill Lockyer, Attorney General) via the Sacramento address.

V.

FACTS OF CASE

Facts are enclosed on official MC275 Form, pages 3 to 29.

VI

CONTENTIONS

1.

Parole denial violates Cal. Const. Art. I, Sec. 17, 24 clauses.

2.

Use of crime to deny parole was violation of procedures where Board failed to adhere to United States v Caceres ( )59 L Ed 2d 733, 440 US 741, 99 S.Ct 1465 governing adherence to procedure and Appellate Courts findings.

3.

Use of Motive was violation of Due Process protections delineated by Carey v Piphus (1978) 435 US 247, 259, 98 S.Ct 1042, 1050 and fundamentally unfair when illegally used.

4.

Denial of Parole based on prior criminality was arbitrary within meaning of Arkansas v Oklahoma (1992) 112 S.Ct 1046, 1069, 503 US 592, when not an unsuitability circumstance.

5.

The Board's allegation of prior criminality violated procedures that were mandated to be observed according to United States v Caceres ( )59 L Ed 2d 733, 440 US 741, 99 S.Ct 1465.

PAGE 34 f 201

<u>VI Continued</u>

(Contentions continued)

6.

It was arbitrary and an abuse of power within the holding of <u>County of Sacramento v. Lewis</u> (1998) 118 S.ct 1708, 523 US @ 33 to diagnose needed self-help/therapy and failure to upgrade educationally for parole denial.

7.

There is no evidence to use 13 year old Serious 115 as an unsuitability factor to establish said action posing unreasonable threat to society and thus not "some evidence" within the Superintendent --- v. Hill (1985) 472 US 445, 105 S. Ct 2768 holding.

8.

It was arbitrary within the holding of <u>Arkansas v. Oklahoma</u> (1992) 112 S.ct 1046, 1060, 503 US 589 to claim needed therapy & self-help to claim Petitionee unpredictable or threat.

9.

It was arbitrary and oppressive within the meaning of <u>County of Sacramento v. Lewis</u> (1998) 118 S.Ct 1708, 523 US @ 33 to illegally issue multi year denial.

10.

Petitionee received Ineffective Assistance of Counsel at 9/29/05 Parole Hearing in violation of <u>Strickland v. Washington</u> (1984) 466 US 668, 104 S.Ct 2052, 80 L.Ed 2d 674.

11.

Repetitive use of unchanging unsuitability circumstances violates issue preclusion/collateral estoppel applicable to <u>Astoria Federal Sav. and Loan Assn. v. Solimino</u> (1991) 111 S.Ct 2166, 2169, 501 US 104.

PAGE 35 of 20?

///

VII

MEMORANDUM OF POINTS AND AUTHORITIES

(PREFACE)

1
2
3    Petitioner has a liberty interest in parole suitability
4  as a prisoner in California. McQuillion -v- Duncan (9TH CIR.
5  2002) 306 F.3d 895, BIGGS -V- TERHUNE (9TH CIR. 2003) 334
6  F.3d 910, 2003 DJDAR 8863.

7    Thus, the Board cannot argue otherwise. N.L.R.B. -V- Askenazy
8  Property Management Corp. (CA9. 1987) 817 F.2d 748 (Administrative agencies
9  are not free to refuse to follow circuit precedent in cases originating
10 within circuit, unless agency has good faith intention of seeking
11 review of particular proceeding by Supreme Court.)

12    Therefore, having unequivocally established the liberty
13 interest question for 14TH Amendment Analysis, and Federal
14 AEDPA Jurisdiction, the question is what process is due. Biggs,
15 supra at 8874, is demonstrative in advising to the Calif. Judiciary:

16    "To insure that the state-created parole scheme,
      serves the public interest purpose of rehabilitation
17    and deterence, the Parole Board must be cognizant
18    not only of the facts required by state statute to
      be considered, but also concepts embodied in the
19    Constitution requiring due process of law." [Emphasis
20    Added, E.A. Hereafter]

21    Therefore, the "some evidence" test of Superintendent... -V- Hill
22 (1985) 472 U.S. 445, 105 S. Ct. 2768, 86 L.Ed 2d 356 is only a gateway to
23 analyze whether the Board's action(s) was/were arbitrary, capricious,
24 lacking basis in fact or contrary to law. U.S. Constitution embodied
25 concepts requiring due process of law are expansive beyond "some
26 evidence" and require seperate / harmonized analysis as allegedly
27 violative of U.S.S. Ct. holdings directing interpretation of: law, fact and
28 law, and proper factual analysis under Due Process review.

PAGE 36 OF 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

1.

Petitioner contends that the B.P.H's denying parole on 9/29/05 made his sentence grossly disproportionate to the offense (penalty being excessive under facts/circumstances of convicted crime) in violation of Calif. Const. Article I: Sections 17/24 against cruel or unusual punishment limitations

Cal.Const. Article I, Sec. 17 advises to every peace officer/ State officer (e.g. Board of Parole Hearings Commissioners and Deputy Commissioners): "Cruel or Unusual punishment may not be inflicted." This guarantee is so important, that the Cal.Const. Article I, Sec.24 has also stated:

"In criminal cases the rights of a defendant to ... not suffer the imposition of cruel or unusual punishment, shall be construed by the courts of this State in a manner consistent with the Constitution of the United States [i.e. 8TH Amendment via 14TH Amendment procedural protections]."

As Petitioner is found guilty, while no longer a defendant these rights still protect him as incarceration is ancillary to the criminal case.

In Re Roberts (Cal. 2005 (7/21/05)) 31 Cal. Rptr 3d 458, 467 Fn. 7 in pert.

"The Board may not, by denying parole, retain a prisoner sentenced to a life-maximum term for a period grossly disproportionate to the offense in violation of the state Constitution's prohibition against cruel or unusual punishment." (Dannenberg [passim] @ p. 7076, In Re Rodriguez, supra, @ pp. 651, 656) [E.A.]

Rhetorically: what punishment for a 2nd Degree Murder is

PAGE 37 OF 201

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED VII

(1 Cont.)

"grossly disproportionate"?

Approximately 6 months before In Re Roberts, supra, the Cal. Supreme Court also ruled in In Re John E. Dannenberg (2005 (1/24/05)) 34 Cal 4TH 1061, 23 Cal Rptr 3d 417, cert. denied ___ U.S. ___, 126 S.Ct. 92, 163 L.Ed.2d 109 (2005):

"However, Wingo, ruled a constitutional challenge to the proportionality of an individual indeterminate sentence should await the Adult Authority's fixing of an actual release date for the inmate. If such a date was promptly set, Wingo concluded proportionality would be measured by that date, rather than the statutory maximum."

This part of Dannenberg, supra, appears partially harmonized with People -v- Wingo (Cal. 1975) 14 C.3d 182, 184, which still holds:

"Thus a sentence may be unconstitutionally excessive either because the Adult Authority [Now Board of Parole Hearings] has fixed a term disproportionate to the offense OR in some circumstances because no term whatever has been set ... [p.184.] Only when such a term is set, OR if the Authority within a reasonable time decides not to fix a term, may defendant utilize the remedy of habeas corpus to determine if the penalty is excessive under the facts and circumstances of the crime of which he stands convicted. [E.A.]

Neither Dannenberg, nor Roberts address this 2nd prong that guides this Ground's analysis.

In Re Rodriguez (1975) 14 C.3d 639, 649, 651, 653 has still held:

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(1 Cont.)

"The obligation of the Court to assure the [] law is properly administered, however is not limited to procedural due process alone... our duty to assure that practices followed by the [parole] Authority do not permit constitutionally excessive punishment is surely no less compelling than our duty to assure that the legislative purpose of the law [Pen Code §3041.5's 5 year cap?] is carried out... [p. 65] The oft-stated rule that a prisoner has no right to a term fixed at less than maximum [cites omitted] is therefore subject to the overriding constitutionality compelled qualification that the maximum may not be disproportionate to the individual prisoners offense... [p. 653] This, the rule that the measure of the constitutionality of punishment for crime is individual culpability, is well established in the law of this state."

