1 | SCOTT BURNS
NORTH BLOCK / 3-N-73U
2 | SAN QUENTIN STATE PRISON
SAN QUENTIN, CA. 94974
3 | CDCR NO. D-99247

4 | Petitioner In Pro Se



ORIGINAL

7 | IN THE UNITED STATES DISTRICT

8 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

9 | SAN FRANCISCO DIVISION

10 |

12 | SCOTT BURNS,                      )    CASE NO. C 08-0163 PJH
                                      )
13 |          Petitioner,             )    TRAVERSE TO RESPONDENT'S
                                      )    ANSWER TO ORDER TO SHOW
                                      )    CAUSE RE: PETITION FOR
14 |                                   )    WRIT OF HABEAS CORPUS;
                                      )    AND MEMORANDUM OF POINTS
15 |          v.                       )    AND AUTHORITIES.
                                      )
16 |                                   )    HONORABLE JUDGE:
                                      )
17 | BEN CURRY, Warden                 )    PHYLLIS J. HAMILTON
                                      )    UNITED STATES DISTRICT JUDGE
18 |          Respondent.             )
                                      )
19 | _____ )

1  SCOTT BURNS
   NORTH BLOCK / 3-N-73U
2  SAN QUENTIN STATE PRISON
   SAN QUENTIN, CA. 94974
3  CDCR NO. D-99247

4  Petitioner In Pro Se

5

6

7              IN THE UNITED STATES DISTRICT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                SAN FRANCISCO DIVISION

10

12  SCOTT BURNS,                    )        Case No. C 08-0163 PJH
                                    )
13           Petitioner,           )
                                    )
14                                  )        TRAVERSE TO RESPONDENT'S
                                    )        ANSWER TO ORDER TO SHOW
15       v.                         )        CAUSE RE: PETITION FOR
                                    )        WRIT OF HABEAS CORPUS;
16                                  )        AND MEMORANDUM OF POINTS
                                    )        AND AUTHORITIES.
17  BEN CURRY, Warden,              )
                                    )        JUDGE: HON. PHYLLIS HAMILTON
18           Respondent.           )        UNITED STATES DISTRICT JUDGE
                                    )
19  _____)

20

21    TO TO THE HONORABLE PHYLLIS J. HAMILTON, U.S. DISTRICT JUDGE,

22  AND, RESPONDENT AND THEIR ATTORNEY OF RECORD.

23      Petitioner, SCOTT BURNS, submits this Traverse to the

24  Answer to the Writ of Habeas Corpus on Order to show cause by

25  way of this court's February 6, 2008 order.

26  //

27  //.

28                              -1-

## PROCEDURAL HISTORY

On December 20, 2007, SCOTT BURNS, (hereafter referred to as ("Petitioner"), a California State Prisoner proceeding pro se, filed a "Petition for Writ of Habeas Corpus by a Person in State Custody", pursuant to 28 U.S.C. 2254. The Writ challenged a decision made on September 29, 2005 by the California Board of Prison Terms (Board)[1], wherein Petitioner was found unsuitable for parole.

On February 6, 2007, this Court issued an order that Respondent shall file with this Court an answer showing cause why the writ of habeas corpus should not be granted.

On April 7, 2008, the Respondent complied with this Court's February 6, 2007 order.

Petitioner now submits this instant traverse in compliance also with this Court's February 6, 2007 order. Petitioner now submits the following Traverse and Memorandum of Points and Authorities in support of petition.

I

Petitioner contends Respondent has failed to set forth sufficient facts or law to show cause why the relief requested in the petition for writ of habeas corpus should not be granted.

---

[1] The Board of Prison Terms is now known as the Board of Parole Hearings.

//

//

## DENIAL OF ALLEGATIONS IN THE ANSWER

1. Petitioner agrees that he is in custody as stated in paragraph 1 of the Answer, but denies that he is "lawfully" or properly in the custody of the California Department of Corrections and Rehabilitation (CDCR), for the reasons alleged in the Petition and herein.

2. Petitioner admits the allegations contained in paragraph 2 for the purpose of this proceeding only.

3. Petitioner admits the allegations contained in paragraph 3 for the purpose of this proceeding only.

4. Petitioner admits to Respondent's allegation contained in paragraph 4 that Petitioner is entitled to the process outlined in <u>Greenholtz v. Nebraska</u>, (1974) 442 U.S. 1, 12, 16. Petitioner further denies all allegations contained in paragraph 4 pertaining to the Board's findings that Petitioner poses an unreasonable threat to public safety.