Here, the California Legislature limited multi-year parole denials to a maximum of 5 years, where the Board knows of this limit by express language in Pen Code §3041.5. (See also Ground __9__, post.)

25 years before Dannenberg/In re Roberts, the California Supreme Court also held in In Re Rogers (1980), 169 Cal Rptr 222, 28 Cal.3d 432:

"Under the statutory scheme of the DSL, the Board of Prison Terms is given no discretion as to the setting of parole. Once a prisoner has completed his fixed term, the Board is mandated to release him. This was not true under the ISL where the Adult Authority was given broad discretion in determining whether an individual should be released on parole."

Thus, if the Board has no discretion: where is Petitioner's parole date?

PAGE 39 of 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(1. cont.)

Reminding this Court, Petitioner does have an enhancement. Therefore, when analyzing this case under Calif. Const. Art. I. Sections 17/24, supra, People -v- Duran (App. 1983) 189 Cal Rptr 595, 140 Cal App. 3d 485 (1st App. Dist. Cal. Div. 4) as modified on denial of rehearing, hearing denied 6/2/83; at P. 606 this court should consider:

> "In the present case, appellant was sentenced under a statute providing that "every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life." (Pen. Code § 190). In Re Jeanice D. (1980) 28 Cal. 3d 210, 168 Cal Rptr 455, 617 P. 2d 1087, interpreted similar statutory language as referring to an indeterminate sentence; it thus rejected the contention that the statute establishes a determinate life sentence with a minimum parole eligibility date of 15 years. Under this statute, then, the penalty for second degree murder will be fixed at a definite number of years — anywhere from 15 to life. Once this figure has been determined, a defendant would be released as soon as his term expires. It is not impossible to add an enhancement to the term decided upon so long as that term is not life."

In accordo, if Petitioner's term is not life due to his enhancement, and notwithstanding Pen. Code §§ 3041, 3041.5 that the Parole Board must adhere to Pen. Code § 5078 (a), passim, his date should have been set at his Initial Hearing (see In Re Williams, post, Ground 9 Points and Authorities at Pages 68, 69 - Cal. Const. Art. I, Sec's. 17/24, as cited are violated.

PAGE 40 of 201

## VIII
## MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2.

Petitioner contends that there is no evidence in the record, to support the B.P.H.'s use of the crime as a Parole unsuitability Factor, in violation of Procedural due Process mandated by Regulations, In light of In Re John E. Dannenberg (passim), where United States -v- Caceres 59 L.Ed 2d 733, 440 US 741, 99 S. Ct. 1465 mandates adherence to Due Process Procedures.

United States -v- Caceres ( ) 59 L.Ed 2d 733, 743 Fn. 14 in Part, 440 US 741, 99 S.Ct 1465 has held:

"Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where internal procedures are possibly more rigorous than otherwise would be required. (Morton -v- Ruiz 415 US 199, 235, 39 L.Ed 2d 270, 94 S.Ct 1055)."

In this particular case, the Court of Appeals for the 3rd Dist. of California had ruled the crime as not sensational or atrocious. Thus, It doesn't Fall into the Board's "especially heinous, atrocious, or cruel" criteria that Dannenberg, passim, says applies to the decision. The Board claims the crime as especially cruel and callous. Petitioner sets Forth how this "Decision's use is arbitrary to the point of illegally Keeping him imprisoned, in violation of his 14TH Amendment Due Process protections.

(RIGHT TO PROCEDURAL DUE PROCESS)

There must be a "liberty interest" to some right /expectation/

PAGE 41 of 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(2. CONT.)

benefit before the 14TH Amendment's Due Process clause is triggered. Denial of parole is one of these situations. In Re Johnson (Cal. App. 1 Dist. 1995) 41 Cal Rptr. 2d. 449, 456B "Although the Board has broad discretion in parole matters, that discretion is subject to the prisoner's right to procedural due process."

Solidifying the need of specific procedures in which to deny parole, In Re John E. Dannenberg (Cal. Sup. Ct. 2005) 34 Cal 4TH 1061, 23 Cal Rptr. 3d 417 has stated:

"[Penal Code] Section 3041 addresses how the Board is to make parole decisions for indeterminate life inmates . . . . [P] In response to these requirements the Board has adopted regulations covering the various categories of indeterminate life inmates . . . [P] The regulations do set detailed standards and criteria for determining whether a murderer with an indeterminate life sentence is suitable for parole." [E.A.]

(COMMITMENT OFFENSE UNSUITABILITY CRITERIA)

Within the Calif. Code of Regulations (CCR), Div. 2 (i.e. the Regulations of the Board of Parole Hearings), CCR §§ 2402 (c)(1)(A,B,C,D) deal with the manner of the Commitment Offense as follows:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

PAGE 42 of 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(2. CONT.)

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering."

NOTE: THERE IS ONE MORE SUB-PARAGRAPH, i.e. #(E) under 2402(c)(1)(E) which deals with motive rather than manner. It is addressed as a separate ground.

As previously pointed out in the facts of this Ground (see PAGE 6 of 201, # 2), the Board Panel claims the 2nd Degree Murder was "especially cruel and callous". However, the Appellate Court (see Ground 2 #(5) at page 7 of 201) has declared the crime "neither sensational nor atrocious." Therefore, the Board's Panel refused to adhere to the relevant/reliable evidence in this case as related to the description of the crime. This action makes their description arbitrary and unsupported. They point to no factor.

Wolff v McDonnel (1974) 418 US 539; 94 S.Ct. 2963, 41 L.Ed 2d 935 at 418 US 558, 94 S.Ct. at 2976: "The touchstone of due process is protection of the individual against arbitrary action of government [citations]." Additionally, Morrissey v Brewer (1972) 408 US 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed 2d 484 instructs: "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."

Here, the B.P.H. should not be allowed to deny parole based on the Commitment Offense.

(PRONGS TO PROVE)

McQuillion v Duncan (9th Cir. 2002) 306 F.3d 895, has

PAGE 43 of 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(2. CONT.)

emphasized the two-prong test: "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. Brewster -v- Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998)."

Galland -v- City of Clovis (Cal. 2001) 103 Cal Rptr 2d 711, 24 Cal 4th 1003 at P.739 8 "[W]hen the process itself is fundamentally unfair, even agency determinations supported by substantial evidence (a higher prong than 'some evidence') may be overturned: it is the very unfairness of the hearing that undermines the reliability of the administrative record being reviewed."

In this case, Petitioner has substantiated both Mc Quillion prongs in his prima facie case. The record shows that the B.P.H. panel was aware of the Appellate record and completely ignored the findings.

Mines -v- Sullivan (9th Cir 1992) 981 F.2d 1068, 1070 cert. den. 113 S.Ct. 2993, 509 U.S. 903 has stated:
"A court need not accept an agency's interpretation of its own regulations if that interpretation is inconsistent with the wording of the regulation or inconsistent with the statute under which the regulations were promulgated."
Here, this court shouldn't presume that the B.P.H. legally used the crime to deny parole, when by statute they know of Direct Appeals findings contrary to their regulations, and their lack of factors in support

PAGE 44 of 201

VII.

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(2. CONT.)

Cal. Hotel & Motel Assn -v- Indus. Welfare (Cal.Sup.Ct. 1979) 157
Cal. Retr. 840, 847:

"A court will uphold the agency action unless the action
is arbitrary, capricious, or lacking in evidentiary
support. A court must ensure that an agency has
adequately considered all relevant factors and has
demonstrated a rational connection between those
factors, the choice made, and the purposes of the
enabling statute.