5. Petitioner admits that the Board's denial was for 2 years. Petitioner denies every other allegation contained in paragraph 5 for the purpose of this proceeding only.

6. Petitioner admits in paragraph 6 that he filed a petition with the Sierra County Superior Court and that the Petition was denied. Petitioner further denies the adequacy every other allegation contained in Paragraph 6 (a though h) under "some evidence" and Petitioner denies the accuracy of Respondent's allegations.

7-8 Petitioner agrees with Paragraph 7 and 8 that Petitioner filed a Petition for Writ of Habeas Corpus in the California Third Appellate District Court and California Supreme Court and that both were denied. Petitioner denies every other allegation contained in Paragraph 7 and 8 for

1  the purpose of this proceeding only.

2      9. Petitioner admits to Respondent's allegation contained in

3  Paragraph 9 that Petitioner exhausted State Court remedies.

4  (only). Petitioner denies all other allegations made in

5  Paragraph 9.

6      10. Petitioner denies Respondent's assertion contained

7  in Paragraph 10 that Petitioner has failed to make a Prime

8  facie case that the State Court's denial was contrary to,or

9  involved an unreasonable application of, clearly established

10 Supreme Court Authority.

11     11. Petitioner denies each and every allegation contained

12 in Paragraph 11 that he has not shown that the state court

13 decision was unconstitutional in light of the facts presented.

14     12-13. Petitioner denies each and every allegation

15 contained in Paragraph 12 and 13 that Petitioner does not have

16 a protected liberty interest in parole.

17     14-20. Petitioner denies each and every allegation(s)

18 contained in Paragraph(s) 14 through 20 for the purpose of

19 this proceeding only.

20     21. Petitioner denies Respondent's allegation contained

21 in paragraph 21 that if the petition is granted the court's

22 only authority to remedy this litigation is to order another

23 parole consideration hearing.

24     22. Petitioner denies every allegation contained in

25 paragraph 22, that a evidentiary hearing is unnecessary.

26 Petitioner is entitled to a evidentiary hearing in this court

27 on all claims in the petition. The state court failed to hold

28 an evidentiary hearing on the state habeas corpus therefore,

1  did not determine the decisive and operative "facts" upon

2  which a denial of petitioner's constitutional claims could

3  legitimately be based. for such a hearing.

4      23. Petitioner agrees with each and every allegation

5  contained in paragraph 23 for the purpose of this proceeding

6  only.

7      24. Petitioner denies every allegation contained in 24

8  paragraph 24 for the purpose of this proceeding only.

9      25. Petitioner denies every allegation contained in 25

10  paragraph 25 that petitioner failed to state any claims

12  (Grounds) establishing he is entitled to relief. petitioner

13  asserts he has submitted factual findings contradicting relief.

14  Respondent's allegations contained in his Answer.

15      26. Except as herein expressly admitted, petitioner

16  generally and specifically denies all other allegations of the

17  answer.

18      27. This traverse is based on the records in this case,

19  petitioner's Writ of Habeas Corpus, exhibits, and the

20  concurrently filed memorandum of points and authorities in

21  support of the traverse.

22  _____

23  27. All exhibits except the MENTAL HEALTH EVALUATION FOR THE

24  BOARD OF PRISON TERMS  will be provided by the Respondent

25  per their request. Please see page 3 line 28 of Respondent's

26  Answer to pet, for Writ of Habeas Corpus; Mem. P. & A.

27  //

28  //

-5-

## MEMORANDUM OF POINTS AND AUTHORITIES

### STANDARD OF REVIEW

Under AEDPA, when a state inmate's claim has been adjudicated on the merits in state court, a federal court may grant a writ of habeas corpus on the same claim only if the state court's adjudication was either (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding." 28 U.S.C. Section 2254 (d)(1-2).

The Supreme Court has explained that Section "2254 (d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." Bell v. Cone, 535 U.S. 685, 694. Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts, under the "unreasonable application" clause, a federal habeas court may grant a writ if the state court identifies the correct governing legal principle from this court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Williams v. Taylor, 529 U.S. 362, 412-413; see Lockyer v. Andrade, 538 U.S. 63, 73-76, 123 S. Ct. 166, 155 L. Ed. 2d 144 (2003).