Analogous for purposes of this argument is Superintendent,
Mass. Corr. Inst. -v- Hill (1985) 472 US 445, 105 S.Ct. 2768 (passim)
"some evidence" test as In Re Powell (1988) 45 Cal. 3d 894 has
adopted into Calif. parole hearings for Judicial Review.
Administrative law principles then attach to the review,
which require reversal of the administrative agency's
finding(s) if: arbitrary, capricious, lacking basis in fact,
or being contrary to law. Terhune -v- Sup. Ct. (Whitley)
(1998) 65 Cal. App. 4th 864, 872: "[A]dministrative actions
exceeding those powers [Constitutional, Statutory] are void."
The 14th Amend. to the U.S. Const. is violated here as Due
Process should prevent the B.P.H. from finding what the
Appellate Court already determined did not exist, and
finding what the record didn't support as an
unsuitability factor.

TWO HEAD SHOTS GUARANTEED DEATH ALMOST INSTANTANEOUSLY, AND
THERE ARE NO FACTS BEYOND MINIMUM TO CONVICT.

PAGE 45 of 201

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

### VII

### 3.

Petitioner contends that the B.P.H.'s use of "motive", to deny parole suitability on 9/29/05, lacked sufficient Constitutional procedures under holding in <u>Carey-v-Piphus</u> (1978) 435 US 247, 259, 98 S.Ct 1042, 1050, to be valid under procedural due process when constitutionally inadequate under law.

<u>Carey-v-Piphus</u> (1978) 435 US 247, 259, 98 S.Ct 1042, 1050 holds:
"Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property .... Therefore, to determine whether a constitutional violation has occured, it is necessary to ask what process the state provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." — From Zinermon-v-Burch (1990) 110 S.Ct 975

California has stated in <u>Galland-v-City of Clovis</u> (Cal. 2001) 103 Cal Rptr 2d 711, 731-732, 739, 24 Cal 4TH 1003:
"A procedural due process claim possesses two components: First, that an individual has been deprived of a constitutionally protected liberty [ ] interest; and second, that this deprivation, while not necessarily unconstitutional in and of itself, was rendered unconstitutional because it was undertaken without according the individual the appropriate hearing ... [P.739]. [W]hen the process itself is fundamentally unfair, even agency determinations supported by substantial evidence [even a higher standard than "some evidence"] may be over-turned; it is the very unfairness of the hearing that undermines the reliability of the administrative record [B.P.H. parole hearing transcripts] being reviewed." — <u>McQuillion-v-Duncan</u>, supra, same analysis.

PAGE 16 of 204

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(3. CONT.)

1  Under SCR § 2402(c)(1) "Commitment Offense. The prisoner committed

2  the offense in an especially heinous, atrocious or cruel manner.

3  The factors to be considered include: * * * [A] (E) The motive for

4  the crime is inexplicable or very trivial in relation to the offense."

5  The Calif. Judiciary has clarified for the B.P.H., how this (2402(c)(1)

6  to be used. In Re George Scott (Cal. App. 1st Dist. 2004) 119 Cal App 4TH

7  871, 15 Cal Retr 3d 32 : "The Board did not indicate whether it found

8  Scott's motive "inexplicable" or "very trivial" in relationship to the

9  offense," as it could not be both."[E.A.] Here the B.P.H. panel

10  did in fact allege "both", which was contrary to law (inadequate).

11  Additionally, the B.P.H. panel pointed to no fact in its

12  decision to substantiate the motive as "inexplicable". In Re George

13  Scott, supra: "An "inexplicable" motive, as we understand it, is one that

14  is unexplained or is unintelligible, as where the commitment offense

15  does not appear to be related to the conduct of the victim and has

16  no other discernible purpose."

17  Also, In Re George Scott, supra: "The reference in Board regulations

18  to motives that are "very trivial in relationship to the offense" therefore

19  requires comparisons; to fit the regulatory description the motive

20  must be materially less significant (or more "trivial") than those

21  which conventionally drive people to commit the offense in question[.]

22  Carey v Piphus, supra, is further supported by United States v

23  Caceres (   ) 59 L.Ed 2d 733, 743 Fn. 14, 440 US 741, 99 S. Ct 1465 : "Where the

24  rights of individuals are affected, it is incumbent upon agencies to

25  follow their own procedures." This includes Judicial interpretation of

26  procedures. Due Process was violated by Board's use of motive.

PAGE 47 f 201

## VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

4.

Petitioner contends that the B.P.H.'s use of his prior criminality, as a parole unsuitability factor, is 'arbitrary and capricious' within the meaning (holding) of Arkansas -v- Oklahoma (1992) 112 S.Ct. 1046, 1060, 503 US 592, due to the B.P.H.'s failure to make a rational connection under guidelines governing when prior criminality is an unsuitability circumstance.

Arkansas -v- Oklahoma (1992) 112 S.Ct. 1046, 1060, 503 US 592 holds: "As we have often said an agency ruling is 'arbitrary and capricious' if the agency has ... entirely failed to consider an important aspect of the problem."

Within the B.P.H.'s parole scheme, they have adopted two different ranges of factors (i.e. suitability for parole/unsuitability for parole). These are under CCR §2402(c), passim, circumstances tending to show unsuitability, and CCR §2402(d), passim, circumstances tending to show suitability. Specifically, as based on Prior Criminality, the B.P.H.'s regulations provide:

CCR §2402(c), ¶(2): (UNSUITABILITY) "Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age."

CCR §2402(d), ¶(1): (SUITABILITY) "No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims."

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

( 4 CONT. )

CCR §2402 (d) , ¶(6) : "Lack of Criminal History . The prisoner lacks any significant history of violent crime.

Therefore , Petitioner's prior criminality (Ground 4, ¶ 6 at page 10/201 ) is not a parole unsuitability circumstance.

In Re Morall                              (2002) 125 CalRptr 2d 391 , 102 Cal. App. 4th 280 has specified :

"[T]he law requires that when an inmate becomes eligible for parole , he is entitled to individualized consideration of his suitability for parole ( Pen.Code §3041 , 3041.5 ) . A refusal to consider the particular circumstances relevant to an inmate's individual suitability for parole would be contrary to law." [E.A.]

In Re John E. Dannenberg , supra , has clearly specified that the B.P.H. has adopted specified regulations . The aforementioned CCR §§ 2402 (c) , ¶(2) and 2402 (d) (1 , 6) are the only parameters on prior criminality . Here , the B.P.H. has contradicted their own regulations to pigeon-hole Petitioner's prior criminality into criteria that is contrary to the mandate in Arkansas-v-Oklahoma , supra. Thus , the B.P.H.'s use of Petitioner's prior criminality as an "unsuitability" criteria is arbitrary and capricious.

Oregon Natural Resources Council -v- Lowe (9th Cir. 1997) 109 F.3d 521 , 526 : "Although review under the arbitrary and capricious standard is narrow , the agency must articulate a rational connection between the facts found and the conclusions made." The B.P.H.'s use of the prior criminality to deny parole is irrational .

PAGE 49 of 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(4. CONT.)

Here, the B.P.H.'s prior criminality decision is clearly erroneous. Adamson -v- Department of Social Services (Cal. App. 1 Dist. 1988) 254 Cal. Rptr. 667, 672 "Under California law... courts will not depart from the agency's construction unless it is clearly erroneous or unauthorized."

There is absolutely no evidence in the record before the B.P.H., that establishes how Petitioners prior criminality is within the parameters of CCR § 2402 (c), 91 (2), supra. Zinermon -v- Burch (1990) 110 S.Ct. 975, 983, 494 US 113, 108 L.Ed 2d 100 " Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Thus, Petitioners 14th Amend. Due Process right related to prior criminality has been violated.

Concrete Pipe and Prod. -v- Const. Laborers Pen. (1993) 113 S.Ct 2264, 2280 " This review under the 'clearly erroneous' standard is significantly deferential requiring a 'definite and firm conviction that a mistake has been committed." Petitioner proffers that a mistake has in fact occured, where in the B.P.H. has deemed a parole suitability circumstance as an unsuitability circumstance.

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

5.

Petitioner contends that there is no evidence to support a finding of an "unstable social history" (CCR§2402 (c).#(3)), and therefore it is arbitrary and capricious for the B.P.H. not to follow their own procedure under the holding of United States -v- Caceres 59 L·Ed 2d 733,743, 440US 741, 99 S.Ct 1465, which mandates administrative agency obey its procedure.