While only Supreme Court precedent is controlling under the AEDPA, other case law is persuasive authority "for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law." Vlasak v. Superior Court of California Ex Rel. County of Los Angeles, 329 F. 3d 683, 687 (9th Cir. 2003) (quoting Luna v. Cambra, 306 F. 3d 954, 960 (9th Cir. 2002) (Internal quotation marks and citation omitted), amended, 311 F. 3d 928 (9th Cir. 2002)); see Bruce v. Terhune, 376 F. 3d 950, 956 (9th Cir. 2004) ("Although only the

- 6 -

Supreme Court's precedents are binding on state courts under AEDPA, our precedents may provide guidance as we review state-court determinations.")

`Applying the principles espoused in Biggs, Supra, which applied the Supreme Court's language in Morrissey v. Brewer, 408 U.S. 471, 481 and Greenholtz, 442 U.S. at 7-8 when analyzing whether the denial of an inmate's parole violated his constitutional due process rights, there was no evidence to support any of the Board's reasons for denying parole, and therefore the Superior Court's denial of the petition for writ of habeas corpus was objectively unreasonable.

## LEGAL ARGUMENT

## I. PETITIONER HAS A CONSTITUTIONALLY PROTECTED LIBERTY INTEREST IN RELEASE ON PAROLE

The fifth and fourteenth amendments prohibit the government from depriving an inmate of life, liberty, or property without due process of law. U.S. Const. Amends. V, XIV. In the parole context, a violation of an inmate's due process occurs when (1) the inmate has been deprived of a constitutionally protected liberty interest in parole and (2) the inmate has been denied adequate procedural protections in the parole process. See, e.g., Biggs v. Terhune, 334 F. 3d 910, 913 (9th Cir. 2003).

There is no cognizable right to parole under the federal constitution. The Supreme Court has held, however, that when a state's parole statute uses mandatory language, the statue "creates a presumption that parole release will be granted" unless certain findings are made, and thereby gives rise to a constitutionally protected liberty interest. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7, (1979); Board of Pardons v. Allen, 482 U.S. 369, 377-

-7-

78, (1987). California Penal Code Section 3041 states that "[T]he panel or Board shall set a release date unless it determines that "statutorily defined determinations are met. Thus, under Greenholtz and Allen, the Ninth Circuit found "that California's parole scheme gives rise to a cognizable liberty interest in release on parole." McQuillion v. Duncan, 306 F. 3d 895, 901 (9th Cir. 2002).

The second prong of the due process inquiry--whether the inmate has been afforded an adequate parole process--is satisfied if two considerations are met. First, the parole procedure itself must provide an inmate with sufficient safeguards. The inmate must be afforded an opportunity to be heard before an unbiased decision-maker, and in the case of a denial of parole, must be informed of the reasons underlying the decision. See Jancsek v. Oregon Bd. of Parole, 833 F. 2d 1389, 1390 (9th Cir. 1987). Second "some evidence" must support the decision to grant or deny parole. id. (adopting the "some evidence" standard established by the Supreme Court in Superintendent v. Hill, 472 U.S. 445, 457 (1985). The evidence underlying the grant or denial of parole must have "some indicia of reliability." id.

The liberty interest in parole and accompanying right to due process triggers the duty of this court to review the Board's actions to ensure they comport with the requirements of due process of law. In the parole context, the requirement of due process are satisfied if "some evidence" supports the decision. (McQuillion, supra, 306 F. 3d at 904) Additionally, the evidence underlying the Board's decision must have some indicia of reliability. Jancsek, Supra, 833 F. 2d at 1390.) However, the some evidence standard applies only to questions of evidentiary sufficiency. It is an additional requirement of due process, not a substitute for other established due process requirements. (Edwards v. Balisck, (1997) 520 U.S. 641, 647.) For instance, if it is established that a particular judgement was predetermined, then the prisoner's due process rights will have been violated even if there is some evidence to support the decision. (Bakales v. Golembeski, 35 F.3d 318, 323. (7th Cir. 1994.) As the court stated in In re Rosenkrantz, (2002) 29 Cal. 4th 616, 650, judicial oversight must be extensive enough to protect

1    the limited right of parole applicants "to be free from an arbitrary parole decision…and to

2    something more then mere pro forma consideration." The court may properly determine whether

3    the Board's handling of parole applications is consistent with the parole policies established by

4    the legislature.

5         The statutory structure under Penal Code Section 3041 creates a presumption of parole

6    suitability, and petitioner was entitled to the benefit of that presumption at his 2004 hearing.