Under CCR§2402(c).#(3), the B.P.H. has the parole unsuitability circumstance of: "Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others."

Nowhere in the facts of this case, as stated in the decision, is there evidence of any unstable social history related to prior criminality. The B.P.H. Panel has used rote language without support.

Petitioner's numerous Foster-family placements are no way indicative of unstable or tumultuous relationships with others.

In United States -v- Caceres ( ) 59 L Ed 2d 733,743 Fn.14 in part, 440 US. 741 99 S.Ct 1465, the court held:

"Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where internal procedures are possibly more rigorous than otherwise would be required."

Therefore, when a regulation (i.e. CCR§2402(c).#(3))exists for a certain purpose, the B.P.H. should use it correctly, within the meaning and spirit of the regulation, with support based on reliable data. The B.P.H. doesn't have carte-blanche to make up irrational categories to compound facts otherwise not being unsuitability criteria.

PAGE 51 of 201

## VII
## MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
### (5. CONT.)

3. <u>Jancsek -v- Oregon Bd. of Parole</u> (9TH Cir. 1987) 833 F.2d 1389, 1390 8
4. "[T] he evidence underlying the [parole] board's decision must have
5. some indicia of reliability."
6. <u>Arkansas -v- Oklahoma</u> (1992) 112 S.Ct. 1046, 1060, 503 US. 529 holds
7. that 8 "As we have often said an agency ruling is 'arbitrary
8. and capricious' if the agency has..... entirely failed to consider
9. an important aspect of the problem." Here, the B.P.H. panel
10. failed to consider/articulate facts in support of CCR§2402(c),4(3),
11. to prove any unstable or tumultuous relationships with others.
12. In this situation, the B.P.H. panel has refused to adhere to
13. <u>Walsh -v- Kirby</u> ( Cal. Sup. Ct. 1974) 418 Cal. Rptr.1, 8, 13 Cal.3d 95,
14. 529 P.2d 33: " However, discretion cannot be exercised so as to
15. "enlarge its own boundaries or support acts requiring other
16. legal bases." It is evident that the B.P.H. has illegally
17. enlarged its boundaries.
18. Further, the B.P.H. fails to adhere to the instructive mandates
19. of: <u>Newman -v- Apfel</u> (9TH Cir. 2000) 223 F.3d 937, 943 8 "The fact that an
20. agency has broad discretion in choosing whether to act does not
21. establish that the agency may justify its choice on special
22. grounds.": and <u>Enrico's, Inc. -v- Rice</u> (CA9. Cal. 1984) 730 F.2d 1250,
23. 1253: "[A]n agency must follow the correct interpretation of a
24. rule or regulation."
25. Based on the aforementioned. Due Process clause of the 14TH
26. Amendment has been violated by the panel's use of unstable
27. social history to deny parole.

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

6.

Petitioner contends that the B.P.H.'s unsuitability rationale of Petitioner's allegedly limited program and insufficient self-help/therapy is not supported by any evidence to establish that he is an unreasonable danger to society, and is thusly arbitrary within holding of County of Sacramento -v- Lewis (1998) 118 S. Ct. 1708, 523 US 833

County of Sacramento -v- Lewis (1998) 118 S. Ct. 1708, 523 US 833 :

"We have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government, ... Thus, in Collins -v- Hacker Heights, for example, we said that the Due Process Clause was intended to prevent government officials "," "from abusing [their] power or employing it as an instrument of oppression."

In this case, Petitioner has been incarcerated since 10/31/88, and at the time of the 9/29/05 hearing he was about 1 month shy of 17 years of imprisonment in state prison. He has held numerous prison job assignments, been a student, acquired two trades, participated in self-help (e.g. AA and Anger Management). Therefore, the Board's finding limited program is abuse of power.

Further, when ordering a new psych report, the Board refuses to adhere to the instructional memo dated 1 day before hearing finality

PAGE 53 of 201

MEMORANDUM OF POINTS AND AUTHORITIES    CONTINUED

(6 - cont.)

Petitioner has no substance abuse issues in Prison. Further, the substance abuse issues were pre-commitment offense. (The board may not deny parole based on a petitioner's history of substance abuse) - see **Thompson -v- Davis** (9TH Cir. 2002) 295 F.3d 890, 898, as cited to in Prisoner's Rights Handbook 2004 Supplement.

Further, the Board Ignores **Irons -v- Warden of Calif. State Prison -Solano** (USDC E.D. Cal 2005) 358 F.Supp. 2d 936, 948: "[A] conclusion by lay BPT commissioners that petitioner has not yet achieved required therapy for insight or other reasons is not reasonably sustainable[.]" It is arbitrary and oppressive for the Board to ignore the Ground 6 # 9, EXH "D" excerpts.

Even before the "some evidence" Test as stated in **Superintendent ... -v- Hill**, passim, and upheld in **In Re Powell**, passim, California had already determined what would overturn an administrative agency's action. **Cal. Hotel and Motel Assn -v- Indus. Welfare** (Cal. Sup. Ct. 1979) 457 Cal. Rptr. 840, 847:

"A court will uphold the agency action unless the action is arbitrary, capricious, or lacking in evidentiary support. A court must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute." [E.A.]

Here, the Board's actions related to limited program are devoid of factual support in an arbitrary manner which violates petitioner's 14TH Amend. Due Process rights to fair procedures.

PAGE 21 F 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

7.

Petitioner contends that there is no evidence in the record of his 9/29/05 parole consideration hearing to reexmit his last "serious Rules Violation Report (CDC 115's) to be "some evidence" within the meaning of Superintendent ... v. Hill (1985) 472 US 445, 105 S.Ct. 2768, as indicia of reliability, to predict future dangerousness, to be an unreasonable risk of danger to society under CCR § 2402 (a).

CCR § 2402 (a) states:

"General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgement of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."

Therefore, the B.P.H.'s rationale must reasonably relate to an unreasonable risk of danger, as supported by cognizable evidence devoid of rote language. However, the analysis doesn't stop at CCR § 2402 (a), supra. Specifically, the Board has adopted the parameter of CCR § 2402 (c), #(6) as follows:

"Circumstances tending to indicate unsuitability include:

Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail."

However, CCR § 2402 (c), #(6) is not carte blanche to use "serious misconduct" that is minor ad infinitum.

PAGE 55 of 201

VII

1  MEMORANDUM OF POINT AND AUTHORITIES CONTINUED

2                          (7. CONT.)

3      Reciprocal and counter to CCR §2402(c), ¶(6) is CCR §2402

4  (d), ¶(9): "Institutional Behavior. Institutional activities

5  indicate an enhanced ability to function within the

6  law upon release." Here, Petitioner's ±15 years without a

7  "serious" Rules Violation Report (CDC 115), clearly establish

8  his ability to function within the law if released. Also,

9  CDC 128(a)'s are not "Disciplinary(ies)".

10     If this Court will remember EXH "E", where

11  Petitioner has shown the BPH finding 2nd Degree Murderers

12  suitable for parole, these prisoners were found suitable

13  even though reversed by Governor. Some had more current 115's.

14     In Superintendent. Mass. Corr. Inst. ~ Hill (1985) 105 S.Ct

15  2768, 2774, 472 US 445:

16          "We hold that the requirements of due process are
           satisfied if some evidence supports the decision ...
17         This standard is met if there was some evidence from
           which the conclusion of the administrative tribunal
18         could be deduced ... [T]he relevant question is whether
19         there is any evidence in the record that could support
20         the conclusion ... The fundamental fairness guaranteed
21         by the Due Process Clause does not require courts
22         to set aside decisions of prison administrators that
23         have some basis in fact." [E.A.]

24     Here the Board used rote language of the existence

25  of minor disciplinaries to allude to "unreasonable risk of danger

26  to society", while forgetting not only about the time since the

27  "serious" disciplinaries but their prior actions in other cases as

28  related to CDC 115's.        PAGE 56 of 207

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(9. Cont.)