7    Here, the presumption was not overcome by competent evidence that he currently presents an

8

9    unreasonable risk of danger to society or threat to public safety if released from prison.

10   Therefore, the Board's denial of petitioner's parole was a deprivation of his liberty interest

11   without proper procedural safeguards.

12        II.

13        DENIAL OF PAROLE BASED ON THE
          IMMUTABLE CIRCUMSTANCES OF THE

14        COMMITMENT OFFENSE AND PRIOR
          HISTORY DEPRIVES A PRISONER OF DUE

15        PROCESS

16

17   State and federal courts have repeatedly held that even if the circumstances of the commitment

18   offense and /or prior history considered under regulatory law appear to support parole denial, due

19

20   process may preclude those factors after the passage of a long period of time, accompanied by a

21   prison record demonstrating rehabilitation. (See In re Smith, (2003) 114 Cal. App. 4th 343, 372;

22   Biggs v. Terhune, (9th Cir. 2003) 334, F.3d 9190, 916-917; In re Scott, (2005) 34 Cal. Rptr. 3d

23   905, 919-920; In re Lee, (2006) 49 Cal. Rptr. 3d 931; In re Elkins, (20060 50 Cal. Rptr. 3d 503,

24

25   518; Rosenkrantz v. Marshall, (C.D. Cal. 2006) 444 Supp. 2d 1063.) Disregarding that standard,

26   the Board denied petitioner's parole based on the unchanging circumstances of his offense and

27   prior history and ignored or improperly discounted his positive prison programming record, his

28   positive psychological reports supporting his release, his upgrading vocationally and

29

30   educationally, his participation in numerous self-help/therapy and other rehabilitation programs,

1   his parole plans/support from his cellie's family and

2   marketable job skills, and his acceptance of responsibility

3   for his crime and remorse for the resulting loss of life.

4           Petitioner's case is exactly what the court's above

5   envisioned when stating the standard that repeated refusals

6   to grant a parole release date to an inmate with positive

7   post-conviction record violated due process. A standard the

8   Supreme Court itself recognized, holding "The behavior of an

9   inmate during confinement is critical in the sense that it

10   reflects the degree to which the inmate is to adjust to

12   release (Greenholtz, 442 U.S. at 15.) A standard the court in

13   Biggs v. Terhune, (9th Cir. 2003) 344 F. 3d 910 summarized as:

14

15

16           "[While the parole Board's sole supportable
             reliance on the gravity of the offense and
17           conduct prior to imprisonment to justify no
             denial of parole [may] be initially justified as
18           fulfilling the requirements set forth by state
             law, [o]ver time however, should [a prisoner]
19           continue to demonstrate exemplary behavior
             and evidence of rehabilitation, denying him
20           parole simply because of the nature of his
             offense would raise serious questions
21           involving his liberty in parole." (i.d., at 916)

22

23           The Biggs court cited Morrissey v. Brewer, (1972) 408 U.S.

24   471, 481; and Greenholtz, supra, U.S. at 7-8 and applied the

25   Supreme court language in their cases when analyzing whether

26   the repeated denial of an inmates parole violated his

27   constitutional rights. The Biggs court recognized that in the

28   context of denying of an inmate's parole, reliance on

1   unchanging factors, such as the commitment offense and conduct

2   prior to imprisonment runs contrary to the rehabilitative

3   goals espoused by the prison system and could result in due

4   process violation. (I.D. at 917.)

5       The instant case presents a stronger argument for release

6   then Biggs. Petitioner's crime did not involve first degree

7   execution style murder of a witness, he has been denied

8   parole four (4) times and will have served (20) years in

9   state custody (on OCTOBER 31, 2008) petitioner met and has

10  surpassed his (MEPD) Minimum Eligibility Parole Date, which

12  was in (1998) and is now (10 Years) beyond his (MEPD). An

13  analysis  similar to that of Martin v. Marshall,

14  (N.D. Cal 2005) 431 f. Supp. 2d 1038, 1046-1047, made for

15  that prisoner whose offense produced three victims, two

16  murdered and a third shot, while Martin received 20 serious

17  CDC-115 rule violations while in prison. A prison performance

18  record substantially inferior to that of petitioner's.