The Board has apparently forgotten about the Jancsek -v- Oregon Bd. of Parole (9th Cir. 1987) 833 F.2d 1389, 1390 instruction: "[T]he evidence underlying the [parole] board's decision must have some indicia of reliability." This is reliability as related to "unreasonable risk of danger to society."

Petitioner further proffers the analysis of "serious" rules violation reports with past criminality that was minor in nature. Petitioner cannot say that these two distinct aspects are synonymous; however, they should be parallel under the following case's analogy:

   In Re Deluna (2005) 126 Cal. App. 4th 585, 598 (inmate's previous arrest record did not constitute "some evidence" of a threat to public safety because the alleged acts did not involve serious injury or attempted serious injury to a victim.)

If a prior arrest record that didn't pose "some evidence" because there was a lack of injury to a victim; the same should be true of a CDC 115 Rules Violation Report.

Nightlife Partners -v- City of Beverly Hills (Cal. App. 2 Dist. 2003) 133 Cal Rptr. 2d 234, 242, 108 Cal App. 4th 81 : "The protections of procedural due process apply to administrative hearings (Richardson -v- Perales (1971) 402 US 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed 2d 842) ... Due Process, however, always, requires a relatively level playing field; the 'constitutional floor' of a 'fair trial in a fair tribunal'; in other words, a fair hearing before a neutral or unbiased decisionmaker. (Bradley -v- Gramley (1997) 520 US 899, 904-905, 117 S. Ct. 1793, 1797, 138 L. Ed 2d 97; Withrow -v- Larkin (1975) 421 US 35, 46, 95 S. Ct. 1456, 1464, 43 L. Ed 2d 712 (Withrow))." [E.A.]

PAGE 57 of 201

VII (7. Cont.)

<u>MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED</u>

Here, the B.P.H.'s use of known serious 115's, that are 13 plus years old, are being used as an instrument of oppression = which minimally violates the 14TH Amendments' Due Process protections both under Federal and State law.

## VII
## MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

### 8.

Petitioner contends that the B.P.H.'s identification of needed therapy / self-help and coping with stress is arbitrary and capricious parole unsuitability criteria, which violates the Arkansas -v- Oklahoma (1992) 112 S.Ct. 1046, 1060, 503 US 529 holding, because the B.P.H. panel has fictitiously created their conclusion on unsupported facts contrary to Due Process procedures.

First, procedural due process applies to B.P.H. parole suitability hearings. In Re Johnson (Cal. App. 1 Dist. 1995) 41 Cal. Rptr. 2d 449, 456: "Although the Board has broad discretion in parole matters, that discretion is subject to the prisoner's right to procedural due process."

Second, the process due in California parole hearings requires the B.P.H. panel to identify how the unsuitability for meets certain circumstances. In Re RosenKrantz (2002) 128 Cal. Rptr. 2d 104, 138, 29 Cal. 4th 616, 59 P.3d 174 cert. den. 123 S.Ct. 1808, 155 L.Ed 2d 669: "Parole applicants in this state have an expectation that they will be granted parole unless the board [of parole hearings] finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and regulation."

Thus, there must be some modicum of evidence in the record (i.e. in this case needed therapy / more self-help / coping with stress) as relevant to Petitioner's situation. Thirdly, the B.P.H.'s unsuitability circumstances are listed in Cal. Code of Regs. (CCR) Title 15 §2402(c), passim.

PAGE 59 of 201

<u>VII</u>

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED.

2  (8. Cont.)

3  Fourth, <u>Collins -v- City of Harker Heights, Tx.</u> (1992) 112

4  S.Ct. 1061, 1070, 503 US 116 has held:

5  "The 'process' that the Constitution guarantees in

6  connection with any deprivation of liberty

7  thus includes a continuing obligation to

7  satisfy certain minimal custodial standards."

8  Fifth, the "minimal custodial standards" spoken of in

9  <u>Collins,</u> id., necessarily require a logical connection between

10 the agency's conclusion and application thereof. Otherwise,

11 how would any court even be able to review a choice

12 made as "some evidence" [<u>Superintendent ---v- Hill</u>, passim]

13 when there isn't basis(es) for the choice <u>Oregon Natural</u>

14 <u>Resources Council -v- Lowe</u> (9TH Cir. 1997) 109 F.3d 521, 526:

15 "Although review under the arbitrary and capricious standard

16 is narrow, the agency must articulate a rational connection

17 between the facts found and the conclusions made." Here,

18 the B.P.H. panel recommends "anger management" even though

19 the data supports no need for such.

20    Sixth, necessarily, the B.P.H. is obligated to obey their

21 procedures when affecting Petitioner's rights. <u>United</u>

22 <u>States -v- Caceres</u> (  ) 59 L.Ed.2d 733, 743 fn. 14 on part, 440 US

23 741, 99 S.Ct. 1465: "Where the rights of individuals are affected,

24 it is incumbent upon agencies to follow their own

25 procedures. This is so even where internal procedures

26 are possibly more rigorous than otherwise would

27 be required." The CCR §2402(b) "all relevant, reliable

28                PAGE 60 of 201

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

VII

2  (8 Cont.)

3  information" clause mandates applicability of B.P.H.
4  statements for unsuitability being valid and supportable.

5  Seventh, Jones v Moran 900 F.Supp 1267, 1271-72 has
6  illustrated:

7  "However, a state statute or regulation can create a
8  right triggering due process protections to insure
   that the state created right is not arbitrarily
9  abrogated. [Cite omitted] In analyzing whether
   a claimed liberty interest was created by state
10 regulation ... the Court focused on whether
11 the regulation limited the discretion of ... officials
12 by imposing substantive criteria. [Cite omitted]."

13 Here the California Supreme Court has explicitly held
14 that "circumstances specified by statute and by regulation"
15 must be found (Rosenkrantz, supra). Where there is no
16 nexus between (1) The B.P.H.'s determination of "prisoner
17 needs therapy/self-help in order to ... cope with stress",
18 and (2) any clinical/diagnostic support showing that
19 petitioner is an unreasonable threat without it/them;
20 the B.P.H. has used rote language when failing to consider
21 what is important.

22 The preceding seven points, in harmonization, establish
23 how the B.P.H.'s "therapy/self-help" decision is arbitrary
24 and capricious." Arkansas v Oklahoma (1992) 112 S.Ct. 1046, 1060,
25 503 U.S. 529 has held: "As we have often said an
26 agency has ... entirely failed to consider an important
27 aspect of the problem."

28                    PAGE 64 of 201

VII
1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2                          (8 Cont.)
3      Specifically, the B.P.H. has adopted CCR §2402(c)(5), which
4  states: "Psychological Factors. The prisoner has a lengthy
5  history of severe mental problems related to the offense."
6  The evidence before the panel belies this application = For
7  coping with stress / needed therapy / self help. Petitioner has no
8  mental problems related to the offense. Lake-Mohave Boat
9  Owners -v- National Park Service (9TH Cir. 1998) 138 F.3d 759: "We
10 determine the importance of a problem by determining what
11 the statute [or regulation having power of statute]... makes
12 important. Due Process of the 14TH Amendment has been
13 violated by the B.P.H.'s disingenuous rationale related
14 therapy / self help for coping with stress.

15     Additionally, the B.P.H.'s continued reliance on AA (NA)
16 is failing to consider how it violates the "Establishment"
17 clause as ruled in Turner -v- Hickman (E.D. Cal. 2004)
18 342 F. Supp. 2d. 887, 896: "Requiring participation in NA [AA] is
19 an establishment of religion prohibited by the First Amendment."
20 Coerced participation violates Lee -v- Weisman (1992) 505 US 377,
21 587, 112 S. Ct. 2649, 120 L. Ed. 2d 467, passim.