19      Assessing a significantly more serious first-degree

20  murder and associated crimes requiring a much longer term, a

21  federal district court judge reasoned that:

22

23          Whether the facts of the crime of the conviction,
            or other unchanged criteria, affect the parole
24          eligibility decision can only be predicted on the
            "predictive value" of the unchanging circumstances.
25          Otherwise, if the unchanging circumstances per se
            can be used to deny parole eligibility, sentence is
26          taken out of the hands of the judges and totally
            repoisted in the hands of the BPT. That is, parole
27          eligibility could be indefinitely and forever delayed
            based on the nature of the crime even thought the
28          sentence given set forth the possibility of parole- a
            sentence given with the facts of the crime fresh in

1    the mind of the judge. While it would not be a
     constitutional violation to forgo parole altogether
2    for certain crimes, what the state cannot do is have
     a sham system where the judge promises the
3    possibility of parole, but because of the nature of
     the crime, where parole is mandated to be determined
4    on someone's future potential to harm the community,
     constitutionally  exist where despite 20 years or
5    more of prison life, which indicates the absence of
     danger to the community in the future, the BPH
6    commissioner's revulsion toward the crime itself, or
     some other unchanging circumstances must indicate a
7    present danger to the community if released, and this
     can only be assessed not in a vacuum, after
8    accumulated eligibility hearings, but counter poised
     against a backdrop of prison events, relaying on
9    Blair v. Folsom state prison, 2005 W.L. 2219220, 12,
     N, 3 (E.D. Cal. 2005) report and recommendation
10   adopted by 2005 W.L. 3081634 (E.D. Cal 2005).

12

13

14   As the record shows, petitioner has programmed well, has been

15   incarcerated for 19 years 4 months and 5 days which is well

16   over my (MEPD) Minimum Eligibility Parole Date, and has

17   participated in rehabilitative programming. Given the on-going

18   positive programming, the predictive value of his pre-

19   incarceration offense history fails to show he is currently a

20   threat to society. The Board's reliance on those facts to

21   conclude otherwise is therefore arbitrary.

22

23   **B. ADDITIONAL SELF-HELP**

24

25       In finding petitioner unsuitable for parole the Board

26   concluded that; (**QUOTE**) The prisoner needs therapy or slash

27   self-help in order to face, discuss, understand, and cope with

28   stress in a nondestructive manner. Until progress is made, the

-12-

1   prisoner continues to be unpredictable and a threat to others.

2   (please see the September 29, 2005 Subsequent Parole

3   Consideration Hearing Transcript) page 59 line 26 (Decision

4   page 3) and page 60 lines 1 through 4 (Decision page 4).

5   **(PLEASE ASK RESPONDENT TO PROVIDE SAID TRANSCRIPTS.**

6   However, the overwhelming evidence is to the contrary, he

7   has participated in self-help and therapy programs and has been

8   deem by the Board's staff psychologists to be free from any

9   mental health disorders which would necessitate treatment

10  either during his incarceration period or following parole.

12  **(PLEASE SEE THE ENCLOSED BPT/BPH MENTAL HEALTH EVALUATION**

13  **REPORT). (ALSO KNOWN AS EXHIBIT (A) ).**

14  In the August 26, 2005 Mental Heath Evaluation for the BPT/BPH

15  and all previous evaluations of [petitioner] have been

16  consistent in reporting that the subject does not pose no more

17  risk for future violence then that of the average citizen. see

18  (Exh A,p.3 XIV. B). It should also be noted in (Exh A,P.2 XIII)

19  that Dr. Welcher stated "IN 1999 ABOUT (9) NINE YEARS AGO I SEE

20  HIM AS A GOOD CANDIDATE FOR PAROLE". The only risk factor

21  stated in the 2005 Mental Health evaluation Report would be ance

22  Substance abuse, it should be noted that [petitioner has not

23  used or abused any substance/alcohol since his committed

24  offense on 6/07/87. Please see (Exh A,p.3 XIV A)

25  The Board offered nothing ,not even a reasonable

26  explanation for how it came to the conclusion that petitioner

27  suffers from stress related problems, making him unpredictable

28  and a threat to others.

The Board's readiness to make a finding so at odds with

1  the evidence supports petitioners claim that the decision

2  denying parole was arbitrary.

3

4  **C. PAROLE PLANS**

5      Finally, the Board found that petitioner's parole plans

6  did not include employment plans or offer of jobs when he is

7  paroled. But the Board did note that petitioner did have two

8  marketable job skills that could be put to use to find a job.