22     Minimally, the B.P.H. panel is making a medical finding as
23 to therapy. In secuendo, where a medical problem exists
24 and parole denial is premised on a major life activity
25 needing therapy: the B.P.H. has denied parole in
26 violation of the Americans with Disabilities Act (ADA) where
27 treatment could be found on parole.
                        PAGE 62 of 201
28

1   MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2                              (8. Cont.)

3       As a prisoner, Petitioner would be covered by the ADA,

4   see Pennsylvania DOC -v- Yeskey (1998) 524 US 206, 118 S.Ct. 1952,

5   1954 passim. Further, parole hearings are covered under the

6   ADA, see Thompson; Bogovich -v- Davis (CA9. Cal. 2002) 2002

7   DJDAR 2743, 2744-45, 295 F.3d 890, passim.

8       Here, the B.P.H. even failed to apply Arkansas -v- Oklahoma,

9   supra, to the Turner -v- Hickman, Lee -v- Weisman, Pennsylvania

10  DOC -v- Yeskey and Thompson; Bogovich -v- Davis problems caused

11  by their decision.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          PAGE 63 of 201

## VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

9.

Petitioner contends that the B.P.H.'s regulatory multi-year parole denial, during his last parole hearing, is unconstitutionally beyond scope of governing statutory/limiting language, violating the U.S. Const. Amend. 14 "procedural due process" doctrine, when quasi-judicial parole board fails to reasonably adhere to enabling legislation, which County of Sacramento -v- Lewis (1998) 118 S.Ct. 1708, 523 US 833 forbade abuse of power under Due Process.

(multi-Year Denial, The Statutes)

Penal Code §3041 (b), in part:
"The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." [Emphasis Added, E.A. hereafter]

Penal Code §3041.5 (b)(2):
"Within 20 days following any meeting where a parole date has not been set for the reasons stated in subdivision (b) of Section 3041, the board shall send the prisoner a written statement setting forth the reason or reasons for refusal to set a parole date, and suggest activities in which he or she might participate that will benefit him or her while he or she is incarcerated." [E.A.]

In interpreting these statutes, the legal principle of harmonization comes into play. Notwithstanding the necessary conjoined harmonization, the tenet of rules of construction

PAGE 64 of 201

VII

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  (9. CONT.)

3  as applied to these _multi-year parole denial_ statutes must

4  also be applied.

5  This court should also not forget that Penal Code § 3041.5

6  (b)(2)(B), passim, only allows the Board to deny parole "up to five

7  years". In this case +5 years has lapsed since Petitioners

8  initial parole hearing, so prior criminality and commitment

9  offense should no longer be an issue to deny parole beyond 1 year.

10  Connecticut Nat. Bank -v- Germain (1992) 112 S.Ct. 1146, 1149,

11  503 US 250 adds the following clarity to interpreting

12  preceding Penal Code §§ 3041(b), 3041.5(b)(2), and 3041.5(b)(2)(B):

13  "We have stated time and again that courts must
   presume that a legislature says in a statute what

14  it means and means in a statute what it says there. [Cite

15  omitted] When the words of a statute are unambiguous,

16  then the first cannon is also the last: Judicial inquiry

17  is complete."

18  There can only be an logical conclusion that Pen. Code §§

19  3041(b) and 3041.5(b)(2) can _only be_ premised on either

20  (A) "current convicted offense or offenses" or (B) "current or past

21  convicted offense or offenses." These clauses of "_convicted offense_

22  _or offenses_" are limiting instructions under which the Board

23  adopted regulations to use current/past criminality (e.g.

24  CCR § 2402(c)(1) - "commitment Offense [Unsuitability], CCR § 2402(c)(2)

25  "Previous Record of Violence [Unsuitability]; CCR § 2402(d)(1) - "No

26  Juvenile Record [Suitability], and CCR § 2402(d)(6) "Lack of Criminal

27  History [Suitability]") and the specific parameters therein.

28  PAGE 65 of 201

## VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(9 Cont.)

See Rosenkrantz, passim, supra.

Relating back to Pen.Code §§ 3041(b), 3041.5(b)(2) and 3041.5 (b)(2)(B), the Board of Parole Hearings has further avoided the following holding of F.D.I.C.-v-Meyer (1994) 114 S.Ct. 996, 1001: "In the absence of such a definition, we construe the statutory in accordance with its ordinary or natural meaning. (Smith-v-United States, 508 US 223, 228, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993))." First, the Board in this case has used the crime beyond 5 years for a multi-year denial, and secondly the Board used reasons (i.e. necessary program, 115's not resulting in any criminal "convicted offense" to deny parole).

Here, the Board forgets (or intentionally refuses) to adhere to Terhune -v- Superior Court (Whitley) (Cal.App. 1st Dist. 1998) 65 Cal App 4th 864, 872-73, 76 Cal Rptr 2d 841:

"Administrative agencies have only the powers conferred on them, either expressly or impliedly, by the Constitution or by statute, and administrative actions exceeding those powers are void. [Cite omitted] to be valid, administrative action must be within the scope of authority conferred by the enabling statutes."

In CCR § 2270(d), in part's "Multiple Year denials ... it shall use the criteria in section [] ... 2402 as applicable." CCR § 2270 has been promulgated under the relevant guidelines of Pen.Code §§ 3041, 3041.5, according to "note:" at the bottom of CCR § 2270(d). Here, in Petitioner's particular circumstance the Board's "multi-year" denials are beyond their authority. This Court's Authority is needed to correct the abuse of discretion

PAGE 66 of 201

1   MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
2                              (9. Cont.)

3   Further supporting Terhune -v- Sup. Ct., supra, In Re
4   Hypolite (Cal. App. 1st. Dist. 1973) 108 Cal. Rptr. 751, 755 cert. den.
5   94 S. Ct. 1449, 415 US 934, 39 L. Ed 2d 492 insteucts:
6       "[A]dministrative regulations must conform to the
7        legislative will and that if such regulations violate
         acts of the legislature they are void."
8   Howard -v- U.S. (N.D. Cal. 1994) 868 F Supp. 1197, 1200 also
9   enlightens: "However, a government agency cannot change
10  a long-standing position [i.e. Pen. Code §§ 3041(b), 3041.5(b)(2) and
11  3041.5(b)(2)(B) in this Petitioner's case] merely because it
12  [i.e. CCR § 2270 (d)] suits the agency's purpose in a particular
13  case."

14      Having established what is and what is not valid multi-
15  year parole denial criteria, Petitioner cites to County of
16  Sacramento -v- Lewis (U.S.S. Ct. Cal. 1998) 118 S. Ct. 1708, 523 US 833;
17  as to what Due Process protects at p. 1716:

18      "We have emphasized time and again that "[t]he
19       touchstone of due process is protection of the
         individual against arbitrary action of government;"
20       ... Thus, in Collins -v- Harker Heights, for example,
21       we said that the Due Process Clause was intended to
         prevent government officials"." "from abusing [their]
22       power or employing it as an instrument of oppression.""

23

24      Petitioner is not arguing that multi-year denials are
25  illegal as a whole, but as applied when criteria is now
26  defunct according to statutory language; thus invalidated.
27  Procedural due process is violated.
                        PAGE 67 f 204
28

VII

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  (9 cont.)

3  Notwithstanding the aforementioned argument about how

4  "multi-year" denials can only be used based on current/past

5  convicted offenses for up to 5 years, in Penal Code § 3041(b)

6  there is are the relevant clauses of "a more lengthy period"

7  and "cannot be fixed at this meeting." The word "a" is singular.

8  Further, the word "period" is a definite length. Thus, "a more

9  lengthy period" should only allow multi-year denial (for up to

10  5 years — Pen. Code § 3041.5(b)(2)(B)) FROM the Initial Parole

11  Hearing only, not infinitum without new rationale. Additionally,

12  the clause "at this meeting" only appears to mean the Initial

13  Parole Hearing, without new PC § 3041(b) rationale post-conviction.

14  The aforementioned analysis helps expound on the argument in

15  the next paragraph.

16  Penal Code § 5078(a) provides: "The Board of Prison Terms

17  [post Sen. Bill 737 Board of Parole Hearings] shall succeed to and

18  shall exercise and perform all powers and duties granted

19  to, exercised by and imposed upon the Adult Authority." [E.A.]