9  (see 9/29/05 BPH Transcript p.60 (Decision p. 4 lines 11,12,13)

10  ALSO SEE (BPH Transcript p.62 (Decision p.6 lines 8 through 21)

12  SEE (Rosenkrantz, supra, 29 Cal. 4th at p.654)

13      California Code Regulations Title 15, Section 2402(d)(7),

14  under, suitability,state:"Understanding and plains for future.

15  The prisoner has made realistic plans for release or has

16  developed marketable skills that can be put to use upon

17  release."

18  This is a factor which must be weighted in favor of parole

19  suitability, the standard is, **"Has made realistic plans for**

20  **release  or has developed marketable job skills.." 'The**

21  **standard does not require that the prisoner have both.**

22

23      In that sense, petitioner's parole plans are realistic

24  as far as (CCR Title 15,Sec 2402 (d)(7) states

25  **"PLEASE SEE THE FOLLOWING**

26  (Exh A p.3 XIV A PARAGRAPH 3) AND CORRECTIONAL COUNSELOR

27  C. ELLISON'S 2005 LIFE PRISONER EVALUATION REPORT (FUTURE PLANS

28  on (P.3 & 4 at IV A & B). RESPONDENT HAS SAID REPORT.

# **CONCLUSION**

The is not whether some evidence supports the reasons the
Board cites for denying parole but whether some evidence
indicates a prisoner's release would unreasonably endanger
public safety. (Cal Code Regs. Tit. 15 Section 2402 Sub. (a).)
"Some evidence of the existence of a particular factor does
not necessarily equate to some evidence the prisoner's release
unreasonably endangers public safety"(In re Lee,supra, 49 Cal.
Rptr. 3d at 396.) In this case, the only potentially meaningful
**(BUT UNSUPPORTED)**factors declared by the Board to support
finding petitioner's release would pose an unreasonable risk
of danger to society were those related to the immutable
circumstances of his (soon to be 20 year old offence and nomor
prior violent history). California and Federal courts are now
consistently ruling that the predictive value of the offenders
of a (10-20) year plus murder and prior history is nil when
used to determine if the offenders release would pose an
unreasonable risk of danger to public safety, especially when
accompanied by a prison record demonstrating rehabilitation.
(See In re Lee,supra, at 396; In re Elkins, supra at 548 F.Inpp
re Smith, supra, at 372; In re Scott, supra, at 919-920; rose
Rosenkrantz v.Marshall, supra, 444 F. Supp. 2d 1063; Martin v.
Marshall, 431 F. Supp. 2d 1038 (N.D. Cal.); Biggs v. Terhune,
supra, at 916-917.) Accordingly, there is no factual evidence
to support the Board's finding that paroling petitioner will
pose an unreasonable risk of danger to society. The superior

1  court decision to deny the petition for writ of habeas corpus

2  was therefore objectively unreasonable.

3

4  Whereby petitioner request the relief sought in the petition.

5

6

7

8                              Respectfully Submitted,

9

10  Dated: 5/5/08             Scott Bur

                              Scott Burns
12                            Petitioner In Pro Se

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PRAYER FOR RELIEF

2

3       WHEREFORE, for the reasons set forth herein and in the documents

4   incorporated by reference. Petitioner respectfully request that this

5   Honorable Court:

6

7       (1) order an evidentiary hearing;

8       (2) grant the writ of habeas corpus;

9       (3) appoint counsel for Petitioner; and

10      (4) grant all other appropriate relief.

11

12   Dated: 5/5/08

13

14   //

15   //

                        Respectfully submitted,

16

17

18                       Scott Burns
                        Petitioner In Pro Se

19

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28

# EXHIBIT A

## MENTAL HEALTH EVALUATION FOR THE BOARD OF PRISON TERMS
### (REVISED AUGUST 1999)
### PAROLE CONSIDERATION HEARING
### OCTOBER 2005 LIFER CALENDAR

### CORRECTIONAL TRAINING FACILITY, SOLEDAD
### AUGUST 26, 2005

This is a mental health evaluation for the Board of Prison Terms for inmate Scott Steven Burns, CDC# D-99247. This is an addendum to the psychological evaluation completed by Dr. Howlin on 01/24/01. This report is based upon a personal clinical interview of the inmate, conducted on 08/26/05, as well as a review of his Central file and unit health record. This clinical interview and a review of all pertinent documents were for the express purpose of preparing this report.

Inmate Burns was provided informed consent, including the limitations of confidentiality for this evaluation required by the Board of Prison Terms. He appeared to comprehend both the nature and purpose of the present evaluation, and he agreed to participate in this interview.