20  In Re Williams (CA 3 Dist. 1975) 53 CA3d 10, 13, 125 Cal. Rptr 457:

21  "In its return, the Adult Authority avers that it is diligently

22  seeking to set the terms of all prisoners...." [E.A.] In Re

23  Seabock [Feb. 1983] 140 Cal. App. 3d 29, 40, 189 Cal. Rptr 310: "It

24  cannot be said that Seabock could be disadvantaged by the

25  application of the DSL Guidelines to him; these newer

26  regulations do not in any way decrease his parole eligibility

27  or chance therefore." [E.A.] In Re Williams, supra: "Primary

28  PAGE 68 of 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(9 cont.)

teems will be fixed ... A primary teem will be fixed for each inmate on each of his offenses the first time he appears before the Adult Authority on or after that date." [E.A.]

Unfortunately for Petitioner, the unsuitability/suitability circumstances under CCR §§2402(c)/2402(d) have apparently only been promulgated under Pen. Code §3041.5076.2, under Authority cited; with reference to Pen. Code §§3041, 4801. Nowhere has the Board shown/cited to Pen. Code 5078(a) as part of its Memorized duties of the parole consideration hearing process (i.e. Article 11 — CCR §2400 et seq.).

Unequivocally, the newer DSL parole laws are not to be harsher, nor are they to decrease chance for parole. However, when date has not been set at Initial, per In Re Williams, supra, chance for parole has in fact been decreased to the point of the Board of Parole Hearings (ignoring the California Legislatures DSL Mandate of Pen. Code §5078(a). Petitioner has, in fact, now demonstrated evidence of how the Board has refused to follow statutory commands of Pen. Code § 5078(a)

Garner-v-Jones (2000) 120 S.Ct. 1362, 1366, 529 US 250:
"Absent a demonstration to the contrary, we presume the Board follows its statutory commands and internal policies in fulfilling its obligations."

Petitioner has a liberty interest in parole, thus the

PAGE 69 of 201

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(9. Cont.)

procedures to deny parole must not only be fair, but must also be authorized and not beyond scope of statute(s). Where his liberty interest has been negated and the record of valid rationale: the decision is arbitrary.

In Re Jackson (Cal. 1985). 39 Cal.3d 464, 216 Cal. Rptr 760 at p. 479: "The latter decision [i.e. multi-year denial] involves a prediction.... What is required, however, is an identification of reasons which justify the postponement. [p.480] The Board is required, however, to support all such postponement determinations with a separate statement of reasons, as section 3041.5, subdivision (b) requires." [E.A.]

As previously discussed, Pen. Code §3041.5 (b)(2) refers to Pen. Code § 3041(b) and has implied maximum statute of limitations of 5 years (Pen. Code §3041.5 (b)(2)(B)) unless there are new post-conviction reasons to qualify post-conviction conduct within criteria of Pen. Code §3041(b).

Multiple multi-year denials based on unchanging factors / invalid factors are the whim / caprice the record / law do not support to be valid under the U.S. Const. Amend. 14 procedural due process doctrine.

In Ground 2, ante, the crime was addressed. Motive was addressed in Ground 3, ante, Program addressed Ground 6, ante, and Disciplinary in Ground 7, ante.

## VII

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  ## 10.

3  Petitioner contends that his right
4  to effective assistance of counsel,
5  under the 6TH Amend. was denied
6  by appointed counsel's actions
   meeting the two - PRONG test of
7  Strickland - v- Washington (1984)
8  466 US 668, 104 S. Ct. 2052, 80
9  L.Ed 2d 674, thus: ineffective
   assistance of counsel (IAC) at
10  parole hearing.

11  The STANDARD for ~~effective~~ assistance of counsel is
12  still under the Strickland - v- Washington (1984) 466 US
13  668, 104 S. Ct 2052, 80 L.Ed 2d 674 2 - prong analysis. These
14  two prongs in any situation, allegedly, are: (1) a court
15  must determine that counsel's performance fell "below
16  an objective standard of reasonableness ... under
17  prevailing professional norms" — performance prong, and (2)
18  that there is a reasonable probability that "but for
19  counsel's unprofessional errors, the result of the proceeding
20  would have been different" — prejudice prong.

21  This Performance / Prejudice PRONG STANDARD should
22  apply to a court's reviewing of parole hearing actions
23  by lawyers, also: especially where there is a right
24  to counsel as a matter of law. In California, Calif.
25  Pen. Code §3041.7, in relevant part states: "[A] prisoner
26  under a life sentence ... shall be entitled to be
27  represented by counsel."

28  PAGE 71 of 201

## VII.
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(10. CONT.)

THE importance of being able to review I.A.C. claims, as related to parole consideration hearings - is illuminated by the requirements of the Anti-Terrorist Effective Death Penalty Act (AEDPA) wherein Federal Habeas Corpus relief will only be granted under:

A) 28 USC § 2254 (d)(1)'s "contrary to" or "unreasonable application" analysis; and/or

B) 28 USC § 2254 (d)(2)'s "unreasonable" determination of facts in light of the evidence presented.

Where a parole hearing lawyer fails to (1) make the required/necessary/appropriate objection, or (2) fails to correct the BPH Panel's decision under Fact/law: state courts are apt to use "Failure to object" waives review analysis. Minimally, the parole hearing inmate should at least have some idea of what errors exist in the decision. part of the hearing —— by appointed counsel having identified the error for the record before the BPH's Decision Review Unit —— as post-hearing inmates are left in a quagmire of then having to research the record and guess as to what is error for Habeas Corpus Filings.

The BPH is mandated to consider <u>ALL RELEVANT/RELIABLE INFORMATION</u> (EVIDENCE). This includes evidence of the court/law as applied to the conviction, and evidence of the law as applicable to the Board's pre/post - decision findings.

PAGE 72 of 201

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(10. CONT.)

No BPH panel member or member of the review units panel should be permitted to hide behind the regulatory language like wolves: when facts parallel to case law should have prevented their action to begin with.

The fact that the BPH's parole violation functions are under federal oversight is prima facie evidence that the same commissioners/deputy commissioners have made errors.

Parallel to a trial, the Board's hearing procedure is divided into two parts: (A) Discussion of the evidence and establishment of fact, and (B) Sentence determination. A prisoner at trial is guaranteed the effective assistance of counsel at both trial and sentencing. Therefore, a prisoner at a California parole consideration hearing should be entitled to assistance of counsel both (A) while the facts are being discussed, and (B) after the panel's decision. Otherwise, the decision(s) to deny parole doesn't receive any adversarial testing.

In the facts of this case, appointed counsel did not speak once during the decision part of the hearing.

Appointed counsel should have known of the grounds 2-9 of this petition, incorporated by reference thereto, and not have allowed Due Process to be violated as such.

PAGE 73 of 201

VII

1 MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2 (10. CONT.)

3   Attorney Christensen's performance was below that

4 of which an attorney should have represented her

5 client before the Quasi-Judicial parole board. It

6 was objectively unreasonable to not enter any corrections

7 as to fact/law and/or mixed questions of fact and

8 law. Presuming that the parole board would act

9 in a lawful manner, based on the law and facts

10 presented by Petitioner in grounds 2-9, supra, of the

11 Superior Court Petition for Writ of Habeas Corpus, there

12 is a reasonable probability the result of the proceeding

13 (B.P.H. Parole Decision on 9/29/05 to deny parole) would

14 have been different (as Petitioner has shown that the

15 Parole Board's decision to deny parole was arbitrary,

16 capricious, lacking basis in fact or contrary to law).

17   As the parole hearing is a derivative of a criminal

18 proceeding, the 6th Amendment's right to 'assistance of

19 counsel', as applicable through the 14th Amendment's 'due

20 process' clause, has been violated.

21

22

23

24

25

26

27

28

VII.

<u>MEMORANDUM  OF  POINTS  AND  AUTHORITIES  CONTINUED</u>

11.