Inmate Burns is a 44-year-old, Caucasian male whose date of birth is 12/15/60. His stated religious preference is Wicka. No obvious unusual physical characteristics were observed. He did acknowledge having used the nickname of "Leprechaun" and two aliases, "Kevin Baker" and "Patrick Stevenson."

Inmate Burns states that he is still working towards obtaining his GED, and in 2005 he obtained a TABE reading grade point level of 7.9.

Before his incarceration, inmate Burns stated that he worked for approximately three years as a park ranger. During his incarceration in 1989 he became certified in office machine repair, and around 2000 he obtained his certification in print shop, including graphic arts and offset printing. He has consistently obtained superior to exceptional work ratings by his supervisors over the years.

Inmate Burns stated that he has regularly attended Alcoholics Anonymous groups since 2003 and currently attends these groups.

Dr. Howlin's 2001 psychological evaluation included the following diagnoses: Cannabis Abuse, in institutional remission; Alcohol Abuse, in institutional remission, and Antisocial Personality Disorder, improving. In 2004, he received a heart catheterization and he currently takes medication for hypertension and nitroglycerin for his heart condition.

His plans if granted release include living in Santa Barbara with help from his cellie's family, whom he reports have agreed to this arrangement. He intends to work in print shop related areas or office machine repair. Alternatively, he plans to work in the community with the support of CDC in helping him in community placement.

*BURNS, SCOTT STEVEN*
*CDC NUMBER: D-99247*
*BPT MENTAL HEALTH EVALUATION*
*PAGE TWO*

### *CLINICAL ASSESSMENT*

### *XII.   CURRENT MENTAL STATUS/TREATMENT NEEDS:*

During the clinical interview, inmate Burns was alert and oriented to person, place and time. He was well dressed and groomed. His speech was articulate and contextually meaningful. His mood and affect were within normal limits, and his behavior was appropriate to the setting. No evidence of a mood or thought disorder was demonstrated. His estimated level of intellectual functioning was within the average range.

### *CURRENT DIAGNOSTIC IMPRESSIONS (DSM-IV):*

*AXIS I:*     1) Alcohol Abuse, in sustained full remission in a controlled environment.
2) Cannabis Abuse, in sustained full remission in a controlled environment.

*AXIS II:*   Antisocial personality disorder (by history only).

*AXIS III:*  1) Hypertension.
2) Heart problems.

### *XIII.   REVIEW OF LIFE CRIME:*

Inmate Burns described the circumstances surrounding his commitment offense, involving Second Degree Murder with a Handgun. He admitted full responsibility for the death of the victim. He recalled that he had been staying with a friend in the mountains at a campsite, and that the victim had offered them dinner. He said he went by himself to the victim's residence, and the victim had what he thought was an antique pistol. He noted that the victim had been drinking heavily and that he himself had been smoking marijuana, and that a bitter argument later ensued over the gun. Afterwards, he said the victim continued to drink, and subsequently made sexual advances towards him and would not let him leave the trailer. Sometime later, the victim passed out, and inmate Burns stated that in fear he shot the victim in the head and then left with the firearm. He said that he reported both being angry and fearful for his life at the time, as the victim was a very large man. He noted that he later threw the handgun away. Notably, this story is not consistent with the record, although it should be noted that inmate Burns completed group therapy in an Anger Management Control group with Dr. Welcher in 1999. Here, Dr. Welcher stated that inmate Burns talked openly about his commitment offense, expressed remorse about the victim and his family, and understood the factors that led to the instant offense, and what he needs to do to avoid a repeat. He further stated, "I see him as a good candidate for parole." I agree with both Dr. Welcher's and Dr. Howlin's 2001 conclusions that he did appear to be remorseful for the damage done to the victim, and appears to understand the causative factors related to the instant offense.

*BURNS, SCOTT STEVEN*
*CDC NUMBER: D-99247*
*BPT MENTAL HEALTH EVALUATION*
*PAGE THREE*

### XIV.   *ASSESSMENT OF DANGEROUSNESS:*

**A.**   His risk for violent behavior within a controlled setting is considered to be low relative to the average inmate population. This conclusion is based upon several factors.

On the one hand, he had a very unstable, chaotic upbringing, having been born from an incestuous relationship with his mother and uncle, and later personally witnessing the murder of his mother. His biological and legal father were apparently alcoholics. His upbringing in over 30-40 foster homes over the years appeared to be chaotic, and he dropped out of school, completing only the eighth grade, evidencing significant behavioral problems as an adolescent. He had five convictions from 18 until 24 years of age, mostly involving burglaries and grand theft autos. During his incarceration, he has received three significant CDC-115 disciplinaries, and two CDC minor 128 disciplinaries.