Petitioner contends that the Administrative Collateral Estoppel Doctrine as held in Astoria Federal Sav. and Loan Assn. -v- Solimino (1991) 111 S.Ct. 2166, 2169, 501 US 104 is violated by the B.P.H.'s repetitive use of facts (rationale) to deny parole suitability, which, thusly, is in violation of U.S. Const. Amend. 14 procedural due process.

The U.S. Supreme Court stated in <u>Astoria Federal Sav. and Loan Assn. -v- Solimino</u> (1991) 111 S.Ct. 2166, 2169, 501 US 104:

"We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality ...."

Therefore, it is a well settled principle that the Administrative Collateral Estoppel doctrine exists. More recently, the Ninth Circuit stated in <u>In Re Cantrell</u> (9TH Cir. 2003) 329 F.3d 1119, 1123 a 5-prong test:

"Under California law, collateral estoppel only applies if certain threshold requirements are met: First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding."

In Petitioners case, he has substantiated all 5-prongs of this claim. Thus, a prima facie case has been established to

PAGE 115 of 201

VII
1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2                          (11 Cont.)

3  support an Administrative Collateral Estoppel claim.

4  In Re Haeman (9TH CIR. 2001) 250 F.3d 1240, 1245 stated: "The

5  party asserting collateral estoppel bears the burden of

6  establishing these requirements."

7  Petitioner thus PROFFERS that the 5-requirements, as

8  addressed in In Re Cantrell, supra, have been proved as follows:

9  [PRONG-1] As Petitioner has shown in EXH "K" (Affidavit

10  at pagination 193 to 196) the issues (i.e. (1) Use of Crime,

11  (2) Motive, (3) Prior criminality —Unstable/Tumultuous

12  History & (4) Self-Help/Therapy) have all previously

13  been decided at either and/or both the 1998 and

14  2001 hearings; and were used again to deny parole

15  at the 9/29/05 hearing (the majority 7 years 8 month

16  after 1st Use).

17  [PRONG-2] By review of the prior 1998 and 2001 decisions

18  (respectively EXH "I" pagination 178 to 182 and EXH "J"

19  pagination 184 to 191) the "Decision Pages are Factual

20  evidence of (1) Use of Crime, (2) Motive, (3) Prior Crimes &

21  (4) Self-Help/Therapy having all been actually

22  litigated in the former parole proceedings.

23  [PRONG-3] It was necessarily decided in both of the former

24  proceedings: (A) 1998 "Decision": "This is an

25  unanimous decision" – P-1; and (B) 2001 "Decision": "That

26  concludes the hearing" P-7

27

28                    PAGE 76 of 204

VII
MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(11 cont.)

[PRONG-4] " The prior decisions were final and on the merits: (A) The 1/29/98 hearing [EXH"I"] was final on 4/13/98 and (B) The 10/1/01 hearing [EXH"J"] was final on 10/22/2002.

[PRONG-5] * Petitioner is seeking issue preclusion (administrative collateral estoppel) against the Board of Parole Hearings (previously known as the Board of Prison Terms) which is the same agency as the prior hearings but with another name. (Compare EXHIBITS "A"-2005, "J"-2001 and"I"-1998)

In Biggs-v-Terhune (9th Cir. Cal. 2003) 334 F.3d 910, the 9th Circuit declared:" [T]he Parole Board must be cognizant not only of the factors required by state statute [e.g. Pen. Code § 3041 and progeny of Administrative Regulations], but also the concepts embodied in the Constitution requiring due process of law." [E.A.]

California has accepted the restriction (administrative collateral estoppel) against agencies - Castillo -v- City of Los Angeles (Cal. App. 2 Dist. 2001) 111 Cal. Rptr. 2d 870; 92 Cal App. 4th 477 rehg denied, has delineated:

"The applicable principle that bars relitigation is issue preclusion, also known as collateral estoppel... Issue preclusion prevents "relitigation of issues argued and decided in prior proceedings."... Issue preclusion is not limited to barring relitigation of court findings. It also "bars the relitigating of issues which were previously resolved in an administrative hearing by an

VII

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

(11 Cont.)

agency acting in a judicial capacity." (Knickerbocker
—v City of Stockton (1988) 199 Cal App. 3d 235, 242,
244 Cal Rptr 764)."

When the 5-prongs of In Re Cantrell, supra, have been
substantiated on Petitioner's behalf, then Due Process in
light of Biggs —v Terhune, supra, is absolutely violated
when parole denials are based on unchanging factors
and/or certain conduct prior to current imprisonment.

## VIII
### CONCLUSION

The rationale used by the Board of Parole Hearings panel at Petitionee's 9/29/05 parole hearing is violative of U.S. Supreme Court holdings.

Petitioner has substantiated each of his 11 claims, wherein claims 1, 10 and 11 also require analysis beyond the "some evidence" analysis.

Thus, this Court should vacate the Board's actions and hold the California Board of Parole Hearings to the standards of the U.S. Supreme Court and not there Far-fetched / rote / erroneous conclusions.

This court should conclude that an evidentiary should occur, so as to permit discovery and to show to this Court that the Parole Board, when setting a date, even after a prisoner serves beyond the matrix, that they use the matrix for 2nd Degree Murderers.

Petitioner has readily proven that, under the California Determinate Sentencing Law, inclusive of Penal Code § 5078(a) and In Re Williams, that his date should have been set.

Finally, this Court has the authority to state that Administrative Collateral Estoppel / Issue Preclusion applies to the parole board.

/ / /
/ / /
/ / /
/ / /

IX
PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully Prays this Court to:

1) Grant the Writ of Habeas Corpus; or

2) Issue an Order to Show Cause; and

3) Appoint Counsel; and

4) Order an Evidentiary Hearing; and

5) Declare the Rights of the Parties; and

6) Enter the attached documents into evidence and take Judicial Notice of them pursuant to Cal-Evidence Code; and

7) Vacate all of the Board's conclusions of the 9/29/05 Parole Hearing Decision; and

8) Order that Petitioner's sentence is violative of Cal Const. Art. I. Sec. 17/24 "cruel or unusual punishment" clauses;

9) Find that appointed counsel rendered IAC; and

10) Rule that the Parole Board, like any Administrative Agency, is barred from relitigating issues previously decided at prior Board hearings; and

11) Grant any other relief deemed equitable, fair and in the interest of JUSTICE.

Respectfully submitted,

7/26/2006

Scott Burns, Petitioner
In Pro Per

PAGE 80 of 202

1

## X

2          ## INDEX TO EXHIBITS

3

4 | EXHIBIT: | PAGE(S) |
|---|---|
| A : 9/29/2005 BPH PAROLE HEARING TX'S | (1st Page is Cover) |
| | 82-148 |
| B : USDOJ PRIOR RECORD | 149-151 |
| C : PSYCH REPORT | 152-156 |
| D : JANUARY 26, 2006 MEMO TO BPH COMMISSIONERS | 157-159 |
| E : EXCERPTS FROM 2004 GOVERNOR'S REPORT (TIME FROM 1153) | 166-166 |
| F : NOVEMBER 18, 2005 REPORT (PSYCH REPORTS/MENTAL HEALTH) | 167-168 |
| G : CAL. DEPT. CORRECTIONS +REHAB. DEPT. OF. MANUAL EXCERPT (PSYCH) | 169-172 |
| H : BPH COMMISSIONER BIOGRAPHIES | 173-176 |
| I : 1998 PAROLE HEARING DECISION (REASONS FOR DENIAL) | 177-182 |
| J : 2001 PAROLE HEARING DECISION (REASONS FOR DENIAL) | 183-191 |
| K : AT-A-GLANCE 1998, 2001, 2005 HEARING EXCERPTS (AFFIDAVIT) | 192-196 |
| L : ABSTRACT OF JUDGEMENT (LIFE/NON-LIFE OFFENSES) | 197-200 |

17

18

19

20

21

22

23

24

25

26

27

28

S153138

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re SCOTT BURNS on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
**FILED**

OCT 1 0 2007

Frederick K. Ohlrich Clerk

_____
Deputy

GEORGE
_____
Chief Justice