On the other hand, however, he does not have a juvenile criminal history, only a seemingly minor incident involving a trash can fire. He has no history of gang involvement. His adult criminal history does not evidence a pattern of increasing violence. He is a first-termer in state prison, and the current homicide is his only violent offense. His 115 disciplinaries appear to be of the administrative variety only. Importantly, he has never received a disciplinary for violent behavior or drug abuse during his 17 years completed within CDC. He has steadily upgraded his academic achievement, receiving a reading GPL of 7.9 in 2005. He has also obtained two employable work skills in office machine repair and in print shop. He has also consistently received good work supervisor ratings, indicating his ability to work with supervisors and others in the work setting. He has also been regularly attending AA groups since 2003.

Two additional psychological assessments were completed during the clinical interview. Results from the HCR-20 suggest a low prediction of violence, both within the controlled and community settings relative to the inmate population. Results from the Hare Psychopathy Checklist, Short Version, do not suggest the presence of sociopathy.

Therefore, in light of these factors, his risk of violence is low compared to the average level II inmate population in a structured setting.

**B.**   If released to the community, clinically assessed, his risk for future violence potential appears to be approximately that of the average citizen in the community, if he remains substance abuse free.

**C.**   Substance abuse is a risk factor which may be a precursor to violence for this individual.

*BURNS, SCOTT STEVEN*
*CDC NUMBER: D-99247*
*BPT MENTAL HEALTH EVALUATION*
*PAGE FOUR*

## *XV.    CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:*

*A.*    This inmate is competent and responsible for his behavior. He has the capacity to abide by institutional standards, and has largely done so during his incarceration.

*B.*    This inmate does not have a mental health disorder which would necessitate treatment either during his incarceration period or following upon parole.

*C.*    This inmate does have a significant drug abuse history, and continued participation in a drug abuse program both during his incarceration and as a contingency of parole is suggested.

*D.*    This inmate did have a chaotic and emotionally traumatic childhood, and one-to-one psychotherapy focusing upon his childhood could potentially be of great benefit to inmate Burns.

*Joe Reed, Ph.D.*
*Staff Psychologist*
*Correctional Training Facility, Soledad*

*B. Zika, Ph.D.*
*Senior Supervising Psychologist*
*Correctional Training Facility, Soledad*

*JR/gmj*

*D:  08/26/05*
*T:  09/01/05*

*D:\Word Files\BPT - 2005\BURNS, SCOTT   D-99247   10-05   REED.doc*

# **DECLARATION OF SERVICE BY MAIL**

I,   **SCOTT BURNS**                        , the undersigned, declare:
<u>Printed Name of Declarant</u>

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within. My residence address is:

      CDC No.  **D-99247**        Housing   **3-N-73-U**
      San Quentin State Prison
      San Quentin, CA 94974

On  **MAY   5**            ,  **2008** , I served the following document(s):
   Month/Day           Year

**TRAVERSE TO RESPONDENT'S ANSWER TO ORDER TO SHOW CAUSE AND**

**RE: PETITION FOR WRIT OF HABEAS CORPUS; AND MEMORANDUM OF POINTS**

**AND AUTHORITIES.**

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

| | |
|---|---|
| **OFFICE OF THE CLERK, U.S. DISTRICT COURT** | EDMUND G. BROWN JR |
| **NORTHERN DISTRICT OF CALIFORNIA** | ATTORNEY GENERAL |
| **450 GOLDEN GATE AVENUE** | OFFICE OF THE ATTORNEY GENERAL |
| **SAN FRANCISCO, CA. 94102** | 1300 I. STREET, SUITE 125 |
| | SACRAMENTO, CA. 94244-2550 |

I swear under penalty of perjury that the foregoing is true of my own personal knowledge. Executed on this **5 th** day of  **MAY**            ,  **2008** , at San Quentin, CA, County of Marin.

                         *Scott Burns*
                              Signature of declarant

SCOTT BURNS

3-N-73-U

SAN QUENTIN STATE PRISON

SAN QUENTIN, CA. 94974

OFFICE OF THE CLERK U.S. DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

450 GOLDEN GATE AVENUE

SAN FRANCISCO, CA. 94102